No. 24-6063

# In The United States Court of Appeals for the Tenth Circuit

STATE OF OKLAHOMA,

*Plaintiff-Appellant*,

vs.

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; XAVIER BECERRA, in his official capacity as the Secretary of the U.S. Department of Health and Human Services; JESSICA S. MARCELLA, in her official capacity as Deputy Assistant Secretary for Population Affairs; and OFFICE OF POPULATION AFFAIRS,

*Defendants-Appellees.*

On Appeal from the United States District Court for the
Western District of Oklahoma
The Honorable Judge Joe Heaton
District Court Case No. 23-CV-01052

BRIEF OF THE AMERICAN CIVIL LIBERTIES UNION, AMERICAN CIVIL LIBERTIES UNION OF OKLAHOMA, CENTER FOR REPRODUCTIVE RIGHTS, AND LAWYERING PROJECT AS *AMICI CURIAE* IN SUPPORT OF DEFENDANTS-APPELLEES AND AFFIRMANCE

May 17, 2024

CENTER FOR REPRODUCTIVE
RIGHTS
Rabia Muqaddam
Alexander Wilson
199 Water Street, 22nd Floor
New York, NY 10038
Telephone: (917) 637-3645
rmuqaddam@reprorights.org
awilson@reprorights.org

LAWYERING PROJECT
Jamila Johnson
3157 Gentilly Blvd #2231
New Orleans, LA 70122
Telephone: (347) 706-4981
jjohnson@lawyeringproject.org

Paige Suelzle
158 SW 148th Street #1198
Seattle, WA 98166
Telephone: (347) 515-6073
psuelzle@lawyeringproject.org

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
Ryan Mendias
Andrew Beck
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2633
rmendias@aclu.org
abeck@aclu.org

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION OF
OKLAHOMA
Megan Lambert
P.O. Box 13327
Oklahoma City, OK 73113
Telephone: (405) 524-8511
mlambert@acluok.org

# CORPORATE DISCLOSURE STATEMENT

Under Federal Rule of Appellate Procedure 26.1 and 10th Circuit Rule 26.1, Amici state that they are non-profit organizations without parent corporations and do not issue stock.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ............................................. i

TABLE OF CONTENTS ........................................................................ ii

TABLE OF AUTHORITIES .................................................................. iii

INTERESTS OF AMICI AND INTRODUCTION .................................... 1

ARGUMENT ....................................................................................... 3

    POINT I .......................................................................................... 3

    Oklahoma's Abortion Ban Applies Only to Unlawful Abortions
        as Made Clear in Guidance Issued by the Oklahoma
        Attorney General in November 2023 and August 2022 .............. 3

    POINT II ........................................................................................ 7

    Were Oklahoma's Abortion Ban to Prohibit Advising About
        Lawful Out-of-State Abortions, It Would Violate the First
        Amendment ............................................................................... 7

CONCLUSION .................................................................................... 12

      I. CERTIFICATE OF COMPLIANCE WITH TYPE
          VOLUME LIMITATION ..................................................... 14

      II. CERTIFICATE OF DIGITAL SUBMISSION ...................... 14

      III. CERTIFICATE OF SERVICE ............................................. 14

# TABLE OF AUTHORITIES

## Cases

*Bigelow v. Virginia,*
421 U.S. 809 (1975) ..................................................... 7, 9, 12

*Durant v. State,*
188 P.3d 192 (Okla. Crim. App. 2008) .................................. 5

*Friend v. Gasparino,*
61 F.4th 77 (2d Cir. 2023) ............................................ 11

*Gaylord Entertainment Co. v. Thompson,*
958 P.2d 128 (Okla. 1998) ............................................. 8

*Giboney v. Empire Storage & Ice Co.,*
336 U.S. 490 (1949) ................................................... 10

*Leftwich v. State,*
350 P.3d 149 (Okla. Crim. App. 2015) ................................. 5

*Planned Parenthood Greater Nw. v. Labrador,*
684 F. Supp. 3d 1062 (D. Idaho 2023) .................................. 7

*Planned Parenthood S. Atl. v. Stein,*
680 F. Supp. 3d 595 (M.D.N.C. 2023) .................................. 7

*Reed v. Town of Gilbert,*
576 U.S. 155 (2015) ................................................... 8

*Rosenberger v. Rector & Visitors of Univ. of Va.,*
515 U.S. 819 (1995) ................................................... 8

*State v. Clifford,*
106 P. 557 (Okla. Crim. App. 1910) .................................... 4

*United States v. Hansen,*
599 U.S. 762 (2023) .................................................. 10

*United States v. Williams,*
    553 U.S. 285 (2008) ...............................................................10

*Yellowhammer Fund v. Att'y Gen. of Ala.,*
    No. 2:23CV450, 2024 WL 1999546 (M.D. Ala. May 6, 2024) ..........8, 11

**Statutes**

Okla. Stat. tit. 21, § 861 .......................................................2, 3

**Rules**

Federal Rule of Appellate Procedure 29(a)(4)(E).....................................2

**Other Authorities**

Okla. Const. Art. 2........................................................................9

## INTERESTS OF AMICI AND INTRODUCTION

The **American Civil Liberties Union** is a nationwide, non-profit, non-partisan organization dedicated to the principles of liberty and equality embodied in the Constitution and the nation's civil rights laws, including the right of individuals to make their own reproductive decisions and the right to free speech.

The **American Civil Liberties Union of Oklahoma** is a non-profit, non-partisan, privately funded organization devoted to the defense and promotion of the individual rights secured by the U.S. and Oklahoma constitutions.

The **Center for Reproductive Rights** is a global non-profit human rights organization that works to ensure reproductive rights, including access to abortion, are protected in law as fundamental human rights.

**Lawyering Project**, a fiscally sponsored project of Tides Center, is a non-profit, legal advocacy organization that uses the law to uphold the dignity of people seeking, providing, or helping others access reproductive healthcare.

Amici are legal organizations that seek to advance the rights of people, including Oklahomans, to access abortion and who regularly advise healthcare providers on how to comply with abortion bans and restrictions, including Oklahoma's abortion ban, Okla. Stat. tit. 21, § 861.[1] Amici submit this brief because Oklahoma has made false statements in the preliminary injunction hearing below and in its brief that could leave this Court with the incorrect understanding that Oklahoma law prohibits advising patients about abortions taking place in states where abortion is legal. It does not. While the Court does not need to determine the scope of § 861 for purposes of this appeal, Amici submit this brief to set the record straight about this issue, supplementing the myriad other reasons Oklahoma law does not relieve the State of its obligations under Title X. Br. for Appellees at 26–27.

*First*, Amici draw the Court's attention to the Oklahoma Attorney General's announced position, as expressed in guidance to law

---

[1] Counsel for the parties have consented to the filing of this brief. Further, pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), Amici state that no counsel for any party authored this brief in whole or in part, and no person or entity, other than Amici, made a monetary contribution intended to fund the preparation or submission of this brief.

enforcement and prosecutors, that § 861 does not restrict referrals for lawful abortions—a position that comports with Oklahoma law on the strict construction of criminal statutes, but of which Oklahoma has made no mention of in this case. *Second*, to the extent Oklahoma has receded from its Attorney General's construction of § 861 and now contends that the statute criminalizes speech about lawful out-of-state abortion care, that construction would violate the free speech guarantees of the Federal and Oklahoma State Constitutions.

## ARGUMENT

## POINT I

### OKLAHOMA'S ABORTION BAN APPLIES ONLY TO UNLAWFUL ABORTIONS AS MADE CLEAR IN GUIDANCE ISSUED BY THE OKLAHOMA ATTORNEY GENERAL IN NOVEMBER 2023 AND AUGUST 2022.

Oklahoma has falsely suggested that its abortion ban, Okla. Stat. tit. 21, § 861, prohibits referrals for all out-of-state abortions. *See* Appellant's Brief at 42–44; Appellant's Appendix (District Court Transcript) at 555–57, 576, 596. Indeed, at oral argument before the district court, Oklahoma's defense of its refusal to comply with Title X's non-directive options counseling requirement rested on its erroneous assertion that there is "at least litigious uncertainty" as to whether § 861 applies to referrals for lawful, out-of-state abortions. Appellant's

Appendix (District Court Transcript) at 555–57. But there is no uncertainty on this point, "litigious" or otherwise. As recently as November 2023, the Oklahoma Attorney General himself issued guidance making clear that § 861 does not apply in the context of lawful abortions, such as those performed in states where abortion is legal.[2] As the Oklahoma Attorney General attested, § 861 only prohibits "advising" a person to obtain an "unlawful abortion." An abortion performed in a state where abortion is legal, in compliance with that state's laws, is not an "unlawful abortion," and the State cannot reasonably contend otherwise.[3]

The Attorney General's guidance is appropriate on this point in part because Oklahoma courts observe a "rule of strict construction," which requires that penal statutes apply only to conduct "*fairly and clearly embraced within their terms.*" *State v. Clifford*, 106 P. 557, 558 (Okla.

_____

[2] *See* November 21, 2023 Guidance for Oklahoma law enforcement following *Dobbs v. Jackson Women's Health Org.*, *OCRJ v. Drummond*, and *OCRJ v. Oklahoma*, The Oklahoma Attorney General, https://www.oag.ok.gov/sites/g/files/gmc766/f/documents/2023/memo_to_law_enforcement_part_ii_final.pdf (hereinafter "A.G. Guidance," attached hereto as Exhibit 1).

[3] *Id.* at 3.

Crim. App. 1910) (emphasis added). This longstanding principle—often likened to the rule of lenity—additionally provides that state criminal statutes ought to be construed "strictly against the State and liberally in favor of the accused," with the statutory language given its plain and ordinary meaning. *Leftwich v. State*, 350 P.3d 149, 155 (Okla. Crim. App. 2015) (citing *State v. Tran*, 172 P.3d 199, 200–01 (Okla. Crim. App. 2007)). This rule of construction applies when interpreting criminal laws generally, serving dual purposes of providing fair notice and ensuring legislative supremacy. *See, e.g.*, *Durant v. State*, 188 P.3d 192, 194 (Okla. Crim. App. 2008) ("The purpose of strict construction is . . . to ensure that when liberty is at stake, all citizens have fair and clear warning of what conduct is prohibited, and, equally important, the severity of punishment for any infraction.").

The Oklahoma Attorney General has explicitly relied on the rule in promulgating enforcement guidance as to other laws criminalizing abortion. The Oklahoma Attorney General, opining on the scope of a different abortion restriction, applied the rule of strict construction to conclude the statute does not "impose criminal penalties of any sort" on

someone for having an abortion.[4] Similarly here, the Oklahoma Attorney General's enforcement guidance for § 861 aligns with the rule of strict construction regarding punishment for referrals for legal abortion. Under this rule, regardless of the State's public policy, Oklahoma cannot now broaden the text of § 861 to apply to referrals for legal care, which the plain text of the statute does not address.

Any arguments that Oklahoma law forbids referrals for legal abortions, regardless of whether Title X applies, therefore grossly mischaracterize the scope of § 861. It is particularly striking that Oklahoma has advanced such sweeping assertions about the scope of § 861 in this case while failing to identify to the District Court or this Court its Attorney General's own contrary guidance. To Amici's knowledge, as some of the principal legal organizations involved in challenges to Oklahoma's abortion bans and restrictions, the State has never before taken the position that § 861 prohibits referrals for out-of-state abortions.

---

[4] *See* November 21, 2023 Attorney General Opinion 2023-12 at 8, The Oklahoma Attorney General, https://www.oag.ok.gov/sites/g/files/gmc766/f/documents/opinions/2023/ag_opinion_2023-12.pdf (attached hereto as Exhibit 2).

# POINT II

**WERE OKLAHOMA'S ABORTION BAN TO PROHIBIT ADVISING ABOUT LAWFUL OUT-OF-STATE ABORTIONS, IT WOULD VIOLATE THE FIRST AMENDMENT.**

Additionally, beyond the Title X context, the interpretation of § 861 Oklahoma advances—contrary to its own Attorney General's *present* construction of § 861—would clearly trespass on the First Amendment. Indeed, the Supreme Court recognized this nearly half a century ago, when it struck down a ban on advertising out-of-state abortion services, explaining that a state's purported "interest in regulating what [its citizens] may hear or read about . . . [those] services" is "entitled to little, if any, weight." *Bigelow v. Virginia*, 421 U.S. 809, 827–28 (1975). Unsurprisingly, the lower courts have repeatedly and recently reaffirmed *Bigelow*'s central holding when rejecting efforts to restrict referrals for lawful out-of-state abortion care. *See, e.g., Planned Parenthood S. Atl. v. Stein*, 680 F. Supp. 3d 595, 598 (M.D.N.C. 2023) (state ban on "advising" an abortion was "highly likely to violate the First Amendment" "[t]o the extent that [it] . . . prohibit[ed] people from helping others obtain lawful out-of-state abortions" by providing information and referrals); *Planned Parenthood Greater Nw. v. Labrador*, 684 F. Supp. 3d 1062, 1094 (D. Idaho 2023) (finding plaintiffs "likely to succeed on the merits of their

First Amendment challenge" to state attorney general's opinion that "refer[ring] a woman across state lines to an abortion provider" violated state law); *Yellowhammer Fund v. Att'y Gen. of Ala.*, No. 2:23CV450, 2024 WL 1999546, at *19 (M.D. Ala. May 6, 2024) (noting the "dangerous consequences for the freedom of expression" should a state be permitted to "interpret[] state law as punishing the speech necessary to obtain" lawful, out-of-state abortions).

Oklahoma's newly posited reading of § 861 directly contradicts this long line of precedent and would violate fundamental First Amendment principles, including the bedrock precept that the government may not restrict speech based purely on its content, *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015), or, more egregiously, based on the particular view expressed by a speaker, *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995). Such regulations are presumptively unconstitutional and are subject to strict scrutiny. *Reed*, 576 U.S. at 163.[5]

---

[5] The Oklahoma Constitution affords equivalent, if not greater, protections for the referrals at issue here. As the Oklahoma Supreme Court has recognized, "[t]he Oklahoma Constitution's protection of free speech *is far more broadly worded* than the First Amendment's restriction on governmental interference with speech." *Gaylord*

Oklahoma's new interpretation of § 861 as a ban on "advis[ing] or procur[ing]" a lawful abortion in another state is precisely this kind of unconstitutional restriction, as it is both content- and viewpoint-based, targeting for criminal punishment one subject of speech (i.e., abortion) and, specifically, one perspective (i.e., one supportive of individuals seeking to end their pregnancies). Such a blatant infringement on the freedom of speech cannot possibly survive strict scrutiny. *See Verlo v. Martinez*, 820 F.3d 1113, 1134 (10th Cir. 2016); *Bigelow*, 421 U.S. at 827–28 (rejecting Virginia's asserted interest in shielding its citizens from information about activities outside its borders that the state deemed a risk to its citizens' health); *see also id.* at 824–25; A.G. Guidance at 3 (articulating a less restrictive and far more reasonable interpretation of § 861, namely, that it applies only to "advis[ing] or procur[ing]" an *unlawful* abortion).

---

*Entertainment Co. v. Thompson*, 958 P.2d 128, 138 n.23 (Okla. 1998) (emphasis in original); *see also* Okla. Const. Art. 2, § 22 ("Every person may freely speak, write, or publish his sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press. . . .").

To the extent Oklahoma's reading of § 861 is premised on the mistaken notion that referrals for out-of-state abortions are constitutionally unprotected under the narrow First Amendment exception for speech integral to criminal conduct, that is flatly wrong, and the exception is wholly inapplicable here. While the First Amendment does not "extend[] its immunity to speech or writing used as an integral part of conduct in violation of a valid criminal statute," *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1949), for this limited exception to apply, the speech must be "intended to bring about a particular *unlawful act*," *United States v. Hansen*, 599 U.S. 762, 783 (2023) (emphasis added); *see also United States v. Williams*, 553 U.S. 285, 298 (2008) (speech "intended to induce or commence *illegal activities*" is not protected by the First Amendment (emphasis added)). Citing comparable precedent from the Oklahoma Supreme Court, the Attorney General explicitly recognized that speech loses constitutional protection only when it "encourages 'imminent *lawless* action.'"[6]  As a

---

[6] A.G. Guidance at 3 (emphasis added) (citing *Edmondson v. Pearce*, 91 P.3d 605, 633–34, as corrected (July 28, 2004) (explaining that, like speech integral to criminal conduct, "communication which incites . . . imminent lawless action . . . does not constitute protected speech")).

result, the Attorney General explained that § 861's prohibition only applies to "advising a pregnant woman to obtain *an unlawful* abortion" and directed prosecutors to "take great care to avoid infringing on constitutional speech rights."[7]

Because dispensing advice or information about a legal medical procedure implicates no unlawful act whatsoever, the speech-integral-to-criminal-conduct exception is irrelevant, and the First Amendment's protections apply with full force. *See, e.g.*, *Friend v. Gasparino*, 61 F.4th 77, 90 (2d Cir. 2023) (when "there is no predicate crime" to which the relevant speech was "integral," it cannot be the case that the speech is "unprotected for being integral to criminal conduct" (internal quotation marks omitted)); *Yellowhammer Fund*, 2024 WL 1999546, at *19 ("For the . . . exception to have tractable limits, the speech at issue must bear some relation to an independently unlawful course of conduct . . . In other words, the speech being proscribed must be causally linked to a particular crime" (internal citation and quotation marks omitted)).

---

[7] *Id.* (emphasis added).

In sum, to the extent Oklahoma now contends—contrary to the Attorney General's existing guidance—that § 861's ban on "advis[ing] or procur[ing]" makes it a crime for Oklahomans to refer for *lawful* abortions in other states, its interpretation would run afoul of the First Amendment. *See Bigelow*, 421 U.S. at 824–25. While the Court need not determine the scope of § 861 for purposes of this appeal, in rendering a decision in this case, the Court should not adopt Plaintiff-Appellant's unconstitutional reading of state law, as it is clear that this position is a disingenuous attempt to manufacture a conflict with Title X's requirements.

## CONCLUSION

For the foregoing reasons, Amici urge the Court to affirm the district court's order.


Dated: New York, New York
May 17, 2024

Respectfully submitted,

CENTER FOR REPRODUCTIVE
RIGHTS
Rabia Muqaddam
Alexander Wilson
199 Water Street, 22nd Floor
New York, NY 10038
Telephone: (917) 637-3645
rmuqaddam@reprorights.org
awilson@reprorights.org

LAWYERING PROJECT
Jamila Johnson
3157 Gentilly Blvd #2231
New Orleans, LA 70122
Telephone: (347) 706-4981
jjohnson@lawyeringproject.org

Paige Suelzle
158 SW 148th Street #1198
Seattle, WA 98166
Telephone: (347) 515-6073
psuelzle@lawyeringproject.org

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
Ryan Mendias
Andrew Beck
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2633
rmendias@aclu.org
abeck@aclu.org

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION OF
OKLAHOMA
Megan Lambert
P.O. Box 13327
Oklahoma City, OK 73113
Telephone: (405) 524-8511
mlambert@acluok.org

*Attorneys for Amici Curiae*

# I. CERTIFICATE OF COMPLIANCE WITH TYPE VOLUME LIMITATION

1. This brief complies with the type-volume limitations of Fed. R. App. P. 29(a)(5) and 32(a)(7)(B) because it contains 2244 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 10th Cir. R. 32(b).

2. This brief complies with Fed. R. App. P. 32(a)(5)-(6) because it has been prepared in a proportionally spaced typeface in Word using Century 14-point typeface.

Dated: May 17, 2024                                         /s/ Rabia Muqaddam
                                                            Rabia Muqaddam

# II. CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing:

1. all required privacy redactions have been made per 10th Cir. R. 25.5;

2. if required to file additional hard copies, that the ECF submission is an exact copy of those documents; and

3. the digital submission has been scanned for viruses with the most recent version of a commercial virus scanning program, Microsoft Defender, and according to the program, is free of virus.

Dated: May 17, 2024                                         /s/ Rabia Muqaddam
                                                            Rabia Muqaddam

# III. CERTIFICATE OF SERVICE

I certify that on May 17, 2024, I caused the foregoing to be filed with this Court and served on all parties via the Court's CM/ECF filing system.

Dated: May 17, 2024                                         /s/ Rabia Muqaddam
                                                            Rabia Muqaddam

# EXHIBIT 1



# MEMORANDUM

To:     All Oklahoma Law Enforcement Agencies

From:  Oklahoma Attorney General[1]

Date:  November 21, 2023

Re:     Guidance for Oklahoma law enforcement following *Dobbs v. Jackson Women's Health Org.*, *OCRJ v. Drummond*, and *OCRJ v. Oklahoma*

---

On June 24, 2022, the U.S. Supreme Court overruled *Roe v. Wade*, holding that the U.S. Constitution "does not prohibit the citizens of each State from regulating or prohibiting abortion." *Dobbs v. Jackson Women's Health Org.* 142 S. Ct. 2228, 2284 (2022). In light of this decision, and following the Oklahoma Supreme Court's decisions in *OCRJ v. Drummond*, 2023 OK 24, and *OCRJ v. Oklahoma,* 2023 OK 60, the Oklahoma Office of the Attorney General offers the following updated guidance to district attorneys and law enforcement regarding Oklahoma's prohibition of abortion.[2]

***First,*** Oklahoma district attorneys and law enforcement agencies should pursue criminal prosecution of any person who intentionally performs, attempts to perform, or assists with the performance of elective or on-demand abortion in Oklahoma, surgical or chemical.

- Section 861 of Title 21 is Oklahoma's long-standing criminal prohibition, and it has been enforceable since the Attorney General's Certification Letter on June 24, 2022. In *OCRJ v. Drummond*, the Oklahoma Supreme Court found that § 861 does not violate the Oklahoma Constitution. Therefore, it is still in effect and enforceable.[3]

- A similar law, Section 1-731.4 of Title 63, took effect on August 27, 2022. The Oklahoma Supreme Court declared that law to be unenforceable in *OCRJ v. Drummond*, but solely on the grounds that its life exception was too narrow. Thus, at this point, Section 861 is the operative abortion prohibition in Oklahoma, and it applies throughout pregnancy.

- In short, under Section 861, law enforcement should focus on ensuring that abortion-on-demand is unavailable in Oklahoma and that violators are prosecuted.

***Second***, there are clear instances where prosecutions should *not* be initiated:

- Oklahoma laws prohibiting abortion clearly do not allow for the prosecution or punishment of any mother for seeking or obtaining an abortion. AG Op. 2023-12.

---

[1] This is a guidance memorandum, not an official legal opinion from the Attorney General.

[2] The Office of the Attorney General offered its original guidance on August 31, 2022. This document supersedes that one, which is now outdated and should be considered withdrawn.

[3] Depending on the circumstances of the crime, Oklahoma's homicide laws may also be available. *See, e.g.*, 21 O.S. § 691; 63 O.S. § 1-732(F).



- Nor do Oklahoma abortion prohibitions apply to unintentional miscarriages and miscarriage management (such as the removal of a deceased child or the medical requirement for a Dilation and Curettage procedure), ectopic pregnancies and treatments, in vitro fertilization (IVF) and other fertility treatments, or uses or prescription of contraception, including Plan B.

***Third***, an abortion is only authorized under Oklahoma criminal law to save the life of the mother.

- In *OCRJ v. Drummond*, the State Supreme Court explained the exception as follows:

  > [A] woman has an inherent right to choose to terminate her pregnancy if at any point in the pregnancy, the woman's physician has determined to a reasonable degree of medical certainty or probability that the continuation of the pregnancy will endanger the woman's life due to the pregnancy itself or due to a medical condition that the woman is either currently suffering from or likely to suffer during the pregnancy.

- The Supreme Court added that although "[a]bsolute certainty is not required" for the exception to apply, "mere possibility or speculation is insufficient." Thus, as this Office explained in August 2022, this exception should be interpreted to ensure that it is not used by bad faith actors or clinics as a cover for abortion-on-demand. Further, there is no requirement that the woman be septic, bleeding profusely, or otherwise close to death; rather, if the physician reasonably deems that the continued pregnancy will jeopardize the woman's life, this is sufficient to trigger the exception.

- Moreover, when a situation where the mother's life is at risk arises, or where the life exception has been cited, district attorneys should generally refrain from prosecuting when no pattern or trend exists, or where evidence of criminal intent is absent or unclear.

- Medical doctors, in particular, should be given substantial leeway to treat pregnant women experiencing life-threatening or emergency physical conditions, using their reasoned medical judgment, so long as they are not unnecessarily terminating the life of the unborn child or intentionally abusing their position to facilitate elective abortions.

- Should a situation where the mother's life is at risk arise, or where the life exception has been cited, district attorneys and law enforcement are encouraged to consult with the Office of the Attorney General before initiating prosecution.

***Fourth***, Oklahoma's criminal abortion prohibitions do not contain independent exceptions for when the unborn child is conceived by rape, sexual assault, or incest.

- As previously explained, an abortion in such circumstance is only authorized under Oklahoma law if the abortion is necessary to save the life of the mother.



- In an instance of rape or sexual assault that led to abortion or an attempted abortion, however, law enforcement should focus first and foremost on identifying and prosecuting the rapist.

**Fifth**, Oklahoma law prohibits aiding and abetting the commission of an unlawful abortion, which may include advising a pregnant woman to obtain an unlawful abortion. *See* 21 O.S. §§ 171-172, 861.

- In enforcing this, district attorneys and law enforcement should take great care to avoid infringing on constitutional speech rights. The Oklahoma Supreme Court has held that speech that encourages "imminent lawless action" is not constitutionally protected, whereas "mere advocacy" is protected. *Edmondson v. Pearce*, 2004 OK 23, ¶ 61.

- Therefore, district attorneys and law enforcement should entirely refrain from investigating or prosecuting persons engaging in general advocacy in favor of abortion.

- District attorneys and law enforcement may consider pursuing a case, however, where a person has advised or encouraged a woman to obtain an unlawful abortion in some imminent way, especially if the third party has taken an overt or tangible action toward that goal. But, again, should such a situation arise, district attorneys and law enforcement are encouraged to consult with the Office of the Attorney General before initiating prosecution.

Also notable is that Oklahoma's two recent <u>civil</u> abortion statutes were declared unconstitutional by the Oklahoma Supreme Court in *OCRJ v. Oklahoma* due to their containing the same overly narrow life exception language as Section 1-731.4. In any event, they were not enforceable by law enforcement. *See* 63 O.S. §§ 1-745.38 (SB 1503); 63 O.S. §§ 1-745.54 (HB 4327).

The Office of the Attorney General recognizes that Oklahoma law enforcement is dedicated to protecting Oklahoma citizens and has already implemented some of these changes. District attorneys with questions should contact Solicitor General Garry Gaskins (garry.gaskins@oag.ok.gov).

# EXHIBIT 2



GENTNER DRUMMOND
ATTORNEY GENERAL

## ATTORNEY GENERAL OPINION
## 2023-12

November 21, 2023

The Honorable Warren Hamilton
Oklahoma State Senate, District 7
2300 N. Lincoln Boulevard, Room 416
Oklahoma City, OK 73105

The Honorable Shane Jett
Oklahoma Senate, District 17
2300 N. Lincoln Boulevard, Room 528.1
Oklahoma City, OK 73105

The Honorable Nathan Dahm
Oklahoma Senate, District 33
2300 N. Lincoln Boulevard, Room 526
Oklahoma City, OK 73105

The Honorable George Burns
Oklahoma Senate, District 5
2300 N. Lincoln Boulevard, Room 533
Oklahoma City, OK 73105

The Honorable Tom Gann
Oklahoma House of Representatives, District 8
2300 N. Lincoln Boulevard, Room 344
Oklahoma City, OK 73105

The Honorable David Smith
Oklahoma House of Representatives, District 18
2300 N. Lincoln Boulevard, Room 334
Oklahoma City, OK 73105

Dear Senators Hamilton, Jett, Dahm, Burns, and Representatives Gann and Smith:

This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:

> **Does Oklahoma law, through section 1-733 of title 63 of the Oklahoma Statutes or some other provision, make it a punishable crime for a pregnant woman to solicit, perform, or self-induce an abortion to terminate her pregnancy intentionally?**

## I.
### SUMMARY

The answer to your question is no. Oklahoma law does not allow the punishment of pregnant women attempting an abortion, self-induced or otherwise. The Legislature has repeatedly made this clear in statutory text, and just last year, repealed the one law that would have expressly allowed such a prosecution. Nor is there any historical tradition of such punishment in Oklahoma or nationwide prior to the *Roe v. Wade* era. This in no way indicates that abortion is lawful, as

longstanding Oklahoma law prohibits the performance of—or the aiding and abetting of—every abortion throughout pregnancy except as necessary to save a pregnant woman's life.[1]

## II.
### BACKGROUND

**A.      In the decades prior to *Roe v. Wade*, Oklahoma prosecuted practitioners of abortion to protect pregnant women, unborn children, and society.**

In Oklahoma, attempting or performing an abortion has been a crime at every stage of pregnancy, tracing all the way back to Oklahoma Territory law from 1890. *See* Okla. (Terr.) Stat. § 2187 (1890), *recodified at* Okla. (Terr.) Stat. § 2177 (1893), *recodified at* Okla. (Terr.) Stat. § 2268 (1903), *recodified at* Okla. Comp. Laws § 2370 (1909), *recodified at* Okla. Rev. Laws § 2436 (1910), *recodified at* Okla. Comp. Stat. Ann. § 1859 (1921), *recodified at* O.S. § 1834 (1931), *recodified at* 21 O.S.1941, § 861. In its current form, this law ("section 861") states that:

> Every person who administers to any woman, or who prescribes for any woman, or advises or procures any woman to take any medicine, drug or substance, or uses or employs any instrument, or other means whatever, with intent thereby to procure the miscarriage[2] of such woman, unless the same is necessary to preserve her life shall be guilty of a felony punishable by imprisonment in the State Penitentiary for not less than two (2) years nor more than five (5) years.

21 O.S.2021, § 861; *see also Oklahoma Call for Reprod. Just.* ["OCRJ"] *v. Drummond*, 2023 OK 24, ¶ 7, 526 P.3d 1123, 1129 ("This law has changed very little since the days of the Oklahoma Territory.").

Thus, nearly two decades before and for over five decades after the adoption of the state constitution, until *Roe v. Wade*, 410 U.S. 113 (1973), abortion was criminalized throughout pregnancy in Oklahoma, except to save the pregnant woman's life.

Prior to *Roe*, moreover, Oklahoma prosecutors charged, and juries convicted, various persons for violating section 861 or other statutes in connection with the performance of abortion. *See, e.g., Wilson v. State*, 1927 OK CR 42, 252 P. 1106; *Davis v. State*, 1925 OK CR 61, 234 P. 787; *Thacker v. State*, 1933 OK CR 119, 26 P.2d 770; and *Smith v. State*, 1946 OK CR 115, 175 P.2d 348. During this time, a separate, companion statute—title 21, section 862, in its most recent iteration— was on the books, and that statute allowed for the prosecution of a pregnant woman who sought an abortion:

---

[1]This office has reviewed the Oklahoma Supreme Court's latest decision in *Oklahoma Call for Reproductive Justice v. Drummond*, 2023 OK 111, and has determined that the decision does not impact this office's analysis or conclusion in this opinion.

[2]Section 861's text says "miscarriage" instead of abortion, but the statute only prohibits intentional attempts, and courts have long recognized that it is directed at abortion. *See, e.g., Herbert v. Oklahoma Christian Coal.*, 1999 OK 90, ¶ 7 n.2, 992 P.2d 322, 326 n.2 ("21 O.S. § 861 . . . made procuring an abortion punishable by imprisonment"); *Jobe v. State*, 1973 OK CR 51, ¶ 2, 509 P.2d 481, 481 (labeling section 861 the "Oklahoma Anti-Abortion Statute").

> Every woman who solicits of any person any medicine, drug, or substance whatever, and takes the same, or who submits to any operation, or to the use of any means whatever, with intent thereby to procure a miscarriage, unless the same is necessary to preserve her life, is punishable by imprisonment in the county jail not exceeding one (1) year, or by fine not exceeding One Thousand Dollars ($1,000.00), or by both.

21 O.S.2021, § 862.[3]

Whereas a conviction under section 861 resulted in a felony punishable by at least two years in prison, a conviction under section 862 would have been a misdemeanor as it only allowed a maximum punishment of one year in county jail. *See* 21 O.S.2021, §§ 5–6, 10; *Carr v. State*, 1961 OK CR 15, ¶¶ 4–9, 359 P.2d 606, 608–09. But even that one-year punishment for section 862 was just theoretical, as this office has been unable to identify any reported prosecutions or convictions of pregnant women under section 862. The absence of any readily available prosecution history contrasts starkly with section 861's known track record and indicates that the prosecution of pregnant women in connection with abortion attempts—even for a misdemeanor—is not entrenched in historical Oklahoma practice. This position dovetails with the repeated emphasis of the Court of Criminal Appeals ("OCCA") in pre-*Roe* cases that, although a "female in an abortion case may be prosecuted" under what would become section 862, the pregnant woman was not generally seen to be criminally culpable for the abortion. *Wilson*, 1927 OK CR 42, 252 P. at 1107–08; *see also Cahill v. State*, 1947 OK CR 27, 178 P.2d 657, 659–60 (re-affirming *Wilson* and holding that the pregnant woman "is regarded as the victim of the crime, rather than a participant in it" (citations omitted)); *Reeves v. Territory*, 1909 OK CR 65, 101 P. 1039, 1042 (favorably embracing scholarly position that "the woman is not an accomplice in . . . abortion" (citation omitted)).

In short, historically in Oklahoma, prosecution of a pregnant woman for a misdemeanor was theoretically permitted but not carried out in any substantial manner, if at all.

This was not unique to Oklahoma. Nationwide, the pre-*Roe* practice was consistent: regardless of whether state laws on abortion technically applied to pregnant women in some way, the States rarely, if ever, prosecuted them for abortion alone, much less obtained a conviction. This has been confirmed by many. In a lengthy book on abortion history—a scholarly work the United States Supreme Court cited six different times in overturning *Roe* in 2022—one historian defended the "long and fact-based tradition of [treating] abortion as a crime against women." JOSEPH W. DELLAPENNA, DISPELLING THE MYTHS OF ABORTION HISTORY 302 (Carolina Academic Press 2006). "Apparently," he observed, "no woman has ever been convicted in the United States of the crime of abortion as such, and only a few have been charged." *Id.* at 301; *see also* Clarke Forsythe, *Why the States Did Not Prosecute Women for Abortion Before Roe v. Wade*, AMERICANS UNITED FOR LIFE (April 23, 2010) ("[T]he almost uniform state policy before *Roe* was that abortion laws targeted abortionists, not women.").[4]

---

[3]As will be discussed momentarily, section 862 has recently been repealed.

[4]Available at https://aul.org/2010/04/23/why-the-states-did-not-prosecute-women-for-abortion-before-roe-v-wade/.

**B.      In the *Roe v. Wade* and *Planned Parenthood v. Casey* era, Oklahoma enacted numerous laws to protect unborn children and women from abortion.**

The United States Supreme Court held in *Roe* that the abortion prohibitions in virtually all fifty States—including Oklahoma's section 861—were unconstitutional under a "new constitutional right" to abortion. *Roe*, 410 U.S. at 221–22 (White, J., dissenting). Citing *Roe*, the OCCA and United States District Court for the Northern District of Oklahoma then held that Oklahoma statutes prohibiting abortion violated the United States Constitution. *See Jobe v. State*, 1973 OK CR 51, ¶ 4, 509 P.2d 481, 482; *Henrie v. Derryberry*, 358 F. Supp. 719, 727 (N.D. Okla. 1973). Nearly twenty years later, the Supreme Court upheld *Roe* in *Planned Parenthood v. Casey*, insisting that states could not place an "undue burden" on women seeking an abortion before viability. 505 U.S. 833, 876–79 (1992).

During the *Roe* and *Casey* era, Oklahoma never repealed section 861, even though the Legislature knew how to do so. *See, e.g.*, 1973 Okla. Sess. Laws ch. 99, § 1 (H.B. 1142) (repealing, in the immediate aftermath of *Roe*, a statutory provision classifying the "procuring, aiding or abetting" of an abortion as unprofessional conduct for a physician).[5] Rather, the Legislature left section 861 on the books while it continually enacted laws to maximize protections for the unborn and for pregnant women. *See, e.g.*, 63 O.S.Supp.2010 and Supp.2017, § 1-737.4 (requiring abortion clinics to post signs informing pregnant women that they cannot be forced to have an abortion without "freely given and voluntary consent" and that "[t]here are public and private agencies willing and able to help you carry your child to term, have a healthy pregnancy and a healthy baby and assist you and your child after your child is born").

Central here, five years after *Roe*, the Oklahoma Legislature enacted a law holding that:

> No woman shall perform or induce an abortion upon herself except under the supervision of a duly licensed physician. Any physician who supervises a woman in performing or inducing an abortion upon herself shall fulfill all the requirements of this article which apply to any physician performing or inducing an abortion.

63 O.S.Supp.1978, § 1-733. This law was silent about punishment, and nothing has changed on that front in the forty-five years since it was first enacted. *See* 63 O.S.2021, § 1-733. And, unsurprisingly, this office is not aware of any enforcement action or attempted prosecution brought against a pregnant woman under this law since it took effect.

Moreover, while the Legislature increased protections for the unborn during the *Roe* era, it repeatedly indicated that pregnant women should ***not*** be prosecuted solely for seeking or obtaining

---

[5]A similar law was re-enacted by the Legislature in 2021. *See* 2021 Okla. Sess. Laws ch. 205 (H.B. 1102) (amending, *inter alia*, 59 O.S.2021, § 509(20)).

an abortion. Your request cites two such statutes: sections 652 and 691 of title 21, although there are plenty more.[6]

Since 2005, section 652 has indicated that certain prohibitions on attempted killing with a firearm, vehicular endangerment, and assault and battery are applicable when an unborn child is the victim. Section 691 indicates that the definition of homicide encompasses the unborn child, as well, as of 2006. Both statutes contain an identical and important proviso, however: "Under no circumstances shall the mother of the unborn child be prosecuted for causing the death of the unborn child unless the mother has committed a crime that caused the death of the unborn child." 21 O.S.2021, § 652(E); 21 O.S.2021, § 691(D). A similar proviso can also be found in Oklahoma's wrongful death statute, which since 2005 allows recovery "for the death of an unborn person" when a physician fails in certain ways (*e.g.*, by failing to obtain "voluntary and informed consent" from a pregnant woman before an abortion). 12 O.S.2021, § 1053(F). In sum, the Legislature has repeatedly indicated that pregnant women should not be prosecuted solely for seeking or obtaining an abortion.

---

[6]Several of the following statutes have been enjoined or found unconstitutional, although never on the basis of the quoted provision exempting women from prosecution or liability:

• Partial-birth abortion prohibition (H.B. 2542): "A woman upon whom a partial-birth abortion is performed may not be prosecuted under this section or for a conspiracy to violate this section." 21 O.S.Supp.1998, § 684(E).

• Civil medication abortion prohibition (S.B. 1902): "No pregnant female who obtains or possesses RU-486 (mifepristone) for the purpose of inducing an abortion to terminate her own pregnancy shall be subject to any [civil] action brought under subsection F of this section." 63 O.S.Supp.2010, § 1-729a(H).

• Sex-selection abortion prohibition (S.B. 1890): "No fine shall be assessed against the female upon whom an abortion is performed or attempted." 63 O.S.Supp.2010, § 1-731.2(C)(3).

• Criminal abortion prohibition (S.B. 612): "This section does not . . . authorize the charging or conviction of a woman with any criminal offense in the death of her own unborn child . . . ." 63 O.S.Supp.2022, § 1-731.4(B)(3)(a).

• Dismemberment abortion prohibition (H.B. 1721): "No woman upon whom an abortion is performed or attempted to be performed shall be thereby liable for performing or attempting to perform a dismemberment abortion." 63 O.S.Supp.2015, § 1-737.9(C).

• Pain-capable abortion prohibition (H.B. 1888): "No penalty may be assessed against the woman upon whom the abortion is performed or induced or attempted to be performed or induced." 63 O.S.2011, § 1-745.7.

• Civil abortion prohibition (S.B. 1503): "[A] civil action under this section shall not be brought . . . [a]gainst the woman upon whom an abortion was performed or induced or attempted to be performed or induced in violation of this act, or against a pregnant woman who intends or seeks to abort her unborn child in violation of this act . . . ." 63 O.S.Supp.2022, § 1-745.39(K)(1).

• Civil abortion prohibition (H.B. 4327): "[A] civil action under this section may not be brought . . . [a]gainst the woman upon whom an abortion was performed or induced or attempted to be performed or induced in violation of this act, or against a pregnant woman who intends or seeks to abort her unborn child in violation of this act . . . ." 63 O.S.Supp.2022, § 1-745.55(K)(1).

• Criminal medication abortion prohibition (S.B. 778): "No criminal penalty may be assessed against the pregnant woman upon whom the drug-induced abortion is attempted, induced or performed." 63 O.S.2021, § 1-731.2(C).

• Civil medication abortion prohibition (S.B. 778): "No civil liability may be assessed against the pregnant woman upon whom the drug-induced abortion is attempted, induced or performed." 63 O.S.2021, § 1-756.11(B).

• Medication abortion prohibition (S.B. 779): "No civil or criminal penalty may be assessed against the pregnant woman upon whom the drug-induced abortion is attempted, induced or performed." 63 O.S.2021, § 1-757.10(E).

C.      **The Supreme Court overturned *Roe v. Wade*, the Legislature repealed section 862, and the Legislature again insisted that pregnant women should not be prosecuted.**

In April 2022, the Legislature amended its "trigger" law to ensure the immediate repeal of four statutes upon the Attorney General's certification that the Supreme Court overruled *Roe* and *Casey*. This included title 21, section 862. *See* 2022 Okla. Sess. Laws ch. 133 (S.B. 1555) (amending 2021 Okla. Sess. Laws ch. 308 (S.B. 918)).[7]

At the same time, the Legislature signaled that it wanted section 861 or a similar law punishing abortionists enforced after *Roe* was gone. 2022 Okla. Sess. Laws ch. 133, § 1. Almost simultaneously with the updated trigger law, the Legislature passed another abortion ban that, like section 861, applied throughout pregnancy. *See* 63 O.S.Supp.2022, § 1-731.4. Given its incompatibility with *Roe*, this criminal prohibition could only have been passed in the anticipation that *Roe* would be overturned. And, as noted above, this law expressly stated that it does not "authorize the charging or conviction of a woman with any criminal offense in the death of her own unborn child . . . ." *Id.* § 1-731.4(B)(3)(a). Thus, in multiple ways, the Legislature made clear that it wanted abortion prohibited throughout pregnancy even after *Roe* was overruled, but it did not intend for pregnant women to be prosecuted.

The Legislature correctly anticipated *Roe* being overturned. On June 24, 2022, the United States Supreme Court overruled *Roe* and *Casey*, declaring that *Roe* was "egregiously wrong from the start," its "reasoning was exceptionally weak," and it "has had damaging consequences." *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2243 (2022). The Court repeatedly emphasized that its decision returned the issue of abortion "to the people and their elected representatives." *Id.* at 2259, 2279, 2284.

The same day *Roe* and *Casey* were overruled, the prior administration of this office completed the certification required under the trigger law. The certification letter stated that "[a]s a result of *Dobbs*, the authority of the State of Oklahoma to prohibit abortion has been confirmed, and the State of Oklahoma may enforce Section 861 of Title 21 of the Oklahoma Statutes or enact a similar statute prohibiting abortion throughout pregnancy." The letter further declared that the amended trigger law "shall hereby take effect and be in full force," repealing section 862. Letter from John O'Connor, Okla. Att'y Gen., to J. Kevin Stitt, Okla. Governor (June 24, 2022).[8]

This past March, in *OCRJ v. Drummond*, the Oklahoma Supreme Court declined to find that section 861 violates the Oklahoma Constitution, "as it allows the termination of a pregnancy in order to preserve the life of the pregnant woman." *OCRJ*, 2023 OK 24, ¶ 13, 526 P.3d at 1131. "Nor do we find the language in § 861 itself is unconstitutionally vague," the Court held. *Id.* The Supreme Court has declared other abortion prohibitions unconstitutional recently, including title 63, section § 1-731.4 (Supp.2022), but only on the ground that the "medical emergency" exception was not protective enough of pregnant women. *See id.*; *see also OCRJ v. State*, 2023 OK 60, 531 P.3d 117.

_____

[7]This repeal also included sections 684, 714, and 863 of title 21.

[8]A copy of this certification letter is available on the Attorney General's website under the Citizen Resources tab. *See* https://www.oag.ok.gov/sites/g/files/gmc766/f/certification_0.pdf.

## III.
### DISCUSSION

The Background alone resolves your question as to whether Oklahoma law currently makes it a crime for a woman to seek or obtain an abortion. That is because "[t]he goal of any inquiry into the meaning of a statutory enactment is to ascertain and give effect to the intent of the legislature." *Yocum v. Greenbriar Nursing Home*, 2005 OK 27, ¶ 9, 130 P.3d 213, 219. And it is simply impossible to look at the Legislature's repeated insistence in various statutory enactments that pregnant women are off-limits from prosecution and civil liability when it comes to abortion, as well as its definitive repeal of section 862, and conclude that the Legislature nevertheless somehow intended for pregnant women who seek or obtain abortions to be brought up on misdemeanor or even homicide charges. The Legislature could hardly have been clearer on this topic.

Nevertheless, you asked this office to review section 1-733 of title 63, which states that "[n]o woman shall perform or induce an abortion upon herself, except under the supervision of a duly licensed physician." But that statute does not designate such self-performance or inducement a crime, nor does it mention any punishment whatsoever. "The law-making body is presumed to have expressed its intent in a statute's language and to have intended what the text expresses. If a statute is plain and unambiguous, it will not be subjected to judicial construction, but will receive the effect its language dictates." *Yocum*, 2005 OK 27, ¶ 9, 130 P.3d at 219. Here, the statute does not include any indication that the action should be considered criminal.

Section 21 of title 21 does not change the analysis. To be sure, that statute does say that "[w]here the performance of an act is prohibited by any statute, and no penalty for the violation of such statute is imposed in any statute, the doing of such act is a misdemeanor." 21 O.S.2021, § 21. But Oklahoma courts have never interpreted this language as imposing an absolute rule to be applied regardless of context.

The OCCA held as early as 1953, for example, that section 21 did not apply to a statute making it "unlawful for any person to serve . . . as superintendent, principal, supervisor, librarian, school nurse, classroom teacher or other instructional, supervisory or administrative employee of a school district unless such person holds a valid certificate of qualification . . . ." *State v. Stegall*, 1953 OK CR 13, 253 P.2d 183, 185 (citation omitted). For starters, the court held a determination that a violation of this statute was a criminal misdemeanor "would be in face of the absence of words so saying." *Id.* Moreover, to find that this provision constituted a criminal misdemeanor required ignoring the various other provisions of the school code expressly labeling certain activities to be misdemeanors. *Id.* The Legislature's decision, therefore, to make the violation of the particular provision merely "unlawful" but not a criminal misdemeanor "was not a mere oversight, but on the contrary creates a presumption that it was intentional." *Id.* Put differently, "if it had been the intent of the Legislature to make the violation of a specific section criminal as well as unlawful it would have been an easy matter to have so said . . . ." *Id.* In the end, the OCCA held, section 21 did not apply, in part because "nothing in the section indicates a legislative intent to make a violation of the section criminal." *Id.*, 253 P.2d at 188.

Utilizing a similar context-infused analysis, the OCCA held that section 21 *did* apply to a particular gun-related statute in *Whirlpool Corp. v. Henry*, 2005 OK CR 7, ¶¶ 7–9, 110 P.3d 83, 85–86. There, the statutes in question stated that "[n]o person, property owner, tenant, employer, or business entity shall be permitted to establish any policy or rule that has the effect of prohibiting any person, except a convicted felon, from transporting and storing firearms in a locked vehicle on any property set aside for any vehicle." *Id.* ¶ 2, 110 P.3d at 84 (quoting 21 O.S.Supp.2004, §§ 1289.7a, 1290.22(B)). Contextual factors that the OCCA deemed relevant "indicators of legislative intent" included the Legislature's placement of the provision in the Penal Code (title 21). *Id.* ¶¶ 7–9, 110 P.3d at 85–86. This "suggest[ed] that violations of those Acts are intended to be criminal in nature." *Id.* ¶ 8, 110 P.3d at 86. The OCCA also looked to this office, noting that the Attorney General had twice analyzed the question. *Id.* ¶ 9, 110 P.3d at 86. In the end, the context indicated that "these statutes are criminal rather than civil." *Id.*

The analytical approach in *Stegall* and *Whirlpool* counsels toward a finding that section 21 does not apply here because section 1-733's instruction to pregnant women is not a criminal provision. Unlike the statute in *Whirlpool*, section 1-733 is not found in the Penal Code, but rather in the Oklahoma Public Health Code. *See* 63 O.S.2021, § 1-101. And it is this office's view, based on copious legislative text, that the Legislature did not intend for section 1-733 to greenlight the prosecution of pregnant women for abortion. Moreover, like *Stegall*, the surrounding context of section 1-733 indicates that the Legislature knows exactly how to put a criminal punishment provision into a statute. It declined to do so with section 1-733. Indeed, the immediately preceding statute—enacted as part of the same abortion bill in 1978—mandated that "[a]ny person violating subsection A of this section shall be guilty of homicide." 63 O.S.Supp.1978, § 1-732(F); *see also id.* § 1-731(A) ("Any person violating this section shall be guilty of a felony . . . ."). The absence of this or similar language in section 1-733 cannot have been accidental.

At *most*, section 21 creates an ambiguity out of otherwise straightforward text as to whether section 1-733 constitutes a criminal misdemeanor. And a finding of ambiguity simply means that we must employ the basic rules of statutory construction to determine the Legislature's intent. *McIntosh v. Watkins*, 2019 OK 6, ¶ 4, 441 P.3d 1094, 1096. And, like the principles in *Stegall* and *Whirlpool*, those rules counsel toward finding that section 1-733 does not impose criminal penalties of any sort on pregnant women.

Again, when a statute is ambiguous, legislative intent is ascertained from the statutory context. *Hogg v. Oklahoma Cnty. Juv. Bureau*, 2012 OK 107, ¶ 7, 292 P.3d 29, 33. This includes reading the "whole act in light of its general purpose and objective[,]" analyzing "relevant provisions together," and resolving "[a]ny doubt" by looking to "other statutes relating to the same subject matter." *McIntosh*, 2019 OK 6, ¶ 4, 441 P.3d at 1096. As previously stated, surrounding provisions of the Act indicate that the Legislature knew how to criminalize abortion-related actions, and it chose not to do so with section 1-733. And, as detailed in depth above, a review of other statutes relating to abortion throughout Oklahoma law reveals an overwhelming legislative intent to avoid prosecuting pregnant women, civilly or criminally.

This latter point implicates several other rules of statutory interpretation. First, specific statutes control over general statutes. *Ghoussoub v. Yammine*, 2022 OK 64, ¶ 25, 518 P.3d 110, 116. Here, section 21 of title 21 is a general statute that has nothing to do with abortion, whereas section 1-

733 and all the other statutes listed above preventing the prosecution of women are statutes specifically about abortion, and therefore, they control on this topic. Second, "more recently-enacted legislation controls over earlier provisions." *Ghoussoub*, 2022 OK 64, ¶ 25, 518 P.3d at 116 (citation omitted). All the provisions listed above prohibiting the prosecution of pregnant women—as well as the repeal of section 862—come after section 1-733 was enacted in 1978 and long after section 21 was enacted. Therefore, the more recent enactments indicating that such women are not to be prosecuted control. Third, statutes must be interpreted to "avoid absurd consequences." *McIntosh*, 2019 OK 6, ¶ 4, 441 P.3d at 1096. It would truly be an absurdity, in light of the lengthy list of legislative admonitions protecting pregnant women from prosecution, to find that a statute that does not contain any punitive language nevertheless somehow allows for pregnant women to be prosecuted and punished. This absurdity is heightened even further by the Legislature's decision to repeal section 862, which expressly allowed for misdemeanor criminal charges to be brought against pregnant women. Finding that section 1-733 nevertheless implicitly allows for the prosecution of women on misdemeanor charges would render this repeal virtually meaningless.

Additional contextual points counsel toward this same conclusion.

First, this office finds noteworthy the apparent lack of any record, historically, of prosecuting pregnant women in Oklahoma, under section 862, section 1-733, or any other provision. Similarly noteworthy is the lack of such a record nationwide. Indeed, for decades many prominent leaders in this country's pro-life movement have expressly argued that States should ***not*** prosecute pregnant women relating to abortion. *See, e.g.*, Symposium, *One Untrue Thing*, NATIONAL REVIEW (Aug. 1, 2007).[9] The president of the Susan B. Anthony List, for example, argued that this non-prosecution position is "a uniquely American case of handling a delicate and tragic situation with sensitivity." *Id.* Still two others labeled the assertion that women must be prosecuted alongside the abortionist as "ludicrous." *Id.*

One point in particular is worth raising:

> [I]n nearly all of the reported court cases explicitly addressing the issue of whether a woman was an *accomplice* to her abortion, it was the *abortionist* (not the prosecutor) who pushed the courts to treat the woman as an accomplice, for the obvious purpose of undermining the state's criminal case against the abortionist . . . .

*Id.* (emphases in original) (quoting president of Americans United for Life). That prosecuted physicians have been the most eager to criminalize pregnant women is consistent with Oklahoma's historical experience, as well, and it counsels against finding that the Legislature itself took this position. Put differently, States are not hypocritical under this approach. Persons accusing States of logical incoherency for condemning abortion but declining to prosecute pregnant women "seem wholly ignorant of the long history underlying this rule" and "wholly unaware of the need for corroborating testimony" in prosecuting practitioners of abortion. DELLAPENNA, *supra*, at 302. "[T]he tradition of not treating the women undergoing an abortion (whether self-induced or

---

[9]Available at https://www.nationalreview.com/2007/08/one-untrue-thing-nro-symposium/.

otherwise) as a criminal," he added, "does not contradict the desire to protect the life of the fetus." *Id.*; *cf. Wilson*, 1927 OK CR 42, 252 P. at 1108 ("in cases of this kind the public welfare demands the strict application of the general rule as to who are accomplices" (citation omitted)).

Given this backdrop, it again seems highly implausible that the correct interpretation of section 1-733, and the Legislature's intent, is one that exposes pregnant women to future prosecutions. At minimum, the Legislature would need to be much clearer on this point. But the Legislature's straightforward instructions on this topic point the other way.

Finally, the OCCA has repeatedly emphasized that it is "committed to the rule of strict construction in the application of criminal statutes." *State v. Davis*, 2011 OK CR 22, ¶ 5, 260 P.3d 194, 195 (citation omitted). Essentially, this means that a "statute will not be enlarged by implication or intendment beyond that fair meaning of the language used, or what their terms reasonably justify, and will not be held to include offenses and persons other than those which are clearly described and provided for . . . ." *Matthews v. Powers*, 1967 OK CR 37, ¶ 10, 425 P.2d 479, 482 (citation omitted); *see also Newlun v. State*, 2015 OK CR 7, ¶ 9, 348 P.3d 209, 211–12 ("[W]ords not found in the text of a criminal statute will not be read into it for the purpose of extending it . . . ." (citation omitted)). "Further, rules of statutory construction require criminal statutes be construed strictly against the State and liberally in favor of the accused." *State v. Tran*, 2007 OK CR 39, ¶ 8, 172 P.3d 199, 200. The purpose of this "rule of lenity" is "to ensure that when liberty is at stake, all citizens have fair and clear warning of what conduct is prohibited, and, equally important, the severity of punishment for any infraction." *Newlun*, 2015 OK CR 7, ¶ 9, 348 P.3d at 211–12. Because this office is finding that section 1-733's instruction to pregnant women is not a criminal provision at all, the rule of lenity does not technically control here. But the principle underlying the rule is informative of how these types of issues should be handled. And here, applying that principle counsels firmly against criminally prosecuting women using section 1-733.

**It is, therefore, the official Opinion of the Attorney General that:**

> **Section 1-733 of title 63 does not permit the charging of a pregnant woman with a misdemeanor or felony for performing or inducing an abortion on herself to intentionally terminate her pregnancy, nor does any other Oklahoma statute.**

GENTNER DRUMMOND
ATTORNEY GENERAL OF OKLAHOMA

ZACH WEST
DIRECTOR OF SPECIAL LITIGATION