**CASE NO. 24-6063**
IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

| STATE OF OKLAHOMA, | |
|---|---|
| *Plaintiff-Appellant*, | |
| v. | |
| UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; | |
| XAVIER BECERRA, in his official capacity as the Secretary of the U.S. Department of Health and Human Services; | |
| JESSICA S. MARCELLA, in her official capacity as Deputy Assistant Secretary for Population Affairs; and | |
| OFFICE OF POPULATION AFFAIRS, | |
| *Defendants-Appellees*. | |

On Appeal from the United States District Court
For the Western District of Oklahoma
The Honorable Judge Joe Heaton
Case No. 23-CV-01052-HE

---

**APPELLANT'S APPENDIX**
**VOLUME II OF III**
**Pages 175 to 399**

---

ORAL ARGUMENT IS REQUESTED.

April 19, 2024

Respectfully submitted,

Garry M. Gaskins, II, OBA # 20212
*Solicitor General*
Zach West, OBA # 30768
*Director of Special Litigation*
Audrey Weaver, OBA # 33258
*Assistant Solicitor General*
OFFICE OF ATTORNEY GENERAL
  STATE OF OKLAHOMA
313 N.E. 21st St.
Oklahoma City, OK 73105
Phone: (405) 521-3921
Garry.Gaskins@oag.ok.gov
Zach.West@oag.ok.gov
Audry.Weaver@oag.ok.gov

AND

Barry G. Reynolds, OBA # 13202
R. Tom Hillis, OBA # 12338
J. Miles McFadden, OBA # 30166
TITUS HILLIS REYNOLDS LOVE, P.C.
15 E. 5th St., Suite 3700
Tulsa, OK 74103
(918) 587-6800  Fax:  (918) 587-6822
reynolds@titushillis.com
thillis@titushillis.com
jmcfadden@titushillis.com

AND

Anthony J. (A.J.) Ferate, OBA # 21171
SPENCER FANE
9400 N. Broadway Ext., Ste. 600
Oklahoma City, OK 73114
(405) 844-9900   Fax: (405) 844-9958
AJFerate@spencerfane.com

*ATTORNEYS FOR PLAINTIFF-APPELLANT,*
*THE STATE OF OKLAHOMA*

ii

# INDEX TO APPELLANT'S APPENDIX

## VOLUME I

Civil Docket for U.S.D.C. for the Western District of Oklahoma,
Case No. 23-CV-01052-HE ............................................................. 001-007

Complaint filed November 17, 2023 [Dkt. 1]................................. 008-174


## VOLUME II

Plaintiff's Motion for Preliminary Injunction and Opening Brief in Support
filed January 26, 2024 [Dkt. 23] ..................................................... 175-399


## VOLUME III

Defendants' Answer to Complaint filed February 21, 2024 [Dkt. 27].......... 400-413

Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction
filed February 23, 2024 [Dkt. 28] ................................................... 414-470

Plaintiff's Reply Brief in Support of Its Motion for Preliminary Injunction
filed March 1, 2024 [Dkt. 29] ........................................................ 471-484

Defendants' Notice of Supplemental Authority
filed March 13, 2024 [Dkt. 31] ...................................................... 485-529

Plaintiff's Response to Defendants' Notice of Supplemental Authority
filed March 15, 2024 [Dkt. 32] ...................................................... 530-533

Plaintiff's Notice of Intent to Offer Evidence
filed March 20, 2024 [Dkt. 34] ...................................................... 534-536

Minute Sheet of Proceedings held before Judge Joe Heaton
filed March 26, 2024 [Dkt. 35] ......................................................537

Order Denying Plaintiff's Motion for Preliminary Injunction
filed March 26, 2024 [Dkt. 36] ......................................................538

Transcript of Proceedings held before the Honorable Joe Heaton on
Motion for Preliminary Injunction dated March 26, 2024 at 1:30 p.m. ........ 539-614

Plaintiff's Notice of Appeal filed April 1, 2024 [Dkt. 39] ........................... 615-617

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1.  STATE OF OKLAHOMA<br><br>    *Plaintiff,*<br><br>v.<br><br>1.  UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES;<br><br>2.  XAVIER BECERRA, in his official capacity as the Secretary of the U.S. Department of Health and Human Services;<br><br>3.  JESSICA S. MARCELLA, in her official capacity as Deputy Assistant Secretary for Population Affairs; and<br><br>4.  OFFICE OF POPULATION AFFAIRS<br><br>    *Defendants.* | Case No.   23-CV-01052-HE |

---

## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
## AND OPENING BRIEF IN SUPPORT

**Submitted by:**

Garry M. Gaskins, II, OBA # 20212
*Solicitor General*
Zach West, OBA # 30768
*Director of Special Litigation*
Audrey Weaver, OBA # 33258
*Assistant Solicitor General*
OFFICE OF ATTORNEY GENERAL
 STATE OF OKLAHOMA

January 26, 2024

313 N.E. 21st St.

Oklahoma City, OK 73105
Phone: (405) 521-3921
Garry.Gaskins@oag.ok.gov
Zach.West@oag.ok.gov
Audry.Weaver@oag.ok.gov

AND

Barry G. Reynolds, OBA # 13202
R. Tom Hillis, OBA # 12338
J. Miles McFadden, OBA # 30166
TITUS HILLIS REYNOLDS LOVE, P.C.
15 E. 5th St., Suite 3700
Tulsa, OK 74103
(918) 587-6800  Fax:  (918) 587-6822
reynolds@titushillis.com
thillis@titushillis.com
jmcfadden@titushillis.com

AND

Anthony J. (A.J.) Ferate, OBA # 21171
SPENCER FANE
9400 N. Broadway Ext.,  Ste. 600
Oklahoma City, OK 73114
(405) 844-9900  Fax: (405) 844-9958
AJFerate@spencerfane.com

*ATTORNEYS FOR PLAINTIFF,*
*THE STATE OF OKLAHOMA*

Aplt.App. 176

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................... 1

BACKGROUND ......................................................................................................... 2

    I.     Oklahoma Has Successfully Managed Title X Funding for Decades. .............. 2

    II.    HHS Has Promulgated Contradictory Regulations Throughout the Years. ....... 3

    III.   HHS Terminates Oklahoma's Title X Funding Over Abortion Referrals. .......... 5

    IV.   Oklahoma Brings an As-Applied Challenge to the Title X Termination. .......... 8

ARGUMENTS AND AUTHORITIES ...................................................................... 8

    I.     OKLAHOMA IS LIKELY TO SUCCEED ON THE MERITS. ....................... 9

           A.    Defendants' Decision to Terminate Oklahoma's Title X Funding is
                 Reviewable.................................................................................................. 9

           B.    Defendants' Decision to Terminate Oklahoma's Title X Funding Violates
                 the Spending Clause of the U.S. Constitution. ...................................... 10

           C.    Defendants' Decision to Terminate Oklahoma's Title X Funding Violates
                 Title X and the Weldon Amendment....................................................... 14

           D.    Defendants' Decision to Terminate Oklahoma's Title X Funding Exceeds
                 HHS's Statutory Authority and is Arbitrary and Capricious................. 17

                 1.    Defendants' Termination of Oklahoma's Title X Funding
                       Overstepped the Agency's Authority and Is Not a Reasonable
                       Interpretation. ............................................................................... 17

                 2.    Defendants' Termination Decision Was Arbitrary and Capricious.
                       ................................................................................................... 20

                 3.    HHS Failed to Follow Proper Procedures. .................................... 23

    II.    OKLAHOMA WILL SUFFER IRREPARABLE HARM IF AN INJUNCTION
          IS DENIED....................................................................................................... 23

Aplt.App. 177

III.     THE   THREATENED   INJURY   TO   OKLAHOMA   EXCEEDS   ANY
         POSSIBLE INJURY HHS COULD FACE. ................................................... 24

IV.     THE REQUESTED INJUNCTION IS IN THE PUBLIC INTEREST ............ 25

**CONCLUSION** ........................................................................................................ 25

iv

Aplt.App. 178

**Cases**

*Ala. Ass'n of Realtors v. Dep't of Health & Human Servs*, 141 S. Ct. 2485 (2021)......... 24

*Arbogast v. Kansas, Dep't of Lab.*, 789 F.3d 1174 (10th Cir. 2015) ................................. 10

*Arlington Cent. School Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291 (2006) ................... 10

*Awad v. Ziriax*, 670 F.3d 1111 (10th Cir. 2012) ................................................................ 8

*Bond v. U.S.*, 572 U.S. 844 (2014) ................................................................................... 21

*Chevron, U.S.A., Inc. v. Natural Resources Defense. Council, Inc.*,
  467 U.S. 837 (1984) .......................................................... 12, 17, 18, 19

*Colorado v. U.S. Dep't of Justice*, 455 F. Supp. 3d 1034 (D. Colo. 2020)................ 11, 12

*Commonwealth of Kentucky v. Yellen*, 67 F.4th 322 (6th Cir. 2023) ............................... 13

*Darby v. Cisneros*, 509 U.S. 137 (1993) ........................................................................... 9

*Deer Creek Water Corp. v. Oklahoma City,* 82 F.4th 972 (10th Cir. 2023) .................... 10

*Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022) ................................. passim

*Fontem US, LLC v. FDA*, 82 F.4th 1207 (D.C. Cir. 2023)............................................... 23

*Greater Yellowstone Coalition v. Flowers*, 321 F.3d 1250 (10thCir. 2003).................... 23

*Loper Bright Enterprises, Inc. v. Raimondo*, Case No. 22-451 ....................................... 19

*Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519 (2012) ........................................... 10

*New Mexico v. McAleenan*, 450 F. Supp. 3d 1130 (D.N.M. 2020)................................. 23

*OCRJ v. Drummond,* 2023 OK 24, 526 P.3d 1123 (Okla. 2023)...................................... 5

*Ohio v. Becerra*, 87 F.4th 759 (6th Cir. 2023) ................................................. 8, 11, 12, 17

*Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560 (10th Cir. 1994) .......................... 20

*Pennhurst State Sch.& Hospital v. Halderman,* 451 U.S. 1 (1981) ................................. 10

v

*Planned Parenthood of Kansas & Mid-Missouri v. Moser,*
  747 F.3d 814 (10th Cir. 2014) ................................................................. 13

*Relentless, Inc. v. Department of Commerce*, Case No. 22-1219 ..................... 19

*Rust v. Sullivan*, 500 U.S. 173 (1991) ..................................................... passim

*Sackett v. EPA*, 566 U.S. 120 (2012) ............................................................. 9

*Safe Streets All. v. Hickenlooper*, 859 F.3d 865 (10th Cir. 2017) ................... 13

*Scherer v. U.S. Forest Serv.*, 653 F.3d 1241 (10th Cir. 2011) ........................ 8

*Sinclair Wyo. Ref. Co. v. EPA*, 887 F.3d 986 (10th Cir. 2017) ...................... 18

*Sorenson Commc'n v. F.C.C.*, 567 F.3d 1215 (10th Cir. 2009) ...................... 23

*South Dakota v. Dole*, 483 U.S. 203 (1987) ................................................ 10

*State of Mo. v. Bowen*, 813 F.2d 864 (8th Cir. 1987) ..................................... 9

*United States v. Bass*, 404 U.S. 336 (1971) ................................................ 13

*West Virginia ex rel. Morrisey v. U.S. Dep't of the Treasury,*
  59 F.4th 1124 (11th Cir. 2023) ............................................................... 11

**<u>Constitutional Provisions</u>**

U.S. Const. Art. I, § 8, cl. 1 ..................................................................... 10

**<u>Statutes</u>**

5 U.S.C. § 705 ................................................................................... 9, 25

5 U.S.C. § 706 ....................................................................................... 9

42 U.S.C. § 300a-6.............................................................. 1, 3, 5, 7, 11, 12, 18

21 O.S. § 861 ................................................................................... 5, 13

vi

Aplt.App. 180

## Regulations

42 C.F.R. § 59.5(a) ........................................................................................... 19

42 C.F.R. § 59.5(a)(5) ................................................................................. 6, 7, 16

42 C.F.R. § 59.5(a)(5)(i) ...................................................................................... 6

42 C.F.R. § 59.5(a)(5)(i)(C) ........................................................................ passim

42 C.F.R. § 59.5(b)(6) ....................................................................................... 19

42 C.F.R. § 59.5(b)(8) ....................................................................................... 20

45 C.F.R. § 88.2 ................................................................................................ 15

53 Fed. Reg. 2922 ............................................................................................... 4

84 Fed. Reg. 7714 ........................................................................................... 4, 5

65 Fed. Reg. 41,270 ............................................................................................ 4

86 Fed. Reg. 56,144 ...................................................................................... 5, 21

86 Fed. Reg. at 56,149 ...................................................................................... 12

86 Fed. Reg. at 56,152 ...................................................................................... 16

86 Fed. Reg. at 56,153 .................................................................................. 16, 22

86 Fed. Reg. at 56,168 ...................................................................................... 21

## Other Authorities

Consolidated Appropriations Act, 2022, Pub. L. No. 117-103, 136 Stat. 49,496
(Mar. 15, 2022) ........................................................................................ 4, 14

Title X. 116 Cong. Rec. 37375 (Nov. 16, 1970) ............................................. 18

Aplt.App. 181

## INTRODUCTION

In 1970, Congress enacted Title X to provide federal funding for family planning services. Ever since, the United States has been funneling millions of dollars to states through Title X, including to high quality programs run by Plaintiff, the State of Oklahoma, through the Oklahoma State Department of Health ("Oklahoma," "Health Department," "OSDH," or "State'). These programs have improved the lives of countless Oklahomans.

From the beginning, Title X has expressly prohibited Title X funds from "be[ing] used in programs where abortion is a method of family planning." 42 U.S.C. § 300a-6 (Title X, § 1008). And beginning in 2004, the Weldon Amendment precluded any state from receiving Title X funds if they discriminate against health care entities who refuse to refer women for abortions. Nevertheless, in 2021, Defendants issued a new final rule that *requires* Title X programs to "[o]ffer pregnant clients the opportunity to be provided information and counseling regarding ... pregnancy termination." 42 C.F.R. § 59.5(a)(5)(i)(C). Soon after, *Dobbs v. Jackson Women's Health Organization* restored the authority of the people and their elected state representatives to regulate abortion. Several Oklahoma laws then took effect, making it a crime to advise or procure an abortion for any woman, except to preserve her life, and instructing that no Oklahoma person or health care facility can be required to participate in any abortion unless the mother's life is at stake.

Defendants have now terminated Oklahoma's Title X funding solely because Oklahoma will not provide counseling or referrals for abortion. This decision violated Title X, the Weldon Amendment, the Administrative Procedures Act, the Spending Clause, and more. As such, it should be enjoined immediately to protect Oklahoma and Oklahomans.

# BACKGROUND

### I.       Oklahoma Has Successfully Managed Title X Funding for Decades.

Oklahoma has participated in Title X's voluntary family planning projects for over fifty years, offering the State's most vulnerable citizens "a broad range of acceptable and effective family planning methods" that includes natural family planning, infertility, and services for adolescents. At no point since Oklahoma began participation in the federal program in 1971 has Oklahoma's funding received adverse treatment. Declaration of Tina Johnson, attached as Exhibit 1, at ¶ 8. Until now, that is.

The Health Department uses the Title X grant to disperse funds through 68 county health departments ("County Partners"), who provide critical public health services to rural and urban Oklahoma communities. *Id.* at ¶ 12. These County Partners are a part of the front-line of women's health in Oklahoma, and aim to provide comprehensive, connected care to all patients they serve. *Id.* at ¶ 12, 15. The Health Department has also contracted with the Oklahoma City-County Health Department and the Tulsa County Health Department ("City-County Partners") to ensure family planning services are available in Oklahoma's most heavily populated counties. *Id.* at ¶ 13.

The impact of depriving those communities and populations of Title X services cannot be understated. In many instances, particularly in rural Oklahoma communities, the Health Department and County Partners may be one of the only access points for critical preventative services for tens or even hundreds of miles. *Id.* at ¶ 18. Some of these same rural communities may not have a grocery store, let alone the presence of a full-time health

Aplt.App. 183

provider or women's health provider. *Id.* Many patients the Health Department sees already have difficulty accessing the health care they need because of location, work schedules, and/or transportation issues. *Id.* at ¶ 18. Language can also create difficulties in providing services. *Id.* at ¶ 17. Thus, Oklahoma's Title X program has access to 30+ different translators to assist with barriers to care.

In May 2016, HHS reviewed Oklahoma's Title X program in person, concluding that it "supports excellent projects and activities." *Id.* at ¶ 10. Indeed, HHS "applaud[ed]" Oklahoma's "efforts to increase services and qualities throughout the system," and its reviewers were "impressed with the dedication and commitment to family planning in both the central office staff as well as in the field." 2016 Review, attached as Exhibit 2, p. 1. After complying with several recommended changes, Oklahoma's program was approved, and HHS would not schedule a return visit until 2024. Exh. 1, ¶ 11. In March 2022, HHS awarded Oklahoma a Title X grant (FPHPA 006507), as it had done virtually every grant cycle since 1971. Notice of Award, attached as Exhibit 3.

**II. HHS Has Promulgated Contradictory Regulations Throughout the Years.**

From the beginning, Title X has expressly prohibited grant funds from "be[ing] used in programs where abortion is a method of family planning." 42 U.S.C. § 300a-6. Despite this Congressional mandate, HHS has historically implemented contradictory rules and regulations for Title X, depending on the presidential administration. From the mid-1970s to the late-1980s, HHS permitted—and then in 1981 adopted guidelines requiring—Title X recipients to offer pregnant women "nondirective options counseling on pregnancy

Aplt.App. 184

termination (abortion) . . . followed by referral for these services if she so requests." 53 Fed. Reg. 2922, 2923 (Feb. 2, 1988). *Id.*

In 1988, HHS changed course and issued a final rule prohibiting Title X providers from making referrals for or counseling women regarding abortion. *Id.* at 2945. HHS determined that these requirements were "more consistent with" the Title X provision prohibiting abortion funding. *Id.* at 2932. In *Rust v. Sullivan*, 500 U.S. 173 (1991), the Supreme Court upheld HHS's 1988 regulation. *Rust* held that HHS had permissibly justified its new rule on abortion referrals, which, the federal government had argued, was "more in keeping with the original intent of the statute[.]" 500 U.S. at 186-87.

But in 1993, HHS again reversed course and suspended the 1988 Rule. In 2000, HHS began requiring Title X recipients to make abortion referrals upon request from a patient. 65 Fed. Reg. 41,270. In 2004, however, Congress began including the so-called "Weldon Amendment" as an annual appropriations rider for every HHS appropriations bill. *See, e.g.,* Consolidated Appropriations Act, 2022, Pub. L. No. 117-103, div. H, title V, § 507(d)(1), 136 Stat. 49,496 (Mar. 15, 2022). Per the Weldon Amendment, no HHS funds, which includes Title X funds,

> may be made available to a Federal agency or program, or to a State or local government, if such agency, program, or government subjects any institutional or individual health care entity to discrimination on the basis that the health care entity does not provide, pay for, provide coverage of, or refer for abortions.

*Id.*

In 2019, in line with the Weldon Amendment, HHS promulgated *Compliance with Statutory Program Integrity Requirements*, 84 Fed. Reg. 7714 (Mar. 4, 2019) ("2019

4

Rule"). The 2019 Rule adopted much of the 1988 Rule that was upheld in *Rust*, including the prohibition on Title X grantees "perform[ing], promot[ing], refer[ing] for, or support[ing] abortion as a method of family planning." *Id*. at 7788-90. HHS concluded that this approach reflects "the best reading of" Section 1008, "which was intended to ensure that Title X funds are also not used to encourage or promote abortion." *Id.* at 7777. HHS determined that prior regulations "are inconsistent" with section 1008 "insofar as they require referral for abortion as a method of family planning." *Id.* at 7723.

Finally, in 2021, HHS reversed course yet again, promulgating a regulation that it now claims requires abortion referrals. *See* 86 Fed. Reg. 56,144 (Oct. 7, 2021). Although contrary to Title X's text and the Weldon Amendment, HHS's 2021 Rule remains in effect today, and, pursuant to HHS's interpretation, generally requires grantees like the Health Department to make abortion counseling and referrals available upon patients' requests.

### III.    HHS Terminates Oklahoma's Title X Funding Over Abortion Referrals.

In Oklahoma, advising or procuring an abortion for any woman is punishable as a felony. *See* 21 O.S. § 861. This statute came into effect immediately following the Supreme Court's decision in *Dobbs*, which reversed *Roe v. Wade* and held that authority to regulate abortion must be returned to the people and their elected representatives. *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 302 (2022). Exercising that right, the people's elected representatives in Oklahoma have prohibited abortion except to preserve a woman's life, and they have made it illegal to advise a woman to obtain an abortion. *See* 21 O.S. § 861. This law has been upheld by the Oklahoma Supreme Court. *See OCRJ v. Drummond,* 2023 OK 24, 526 P.3d 1123 (Okla. 2023).

5

Although 42 C.F.R. § 59.5(a)(5) holds that "[e]ach" Title X project should "[n]ot provide abortion as a method of family planning," the Biden Administration re-added in 2021 that each project must nevertheless "[o]ffer pregnant clients the opportunity to be provided information and counseling regarding … [p]regnancy termination." *Id.* § 59.5(a)(5)(i). Then, after *Dobbs*, HHS indicated that it would require compliance with 42 C.F.R. § 59.5(a)(5)'s requirement of abortion referrals, regardless of any state laws that conflict with this requirement.

For its part, the Health Department reasonably concluded that it could not comply with 42 C.F.R. § 59.5(a)(5)(i)(c) if it required abortion referrals, because Oklahoma law makes it a crime for any person to advise or procure an abortion for any woman. Health Department Appeal Letter, attached as Exhibit 6. Nevertheless, the Health Department took several actions to find an agreeable solution that would allow the Health Department to continue receiving Title X funds while complying with Oklahoma law prohibiting abortions. *Id.* On August 29, 2022, the Health Department sought to modify its programmatic procedures to ensure compliance with Oklahoma abortion law, a modification that was denied by HHS on November 9, 2022. *Id.* The Health Department sought reconsideration of this determination on November 22, 2022. *Id.* The Health Department undertook extensive internal processes to determine how to comply with this HHS regulation and Oklahoma law through early 2023, but it was unable to find a solution. Exh. 1, ¶ 21.

On May 25, 2023, HHS sent a letter to the Health Department claiming the Department was in violation of Title X and out of compliance with the terms and conditions

6

of award FPHPA 006507, the "Oklahoma State Department of Health Family Planning Services Project" (the "Award"). HHS Suspension Letter, attached as Exhibit 4. The Award totals approximately $4.5 million in funding—money that is relied on by the Health Department to provide critical health care services to Oklahoma citizens. Exh. 1, ¶ 9. Specifically, HHS determined that the Health Department was in violation of Section 59.5(a)(5)(i)(c) because the Health Department would not offer pregnant clients the opportunity to be provided information and counseling about abortion.

During its 2016 review of Oklahoma's program, HHS specifically noted that "Title X grantees and sub-recipients must be in full compliance with Section 1008 of the Title X statute and 42 C.F.R. § 59.5(a)(5), which prohibit abortion as a method of family planning. Systems must be in place to assure adequate separation of any non-Title X activities from Title X project." *Id*. HHS determined that this requirement was met by the Health Department's Title X program. *Id*. HHS further noted that, "Oklahoma State Department of Health Maternal and Child Health policies and procedures, including the sub-recipient contract reviewed contain provisions prohibiting abortion as a method of family planning." *Id*. at p.20, ¶ 8.2. The Health Department received notice that the Award would be terminated on June 27, 2023. HHS Termination Notice, attached as Exhibit 5. On July 27, 2023, the Health Department appealed that ruling, administratively. Exh. 6.

On or about September 22, 2023, while the Health Department administrative appeal was still pending, HHS announced supplemental funding, supposedly to support the provision of Title X services in Oklahoma. Funds that would previously have been directed to the Health Department were instead apparently reallocated to Community Health

Connection, Inc. and Missouri Family Health Council, Inc., a Missouri entity. Community Health Connection, Inc. was awarded $216,000 in newly authorized federal funds, while Missouri Family Health Council, Inc. was awarded $3,250,000 in supplemental funds. [HHS Grant Award Announcements, available at https://opa.hhs.gov/about/news/grant-award-announcements/hhs-issues-11-million-supplemental-funding-support-provision, last accessed January 24, 2024]

### IV.   Oklahoma Brings an As-Applied Challenge to the Title X Termination.

On November 23, 2023, Oklahoma filed this as-applied challenge to HHS's termination of Oklahoma's Title X funding based on HHS's 2021 Rule. *See Scherer v. U.S. Forest Serv.*, 653 F.3d 1241, 1243 (10th Cir. 2011). Oklahoma anticipates that HHS may attempt to rely on the Sixth Circuit's recent decision in *Ohio v. Becerra*, 87 F.4th 759 (6th Cir. 2023), to argue that these issues have already been decided. But *Ohio*, where Oklahoma was a plaintiff, was a *facial* challenge to the 2021 rule that did not consider the facts and circumstances of the decision at issue here. This as-applied challenge raises factual and legal issues that were not present in *Ohio*, such as the effect of *Dobbs*, the Spending Clause, and the Weldon Amendment. *Ohio* does not foreclose relief.

### ARGUMENTS AND AUTHORITIES

To obtain a preliminary injunction, Oklahoma must show that: (1) it is likely to succeed on the merits; (2) it will suffer irreparable injury if the injunction is denied; (3) the threatened injury outweighs any injury to the opposing party; and (4) the injunction is not against the public interest. *Awad v. Ziriax*, 670 F.3d 1111, 1125 (10th Cir. 2012). Oklahoma meets all four requirements, and this Court should issue a temporary injunction.

Alternatively, this Court should postpone effectiveness of Defendants' action to terminate Oklahoma's Title X award pursuant to 5 U.S.C. § 705.

## I.  OKLAHOMA IS LIKELY TO SUCCEED ON THE MERITS.

Defendants' decision to terminate Oklahoma's Title X funding is unlawful. Under the Administrative Procedures Act ("APA"), courts are entitled to "decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706. Courts may compel an agency action "unlawfully withheld" and "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or] without observance of procedure required by law." *Id.* Here, Oklahoma seeks to set aside Defendants' termination decision and restore Oklahoma's Title X funding.

### A.  Defendants' Decision to Terminate Oklahoma's Title X Funding is Reviewable.

Defendants' decision to terminate Oklahoma's Title X funding is a final agency action subject to review by this Court. *Sackett v. EPA*, 566 U.S. 120, 127 (2012). While Oklahoma pursued an agency appeal prior to filing this action, and allowed HHS ample time to resolve that appeal, that appeal was not mandatory. *See Darby v. Cisneros*, 509 U.S. 137, 147 (1993); *State of Mo. v. Bowen*, 813 F.2d 864, 871 (8th Cir. 1987).

9

**B. Defendants' Decision to Terminate Oklahoma's Title X Funding Violates the Spending Clause of the U.S. Constitution.**

The Spending Clause provides that "Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises, to … provide for the … general Welfare of the United States. . . ." U.S. Const. art. I, § 8, cl. 1. The Supreme Court has recognized four restrictions on the ability of Congress to exercise power under the Spending Clause, the second of which is most prominent in this case: if Congress wants to place conditions on a state's receipt of federal funds, it must do so unambiguously, so that states know the consequences of their decision to participate. *See Arbogast v. Kansas, Dep't of Lab.*, 789 F.3d 1174, 1186 (10th Cir. 2015) (citing *South Dakota v. Dole*, 483 U.S. 203, 207 (1987)).

"The legitimacy of Spending Clause legislation," "depends on whether a state voluntarily and knowingly accepts the terms of such programs." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 522 (2012); *see also Deer Creek Water Corp. v. Oklahoma City,* 82 F.4th 972, 987–88 (10th Cir. 2023). Thus, while Congress may exert influence on states by conditioning funding on certain requirements, Congress must provide *clear notice* of the obligations imposed. *Arlington Cent. School Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006). "'[L]egislation enacted pursuant to the spending power is much in the nature of a contract,'" and therefore, to be bound by "'federally imposed conditions,'" recipients of federal funds must accept them "'*voluntarily* and *knowingly*.'" *Pennhurst State Sch. & Hospital v. Halderman,* 451 U.S. 1, 17 (1981) (emphasis added).

Ambiguity is critical in this context. "[A]gency-imposed grant conditions, even if they themselves are unambiguous, cannot be constitutional under the Spending Clause

10

Aplt.App. 191

unless the statute from which they originate is also unambiguous." *Colorado v. U.S. Dep't of Justice*, 455 F. Supp. 3d 1034, 1056 (D. Colo. 2020). And conditions imposed by an agency on grant funding cannot have been unambiguously authorized by Congress when the conditions were never statutorily authorized to begin with. *Id.* at 1056-57; *see also West Virginia ex rel. Morrisey v. U.S. Dep't of the Treasury*, 59 F.4th 1124, 1147 (11th Cir. 2023) (stating that "the ability to place conditions on federal grants ultimately comes from the Spending Clause, which empowers Congress, not the Executive, to spend for the general welfare"). "Allowing an executive agency to impose a condition that is not otherwise ascertainable in the law Congress enacted 'would be inconsistent with the Constitution's meticulous separation of powers.'" *Morrisey*, 59 F. 4th at 1147 (citations omitted). "Therefore, the 'needed clarity' under the Spending Clause 'must come directly from the statute[,]'" not from Defendants' after-the-fact regulations. *Id.* (citations omitted).

Before terminating Oklahoma's funding, Defendants placed a condition on Oklahoma's receipt of Title X funding: the requirement to refer women for abortions. That condition was wholly absent from Congress's statutory regime. Importantly, the Supreme Court in *Rust* specifically found that the Title X statute is ambiguous on the point of abortion referrals. *Rust*, 500 U.S. at 184 (finding that the statutory language of § 1008 "does not speak directly to the issues of counseling, referral, advocacy, or program integrity" and is therefore ambiguous); *see also Ohio*, 874 F.4th at 771 (reiterating *Rust*'s finding that the statute is ambiguous). And that was before Congress enacted the Weldon Amendment, which, if anything, clarified the Title X ambiguity *in Oklahoma's favor. See infra* I(C).

11

Thus, Defendants wrongfully imposed their abortion referral requirement as a condition to Oklahoma's receipt of Title X funding.

Indeed, HHS itself has acknowledged that the Title X statute is silent and therefore *at best* ambiguous about abortion counseling and referrals. *See* 86 Fed. Reg. at 56,149. And since the statute is admittedly ambiguous (at most), Defendants' grant conditions cannot be constitutional under the Spending Clause. *See, e.g.*, *Colorado*, 455 F. Supp. 3d at 1056. Without that *clear notice* from Congress itself, Oklahoma could not *voluntarily* and *knowingly* agree to that requirement as a condition to accepting Title X funding.

In sum, binding precedent holds that Title X is at most ambiguous on the issue of abortion referrals, and therefore the Spending Clause prohibits Oklahoma from being punished for not complying with Defendants' regulatory gloss. The Sixth Circuit's recent decision in *Ohio* says nothing to the contrary, since it did not involve a Spending Clause argument. Rather, the Sixth Circuit claimed, as a critical part of its analysis, that Title X is ambiguous on abortion referrals. *Ohio*, 87 F.4th at 765 ("In *Rust v. Sullivan*, the Supreme Court held that § 1008 is ambiguous as to … referrals for abortion and that *Chevron* deference applies."). The ambiguity that the Sixth Circuit deemed as foreclosing the facial APA argument there counsels directly *toward* a Spending Clause violation here. Because HHS's decision to terminate Oklahoma's grant funding was based on a requirement that was not congressionally mandated and that Oklahoma never knowingly and voluntarily accepted, HHS's decision violates the Spending Clause. An injunction should therefore issue.

Aplt.App. 193

Moreover, as courts have recognized, "more is at stake when Congressional spending legislation threatens state sovereign interests . . . ." *Commonwealth of Kentucky v. Yellen*, 67 F.4th 322, 327 (6th Cir. 2023); *see also Planned Parenthood of Kansas & Mid-Missouri v. Moser,* 747 F.3d 814, 824 (10th Cir. 2014) (describing the "special nature of Spending Clause legislation" and explaining that "[i]n the federal-grant context, the State is more a partner than a subordinate of the federal government"), *abrogated in part on other grounds as recognized by Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 905 n.16 (10th Cir. 2017). "In traditionally sensitive areas, such as legislation affecting the federal balance, the requirement of clear statement assures that the legislature has in fact faced, and intended to bring into issue, the critical matters involved in the judicial decision." *United States v. Bass*, 404 U.S. 336, 349 (1971). In this instance, Oklahoma's sovereign interests in protecting unborn Oklahoma lives and in controlling criminal activities are directly impacted. First, under Oklahoma law, procuring an abortion for any woman is punishable as a felony. 21 O.S. § 861. This statute came into effect immediately following *Dobbs*, which held that the U.S. Constitution does not provide a right to abortion and that authority to regulate abortion must be returned to the people and their elected representatives. *See* 597 U.S. at 301-02 (holding that "respect for and preservation of prenatal life at all stages of development" is a legitimate state interest).

By terminating Oklahoma's grant funds on the basis of its abortion laws and refusal to countenance referrals, without clear congressional authorization, Defendants have intruded upon Oklahoma's sovereignty. Moreover, by awarding Oklahoma's funds to an entity in Missouri, Defendants have willfully encouraged an entity to disregard Oklahoma

13

law. By awarding the Missouri Family Health Council funds to provide services in Oklahoma, HHS presumably expects and anticipates that entity will provide services in Oklahoma. HHS will also presumably condition Missouri Family Health Council's receipt of such funds on compliance with all of HHS's regulations, including 42 C.F.R. § 59.5(a)(5)(i)(c). To the extent that Missouri Family Health Council provides services in Oklahoma and provides pregnancy termination referrals, Missouri Family Health Council risks violating Oklahoma law.

Therefore, Oklahoma's sovereign interests are directly in play, and the lack of *clear notice* by *Congress* of any requirement to offer abortion counseling and referrals renders HHS's termination of Oklahoma's Title X funding violative of the Spending Clause.

### C. Defendants' Decision to Terminate Oklahoma's Title X Funding Violates Title X and the Weldon Amendment.

HHS's decision to interpret its regulation as requiring the termination of Oklahoma's Title X funding violates federal law—specifically, it violates Title X and the Weldon Amendment. Again, the Weldon Amendment expressly *prohibits* Title X funds from flowing to States that discriminate against a "health care entity" that refuses to refer women for abortions. *See supra* p.4. A "health care entity" includes "an individual physician or other health care professional, a hospital, a provider-sponsored organization, a health maintenance organization, a health insurance plan, or **any other kind** of health care facility, organization, or plan." Pub. L. No. 117-103, div. H, title V, § 507(d)(2) (emphasis added).

14

The Weldon Amendment's requirements plainly apply to Oklahoma, as a state. The Health Department administers the Title X family planning program in Oklahoma by dispersing funds through 68 county health departments that provide critical public health services to rural and urban Oklahoma communities. Exh. 1, ¶ 12. These County Partners *easily* meet the broad definition of "health care entities" set forth above. The Health Department is also a health care entity because it partners with and funds county health departments. *See* 45 C.F.R. § 88.2 (stating that "[a]s applicable, components of State or local governments may be health care entities under the Weldon Amendment . . . ."). Thus, the Weldon Amendment applies here to prohibit Oklahoma from requiring these entities to provide referrals for abortions. Yet, that is exactly what Defendants are trying to coerce Oklahoma to do—require health care entities to refer for abortions, else risk losing millions in Title X funding. This is unlawful, whether it is construed as a violation of the Weldon Amendment itself or a violation of Title X as interpreted in light of the Weldon Amendment.

Incredibly, when enacting the 2021 Rule supposedly requiring abortion referrals, Defendants expressly *declined* to consider the impact of the Weldon Amendment. The relevant rulemaking stated as follows:

> While the [conscience] statutes may at times interact with the requirements of Title X, <u>interpreting these laws is beyond the scope of this rule</u> and the HHS Office for Civil Rights (OCR) has been delegated authority to receive complaints under these provisions. …
>
> <u>Irrespective of the points made above … objecting individuals and grantees will not be required to counsel or refer for abortions in the Title X program in accordance with applicable federal law</u>.

15

86 Fed. Reg. 56,153 (Oct. 7, 2021) (emphases added). So, despite having declined to analyze the Weldon Amendment, and despite indicating that "grantees will not be required to counsel or refer for abortions in the Title X program," *id.*, Defendants have now discontinued Oklahoma's funding because it declines to refer women for abortion. This is unlawful.

Put differently, under Title X Oklahoma must ensure that sub-grantees and recipients comply with all Title X regulations. *See* 86 Fed. Reg. at 56,152. Defendants' decision to suspend and terminate Oklahoma's Title X funding is based on Oklahoma's failure to comply with HHS's requirements in 42 C.F.R. § 59.5(a)(5). *See* Exh. 5 at 3. HHS contends that this regulation forbids Oklahoma from sub-granting to health care entities that will not refer for abortion. *Id.* at 5. This includes the County and City-County Partners that receive Oklahoma's Title X funding. But to comply with Defendants' regulation, Oklahoma is required to "discriminat[e] on the basis that the health care entity does not . . . refer for abortions," which is directly prohibited by the Weldon Amendment. 136 Stat. 49,496 § 507(d)(2). As such, Defendants' decision to suspend and terminate Oklahoma's Title X funding is based on HHS's requirement that Oklahoma comply with a regulation that violates federal law. Thus, Defendants' decision should be set aside under the APA for the separate and independent reason that HHS's action is premised on requiring a violation of federal law.

An alternative way of phrasing all this is to say that through the Weldon Amendment, Congress has made it clear that Title X is *not* ambiguous in regard to whether abortion referrals can be required of grantees. *Rust*, that is, cannot control an analysis of an

16

issue that did not yet exist when *Rust* was decided. Along these lines, it is important to observe that the Sixth Circuit in *Ohio* did not rule on any argument that the 2021 Rule violates the Weldon Amendment, because it was not raised by the parties in the briefing. *See* 87 F.4th at 774 n.8. The Sixth Circuit correctly observed, however, that "the 2021 Rule would seem to forbid states from subgranting to 'health care entities' who will not refer for abortion; that, in turn seems to force the States to 'discriminat[e] on the basis that the health care entity does not . . . refer for abortions,' the very thing the Weldon Amendment forbids." *Id.* The Sixth Circuit hinted, in other words, that the Weldon Amendment could change its precedent-based analysis of *Rust, Chevron*, and Title X. Therefore, this Court should find that HHS's decision to terminate Oklahoma's Title X funding violates federal law, specifically in light of the Weldon Amendment.

### D. DEFENDANTS' DECISION TO TERMINATE OKLAHOMA'S TITLE X FUNDING EXCEEDS HHS'S STATUTORY AUTHORITY AND IS ARBITRARY AND CAPRICIOUS.

Here, Oklahoma challenges application of the 2021 Rule by HHS to terminate Oklahoma's Title X funding. Again, this is an as-applied challenge to the 2021 Rule.

> 1. *Defendants' Termination of Oklahoma's Title X Funding Overstepped the Agency's Authority and is Not a Reasonable Interpretation.*

Defendants' decision to terminate Oklahoma's Title X grant funding as a result of HHS's regulation purportedly requiring abortion counseling and referrals is not within the bounds of reasonable interpretation and is therefore in excess of the statutory authority granted by Congress. Agencies are required to follow governing statutes and regulations. In reviewing an agency's legal determinations, federal courts generally apply the analysis

Aplt.App. 198

set out in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), which consists of a two-step test. *Sinclair Wyo. Ref. Co. v. EPA*, 887 F.3d 986, 990 (10th Cir. 2017). At step one, courts consider "whether Congress has directly spoken to the precise question at issue." *Id.* (quotation omitted). At step two, if Congress has not directly spoken, courts ask whether an agency's interpretation is based on a permissible construction of the statute." *Id.* (citation omitted). The task is not to decide whether the agency's interpretation is the best interpretation, but whether it represents a reasonable one. *See Chevron*, 467 U.S. at 843-44.

Whether Title X funding provisions "include abortion as a method of family planning" was a point of debate while Congress considered Title X. 116 Cong. Rec. 37,375 (Nov. 16, 1970) (statement of Rep. Dingell). It was later clarified that "[n]one of the funds appropriated under this subchapter shall be used in programs where abortion is a method of family planning." 42 U.S.C. § 300a-6. Through this language, "committee members clearly intend[ed] that abortion is not to be *encouraged or promoted in any way* through" Title X. 116 Cong. Rec. 37375 (Nov. 16, 1970) (statement of Rep. Dingell) (emphasis added). "Programs which include abortion as a method of family planning are not eligible for funds allocated through this act." *Id.*

As described above, in *Rust* the Supreme Court held that HHS could permissibly prohibit abortion referrals, pursuant to a *Chevron* analysis. 500 U.S. at 186-87. The regulation considered by *Rust* was essentially the *opposite* of the regulation HHS has enforced against Oklahoma to strip Oklahoma's Title X funding here, though. Thus, while *Rust* recognizes that HHS can prohibit counseling and referrals for abortion services under

18

Title X, or could conceivably be agnostic or neutral with respect to requiring abortion counseling and referrals, HHS's application of 42 C.F.R. § 59.5(a) here goes too far—especially in light of the Weldon Amendment.

Although *Rust* recognized Title X was ambiguous on abortion referrals (under the first part of the *Chevron* analysis), Defendants may not resolve that ambiguity in the statute by *requiring* Title X grantees to make abortion counseling and referrals. The Weldon Amendment simply cannot be squared with such an approach. Using the current regulation to suspend and terminate Oklahoma's funding is inconsistent with federal law.[1]

Furthermore, Defendants' decision to terminate Oklahoma's Title X funding unreasonably interprets its own regulations. HHS's interpretation contradicts its other regulations requiring grantees to ensure that they will provide "family planning medical services" that are "allowable under *state* law." 42 C.F.R. § 59.5(b)(6) (emphasis added). HHS describes this as a requirement that must be met by a family planning project. *Id.* As set forth above, abortion counseling and referrals are not allowable under Oklahoma law. HHS cannot interpret its 2021 Rule to require Oklahoma to violate state law and then cancel Oklahoma's Title X funding when Oklahoma fails to do so.

On top of that, the same regulation requires grantees to:

[p]rovide for coordination and use of referrals and linkages with primary healthcare providers, other providers of healthcare services, local health and

---

[1] Moreover, HHS's interpretation of the statute will be entitled to little or no deference if *Chevron* is overruled or significantly narrowed in the two cases currently pending before the Supreme Court where *Chevron*'s overruling is being considered. *See Loper Bright Enterprises, Inc. v. Raimondo*, Case No. 22-451, and *Relentless, Inc. v. Department of Commerce*, Case No. 22-1219. Defendants preserve their ability to argue for *Chevron*'s overruling, or for evaluating this case absent *Chevron* entirely.

Aplt.App. 200

> welfare departments, hospitals, voluntary agencies, and health services
> projects supported by other federal programs, *who are in close proximity to
> the Title X site*, when feasible, in order to promote access to services and
> provide a seamless continuum of care.

*Id.* § 59.5(b)(8) (emphasis added). Even if the Health Department could require subgrantees

to make abortion referrals out of state under Oklahoma law, to do so would violate the

requirement that referrals be given in close proximity to the Title X site. To be sure, the

proximity requirement is only a requirement "when feasible." But it is not feasible to make

referrals that are not permitted under Oklahoma law and that completely disregard the

physical proximity requirement. Out of state travel is not something that is economically

feasible for many recipients of Title X services, and the physical proximity requirement

reflects this important reality. Simply disregarding the proximity requirement in all cases

is not a viable option. As such, HHS's interpretation of its 2021 Rule to suspend and

terminate Oklahoma's Title X funding exceeds HHS's statutory authority and ignores other

requirements HHS placed on Oklahoma's Title X program.

> 2.      *Defendants' Termination Decision Was Arbitrary and Capricious.*

Defendants' termination of Oklahoma's Title X funding was arbitrary and

capricious. *See Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560 (10th Cir. 1994). As

part of this analysis, courts must "ascertain whether the agency examined the relevant data

and articulated a rational connection between the facts found and the decision made" to

determine "whether there [was] a clear error of judgment." *Id.* (citation omitted) "If the

agency relied on factors which Congress has not intended for it to consider, entirely failed

to consider an important aspect of the problem, offered an explanation for its decision that

runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise" then an agency's action must be set aside. *Id*. (citation omitted).

Here, for reasons detailed above, Congress clearly intended its Title X funding *not* to go to promoting or performing abortions in any way, so Defendants' reliance on the lack of abortion referrals to strip Oklahoma of funding was arbitrary and capricious. Further, HHS failed to address important aspects of the problem since HHS did not consider the impact of requiring States where abortion is prohibited to comply with counseling and referral requirements. Defendants cannot point to any material in its administrative record where HHS has grappled with this important issue.

That is to say, HHS's application of its rule here was arbitrary and capricious because federalism concerns were overlooked. "[I]t is incumbent upon federal courts to be certain of Congress' intent before finding that a federal law overrides the usual constitutional balance of federal and state powers." *Bond v. U.S.*, 572 U.S. 844, 858 (2014) (citations omitted). Since the 2021 Rule was introduced, the Supreme Court has determined that abortion is not a constitutionally protected right and that issues concerning abortion must be returned to the people and their elected representatives. *Dobbs*, 597 U.S. at 231. While HHS may have found that there were no federalism implications at the time it implemented the 2021 Rule, *see* 86 Fed. Reg. 56,144, 56,168, there has been a paradigm shift on this issue. HHS's failure to consider this shift and the resultant federalism concerns at the time HHS suspended and terminated Oklahoma's Title X grant demonstrates that the decision was arbitrary and capricious. Oklahoma has exercised its sovereign right to ban

21

abortions and referrals for abortions.  HHS either failed to think through these concerns prior to suspending and terminating Oklahoma's Title X grant, or it did think through them and capriciously decided to punish Oklahoma for its lawful exercise of sovereignty that is perfectly in accord with the language of Title X. *See* Complaint ¶¶ 34-35 (Defendant Becerra: Post-*Dobbs,* HHS will "double down and use every lever we have to protect access to abortion care.").

Defendants also failed to adequately consider the impact of its termination on patients and Oklahoma's ability to properly administer the Title X program in this State. HHS has consistently approved Oklahoma's Title X program. The Health Department's Title X program was last reviewed by HHS in 2016. At that time, HHS was "[o]verall. . . impressed with the dedication and commitment to family planning in both the central office staff as well as in the field." Exh. 2. The result of the Health Department's site visit by HHS was so positive that HHS did not schedule a return visit until January 2024—eight years later. Further, Oklahoma is heavily invested in providing services described in Title X, given Oklahoma's 40-year track record of administering the Title X program. And Oklahoma's citizens are heavily invested in receiving those services. *See supra*. HHS did not consider these important aspects before terminating Oklahoma's Title X funding.

Finally, in contradiction with the 2021 Rule's note—based on the Weldon Amendment—that "objecting . . . Title X grantees are not required to counsel or refer for abortions," 86 Fed. Reg. at 56,153, HHS shifted positions to require Oklahoma to refer for abortions and stripped our Title X funding when the Health Department could not do so.

This amounts to HHS "[s]hifting the regulatory goalposts without explanation," and is prohibited by the APA. *Fontem US, LLC v. FDA*, 82 F.4th 1207, 1222 (D.C. Cir. 2023).

       3.    *HHS Failed to Follow Proper Procedures.*

In deciding to suspend and terminate Oklahoma's Title X funding, HHS failed to follow proper procedures. Notice and comment requirements apply to substantive rules, or legislative rules, which are rules issued by agencies pursuant to statutory authority and which implement a statute, create new legal rights, and have the force and effect of law. *Sorenson Commc'n v. F.C.C.*, 567 F.3d 1215, 1222 (10th Cir. 2009); *New Mexico v. McAleenan*, 450 F. Supp. 3d 1130, 1180 (D.N.M. 2020). Thus, HHS's termination of Oklahoma's Title X funding amounts to a legislative rule that required notice and comment. HHS's failure to follow the correct procedural path also requires setting aside HHS's decision.

## II. OKLAHOMA WILL SUFFER IRREPARABLE HARM IF AN INJUNCTION IS DENIED.

Oklahoma will suffer irreparable harm should an injunction not issue. Importantly, the grant funding for this next cycle, as far as Oklahoma is aware, will be sent or decided by April 1, 2024, making an injunction by that date critical.

Once this funding is distributed, Oklahoma will not likely be able to recoup the funds as monetary damages due to sovereign immunity. "An 'irreparable harm requirement is met if a plaintiff demonstrates a significant risk that he or she will experience harm that cannot be compensated after the fact by monetary damages.'" *Greater Yellowstone Coalition v. Flowers*, 321 F.3d 1250 (10thCir. 2003). Further, once

Aplt.App. 204

funding is distributed, there is no way for Oklahoma or the federal government to claw back distributions from entities that received funding. *See Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs*, 141 S. Ct. 2485, 2489 (2021) (indicating that risk of significant financial harm with no guarantee of eventual recovery constitutes irreparable harm). This loss of funding jeopardizes Oklahoma's ability to continue offering services through the Health Department and loss of its investment in translation and language services. Additional impacts include Oklahoma's ability to access the federal discount pharmacy program and potential loss to future grant funding that totals $541.2 million. *See* Exh. 1, ¶¶ 22-29. Each of these concerns favor issuance of a temporary injunction.

### III. THE THREATENED INJURY TO OKLAHOMA EXCEEDS ANY POSSIBLE INJURY HHS COULD FACE.

The third element counseling in favor of issuing a temporary injunction is that the threatened injury to Oklahoma greatly exceeds any possible injury that HHS could face. Virtually no cognizable harm to HHS can be imagined, as an injunction would only preserve the status quo in effect before HHS terminated Oklahoma's funding in an arbitrary and capricious attack. And Defendants cannot rely on a lack of referrals for abortion as harm since, again, Title X expressly prohibits funding going to abortion. Further, no harm can result from issuing an injunction since HHS previously found that Oklahoma complied with program requirements and in good standing to receive and administer federal Title X funds during the current grant period. The very real injuries that Oklahoma has and will continue to sustain are greatly disproportionate to any harm that HHS might allege.

## IV.    THE REQUESTED INJUNCTION IS IN THE PUBLIC INTEREST.

Finally, a temporary injunction is appropriate since the requested injunction is in the public interest. Restoring Oklahoma's Title X funding *advances* the public interest by allowing the Health Department to continue to offer services as it historically has done. The public interest will also be advanced since, as recognized in *Dobbs*, regulation of "abortion must be returned to the people and their elected representatives." 597 U.S. at 215, 292. Oklahoma has exercised its right to determine policy on this issue. As such, the public interest will only be undercut by HHS's decision to suspend and terminate funding based on abortion concerns under a statute that expressly prohibits funding from going to programs promoting abortion.

### CONCLUSION

For the foregoing reasons, this Court should grant Oklahoma's motion for a preliminary injunction and a stay under 5 U.S.C. § 705.  Oklahoma respectfully requests this Court's resolution of the instant motion no later than April 1, 2024, to preserve Oklahoma's ability to benefit from a favorable decision or else seek appellate intervention prior to HHS's disbursement of Title X funds for 2024.

Respectfully submitted,

*s/ R. Tom Hillis*
Garry M. Gaskins, II, OBA # 20212
*Solicitor General*
Zach West, OBA # 30768
*Director of Special Litigation*
Audrey Weaver, OBA # 33258
*Assistant Solicitor General*
OFFICE OF ATTORNEY GENERAL

25

STATE OF OKLAHOMA
313 N.E. 21st St.
Oklahoma City, OK 73105
Phone: (405) 521-3921
Garry.Gaskins@oag.ok.gov
Zach.West@oag.ok.gov
Audry.Weaver@oag.ok.gov

AND

Barry G. Reynolds, OBA # 13202
R. Tom Hillis, OBA # 12338
J. Miles McFadden, OBA # 30166
TITUS HILLIS REYNOLDS LOVE, P.C.
15 E. 5th St., Suite 3700
Tulsa, OK 74103
Phone: (918) 587-6800
Fax:    (918) 587-6822
reynolds@titushillis.com
thillis@titushillis.com
jmcfadden@titushillis.com

AND

Anthony J. (A.J.) Ferate, OBA # 21171
SPENCER FANE
9400 North Broadway Extension,
Suite 600
Oklahoma City, OK 73114
Phone: (405) 844-9900
Fax:    (405) 844-9958
AJFerate@spencerfane.com

*ATTORNEYS FOR PLAINTIFF,*
*THE STATE OF OKLAHOMA*

26

Aplt.App. 207

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 26th day of January 2024, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrant:

Michael Patrick Clendenen
michael.p.clendenen@usdoj.gov

Robert C Merritt
robert.c.merritt@usdoj.gov

<em>/s/ R. Tom Hillis</em><br>R. Tom Hillis

27

Appellate Case: 24-6063   Document: 010111031253   Date Filed: 02/20/2024   Page: 39

| EXHIBIT 1 |
| --- |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

STATE OF OKLAHOMA,

*Plaintiff,*

v.

UNITED STATES DEPARTMENT OF HEALTH
AND HUMAN SERVICES; XAVIER BECERRA, *in
his official capacity as the U.S. Department of health
and Human Services;* JESSICA S. MARCELLA, *in
her official capacity as the Deputy Assistant Secretary
for Population Affairs;* and OFFICE OF
POPULATION AFFAIRS,

*Defendants.*

Case No:        23-CV-1052-HE

---

### DECLARATION OF TINA JOHNSON, MPH, RN

I, Tina Johnson, pursuant to 28 U.S.C. § 1747 declare and state as follows:

      1.    I am over the age of eighteen, of sound mind, and am competent to testify to the matters stated herein.

      2.    I am currently the Assistant Deputy Commissioner for Family Health Services for the Oklahoma State Department of Health ("OSDH"), and I have served in this role since 2016.

      3.    I have been employed with OSDH for over thirty-five (35) years, and prior to my current position I served in various roles with OSDH including: Director of Nursing Service (2013-2016), Regional County Director for Pottawatomie, Seminole, Hughes, and Okfuskee Counties (2004-2013), Director of Nursing Education Nursing Service (2000-2004), District Nurse Manager for Pottawatomie, Seminole, Hughes, and Okfuskee Counties (1997-2000), and Public Health Nurse for Lincoln and Okfuskee County (1988-1997).

4.      Prior to my employment with OSDH, I served as the Director of Nursing Service and as a Hospital RN Floor supervisor for Surgery and ER for the Prague Municipal Hospital in Prague, Oklahoma.

5.      I obtained a Bachelor of Science in Nursing from Oklahoma Wesleyan University and a Masters of Public Health Administration and Policy from the University of Oklahoma College of Public Health.

6.      I serve on the Board of Directors for the Public Health Institute of Oklahoma and volunteer with the Public Health Accreditation Board as a site visitor for accreditation reviews. I have previously served as the President of the Oklahoma Public Health Association.

7.      In my role as Assistant Deputy Commissioner for Family Health Services, I have senior leadership oversight of family planning services as a component of OSDH's broader Family Health Services division, which encompasses Maternal and Child Health Services. The management of Title X grants falls within Maternal and Child Health Services.

8.      The State of Oklahoma, through OSDH, has continuously received federal grant funds to provide family planning services across the state through Title X for more than forty years, or since 1971.

9.      OSDH's Title X grant was approximately $4.5 million, annually, in the current grant cycle.

10.     The U.S. Department of Health and Human Services ("HHS") conducted a comprehensive review of OSDH's Title X program in 2016, attached as Exhibit 1. That review process was designed to assess OSDH's compliance with federal regulations and guidelines governing Title X, and the quality of services and implementation of key aspects of the Title

2

X program. That review process included meetings with key personnel, extensive document review, and on-site observational visits.

11.     The result of HHS's comprehensive review of OSDH's Title X program was positive. HHS found that the OSDH met the requirements of Title X, and HHS reported that it was overall impressed with OSDH's program. Although HHS's review noted some deficiencies in OSDH's Title X program, none of those deficiencies resulted in the revocation of the Title X grant. Nor did HHS ever mention or threaten revocation of the Title X grant during that review process. In fact, the result of the on-site visits during this review were so positive that HHS did not schedule a return visit until January 2024.

12.     Through the Title X program, OSDH provides funding to the State's 68 county health departments ("County Partners"), who provide critical family planning public health services to rural and urban Oklahoma communities. Those critical family planning services include counseling of family planning options and related services, preventative women's health screenings and exams (including mammograms, pap-smears, anemia testing, depression screening, and the like), infectious disease testing, pre-conception care, immunizations, Medicaid applicability, and providing family planning prescriptions or medical devices. Moreover, County Partners provide referrals for mammograms, dysplasia follow-up as a result of an abnormal pap-smear, and follow-ups resulting from abnormal blood pressure, psychological / mental health concerns, and post-partum complications.

13.     OSDH also contracts with the Oklahoma City-County Health Department and the Tulsa County Health Department ("City-County Partners"), who provide the same or

Aplt.App. 211

similar family planning services previously described, in Oklahoma's most heavily populated counties.

14.     Oklahoma's Title X program allows OSDH and its County and City-County Partners (collectively "Partners") to provide confidential services to adolescents, which account for approximately 12% of the patients served. This helps health care providers discuss sensitive or embarrassing topics and provide education, while still encouraging parental involvement and complying with all mandatory reporting laws.

15.     The Title X program also allows OSDH and its Partners connect with patients who come in with other ancillary concerns, allowing the State to refer those patients to other health care providers or state resources to better serve a patients' overall health and well-being. For example, this has allowed the State to connect patients with the Oklahoma Women, Infants & Children supplemental food program, immunization programs, and programs providing free infant car seats, including installation and safety checks. It also allows the State to screen for safety issues such as child abuse, domestic violence, or sex trafficking.

16.     Because OSDH has continuously administered its Title X program for decades, OSDH and its Partners have built the infrastructure, capacity, personnel, and institutional knowledge to implement its Title X program across the entire state of Oklahoma effectively, efficiently, and with integrity. This has allowed OSDH and its Partners to provide critical health services to the public and those in need for decades. In recent years, over 25,000 patients on average annually have received services through Oklahoma's Title X program.

17.     As one specific example of how this infrastructure and institutional knowledge has advanced public health, OSDH and its County Partners have built a network of translation

4

services available across the state to accommodate the 30+ languages and dialects spoken in the state. Providing these translation services helps eliminate communication barriers that can have serious impact on a patient's care, for example when a patient may otherwise have to rely on an abusive partner or child to translate sensitive health information.

18.     In many rural areas in Oklahoma, OSDH and its County Partners may be one of the only access points for critical preventative health services for many miles. Thus, many of the patients served by OSDH and its County Partners face barriers to accessing health care because of distance, work schedules, and transportation issues.

19.     A substantial portion of patients served by OSDH and its Partners include lower income or uninsured individuals who cannot afford care elsewhere.

20.     OSDH and its Partners have created significant goodwill throughout the state by providing crucial family planning, preventative, and screening services to citizens through its decades of administering the Title X program.

21.     OSDH spent months working with HHS, seeking guidance as well as proposing solutions in an effort to remain in compliance with the grant requirements while not potentially running afoul of Oklahoma law. HHS was adamant in its "all or nothing" position that OSDH must include abortion-education resources as part of family planning client counseling. HHS was consistent in its position that OSDH must comply or face consequences despite repeat reminders of current Oklahoma law.

22.     The continuing impact of HHS's decision to revoke the Title X grant awarded to OSDH—on OSDH, the County Partners, the City-County Partners, the Oklahomans served by the program, and the State at large—is extremely difficult to measure.

Aplt.App. 213

23.     Without the Title X grant funds, OSDH required the Oklahoma Legislature to provide an emergency backstop to supplement the federal loss. The Oklahoma Legislature appropriated those funds for the 2023 fiscal year, but there is no guarantee that the Oklahoma Legislature continues to supplement those funds going forward. Without this continued funding, OSDH and its Partners will be unable to continue providing the critical family planning services offered throughout the state, causing incalculable and devastating harm to the public health of the state and its citizens.

24.     The revocation of the Title X grant has deprived OSDH of the federal discount pharmacy program for family planning prescriptions and medical devices ("340B"), which covers oral contraceptives, IUDs, and long-acting reversible contraceptives, among other things.

25.     In order to ensure continuity of services in the aftermath of HHS's revocation, and to mitigate against forced disposal of these prescriptions and medical devices, OSDH has been forced to cobble together additional state dollars, approximately $678,000, to buy-back 340B acquired medications from HHS. This stopgap has also placed significant and unexpected strain on OSDH's Pharmacist and other personnel.

26.     The delays and uncertainty caused by the abrupt deprivation of the 340B federal discount program has impacted rural county health departments as well as City-County Partners, who contract with OSDH to receive these critical prescriptions and medical devices. Meaning, public dollars used to purchase any prescriptions or medical devices do not stretch as far because OSDH and its Partners are forced to purchase at market rates. This impacts the number of services that can be provided, and ultimately reduces the number of Oklahomans

Aplt.App. 214

served. It is also impacting the State's inventory and the availability of prescriptions and medical devices, which is crucial to provide real-time access to low income clients with low or no cost prescriptions or medical devices.

27.    Without the 340B federal discounts, the cost of relevant prescriptions and medical devices may increase up to six times, leaving OSDH and its Partners unable to continue providing those benefits without significant financial impact, which will inevitably harm other critical health services offered by OSDH and its Partners.

28.    In addition, HHS has repeatedly warned and threatened that OSDH's purported non-compliance under the Title X grant may be reported to the Federal Awardee Performance Integrity Information System ("FAPIIS"). In fact, it is likely HHS has already reported OSDH on the FAPIIS based on prior conversations between OSDH and HHS officials, where HHS officials expressed repeat warnings of intent to report OSDH. OSDH has been unable to confirm whether HHS has followed through with this intent. Being reported to the FAPIIS would have significant impact OSDH's ability to obtain or maintain other federal grant funds, including because federal law requires a contracting officer review the FAPIIS before awarding any federal grant over the simplified acquisition threshold. *See* FAR 9.104-6.

29.    OSDH currently receives approximately $541.2 million in funding from over 90 other federal grant programs outside of Title X, ranging from HIV prevention, immunizations and public health infrastructure to workforce development, emergency preparedness, COVID-19 response and recovery (through the American Rescue Plan Act of 2021), and

Appellate Case: 24-6064   Document: 010111031253   Date Filed: 04/02/2024   Page: 46

laboratory quality and readiness. Each of these grants could be jeopardized by HHS reporting OSDH to the FAPIIS.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 26th, 2024.

*Lance R Johnson*

8

EXHIBIT 1



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**

**Office of the Assistant Secretary for Health**

**Regional Health Administrator**
Region VI
1301 Young Street
Suite 1124
Dallas, TX 75202

June 28, 2016

Terry L. Cline, Ph.D.
Commissioner of Health
Oklahoma State Department of Health
1000 NE 10th
Oklahoma City, OK 73117

RE: Grant Number FPHPA066194

Dear Dr. Cline:

The Federal Title X program review for the Oklahoma State Department of Health was conducted May 2-5, 2016. Your Title X program supports excellent projects and activities and we applaud your efforts to increase services and quality throughout the system.

The purpose of the review is to provide the Regional Office with an evaluation of the Oklahoma State Department of Health's compliance with the Title X requirements and alignment with the Quality Family Planning (QFP) guidelines as set out in *Providing Quality Family Planning Services: Recommendations of CDC and the U.S. Office of Population Affairs*. This report addresses the administrative, fiscal, and clinical aspects of the Title X program and provides information to continue to strengthen your efforts.

I would like to highlight some of the review's major findings. Overall, the reviewers were impressed with the dedication and commitment to family planning in both the central office staff as well as in the field. Required areas to be addressed include:

- Ensuring client privacy during intake and financial interviews (see page 12)
- Ensuring clients with limited English proficiency are aware of translation services available to them (page 16)
- Ensuring appropriate application of Title X requirements with respect to charges on the sliding fee schedule (page 21)

With respect to quality family planning guidelines, many aspects of OSDH's program are fully developed, but some policies and procedures require modification to be in alignment with QFP recommendations (see pages 30-33).

Please review the report and respond to the findings in writing with a plan of action to address them by August 5, 2016.

Aplt.App. 217

On behalf of the site assessment review team, I want to thank you and all of your staff for the cooperation and hospitality extended during the visit. If you or your staff have any questions concerning any items in the report, please contact Dr. Liese Sherwood-Fabre at (214) 767-3060.

Sincerely,

Epifanio (Epi) Elizondo, Ph.D., PA-C
Regional Health Administrator, Region VI
Rear Admiral, Assistant Surgeon General,
U.S. Public Health Service

Attachment
cc:  GrantSolutions
     Joyce Marshall, MPH
     Jill Nobles-Botkin, APRN-CNM

AppeMappedDatee Case 00586005DocuDocument0101 31162533Date BatteFitedd 9/04/2014/202PagePage: 49

***PROGRAM REVIEW***
***TITLE X FAMILY PLANNING PROJECT***
***OKLAHOMA STATE DEPARTMENT OF HEALTH***

**May 2-5, 2016**

AppeMarpeDateCas€asebf0@3-60@5bcuDmEnum&n01 31€2353Date EittdeEUQd1902909/202PageP2@e: 50

**TABLE OF CONTENTS**

Background Information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Overview of Project . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

Administrative Program Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Financial Program Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

Clinical Program Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

Quality Family Planning Recommendations . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Aplt.App. 220

AppellateDatee Casse1053-60060DocuDocumbfdt1 311@253 1Date DistedFUlec1:026/023/20229agePage: 51

**BACKGROUND INFORMATION**

| | |
|---|---|
| **Grantee Name:** | Oklahoma State Department of Health |
| **Grantee Number:** | FPHPA066194 |
| **Project Address:** | 1000 NE 10th Street |
| | Oklahoma City, Oklahoma 73117 |
| **Site Visit Dates:** | May 2- 5, 2016 |

**Program Review Team Members:**

| | |
|---|---|
| Liese Sherwood-Fabre, PhD | Administrative/Community Outreach and Education Review Team Leader |
| Lawrence Peaco, MPA | Financial Services |
| Cristino Rodriguez, FNP-C | Clinical Services |

**Department of Health and Human Services (DHHS) Region VI Staff:**
Liese Sherwood-Fabre, PhD

**Department of Health and Human Services (DHHS) Region VI Staff:**

May 2, 2016 Briefing
Oklahoma State Department of Health

Nancy Bacon, Nutrition Consultant
Ann Benson, Advanced Practice Coordinator
Joni Bruce, Oklahoma Family Network Executive Director
Dawn Butler, MCH Administrative Support
Peggy Byerly, Early Childhood Coordinator
Jeanette Cline, QI Coordinator
Dana Coles, Perinatal and Reproductive Health Epidemiologist
Mark R. Densett, Community and Family Health Services
Angela Dickson, Public Health Social Work Coordinator
Ira Farley, Health Educator
Tony Fleshmann, Nurse Manager
Shannon Gormley, Executive Assistant, MCH
Audie Hamman, Internal Audit Manager
Neil Hann, Assistant Deputy, CFHS Administration
Mack S. Harris, Financial Services, Grants Reporting
Ashley Hillemeyer, Interim Agency Procurement Officer
Jay Holland, Director, Internal Auditor
Ashley Hoobler, MCH-CAH Health Educator
Ayesha Lampkins, PRAMS/Tots Program Manager
Alicia Lincoln, Child and Adolescent Health
Lynette Mackey, Nurse Practitioner

ii

Aplt.App. 221

Carolyn Marriott, Contract Monitor
Joyce Marshall, Director, MCH Services
Gunnar McFadden, Administrative Coordinator
Pam Miles, Medical Consultant, Title X
Jill Nobles-Botkin, MCH/PRH Administrative Program Manager
Paul Patrick, MCH Assessment
Edd Rhoades, Medical Director, Community and Family Health
Angela Steinle, Social Work Intern
Amy Terry, MCH/CAH Adolescent Health Coordinator
Sean Tomlinson, Financial Management
Mick Truitt, Assistant CFO
LaBetta Wallenmeyer, NP Consultant
Shirley Ward, Administrative Assistant, PRH

May 3, 2016
Comanche County Health Department

Nancy Bacon, MCH Nutrition Consultant/State Review Team Lead
Marquise Bishop, CCHD-HE
Gail Byber, Business Manager
Patsy Cooper, NP
Sharlet Rena Evans, District Nurse Manager
Tony Fleshman, RN
Lana Fry, Administrative Assistant, Clerical Support
Sarah Lambaria, Health Educator
Ayesha Lampkins, MCH Consultant (PRAMS/ToTs Project Manager)
Joyce Marshall, MCH Director, OSDH
Leah Mays, RN
Nicki McCray, MA
Johnette Miller, APO
LaCresha Mitchel, Front Desk Clerk
Jill Nobles-Botkin, PRH Administrative Program Manager
Brandie O'Connor, Regional Director
Bob Richardson, Internal Auditor II
LaBetta Wallenmeyer, NP Consultant
Sarah Whittington, RN II
Zachery Williams, Internal Auditor II
Melissa Wilson, Records Consultant

May 4, 2016
Oklahoma City-County Health Department (OCCHD)

Tiffany Elmore, OCCHD, Administrator of Clinical Services
Lacey Gann, RN
Karina Hernandez, Front Desk Clerk

Appellate Case: 24-6068  Document: 010111012533  Date Filed: 01/30/2024  Page: 53

Kaitlin Hostetter, Public Health Nurse
Jenny LeGrande, Public Health Nurse, Supervisor
Joyce Marshall, OSDH, MCH Director
Patrick McGough, Deputy Director, OCCHD
Tony Miller, Director of Finance, OCCHD
Jill Nobles-Botkin, OSDH, Perinatal and Reproductive Health
Kerri Stewart, Public Health Nurse, Clinical Supervisor
Joyce Tow, CNP
Diane Wermy, Office Manager

May 5, 2016 Debriefing:
Oklahoma State Department of Health

Nancy Bacon, Nutrition Consultant
Joni Bruce, Oklahoma Family Network Executive Director
Dawn Butler, MCH Administrative Support
Peggy Byerly, Early Childhood Coordinator
Jeanette Cline, QI Coordinator
Dana Coles, Perinatal and Reproductive Health Epidemiologist
Ira Farley, Health Educator
Tony Fleshmann, Nurse Manager
Shannon Gormley, Executive Assistant, MCH
Neil Hann, Assistant Deputy, CFHS Administration
Mack S. Harris, Financial Services, Grants Reporting
Ashley Hoobler, MCH-CAH Health Educator
Ayesha Lampkins, PRAMS/Tots Program Manager
Lynette Mackey, Nurse Practitioner
Carolyn Marriott, Contract Monitor
Joyce Marshall, Director, MCH Services
Pam Miles, Medical Consultant, Title X
Jill Nobles-Botkin, MCH/PRH Administrative Program Manager
Paul Patrick, MCH Assessment
Angela Steinle, Social Work Intern
Amy Terry, MCH/CAH Adolescent Health Coordinator
LaBetta Wallenmeyer, NP Consultant

## Materials Supplied Prior to the Visit
*FORMS*

335 Early Start Consent Form
336 Emergency Contraception Consent Form
393 Family Planning Initial/Annual Visit
395 Pregnancy Screening
637 Emergency Contraception History & Assessment
657 Early Start Depo History & Exam
873 Early Start Oral Contraceptive History & Assessment

875 Family Planning Problem Visit
876 Family Planning Counseling & Education
1010 Etonogestrel Implant/Removal Procedure
Birth Control Guide
ODH 303C Consent for Services (English & Spanish)
303L Screening and Test Results
330 Contraceptive Follow-Up Form
ODH337 Natural Family Planning Fact Sheet
ODH337B Birth Control Fact Sheet
ODH337C IUD Fact Sheet
ODH337D Diaphragm Fact Sheet
ODF337F Spermicide Fact Sheet
ODH337H Male Condom Fact Sheet
ODH337I Patch Fact Sheet
ODH337J Vaginal Ring Fact Sheet
ODH337K Implantable Rod Fact Sheet
ODH337L Sponge Fact Sheet
ODH337M Emergency Contraception Fact Sheet
ODH340 Birth Control Shot Fact Sheet
ODH638 Early Start History & Assessment Combined Hormonal Contraception (Pill, Patch, Ring)
ODH902 Missed Oral Contraceptive Pill Fact Sheet (Bilingual)
ODH903 Missed Vaginal Ring Contraceptive Fact Sheet
904 Missed Transdermal Patch Fact Sheet
ODH1055 Client Visit History & Allergies
ODH1105 Basic Infertility Visit
ODHP348B Osteoporosis
P337 IUC Insertion Procedure
P338 Family Planning Services Risk & Benefit Sheet
P348 Vitamins and Using the Pill

*FAMILY PLANNING POLICY AND PROCEDURES MANUAL*

*QUALITY ASSURANCE/QUALITY IMPROVEMENT*
CCPP 2016 –County  Community Participation, Education, and Project Promotion Plan Template
CHD (County Health Department) Annual Monitoring Site Visit Tool
Comprehensive Program Review (CPR)
      CPRTeam Evaluation Summaries for 2015 and 2016
      Federal and State Required Posters
      Minutes MCH Comprehensive Program Review Staff Meeting
SV TOOL – Site Visit Tool Family Planning Chart Audit
SV TOOL – List of County Documents to Have Ready
SV TOOL – Administrative Tool
SV TOOL – Financial Tool
SV TOOL – Public Health Enabling Tool

SV TOOL – Clinical Services Tool
Team Evaluations for Comprehensive Program Review
Client Satisfaction Survey (English & Spanish)
Survey Monkey CARS (Community Activity Reporting)
Survey Monkey QI (Quality Improvement Reporting)

*TRAINING*
Community Participation & QI Training 3/30/15
MCH Training Calendar SFY 2016
Needs Assessment Results 2015-2016

*EDUCATIONAL MATERIAL*
FP Services Brochure
Men's Health Brochure
Women's Health Assessment

*ORIENTATION*
MCH Orientation Manual
New Employee Orientation Signature Sheet

Memoranda of agreement with other programs

**Documents reviewed at the Clinic Level**

Constitution and by-laws of Advisory board, if delegated to site
Annual reports
Financial records, including any audits completed
Certificate/reports: fire inspection, state licensure, sanitation, CLIA, OSHA, ADA
Internal medical audit policies and procedures
Emergency and Disaster plans (medical and non-medical)
Clinic education brochures, public information materials—Site-specific and OSDH-supplied
The schedule of discounts for clients at/below 250% of poverty level for sub-recipients
Client Sterilization records
Abnormal laboratory results and follow-up records
Documentation of community education and outreach
Pharmacy Records, especially of any stock-outs
Client charts: Initial visit, return visit, adolescents, males and pregnancy-test only clients

vi

Aplt.App. 225

Appellate Case: 24-6063   Document: 010953313   Date Filed: 04/23/2024   Page: 56

*OVERVIEW OF THE PROJECT*

**History and Development**
The Oklahoma State Department of Health (OSDH) and State Board of Health were created with the passage of the Oklahoma Public Health Code on July 1, 1963. The State Department of Health was to consist of the Commissioner of Health and such divisions, sections, bureaus, office and positions as established by the Board of Health and by law. Currently state health services are organized under a Governor-appointed Secretary for Health. The current Commissioner of Health is also the Secretary of Health.

**Description of the Program**
The Oklahoma State Department of Health Family Planning Program (OSDH FPP) is administered within the Perinatal and Reproductive Health Division of the Maternal & Child Health Service, a part of the Community & Family Health Services. The OSDH Family Planning (FP) Program is responsible for assuring compliance with Title X policy, procedure, and administration of funds. Day-to-day coordination of Title X project activities is the responsibility of the Administrative Program Manager of PRHD, who reports directly to the Director of MCH, who reports directly to the Deputy Commissioner of the CFHS. The Deputy Commissioner of the CFHS answers directly to the Commissioner of Health.

OSDH has administered the Title X family planning program for more than forty years.

The public health system in Oklahoma includes the OSDH with its statewide county health department system and the two city county health departments in Oklahoma County and in Tulsa County, which are administratively separate from the OSDH system and have their own personnel systems. The county health departments are OSDH administrative units. Altogether, clinical and educational services are provided through 87 county health sites and 8 contract agency sites across the state, located in 70 of the 77 counties. The clinical services are provided through the Community Health Services' County District Administration, Nursing Service, Community Development Service, and Record Evaluation and Support. These entities provide service delivery and assist with program monitoring. The Medical Director is available by contract through OUHSC.

Oklahoma Health Care Authority (OHCA), the state Medicaid agency, changed their family planning services 1115B waiver to a State Plan Amendment (SPA) on September 1, 2011 (now, SoonerPlan). The SPA includes hormonal contraceptive sub-dermal implant and the HPV vaccination, which were previously not included in the family planning waiver. Sterilization is not provided through the Title X FP project, although the SPA covers both male and female sterilizations.

## The Title X Program Review Process

At the start of the process, the regional office and OSDH negotiated the dates for the review and the sites to be visited. Following these decisions, the regional office provided a list of documents to be compiled, including policies and protocols, board meeting minutes, and medical charts (at the clinic sites).

Aplt.App. 226

Appellate Case: 24-6063   Document: 010111031153   Date Filed: 04/03/2024   Page: 57

The region office staff also provided both review consultants and OSDH with the protocol to be used during the visit. The instrument, developed to coincide with the Title X requirements and Quality Family Planning guidelines issued in April, 2014 (*Providing Quality Family Planning Services: Recommendations of CDC and the U.S. Office of Population Affairs*), reflects current federal regulations and guidelines. The tool guides the review team's assessment of grantee policies and procedures and on-site observations and evaluations of program operations for evidence of compliance with grantee policies and procedures based on these requirements and QFP guidelines.

*Title X Program Requirements Assessment*

This assessment relates to the grantee's compliance with the statute and regulations. For these requirements, the grantee will receive an assessment of compliance and will receive a rating of "met", " not met", or "N/A" (not applicable). The evidence that minimum criteria have been met will be based on both grantee and sub-recipient records and observation at grantee administrative offices and selected service sites as part of the monitoring process. Evidence may include—but is not limited to—policies, procedures, protocols, documentation of training, direct visual confirmation per consultants and/or regional office staff to ensure that what is contained in written policy or instructions is actually being carried out, and/or any other form of documentation substantiating the project is operating in accordance with the Title X Program Requirements

*QFP Quality Assessment*

This assessment reflects the extent to which the grantee has implemented key aspects of QFP. Grantees will be assessed using the list of items providing evidence of various aspects of quality services. The number of items identified serves as a means of recognizing grantee achievements as well as identify areas in need of improvement and/or technical assistance.

*Assessment Timeline*

Before the review, OSDH and the sites selected for visits were requested to compile a series of documents including policies and protocols, board meeting minutes, and medical charts (at the clinic sites); arrange for interviews with central office staff; and schedule a initial and debriefing meeting with Departmental representatives.

At the initial meeting, the team discussed the review process, and OSDH provided an overview of the project. Following meetings at the central office the morning of the first review day, the team visited two different clinic sites.

At the conclusion of the each clinic visit, the team gave an oral report to clinic and accompanying central office staff. At a formal exit conference, the reviewers reported on the findings related to compliance in each area. This written report follows the same format and contains major findings and recommendations as reported by the review team to OSDH at the exit conference on May 5, 2016. In the recommendation statements, a "must" references OSDH non-compliance to federal regulations. Additionally, quality assessment ratings indicate the

Aplt.App. 227

extent to a program has achieved various aspects of QFP. In this section, a "should" references strong program suggestions and recommends the program evaluate the information in the interest of continued improvement of program operations.

3

# Title X Program Requirements

*Administrative Aspects*

## 8. Project Management and Administration

### 8.1 Voluntary Participation

#### 8.1.1 Prohibition of Coercion

Title X projects must "provide services without subjecting individuals to any coercion to accept services or to employ or not to employ any particular methods of family planning. (Sections 1001 and 1007, PHS Act; 42 CFR 59.5 (a)(2))

Such requirements are met through institutionalizing administrative procedures (i.e., staff training, clinical protocols, and consent forms) to ensure clients receive services on a voluntary basis.

Observations:
The policies and procedures for the service and contract sites' responsibilities include the voluntary nature the program. The program also includes a general consent form and a family planning risk and benefit form that indicates the voluntary nature of the services. All family planning staff sign an Annual Title X Reminder that includes this statement.

Finding:
This requirement was MET.

#### 8.1.2 Prohibition of Prerequisite for Other Services

Title X projects must ensure that "acceptance of services must...not be made a prerequisite to eligibility for, or receipt of, any services, assistance from or participation in any other program of the applicant." (Section 1007, PHS Act; 42 CFR 59.5 (a)(2))

This requirement is met through institutionalizing administrative procedures (e.g., staff training, clinical protocols, and consent forms) to ensure clients' receipt of family planning services is not used as a prerequisite to receipt of other services from the service site.

Observations:
The policies and procedures for the service and contract sites' responsibilities include this prohibition. The program also requires clients to sign a family planning risk and benefit form that states this prohibition. All family planning staff sign an Annual Title X Reminder that includes this statement.

Finding:
This requirement was MET.

4

Aplt.App. 229

### 8.1.3 Prosecution for Coercion

Personnel working within the family planning project must be informed that they may be subject to prosecution if they coerce or try to coerce any person to undergo an abortion or sterilization procedure (Section 205, Public Law 94-63, as set out in 42 CFR 59.5(a)(2) footnote 1).

Evidence that this requirement has been met includes 1) written policies and procedures 2) documentation that staff has been informed at least once during the project period, and 3) documentation exists at the sub-recipient level that staff has been informed.

Observations:
The policies and procedures for the service and contract sites' responsibilities include this statement. All family planning staff sign an Annual Title X Reminder that includes this statement.

Finding:
This requirement was MET.

### 8.2 Prohibition on Abortion

Title X grantees and sub-recipients must be in full compliance with Section 1008 of the Title X statute and 42 CFR 59.5(a)(5), which prohibit abortion as a method of family planning.

Systems must be in place to assure adequate separation of any non-Title X activities from the Title X project. These include policies and procedures regarding the prohibition as well as for the separation of Title X services.

In addition grantees have documented processes to ensure that they and any sub-recipients are in compliance with Section 1008, including language in any sub-recipient contracts addressing this requirement.

Observations:
The policies and procedures for the service and contract sites' responsibilities include this statement and is also included in the sub-recipient agreement. See also Financial Requirements.

Finding:
This requirement was MET.

### 8.3 Structure and Management

### 8.3.1 Written Agreements

The grantee must have a written agreement with each sub-recipient and establish written standards and guidelines for all delegated project activities consistent with the appropriate section(s) of the Title X Program Requirements, as well as other applicable requirements (45 CFR parts 74 and 92).

5

Appellate Case: 24-6063   Document: 010111031163   Date Filed: 04/04/2024   Page: 61

Observations:
Sub-recipient agreements include references to the Title X requirements and guidelines. In addition, the Family Planning Policy and Procedure Manual contains a section on "Service Site and Contract Agency Responsibilities" that reiterates these requirements.

Finding:
This requirement was MET.

### 8.3.2 Sub-recipient Contracting of Services
If a sub-recipient wishes to subcontract any of its responsibilities or services, a written agreement that is consistent with Title X Program Requirements and approved by the grantee must be maintained by the sub-recipient (45 CFR parts 74 and 92).

Evidence that this requirement has been met include a signed subcontracting agreement stipulating compliance with Title X requirements, documentation of grantee approval of sub-contracts, and monitoring reports to ensure compliance.

Observations:
OCCHD does not have any sub-recipient agreements, but a clause in the OSDH agreement requires approval from OSDH.

Finding:
This requirement was NOT APPLICABLE

### 8.3.5 Sub-recipient Participation in Development of Policies and Procedures.
Sub-recipient agencies must be given an opportunity to participate in the establishment of ongoing grantee policies and guidelines (42 CFR 59.5 (a)(10)).

Evidence that this requirement has been met include a mechanism for sub-recipient participation in the policies and procedures and documentation of the sub-recipients' inclusion.

Observations:
The inclusion of sub-recipients is stated in the program administration manual and sub-recipients review, comment on, and approve all policies and procedures along with OSDH staff.

Finding:
This requirement was MET.

### 8.5 Project Personnel

### 8.5.1 Federal and State Personnel Requirements
Grantees and sub-recipients personnel policies must comply with applicable Federal and State requirements, including Title VI of the Civil Rights Act, Section 504 of the Rehabilitation Act of 1973, Title I of the Americans with Disabilities Act, and the annual appropriations language.

Appellate Case: 24-6060   Document: 010911053131   Date Filed: 03/04/2024   Page: 62

Evidence that this requirement has been met includes grantee and sub-recipient personnel policies and procedures create a process to avoid discrimination in personnel administration.

Observations:
The policies and procedures for the service and contract sites' responsibilities include this statement, and it is included as part of the sub-recipient site visit review tool

Finding:
This requirement was MET.

**8.5.2 Cultural Competency**
Project staff should be broadly representative of all significant elements of the population to be served by the project, and should be sensitive to, and able to deal effectively with, the cultural and other characteristics of the client population (42 CFR 59.5 (b)(10)).

Evidence that this requirement has been met includes grantee and sub-recipient personnel policies and procedures regarding cultural competency that has been implemented through training and client surveys.

Observations:
The policies and procedures for the service and contract sites' responsibilities include this statement and all staff must complete training in the topic and such training is documented.

Finding:
This requirement was MET.

**8.5.3 Project Director**

Projects must be administered by a qualified project director, and changes in the project director or other key personnel must be approved by the Office of Grants Management. (HHS Grants Policy Statement, 2007 Section II-54.)

Evidence that this requirement has been met includes documentation of OGM approval of personnel changes during the project period.

Observations:
No personnel changes requiring OGM approval occurred during the current grant. Prior approval was sought and granted for the new MCH Director in 2014.

Finding:
This requirement was NOT APPLICABLE

**8.6 Staff Training and Project Technical Assistance**

**8.6.1 Orientation and In-Service Training**

7

Aplt.App. 232

Projects must provide for the orientation and in-service training of all project personnel, including the staff of sub-recipient agencies and service sites (42 CFR 59.5(b)(4)).

Evidence that this requirement has been met includes grantee and sub-recipient staff training needs assessment and plan and records of personnel trainings completed.

Observations:
The OSDH program has an orientation program for all new employees, an annual assessment for additional training needs, and a training plan to address these needs.

Finding:
This requirement was MET.

**8.6.2 Mandatory Reporting Training**
The project's orientation/in-service training includes training on Federal/State requirements for reporting or notification of child abuse, child molestation, sexual abuse, rape, or incest, as well as on human trafficking.

Evidence that this requirement has been met includes grantee and sub-recipient policies and procedures for meeting these training requirements, and training attendance records.

Observations:
The policies and procedures manual includes information on mandatory reporting, records indicate all staff have completed training in this area and records are checked during service site visits.

Finding:
This requirement was MET.

**8.7 Planning and Evaluation**
Grantees must ensure that the project is competently and efficiently administered (42 CFR 59.5 (b) (6) and (7)).

Evidence that this requirement has been met includes written monitoring plans, documented periodic review of work plan progress, and timely, complete, and accurate submission of FPAR data.

Observations:
The program has a work plan that is updated at least annually, the program has also identified two quality assurance elements that are calculated and reported back to the service sites (the percentage of clients using LARCs and the no-show rate). FPAR submission was completed on-time with only one validation that involved only adding a note regarding local income not including in-kind goods or services.

Finding:
This requirement was MET.

**9.1 Low-Income Families**
Priority for project services is to persons from low- income families (Section 1006(c)(1), PHS Act; 42 CFR 59.5(a)(6)).

Evidence that this requirement has been met includes more than 50% of clients are at or below 100% FPL as reported on the FPAR and service site locations are accessible to low-income individuals.

Observations:
The 2014 and 2015 OSDH FPAR percentages for those under 100% FPL was 73%. Both clinics visited were on a bus line and OSDH operates at least one clinic in all but seven very rural counties.

Finding:
This requirement was MET.

**9.2 Dignity of the Individual**
Services must be provided in a manner which protects the dignity of the individual (42 CFR 59.5 (a)(3)).

Evidence that this requirement has been met includes appropriate policies, direct observation of clinic operations that indicate protection of client privacy, and documentation which outlines clients' rights and responsibilities.

Observations:
OSDH policies and procedures includes protecting client privacy, patient rights are posted, and all clients have a documented receipt of the HIPAA notification. In-take and financial interviews in one site visited, however, were open to the waiting room and could be heard by occupants in that area.

Finding:
This requirement was **NOT MET.**

OSDH **must** ensure that client privacy is maintained when collecting personal data.

**9.3 Non-Discrimination**
Services must be provided without regard to religion, race, color, national origin, disability, age, sex, number of pregnancies, or marital status (42 CFR 59.5 (a)(4)).

Evidence that this requirement has been met includes written policies and procedures stating non-discrimination, documentation that staff have been informed of non-discrimination policies, and documentation of monitoring of sub-recipients for non-discrimination.

Observations:
OSDH has policies and procedures regarding non-discrimination and staff sign a reminder at least once a project period regarding this requirement.

9

Aplt.App. 234

Finding:
This requirement was MET.

**9.4 Referral for Related Social Services**
Projects must provide for social services related to family planning including counseling, referral to and from other social and medical services agencies, and any ancillary services which may be necessary to facilitate clinic attendance (42 CFR 59.5 (b)(2)).

Evidence that this requirement has been met includes documentation that social service and medical needs of the community has been assessed and relevant services identified, sub-recipients are required to develop and implement plans to address relevant service needs, and current, written agreements with relevant referral agencies exist.

Observations:
OSDH completes a state-wide needs assessment and has developed written agreements with community health centers for cross-referrals between primary care and provision of contraceptives. The county health unit can provide in-house referrals for dietician/nutrition counseling, WIC, and dental. OCCHD has primary care referrals to the primary care clinic co-located with them and have a number of different written MOUs for various services. Additionally, clinics also provide clients with brochures regarding specialized services, such as transportation and social/medical services, but these do not have written agreements.

Finding:
This requirement was MET.

**9.5 Referral Arrangements**
Projects must provide for coordination and use of referral arrangements with other providers of health care services, local health and welfare departments, hospitals, voluntary agencies, and health services projects supported by other federal programs (42 CFR 59.5 (b)(8)).

Evidence that this requirement has been met includes written policies requiring plans to coordinate with other service providers and current, written agreements with relevant referral agencies exist.

Observations:
OSDH has a policy and procedure regarding referrals and written agreements with community health centers for cross-referrals between primary care and provision of contraceptives exist for some clinical issues, including the two sites visited.

Medical files included referrals for some clinical issues to outside service providers without a written agreement between the OSDH and the service provider. Such referrals do not follow OSDH policies and procedures or Title X requirements for written agreements.

Finding:
This requirement was **NOT MET.**

10

OSDH **must** ensure referrals meet Title X requirements.

### 9.9 Residency Requirements
Services must be provided without the imposition of any durational residency requirement or requirement that the client be referred by a physician (42 CFR 59.5(b)(5)).

Evidence that this requirement has been met includes written policies prohibiting imposition of residency requirement at the grantee and sub-recipient level.

Observations:
OSDH policies and procedures include a prohibition of any residency requirement for services and all staff have signed an annual reminder of this requirement.

Finding:
This requirement was MET.

### 9.12 Legislative Mandates
Title X grantees must comply with applicable legislative mandates set out in the HHS appropriations act. Grantees must have written policies in place that address these legislative mandates:

> "None of the funds appropriated in the Act may be made available to any entity under Title X of the Public Health Service Act unless the applicant for the award certifies to the Secretary of Health and Human Services that it encourages family participation in the decision of minors to seek family planning services and that it provides counseling to minors on how to resist attempts to coerce minors into engaging in sexual activities."

> "Notwithstanding any other provision of law, no provider of services under Title X of the Public Health Service Act shall be exempt from any State law requiring notification or the reporting of child abuse, child molestation, sexual abuse, rape, or incest."

Evidence that this requirement has been met includes written policies and procedures informing staff on a periodic basis of these requirements and documentation that staff have been formally informed of this requirement at least once during the project period, medical records document adolescents are encouraged to seek family participation.

Observations:
OSDH covers these requirements in their adolescent counseling policies and procedures (pages 1 and 2). In addition all staff sign an annual reminder of this requirement and these are on-file with the grantee. Medical records document this counseling for all adolescents.

Finding:
This requirement was MET.

### 10. Confidentiality

11

Aplt.App. 236

Appellate Case: Case 5:23-cv-01052-HE   Document: 010110825331   Date Filed: 01/24/2024   Page: 67

Every project must have safeguards to ensure client confidentiality. Information obtained by project staff about an individual receiving services may not be disclosed without the individual's documented consent, except as required by law or as may be necessary to provide services to the individual, with appropriate safeguards for confidentiality. Information may otherwise be disclosed only in summary, statistical, or other form that does not identify the individual (42 CFR 59.11).

Evidence that this requirement has been met includes written policies and procedures requiring safeguarding of client confidentiality, documentation that staff have been formally informed of this requirement at least once during the project period, clinical protocols have statements regarding client confidentiality, record systems adequately ensure privacy and confidentiality, clients are informed of HIPAA privacy forms, consent form or other documentation indicates clients are informed, materials regarding the availability of confidentiality are available to clients, and the physical layout allows for confidentiality and privacy.

Observations:
Systems are in place to ensure bills are not sent to clients requesting confidentiality, and staff note how to contact clients requesting such confidentiality. OSDH policies and procedures include protecting client privacy, patient rights are posted as well as all clients have a documented receipt of the HIPAA notification. In-take and financial interviews in one site visited, however, were open to the waiting room and could be heard by occupants in that area.

Finding:
This requirement was **NOT MET.**

OSDH **must** ensure that client privacy is maintained when collecting personal data.

### 11. Community Participation, Education, and Project Promotion

### 11.1 Community Participation
Title X grantees and sub-recipient agencies must provide an opportunity for participation in the development, implementation, and evaluation of the project by persons broadly representative of all significant elements of the population to be served; and by persons in the community knowledgeable about the community's needs for family planning services (42 CFR 59.5(b)(10)).

Evidence that this requirement has been met includes written policies and procedures to ensure participation of individuals broadly representative of the community in the project plan, a community engagement plan, and documentation of the implementation of the community engagement plan.

Observations:
OSDH has policy and procedures in place to ensure community participation. The program has a youth advisory team, the county health departments work with community groups to share program activities and information, and community representatives consult with potential clients to gain a broader perspective. All service sites must develop a community engagement plan and

12

submit it for review and approval at the state department level and report activities once a quarter.

13

Aplt.App. 238

Finding:
This requirement was MET.

## 11.2 Community Assessment Programs

Projects must establish and implement planned activities to facilitate community awareness of and access to family planning services (42 CFR 59.5(b)(3)). Each family planning project must provide for community education programs (42 CFR 59.5(b)(3)).

The community education program(s) should be based on an assessment of the needs of the community and should contain an implementation and evaluation strategy.

Evidence that this requirement has been met includes documentation of a periodic community needs assessment, a written community education and service promotion plan, documentation of an evaluation and modification to plan as needed.

Observations:
Service sites conduct client surveys and OSDH conducts a statewide needs assessment every three years. All service sites must develop a community engagement plan and submit it for review and approval at the state department level and report activities once a quarter.

Finding:
This requirement was MET.

## 11.3 Goals of Community Education

Community education should serve to:
- enhance community understanding of the objectives of the project,
- make known the availability of services to potential clients,
- encourage continued participation by persons to whom family planning may be beneficial

(42 CFR 59.5 (b)(3)

Evidence that this requirement has been met includes a plan that:
(a) states that the purpose is to enhance community understanding of the objectives of the project, make known the availability of services to potential clients, and encourage continued participation by persons to whom family planning may be beneficial
(b) promotes the use of family planning among those with unmet need,
(c) utilizes an appropriate range of methods to reach the community
(d) includes an evaluation strategy.
and that such a plan has been implemented.

Observations:
OSDH includes these elements as part of their policies and procedures, and all service sites must develop a community engagement plan and submit it for review and approval at the state department level and report activities once a quarter. The program has also developed brochures to share with potential clients

14

Finding:
This requirement was MET.

## 12. Information and Education (I&E) Materials Approval

### 12.1 The Approval Process

Title X grantees and sub-recipient agencies are required to have a review and approval process, by an Advisory Committee, of all informational and educational (I&E) materials developed or made available under the project prior to their distribution (Section 1006 (d)(2), PHS Act; 42 CFR 59.6(a)).

Evidence that this requirement has been met includes written policies and procedures regarding the review of all materials prior to use with clients and documentation that the committee has reviewed and approved them.

Observations:
OSDH has an active I&E Committee that reviews and approves brochures, etc. developed and distributed by the state office. Sites are also provided templates that can be used to develop site-specific information. These materials, however, were not reviewed or approved by the I&E committee. At both sites visited such unapproved materials were being distributed to clients.

Finding:
This requirement was **NOT MET.**

OSDH **must** ensure all I&E materials given to Title X clients have been reviewed and approved by the I&E committee.

### 12.2 The I&E Committee

The committee must include individuals broadly representative (in terms of demographic factors such as race, color, national origin, handicapped condition, sex and age) of the population or community for which the materials are intended (42 CFR 59.6 (b)(2).

Evidence that this requirement has been met includes an established board that is broadly representative of the population served, a process in place for sub-recipients, and documentation that the committee meets the representation requirement.

Observations:
The OSDH I&E Committee consists of seven individuals, primarily from the health department, but also some from the community. None are adolescents. One community representative does consult with youth in her project about materials she receives for review and another Youth Advisory Board also has input.

Finding:
This requirement was **NOT MET.**

Aplt.App. 240

OSDH **must** ensure the I&E Committee is broadly representative of the population, including youth.

### 12.3 Composition of the I&E Committee
Each Title X grantee must have an Advisory Committee of five to nine members, except that the size provision may be waived by the Secretary for good cause shown (42 CFR 59.6 (b)(1)). The Advisory Committee must review and approve all informational and educational (I&E) materials developed or made available under the project prior to their distribution to assure that the materials are suitable for the population and community for which they are intended and to assure their consistency with the purposes of Title X (Section 1006(d)(1), PHS Act; 42 CFR 59.6(a)).

Evidence that this requirement has been met includes policies and procedures regarding the committee, a current the roster/list of committee members, and current, written meeting minutes.

Observations:
The OSDH I&E Committee consists of seven individuals and policies and procedures are in place for its operations and meeting minutes exist with their review and decisions.

Finding:
This requirement was MET.

### 12.5 Delegation of I&E Functions
The grantee may delegate I&E functions for the review and approval of materials to sub-recipient agencies; however, the oversight of the I&E review process rests with the grantee.

Evidence that this requirement has been met includes policies and procedures that cover such delegation, monitoring of sub-recipients, and documentation of such monitoring.

Observations:
The OSDH supports the only I&E committee operating for the project.

Finding:
This requirement was **NOT APPLICABLE**

### 12.6 I&E Committee Responsibilities
The I&E Advisory Committee(s) must:
- Consider the educational and cultural backgrounds of the individuals to whom the materials are addressed;
- Consider the standards of the population or community to be served with respect to such materials;
- Review the content of the material to assure that the information is factually correct;
- Determine whether the material is suitable for the population or community to which it is to be made available; and
- Establish a written record of its determinations
(Section 1006(d), PHS Act; 42 CFR 59.6(b))

16

Aplt.App. 241

Evidence that this requirement has been met includes policies and procedures addressing these elements and documentation that all components are reviewed.

Observations:
OSDH I&E Committee deliberations include those elements required by federal regulations and records exist concerning their review and approval/disapproval of the materials.

Finding:
This requirement was MET.

### 13. Additional Administrative Requirements

### 13.1.1 Limited English Proficiency
Title X clinics must have written policies that are consistent with the HHS Office for Civil Rights policy document, Guidance to Federal Financial Assistance Recipients Regarding Title VI Prohibition Against National Origin Discrimination Affecting Limited English Proficient Persons (August 4, 2003) (HHS Grants Policy Statement 2007, II-23).

Evidence that this requirement has been met includes policies regarding the provision of language assistance and documentation that staff are aware of such policies.

Observations:
OSDH has policies and procedures regarding language assistance for those with limited English proficiency. Some staff at most sites are bilingual (usually Spanish), and those with other languages can have a translator by phone. One site posted the availability of translation services at the front desk and a large poster with a variety languages on a waiting room wall. The other site visited (recently relocated) posted the availability of translation services only in English.

Finding:
This requirement was **NOT MET.**

OSDH **must** ensure all clients, especially those with minimal to no ability in English, are aware of the availability of translation services.

### 13.1.2 Prohibition of Disability Discrimination
Projects may not discriminate on the basis of disability and, when viewed in their entirety, facilities must be readily accessible to people with disabilities (45 CFR 84).

Evidence that this requirement has been met includes policies and procedures that ensure those with a disability can access services, documentation regarding accommodations to disabled clients, and project sites free of any obvious barriers.

17

Observations:
OSDH has policies and procedures in place and the facilities were accessible to those with disabilities.

Finding:
This requirement was MET.

**13.2 Emergencies Management**
All grantees, sub-recipients and Title X clinics are required to have a written plan for the management of emergencies (29 CFR 1910, subpart E) and clinical facilities must meet applicable standards established by Federal State and local governments (e.g. local fire, building, and licensing codes).

Evidence that this requirement has been met includes current disaster plans, staff identification of emergency evacuation routes, documentation of staff training, recognizable and barrier-free exits, and documentation that sub-recipients are in compliance.

Observations:
OSDH has policies and procedures in place, staff are trained and a record of drills maintained, emergency exits are marked and maps indicating the exit routes are posted. OSDH monitors site compliance with policies and procedures as part of their regular site visits.

Finding:
This requirement was MET.

**13.3 Prohibition of Personal Gain**
Projects are required to establish policies to prevent employees, consultants, or members of governing/advisory bodies from using their positions for purposes that are, or give the appearance of being motivated by a desire for private financial gain for themselves or others (HHS Grants Policy Statement 2007, II-7).

Evidence that this requirement has been met includes policies that prohibit personal financial gain and documentation that grantees have assured sub-recipients are in compliance.

Observations:
OSDH policies and procedures cover this prohibition in its administrative policies and sub-recipients are monitored for compliance.

Finding:
This requirement was MET.

**13.4 Human Subjects Research**
Research conducted within Title X projects may be subject to Department of Health and Human Services regulations regarding the protection of human subjects (45 CFR Part 46). The grantee/sub-recipient should advise their Regional Office in writing of any research projects that involve Title X clients (HHS Grants Policy Statement 2007, II-9).

18

Evidence that this requirement has been met includes written policies regarding the use of human subjects and documentation that grantees have assured sub-recipients are in compliance.

Observations:
OSDH has policies and procedures in place regarding human subjects research and includes such requirements in the contract for any sub-recipients. Sub-recipients are also monitored for compliance.

Finding:
This requirement was MET.

19

# Title X Program Requirements

*Financial Aspects*

### 8.2 Prohibition on Abortion
Title X grantees and sub-recipients must be in full compliance with Section 1008 of the Title X statute and 42 CFR 59.5(a)(5), which prohibit abortion as a method of family planning.

Systems must be in place to assure adequate separation of any non-Title X activities from the Title X project.

Observations:
Oklahoma State Department of Health Maternal and Child Health policies and procedures, including the sub-recipient contract reviewed contain provisions prohibiting abortion as a method of family planning.

Finding:
This requirement was MET.

### 8.3 Structure and Management

### 8.3.3 Purchase Authorization
The grantee must ensure that all services purchased for project participants will be authorized by the project director or his designee on the project staff (42 CFR 59.5(b)(7)).

Evidence that this requirement has been met includes policies and procedures providing for a purchase approval process and documentation of purchases following appropriate policies and procedures.

Observations:
Oklahoma State Department of Health procurement policies and procedures provide and allow for the Title X Project Director to review and approve Title X-related purchases.

Finding:
This requirement was MET.

### 8.3.4 Contracted Services Follow Established Schedule of Fees
The grantee must ensure that services provided through a contract or other similar arrangement are paid for under agreements that include a schedule of rates and payment procedures maintained by the grantee. The grantee must be prepared to substantiate that these rates are reasonable and necessary (42 CFR 59.5(b)(9)).

Evidence that this requirement has been met includes a schedule of payments as part of the contract and the costs for services have a documented basis for rates.

20

Observations:
The sub-recipient agreement contains a voucher submission process and procedures and the amount of the sub-award.

Finding:
This requirement was MET.

**8.3.6 Financial Management System**
The grantee and each sub-recipient must maintain a financial management system that meets Federal standards, as applicable, as well as any other requirements imposed by the Notice of Award, and which complies with Federal standards that will support effective control and accountability of funds, as required (45 CFR parts 74.20 and 92.20).

Evidence that this requirement has been met includes financial policies and procedures references to appropriate federal regulations and records and other documentation to indicate practices align with Title X and other federal regulations.

Observations:
A review of recipient and sub-recipient financial policies and procedures reference 45CFR74 remain applicable and have not been updated include 45CFR75 and 2CFR 200 Part D.

Finding:
This requirement was **NOT MET**.

The OSDH NOA dated March 24, 2015 requires compliance with 2 CFR Part 200 and 45 CFR Part 75 which replace 45CFR Part 74 or 92. Accordingly, OSDH **must** update its financial policies and procedures to be consistent with 2 CFR Part 200 and 45 CFR Part 75.

**8.4 Charges, Billings, and Collections**

**8.4.1 Charges to Those Below 100% of Federal Policy Levels and Third-Party Payers**
Clients whose documented income is at or below 100% of the Federal Poverty Level (FPL) must not be charged, although projects must bill all third parties authorized or legally obligated to pay for services (Section 1006(c)(2), PHS Act; 42 CFR 59.5(a)(7)).

Evidence that this requirement has been met includes financial policies and procedures regarding collection of clients' income data, including legally accessing income information from another program or clients self-reported income; documentation that those below 100% FPL are not charged; and the income reporting process does not create a barrier to receipt of services.

Observations:
Recipient and sub-recipient billing and collection policies require clients whose documented income is at or below 100% must not be charged while third parties authorized and/or legally obligated to pay for services must be billed. Policies also prohibit denying services to persons with an inability to pay. Additional policies require providing services to clients unable to document their income.

21

Aplt.App. 246

Finding:
This requirement was MET.

**8.4.2 Schedule of Discounts**
A schedule of discounts, based on ability to pay, is required for individuals with family incomes between 101% and 250% of the Federal Poverty Level (FPL) (42 CFR 59.5(a)(8)).

Evidence that this requirement has been met includes financial policies and procedures regarding development of a schedule of discounts and documentation that these discounts are applied appropriately.

Observations:
Both the recipient and sub-recipient had a schedule of discounts based on ability to pay as determined by the sliding fee scale and applicable to clients with family incomes between 101% and 250% of the current FPL. The recipient's practice management system, Public Health Oklahoma Client Information System (PHOCIS) which the sub-recipient is also required to use, calculates the appropriate discount based on inputted client family size and income data.

While the written policy states that clients with family incomes between 101% and 250% of FPL do not pay more in co-payments or additional fees than they would otherwise pay when the schedule of discounts is applied, discussion with front desk staff and review of patient registration information indicate the sliding fee scale is not applied to insurance co-pays and deductibles.

Finding:
This requirement was **NOT MET**.

OSDH **must** ensure staff follow its policy regarding the application of the Title X sliding fee scale to co-payments or additional fees for clients with family incomes between 101% and 250% of FPL.

**8.4.3 Waiving of Fees**
Fees must be waived for individuals with family incomes above 100% of the FPL who, as determined by the service site project director, are unable, for good cause, to pay for family planning services (42 CFR 59.2).

Evidence that this requirement has been met includes policies and procedures for waiving fees and documentation that any determination to waive the fee is made by the service site director, is documented and the client is informed of the determination.

Observations:
OSDH has a written policy for the service site administrator to waive fees for those with "good cause." Staff, however, do not appear to distinguish between waiving fees under such circumstances and extending credit for those unable to pay. In addition, OSDH procedures do not indicate how clients are to be made aware of this option or the steps involved for staff to

22

Appellate Case: 24-6073   Document: 010111031253   Date Filed: 04/03/2024   Page: 78

complete such documentation for the administrator, or MCH for other circumstances, to make that decision. At present, OSDH staff exercises a de facto fee waiver when client account balances are allowed to accrue until they are written off as uncollectible.

Finding:
This requirement was **NOT MET**.

OSDH **must** develop and implement effective procedures to ensure Title X client fees are waived as indicated by policies.

**8.4.4 Determining the Cost of Services**
For persons from families whose income exceeds 250% of the FPL, charges must be made in accordance with a schedule of fees designed to recover the reasonable cost of providing services. (42 CFR 59.5(a)(8)).

Evidence that this requirement has been met includes policies and procedures for determining the cost of services and documentation that charges are applied appropriately.

Observations:
OSDH has policies and procedures in place regarding the development and approval of both the state and contractor fee schedules. The fee schedule currently in use by one sub-recipient, while approved by OSDH, is below both what the sub-recipient needs to recover its reasonable costs as well as that used by OSDH. No justification for the approval of such a fee schedule in deviation to Title X requirements was provided.

Finding:
This requirement was **NOT MET**.

OSDH **must** ensure approval of contractor Title X fee schedules provide a justification when deviating from Title X requirements.

**8.4.5 Charges for Confidential Services**
Eligibility for discounts for un-emancipated minors who receive confidential services must be based on the income of the minor (42 CFR 59.2).

Evidence that this requirement has been met includes policies and procedures for determining if the minor is seeking confidential services and charging the minor based on his/her own income and documentation that charges are applied appropriately.

Observations:
OSDH policies and procedures require a minor seeking confidential services be charged based solely on his or her income, and record reviews and front staff interviews confirmed this practice.

Finding:
This requirement was MET.

Appellate Case: 24-6040 Document: 010111025533 Date Filed: 04/09/2024 Page: 79

### 8.4.6 Third Party Payment

Where there is legal obligation or authorization for third party reimbursement, including public or private sources, all reasonable efforts must be made to obtain third party payment without the application of any discounts (42 CFR 59.5(a)(9)).

Family income should be assessed before determining whether copayments or additional fees are charged. With regard to insured clients, clients whose family income is at or below 250% FPL should not pay more (in copayments or additional fees) than what they would otherwise pay when the schedule of discounts is applied.

Evidence that this requirement has been met includes policies and procedures regarding billing third parties and assessing co-pays, contracts with third party payers, and a review of records indicates appropriate assessment and charges.

Observations:
OSDH participates in Medicaid, Medicare and has contracts with three private third-party payers and bills for services. See section 8.4.2 regarding the application of the sliding fee schedule to co-pays and other fees.

Finding:
This requirement was MET.

### 8.4.6 Title XIX and Title XX Reimbursements

Where reimbursement is available from Title XIX or Title XX of the Social Security Act, a written agreement with the Title XIX or the Title XX state agency at either the grantee level or sub-recipient agency is required (42 CFR 59.5(a)(9)].

Evidence that this requirement has been met includes up-to-date written agreements at both the grantee and/or sub-recipient level.

Observations:
Both OSDH and the sub-recipient visited have policies and procedures regarding participation in both the Medicaid and Medicaid waiver program. Accounts receivable records indicate reimbursements are received from these programs.

Finding:
This requirement was MET.

### 8.4.8 Fee Collection

Reasonable efforts to collect charges without jeopardizing client confidentiality must be made.

Evidence that this requirement has been met includes policies and procedures providing safeguards that protect client confidentiality, particularly in cases where sending an explanation of benefits could breach client confidentiality, and documentation at service sites demonstrating the sites maintain confidentiality when billing and collecting payments.

24

Observations:
OSDH and sub-recipient policies and procedures include adequate safeguards to protect client confidentiality, including cases where sending an explanation of benefits could breach client confidentiality. In addition clinic front desk staff were observed implementing the policy.

Finding:
This requirement was MET.

### 8.4.9 Voluntary Donations
Voluntary donations from clients are permissible; however, clients must not be pressured to make donations, and donations must not be a prerequisite to the provision of services or supplies.

Evidence that this requirement has been met includes policies and procedures that provide for voluntary donations and documentation and observation of requests for donations indicate no pressure for such payments.

Observations:
OSDH policies and procedures allow for voluntary donations and prohibit clinic staff from pressuring clients for donations. Direct observations of clinic processes demonstrated that the policy was being followed.

Finding:
This requirement was MET.

### 8.5 Project Personnel

### 8.5.5 Salary Limits
Appropriate salary limits will apply as required by law.

Evidence that this requirement has been met includes budgets and payroll records correspond to the most current family planning services Funding Opportunity Announcement (FOA).

Observations:
OSDH and sub-recipient budgets and staff assurances indicate adherence to appropriate salary limits as required by law and stipulated in the NOA.

Finding:
This requirement was MET.

### 10. Confidentiality
Every project must have safeguards to ensure client confidentiality. Information obtained by project staff about an individual receiving services may not be disclosed without the individual's documented consent, except as required by law or as may be necessary to provide services to the individual, with appropriate safeguards for confidentiality. Information may otherwise be

25

disclosed only in summary, statistical, or other form that does not identify the individual (42 CFR 59.11).

Evidence that this requirement has been met includes third-party billing does not breach confidentiality.

Observations:
OSDH policies contain safeguards, including procedural requirements to ensure patient confidentiality on all forms.

Finding:
This requirement was MET.

26

Aplt.App. 251

Appellate Case: 24-6058   Document: 010311082533   Date Filed: 07/03/2024   Page: 82

## Title X Requirements

*Clinical*

### 8.1.2 Prohibition of Prerequisite for Other Services

Clients are aware that receipt of family planning services is not used as a prerequisite for receipt of other services from the service site.

Medical record review demonstrates that each client has signed a general consent form or other documentation indicating they are aware that receipt of family planning services is not a prerequisite for receipt of any other services offered.

Observations:
Medical records reviewed include the family planning risk and benefit form that includes this notification.

Finding:
This requirement was MET.

### 8.5 Project Personnel

### 8.5.4 Medical Director

Projects must provide that family planning medical services will be performed under the direction of a physician with special training or experience in family planning (42 CFR 59.5 (b)(6)).

Evidence that this requirement has been met includes documentation that 1) a physician is involved in medical/clinical services, 2) the Medical Director is involved in program operations, 3) the curriculum vitae indicates training or experience in family planning, and 4) clinical protocols are approved by the Medical Director.

Observations:
The project Medical Director, Dr. Pamela S. Miles, is an OB/GYN practitioner and professor with appropriate credentials who takes an active role in the program.

Finding:
This requirement was MET.

### 9.4 Referral for Related Social Services

Projects must provide for social services related to family planning including counseling, referral to and from other social and medical services agencies, and any ancillary services which may be necessary to facilitate clinic attendance (42 CFR 59.5 (b)(2)).

Evidence that this requirement has been met includes documentation that referrals were made based on specific conditions/issues.

27

Observations:
OSDH medical records reviewed indicates a robust referral network available to reproductive health clients with appropriate follow up.

Finding:
This requirement was MET.

**9.6 Clinical Protocols**
All grantees should assure services provided within their project operate within written clinical protocols that are in accordance with nationally recognized standards of care, approved by the grantee, and signed by the physician responsible for the service site.

Evidence that this requirement has been met includes written clinical policies and procedures that are aligned with nationally recognized standards of care and signed by a responsible physician, grantee monitoring of sub-recipients' policies for alignment with nationally recognized standards of care, and client records indicating services follow protocols.

Observations:
The OSDH Medical Director approved and signed all clinical protocols. Review of the protocols indicates they are based on nationally recognized standards promoted by ACOG and the USPTF.

Finding:
This requirement was MET.

**9.7 Provision of Family Planning Related Medical Services**
All projects must provide for medical services related to family planning and the effective usage of contraceptive devices and practices (including physician's consultation, examination, prescription, and continuing supervision, laboratory examination, and contraceptive supplies) as well as necessary referrals to other medical facilities when medically indicated (42 CFR 59.5(b)(1)). This includes, but is not limited to, emergencies that require referral.

Evidence that this requirement has been met includes written policies and procedures requiring family planning-related medical services, provision of breast and cervical cancer screening on-site, and written agreements with relevant referral agencies exist.

Observations:
Review of documents and direct observation of interaction of clinic personnel with clients indicate that grantee is providing comprehensive family planning services including breast and cervical cancer screening as well as appropriate referrals.

Finding:
This requirement was MET.

Aplt.App. 253

Appellate Case: 24-6063 Document: 010111031353 Date Filed: 04/09/2024 Page: 84

### 9.8 A Broad Range of Contraceptives

All Title X projects must provide a broad range of acceptable and effective medically approved family planning methods (including natural family planning methods) and services (including infertility services and services for adolescents).

If an organization offers only a single method of family planning, it may participate as part of a project as long as the entire project offers a broad range of family planning services. (42 CFR 59.5(a)(1)).

Evidence that this requirement has been met includes medical records indicating provision of a broad-range of contraceptives; all services, when viewed as a whole, providing a broad range, with current stocks offering a broad range on-site or by referral; clinical protocols covering contraception, pregnancy testing and counseling, services for achieving pregnancy, STD services and preconception health services; and documentation that the grantee ensures sub-recipients comply with these requirements.

Observations:
All OSDH clinical sites visited during this program review offer a broad range of contraceptive options to the patient population. These include hormonal and non-hormonal options. Related services such as pregnancy testing, counseling, preconception and infertility services are readily available.

The program director, however, reports demand for long-acting reversible contraception (LARCs) exceeds current supplies, and some clinics keep a waiting list for those who desire such a method, but are unable to receive it because of limited availability. The OCCHD is able for referral, but is not convenient for clients with limited transportation options.

Finding:
This requirement was MET.

Recommendation:
OSDH **should** budget additional funds to ensure an adequate supply of LARCs for all clinics.

### 9.10 Pregnancy Diagnosis and Counseling

Projects must provide pregnancy diagnosis and counseling to all clients in need of these services (42 CFR 59.5(a)(5)).

Evidence that this requirement has been met includes a written policy requiring provision of pregnancy diagnosis and counseling and clinic inventory and client record reviews indicate services were offered to all clients.

Observations:
Pregnancy diagnosis and counseling are available to all OSDH clients requesting this service. Medical records indicate appropriate counseling and follow up are completed for clients.

Finding:
This requirement was MET.

**9.11 Pregnancy Options Counseling**
Projects must offer pregnant women the opportunity to be provided information and counseling regarding each of the following options:

•     Prenatal care and delivery;
•     Infant care, foster care, or adoption; and
•     Pregnancy termination.

If requested to provide such information and counseling, Title X staff must provide neutral, factual information and nondirective counseling on each of the options, and referral upon request, except with respect to any options(s) about which the pregnant woman indicates she does not wish to receive such information and counseling (42 CFR 59.5(a)(5)).

Evidence that this requirement has been met includes written policies and procedures regarding options counseling that are neutral and factual, referrals provided as requested, and medical records document such counseling and referrals.

Observations:
OSDH policies and procedures guide staff through options counseling.  Medical records indicate appropriate counseling and necessary follow up have been documented.

Some of the materials provided clients, however, have **not** been reviewed and approved by the I&E committee (see Administrative finding 12.1)

Finding:
This requirement was MET.

30

Aplt.App. 255

## Quality Family Planning Implementation Assessment

This portion of the assessment follows the recommendations detailed in *Providing Quality Family Planning Services: Recommendations of CDC and the U.S. Office of Population Affairs (QFP)*, which focuses on service provision consistent with the best available scientific evidence.

### 8.1 Voluntary Participation

### 8.1.1 Client-Centered Services

A core premise of Recommendations for Providing Quality Family Planning Services is that quality services are client-centered.
The key principles of providing quality, client-centered counseling include:
1) establish and maintain rapport with the client
2) assess the client's needs and personalize discussions accordingly
3) work with the client interactively to establish a plan
4) provide information that can be understood and retained by the client
5) confirm client understanding (See Appendix C of QFP for additional detail.)

Observations:
OSDH policies and procedures support client-centered services and counseling. Observation of interactions of medical staff with clients demonstrated good interaction between client and providers, and clients are encouraged to actively participate in their health care.

Finding:
This Quality Aspect is FULLY DEVELOPED.

### 8.7 Planning and Evaluation

Grantees should evaluate implementation of quality family planning services following the QFP framework, monitoring performance and improving efforts on an on-going basis.
quality improvement (QI) activities should include:
1) Monitoring the use of most- or moderately-effective contraceptive methods and long-acting reversible contraceptives
2) On-going QI processes related to contraceptive use
3) Monitoring contraceptive use at the service-site level
4) On-going QI processes at the service site level to respond to contraceptive use findings
5) QI efforts at the service site level related to other aspects of quality care
6) Use of HIT data to increase QI efforts

Observations:
The OSDH program has encouraged the use of LARCs, creating such a demand that not all requests can be filled immediately. OSDH clients were above the national average for adolescents and women using highly effective and moderately effective contraceptives. The program uses the percentage of women using LARCs at the service as part of their quality assurance process. The program does not have an electronic health record and as such, is limited in the ability to analyze data from the service sites.

31

Aplt.App. 256

Appeal Date Case Case 0 3 60 65 Document 1 1 31 2 53 Date Date Filed 5 2 4 2 2 4 2 2 4 2 2 Page Page e: 87

Finding:
This Quality Aspect is **PARTIALLY DEVELOPED.**

Recommendation:
OSDH **should** develop its HIT/EHR capabilities to allow for more efficient and accurate QA/QI monitoring.

## 9.2 Client-Centered Services
Quality services are client-centered, which includes providing services in a respectful and culturally competent manner, and are evidenced by:
1) A needs assessment to determine groups needed culturally competent care
2) Written policies and procedures requiring training in culturally competent care
3) Documentation that staff have received such training
4) Observation of a welcoming clinic environment
5) Client surveys document respectful treatment

Observations:
OSDH completed a needs assessment and identified priority populations to be served. The program has a completed a series of mandatory cultural competence trainings on a variety of different populations and staff completion is documented. Policies and procedures include a waiving of fees for good cause and client surveys indicate the majority of clients view staff as respectful.

Finding:
This Quality Aspect is FULLY DEVELOPED.

## 9.6 Clinical Protocols
Protocols follow QFP and are evidenced by:
1) Covering the full scope of QFP-defined family planning services
2) Sub-recipient protocols reflect latest QFP recommendations
3) Documentation of QFP training
4) Client records indicate services per QFP Tables 2 and 3

Observations:
OSDH clinical protocols include the full scope of family planning services indicated by QFP, medical records document that providers follow these protocols and clinicians have been trained on QFP.

Finding:
This Quality Aspect is FULLY DEVELOPED.

## 9.8 Adolescent Services
The special needs of adolescents are addressed by:
1) Offering all services listed in the QFP
2) No out-stock of routinely offered contraceptives occurred in the past 6 months
3) FPAR data indicate services to adolescents close to or above the national average

32

4) FPAR data indicate services to males close to or above the national average
5) Medical records indicate adolescents have been counseled about abstinence, condoms and LARCs

Observations:
OSDH supports a full complement of reproductive health services is available to adolescents including a broad range of contraceptive methods. Appropriate counseling is provided. FPAR data indicate OSDH serves more than the national average for adolescents and less than the national average for males. At one site visited, the percentage of teen clients is below both the grantee's and national averages, but staff are aware of the issue and are working to increase the number served.

Finding:
This Quality Aspect is PARTIALLY DEVELOPED.

Recommendation:
OSDH **should** strategies to promote services among adolescents and males.

**9.10 Pregnancy Testing and Counseling**
Pregnancy testing and counseling services should include:
1) Written protocols follow QFP recommendations, including reproductive life planning
2) Medical records indicate clients with positive pregnancy tests receive prenatal counseling and social support assessment
3) Medical records indicate clients with a negative pregnancy test who wish not to become pregnant are offered same-day contraception
4) Staff are trained in QFP pregnancy testing and counseling recommendations
5) Medical records and observation indicate pregnancy counseling follows QFP recommendations, including reproductive life planning

Observations:
OSDH policies and procedures comply with QFP recommendations, and medical records indicate that appropriate testing and counseling is taking place at the clinical level. All clients completed a checklist that includes the reproductive life planning elements. Referral systems are in place for pregnant clients

Finding:
This Quality Aspect is FULLY DEVELOPED.

**13.1 Limited English Proficiency**
Providing services or materials to those with Limited English Proficiency include:
1) Materials are clear and easy to understand (e.g. 4th-6th-grade reading level)
2) Observation demonstrates that information is presented in a way that emphasizes essential points
3) Observation demonstrates that information on risks and benefits of different contraceptives or procedures are communicated in a way that is easily understood
4) Information provided during counseling is culturally appropriate

Aplt.App. 258

Appellate Case: 24-6060   Document: 010111031153   Date Filed: 07/24/2024   Page: 89

5) Educational materials are tailored to literacy

Observations:
Information is available to clients in English and Spanish, and a significant number of staff is bilingual (English/Spanish). A language line is available for instances in which a translator is not present (See Administrative section 13.1.1 regarding client notification of services). Cultural competency training covers a variety of different aspects throughout the year, and observations indicate clients receive counseling at appropriate levels.

Finding:
This Quality Aspect is FULLY DEVELOPED.

34

Appellate Case: 24-6063   Document: 010111053153   Date Filed: 04/02/2024   Page: 90

EXHIBIT 2



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**

**Office of the Assistant Secretary for Health**

**Regional Health Administrator**
Region VI
1301 Young Street
Suite 1124
Dallas, TX  75202

June 28, 2016

Terry L. Cline, Ph.D.
Commissioner of Health
Oklahoma State Department of Health
1000 NE 10th
Oklahoma City, OK 73117

RE: Grant Number FPHPA066194

Dear Dr. Cline:

The Federal Title X program review for the Oklahoma State Department of Health was conducted May 2-5, 2016.  Your Title X program supports excellent projects and activities and we applaud your efforts to increase services and quality throughout the system.

The purpose of the review is to provide the Regional Office with an evaluation of the Oklahoma State Department of Health's compliance with the Title X requirements and alignment with the Quality Family Planning (QFP) guidelines as set out in *Providing Quality Family Planning Services: Recommendations of CDC and the U.S. Office of Population Affairs*. This report addresses the administrative, fiscal, and clinical aspects of the Title X program and provides information to continue to strengthen your efforts.

I would like to highlight some of the review's major findings. Overall, the reviewers were impressed with the dedication and commitment to family planning in both the central office staff as well as in the field. Required areas to be addressed include:
- Ensuring client privacy during intake and financial interviews (see page 12)
- Ensuring clients with limited English proficiency are aware of translation services available to them (page 16)
- Ensuring appropriate application of Title X requirements with respect to charges on the sliding fee schedule (page 21)

With respect to quality family planning guidelines, many aspects of OSDH's program are fully developed, but some policies and procedures require modification to be in alignment with QFP recommendations (see pages 30-33).

Please review the report and respond to the findings in writing with a plan of action to address them by August 5, 2016.

On behalf of the site assessment review team, I want to thank you and all of your staff for the cooperation and hospitality extended during the visit. If you or your staff have any questions concerning any items in the report, please contact Dr. Liese Sherwood-Fabre at (214) 767-3060.

Sincerely,

Epifanio (Epi) Elizondo, Ph.D., PA-C
Regional Health Administrator, Region VI
Rear Admiral, Assistant Surgeon General,
U.S. Public Health Service

Attachment
cc:  GrantSolutions
     Joyce Marshall, MPH
     Jill Nobles-Botkin, APRN-CNM

*PROGRAM REVIEW*
*TITLE X FAMILY PLANNING PROJECT*
*OKLAHOMA STATE DEPARTMENT OF HEALTH*

**May 2-5, 2016**

Aplt.App. 262

Appellate Case: 24-6063 Document: 010111031253 Date Filed: 07/24/2024 Page: 93

## TABLE OF CONTENTS

Background Information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Overview of Project . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

Administrative Program Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Financial Program Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

Clinical Program Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

Quality Family Planning Recommendations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

i

Aplt.App. 263

## BACKGROUND INFORMATION

**Grantee Name:**      Oklahoma State Department of Health

**Grantee Number:**    FPHPA066194

**Project Address:**   1000 NE 10th Street
                       Oklahoma City, Oklahoma 73117

**Site Visit Dates:**  May 2- 5, 2016

**Program Review Team Members:**

| | |
|---|---|
| Liese Sherwood-Fabre, PhD | Administrative/Community Outreach and Education Review Team Leader |
| Lawrence Peaco, MPA | Financial Services |
| Cristino Rodriguez, FNP-C | Clinical Services |

**Department of Health and Human Services (DHHS) Region VI Staff:**
Liese Sherwood-Fabre, PhD

**Department of Health and Human Services (DHHS) Region VI Staff:**

<u>May 2, 2016 Briefing</u>
Oklahoma State Department of Health

Nancy Bacon, Nutrition Consultant
Ann Benson, Advanced Practice Coordinator
Joni Bruce, Oklahoma Family Network Executive Director
Dawn Butler, MCH Administrative Support
Peggy Byerly, Early Childhood Coordinator
Jeanette Cline, QI Coordinator
Dana Coles, Perinatal and Reproductive Health Epidemiologist
Mark R. Densett, Community and Family Health Services
Angela Dickson, Public Health Social Work Coordinator
Ira Farley, Health Educator
Tony Fleshmann, Nurse Manager
Shannon Gormley, Executive Assistant, MCH
Audie Hamman, Internal Audit Manager
Neil Hann, Assistant Deputy, CFHS Administration
Mack S. Harris, Financial Services, Grants Reporting
Ashley Hillemeyer, Interim Agency Procurement Officer
Jay Holland, Director, Internal Auditor
Ashley Hoobler, MCH-CAH Health Educator
Ayesha Lampkins, PRAMS/Tots Program Manager
Alicia Lincoln, Child and Adolescent Health
Lynette Mackey, Nurse Practitioner

ii

Carolyn Marriott, Contract Monitor
Joyce Marshall, Director, MCH Services
Gunnar McFadden, Administrative Coordinator
Pam Miles, Medical Consultant, Title X
Jill Nobles-Botkin, MCH/PRH Administrative Program Manager
Paul Patrick, MCH Assessment
Edd Rhoades, Medical Director, Community and Family Health
Angela Steinle, Social Work Intern
Amy Terry, MCH/CAH Adolescent Health Coordinator
Sean Tomlinson, Financial Management
Mick Truitt, Assistant CFO
LaBetta Wallenmeyer, NP Consultant
Shirley Ward, Administrative Assistant, PRH


May 3, 2016
Comanche County Health Department

Nancy Bacon, MCH Nutrition Consultant/State Review Team Lead
Marquise Bishop, CCHD-HE
Gail Byber, Business Manager
Patsy Cooper, NP
Sharlet Rena Evans, District Nurse Manager
Tony Fleshman, RN
Lana Fry, Administrative Assistant, Clerical Support
Sarah Lambaria, Health Educator
Ayesha Lampkins, MCH Consultant (PRAMS/ToTs Project Manager)
Joyce Marshall, MCH Director, OSDH
Leah Mays, RN
Nicki McCray, MA
Johnette Miller, APO
LaCresha Mitchel, Front Desk Clerk
Jill Nobles-Botkin, PRH Administrative Program Manager
Brandie O'Connor, Regional Director
Bob Richardson, Internal Auditor II
LaBetta Wallenmeyer, NP Consultant
Sarah Whittington, RN II
Zachery Williams, Internal Auditor II
Melissa Wilson, Records Consultant


May 4, 2016
Oklahoma City-County Health Department (OCCHD)

Tiffany Elmore, OCCHD, Administrator of Clinical Services
Lacey Gann, RN
Karina Hernandez, Front Desk Clerk

iii

Aplt.App. 265

Appellate Case Case 5:23-cv-01052-HE Document 31-1 Date Filed 03/04/2024 Page 96

Kaitlin Hostetter, Public Health Nurse
Jenny LeGrande, Public Health Nurse, Supervisor
Joyce Marshall, OSDH, MCH Director
Patrick McGough, Deputy Director, OCCHD
Tony Miller, Director of Finance, OCCHD
Jill Nobles-Botkin, OSDH, Perinatal and Reproductive Health
Kerri Stewart, Public Health Nurse, Clinical Supervisor
Joyce Tow, CNP
Diane Wermy, Office Manager

May 5, 2016 Debriefing:
Oklahoma State Department of Health

Nancy Bacon, Nutrition Consultant
Joni Bruce, Oklahoma Family Network Executive Director
Dawn Butler, MCH Administrative Support
Peggy Byerly, Early Childhood Coordinator
Jeanette Cline, QI Coordinator
Dana Coles, Perinatal and Reproductive Health Epidemiologist
Ira Farley, Health Educator
Tony Fleshmann, Nurse Manager
Shannon Gormley, Executive Assistant, MCH
Neil Hann, Assistant Deputy, CFHS Administration
Mack S. Harris, Financial Services, Grants Reporting
Ashley Hoobler, MCH-CAH Health Educator
Ayesha Lampkins, PRAMS/Tots Program Manager
Lynette Mackey, Nurse Practitioner
Carolyn Marriott, Contract Monitor
Joyce Marshall, Director, MCH Services
Pam Miles, Medical Consultant, Title X
Jill Nobles-Botkin, MCH/PRH Administrative Program Manager
Paul Patrick, MCH Assessment
Angela Steinle, Social Work Intern
Amy Terry, MCH/CAH Adolescent Health Coordinator
LaBetta Wallenmeyer, NP Consultant

## Materials Supplied Prior to the Visit
*FORMS*

335 Early Start Consent Form
336 Emergency Contraception Consent Form
393 Family Planning Initial/Annual Visit
395 Pregnancy Screening
637 Emergency Contraception History & Assessment
657 Early Start Depo History & Exam
873 Early Start Oral Contraceptive History & Assessment

iv

875 Family Planning Problem Visit
876 Family Planning Counseling & Education
1010 Etonogestrel Implant/Removal Procedure
Birth Control Guide
ODH 303C Consent for Services (English & Spanish)
303L Screening and Test Results
330 Contraceptive Follow-Up Form
ODH337 Natural Family Planning Fact Sheet
ODH337B Birth Control Fact Sheet
ODH337C IUD Fact Sheet
ODH337D Diaphragm Fact Sheet
ODF337F Spermicide Fact Sheet
ODH337H Male Condom Fact Sheet
ODH337I Patch Fact Sheet
ODH337J Vaginal Ring Fact Sheet
ODH337K Implantable Rod Fact Sheet
ODH337L Sponge Fact Sheet
ODH337M Emergency Contraception Fact Sheet
ODH340 Birth Control Shot Fact Sheet
ODH638 Early Start History & Assessment Combined Hormonal Contraception (Pill, Patch, Ring)
ODH902 Missed Oral Contraceptive Pill Fact Sheet (Bilingual)
ODH903 Missed Vaginal Ring Contraceptive Fact Sheet
904 Missed Transdermal Patch Fact Sheet
ODH1055 Client Visit History & Allergies
ODH1105 Basic Infertility Visit
ODHP348B Osteoporosis
P337 IUC Insertion Procedure
P338 Family Planning Services Risk & Benefit Sheet
P348 Vitamins and Using the Pill

*FAMILY PLANNING POLICY AND PROCEDURES MANUAL*

*QUALITY ASSURANCE/QUALITY IMPROVEMENT*
CCPP 2016 – County Community Participation, Education, and Project Promotion Plan Template
CHD (County Health Department) Annual Monitoring Site Visit Tool
Comprehensive Program Review (CPR)
      CPRTeam Evaluation Summaries for 2015 and 2016
      Federal and State Required Posters
      Minutes MCH Comprehensive Program Review Staff Meeting
SV TOOL – Site Visit Tool Family Planning Chart Audit
SV TOOL – List of County Documents to Have Ready
SV TOOL – Administrative Tool
SV TOOL – Financial Tool
SV TOOL – Public Health Enabling Tool

SV TOOL – Clinical Services Tool
Team Evaluations for Comprehensive Program Review
Client Satisfaction Survey (English & Spanish)
Survey Monkey CARS (Community Activity Reporting)
Survey Monkey QI (Quality Improvement Reporting)

*TRAINING*
Community Participation & QI Training 3/30/15
MCH Training Calendar SFY 2016
Needs Assessment Results 2015-2016

*EDUCATIONAL MATERIAL*
FP Services Brochure
Men's Health Brochure
Women's Health Assessment

*ORIENTATION*
MCH Orientation Manual
New Employee Orientation Signature Sheet

Memoranda of agreement with other programs

**Documents reviewed at the Clinic Level**

Constitution and by-laws of Advisory board, if delegated to site
Annual reports
Financial records, including any audits completed
Certificate/reports: fire inspection, state licensure, sanitation, CLIA, OSHA, ADA
Internal medical audit policies and procedures
Emergency and Disaster plans (medical and non-medical)
Clinic education brochures, public information materials—Site-specific and OSDH-supplied
The schedule of discounts for clients at/below 250% of poverty level for sub-recipients
Client Sterilization records
Abnormal laboratory results and follow-up records
Documentation of community education and outreach
Pharmacy Records, especially of any stock-outs
Client charts: Initial visit, return visit, adolescents, males and pregnancy-test only clients

vi

*OVERVIEW OF THE PROJECT*

**History and Development**
The Oklahoma State Department of Health (OSDH) and State Board of Health were created with the passage of the Oklahoma Public Health Code on July 1, 1963. The State Department of Health was to consist of the Commissioner of Health and such divisions, sections, bureaus, office and positions as established by the Board of Health and by law. Currently state health services are organized under a Governor-appointed Secretary for Health. The current Commissioner of Health is also the Secretary of Health.

**Description of the Program**
The Oklahoma State Department of Health Family Planning Program (OSDH FPP) is administered within the Perinatal and Reproductive Health Division of the Maternal & Child Health Service, a part of the Community & Family Health Services. The OSDH Family Planning (FP) Program is responsible for assuring compliance with Title X policy, procedure, and administration of funds. Day-to-day coordination of Title X project activities is the responsibility of the Administrative Program Manager of PRHD, who reports directly to the Director of MCH, who reports directly to the Deputy Commissioner of the CFHS. The Deputy Commissioner of the CFHS answers directly to the Commissioner of Health.

OSDH has administered the Title X family planning program for more than forty years.

The public health system in Oklahoma includes the OSDH with its statewide county health department system and the two city county health departments in Oklahoma County and in Tulsa County, which are administratively separate from the OSDH system and have their own personnel systems. The county health departments are OSDH administrative units. Altogether, clinical and educational services are provided through 87 county health sites and 8 contract agency sites across the state, located in 70 of the 77 counties. The clinical services are provided through the Community Health Services' County District Administration, Nursing Service, Community Development Service, and Record Evaluation and Support. These entities provide service delivery and assist with program monitoring. The Medical Director is available by contract through OUHSC.

Oklahoma Health Care Authority (OHCA), the state Medicaid agency, changed their family planning services 1115B waiver to a State Plan Amendment (SPA) on September 1, 2011 (now, SoonerPlan). The SPA includes hormonal contraceptive sub-dermal implant and the HPV vaccination, which were previously not included in the family planning waiver. Sterilization is not provided through the Title X FP project, although the SPA covers both male and female sterilizations.

## The Title X Program Review Process

At the start of the process, the regional office and OSDH negotiated the dates for the review and the sites to be visited. Following these decisions, the regional office provided a list of documents to be compiled, including policies and protocols, board meeting minutes, and medical charts (at the clinic sites).

1

The region office staff also provided both review consultants and OSDH with the protocol to be used during the visit. The instrument, developed to coincide with the Title X requirements and Quality Family Planning guidelines issued in April, 2014 (*Providing Quality Family Planning Services: Recommendations of CDC and the U.S. Office of Population Affairs*), reflects current federal regulations and guidelines. The tool guides the review team's assessment of grantee policies and procedures and on-site observations and evaluations of program operations for evidence of compliance with grantee policies and procedures based on these requirements and QFP guidelines.

*Title X Program Requirements Assessment*

This assessment relates to the grantee's compliance with the statute and regulations. For these requirements, the grantee will receive an assessment of compliance and will receive a rating of "met"," not met", or "N/A" (not applicable). The evidence that minimum criteria have been met will be based on both grantee and sub-recipient records and observation at grantee administrative offices and selected service sites as part of the monitoring process. Evidence may include—but is not limited to—policies, procedures, protocols, documentation of training, direct visual confirmation per consultants and/or regional office staff to ensure that what is contained in written policy or instructions is actually being carried out, and/or any other form of documentation substantiating the project is operating in accordance with the Title X Program Requirements

*QFP Quality Assessment*

This assessment reflects the extent to which the grantee has implemented key aspects of QFP. Grantees will be assessed using the list of items providing evidence of various aspects of quality services. The number of items identified serves as a means of recognizing grantee achievements as well as identify areas in need of improvement and/or technical assistance.

*Assessment Timeline*

Before the review, OSDH and the sites selected for visits were requested to compile a series of documents including policies and protocols, board meeting minutes, and medical charts (at the clinic sites); arrange for interviews with central office staff; and schedule a initial and debriefing meeting with Departmental representatives.

At the initial meeting, the team discussed the review process, and OSDH provided an overview of the project. Following meetings at the central office the morning of the first review day, the team visited two different clinic sites.

At the conclusion of the each clinic visit, the team gave an oral report to clinic and accompanying central office staff. At a formal exit conference, the reviewers reported on the findings related to compliance in each area. This written report follows the same format and contains major findings and recommendations as reported by the review team to OSDH at the exit conference on May 5, 2016. In the recommendation statements, a "must" references OSDH non-compliance to federal regulations. Additionally, quality assessment ratings indicate the

Appellate Case: 24-6067   Document: 010111053133   Date Filed: 03/04/2024   Page: 101

extent to a program has achieved various aspects of QFP. In this section, a "should" references strong program suggestions and recommends the program evaluate the information in the interest of continued improvement of program operations.

3

# Title X Program Requirements

*Administrative Aspects*

## 8. Project Management and Administration

### 8.1 Voluntary Participation

#### 8.1.1 Prohibition of Coercion

Title X projects must "provide services without subjecting individuals to any coercion to accept services or to employ or not to employ any particular methods of family planning. (Sections 1001 and 1007, PHS Act; 42 CFR 59.5 (a)(2))

Such requirements are met through institutionalizing administrative procedures (i.e., staff training, clinical protocols, and consent forms) to ensure clients receive services on a voluntary basis.

Observations:
The policies and procedures for the service and contract sites' responsibilities include the voluntary nature the program. The program also includes a general consent form and a family planning risk and benefit form that indicates the voluntary nature of the services. All family planning staff sign an Annual Title X Reminder that includes this statement.

Finding:
This requirement was MET.

#### 8.1.2 Prohibition of Prerequisite for Other Services

Title X projects must ensure that "acceptance of services must...not be made a prerequisite to eligibility for, or receipt of, any services, assistance from or participation in any other program of the applicant." (Section 1007, PHS Act; 42 CFR 59.5 (a)(2))

This requirement is met through institutionalizing administrative procedures (e.g., staff training, clinical protocols, and consent forms) to ensure clients' receipt of family planning services is not used as a prerequisite to receipt of other services from the service site.

Observations:
The policies and procedures for the service and contract sites' responsibilities include this prohibition. The program also requires clients to sign a family planning risk and benefit form that states this prohibition. All family planning staff sign an Annual Title X Reminder that includes this statement.

Finding:
This requirement was MET.

4

Appellate Case: 24-6063   Document: 010111031253   Date Filed: 04/24/2024   Page: 102

### 8.1.3 Prosecution for Coercion

Personnel working within the family planning project must be informed that they may be subject to prosecution if they coerce or try to coerce any person to undergo an abortion or sterilization procedure (Section 205, Public Law 94-63, as set out in 42 CFR 59.5(a)(2) footnote 1).

Evidence that this requirement has been met includes 1) written policies and procedures 2) documentation that staff has been informed at least once during the project period, and 3) documentation exists at the sub-recipient level that staff has been informed.

Observations:
The policies and procedures for the service and contract sites' responsibilities include this statement. All family planning staff sign an Annual Title X Reminder that includes this statement.

Finding:
This requirement was MET.

### 8.2 Prohibition on Abortion

Title X grantees and sub-recipients must be in full compliance with Section 1008 of the Title X statute and 42 CFR 59.5(a)(5), which prohibit abortion as a method of family planning.

Systems must be in place to assure adequate separation of any non-Title X activities from the Title X project. These include policies and procedures regarding the prohibition as well as for the separation of Title X services.

In addition grantees have documented processes to ensure that they and any sub-recipients are in compliance with Section 1008, including language in any sub-recipient contracts addressing this requirement.

Observations:
The policies and procedures for the service and contract sites' responsibilities include this statement and is also included in the sub-recipient agreement. See also Financial Requirements.

Finding:
This requirement was MET.

### 8.3 Structure and Management

### 8.3.1 Written Agreements

The grantee must have a written agreement with each sub-recipient and establish written standards and guidelines for all delegated project activities consistent with the appropriate section(s) of the Title X Program Requirements, as well as other applicable requirements (45 CFR parts 74 and 92).

5

Appellate Case: 24-6056 Document: 010111031253 Date Filed: 04/04/2024 Page: 104

Observations:
Sub-recipient agreements include references to the Title X requirements and guidelines. In addition, the Family Planning Policy and Procedure Manual contains a section on "Service Site and Contract Agency Responsibilities" that reiterates these requirements.

Finding:
This requirement was MET.

**8.3.2 Sub-recipient Contracting of Services**
If a sub-recipient wishes to subcontract any of its responsibilities or services, a written agreement that is consistent with Title X Program Requirements and approved by the grantee must be maintained by the sub-recipient (45 CFR parts 74 and 92).

Evidence that this requirement has been met include a signed subcontracting agreement stipulating compliance with Title X requirements, documentation of grantee approval of sub-contracts, and monitoring reports to ensure compliance.

Observations:
OCCHD does not have any sub-recipient agreements, but a clause in the OSDH agreement requires approval from OSDH.

Finding:
This requirement was NOT APPLICABLE

**8.3.5 Sub-recipient Participation in Development of Policies and Procedures.**
Sub-recipient agencies must be given an opportunity to participate in the establishment of ongoing grantee policies and guidelines (42 CFR 59.5 (a)(10)).

Evidence that this requirement has been met include a mechanism for sub-recipient participation in the policies and procedures and documentation of the sub-recipients' inclusion.

Observations:
The inclusion of sub-recipients is stated in the program administration manual and sub-recipients review, comment on, and approve all policies and procedures along with OSDH staff.

Finding:
This requirement was MET.

**8.5 Project Personnel**

**8.5.1 Federal and State Personnel Requirements**
Grantees and sub-recipients personnel policies must comply with applicable Federal and State requirements, including Title VI of the Civil Rights Act, Section 504 of the Rehabilitation Act of 1973, Title I of the Americans with Disabilities Act, and the annual appropriations language.

6

Appellate Case: 24-6088   Document: 010111031253   Date Filed: 04/09/2024   Page: 105

Evidence that this requirement has been met includes grantee and sub-recipient personnel policies and procedures create a process to avoid discrimination in personnel administration.

Observations:
The policies and procedures for the service and contract sites' responsibilities include this statement, and it is included as part of the sub-recipient site visit review tool

Finding:
This requirement was MET.

**8.5.2 Cultural Competency**
Project staff should be broadly representative of all significant elements of the population to be served by the project, and should be sensitive to, and able to deal effectively with, the cultural and other characteristics of the client population (42 CFR 59.5 (b)(10)).

Evidence that this requirement has been met includes grantee and sub-recipient personnel policies and procedures regarding cultural competency that has been implemented through training and client surveys.

Observations:
The policies and procedures for the service and contract sites' responsibilities include this statement and all staff must complete training in the topic and such training is documented.

Finding:
This requirement was MET.

**8.5.3 Project Director**

Projects must be administered by a qualified project director, and changes in the project director or other key personnel must be approved by the Office of Grants Management. (HHS Grants Policy Statement, 2007 Section II-54.)

Evidence that this requirement has been met includes documentation of OGM approval of personnel changes during the project period.

Observations:
No personnel changes requiring OGM approval occurred during the current grant. Prior approval was sought and granted for the new MCH Director in 2014.

Finding:
This requirement was NOT APPLICABLE

**8.6 Staff Training and Project Technical Assistance**

**8.6.1 Orientation and In-Service Training**

7

Projects must provide for the orientation and in-service training of all project personnel, including the staff of sub-recipient agencies and service sites (42 CFR 59.5(b)(4)).

Evidence that this requirement has been met includes grantee and sub-recipient staff training needs assessment and plan and records of personnel trainings completed.

Observations:
The OSDH program has an orientation program for all new employees, an annual assessment for additional training needs, and a training plan to address these needs.

Finding:
This requirement was MET.

**8.6.2 Mandatory Reporting Training**
The project's orientation/in-service training includes training on Federal/State requirements for reporting or notification of child abuse, child molestation, sexual abuse, rape, or incest, as well as on human trafficking.

Evidence that this requirement has been met includes grantee and sub-recipient policies and procedures for meeting these training requirements, and training attendance records.

Observations:
The policies and procedures manual includes information on mandatory reporting, records indicate all staff have completed training in this area and records are checked during service site visits.

Finding:
This requirement was MET.

**8.7 Planning and Evaluation**
Grantees must ensure that the project is competently and efficiently administered (42 CFR 59.5 (b) (6) and (7)).

Evidence that this requirement has been met includes written monitoring plans, documented periodic review of work plan progress, and timely, complete, and accurate submission of FPAR data.

Observations:
The program has a work plan that is updated at least annually, the program has also identified two quality assurance elements that are calculated and reported back to the service sites (the percentage of clients using LARCs and the no-show rate). FPAR submission was completed on-time with only one validation that involved only adding a note regarding local income not including in-kind goods or services.

Finding:
This requirement was MET.

8

Appellate Case: 24-6068   Document: 010111025313   Date Filed: 03/20/2024   Page: 107

**9.1 Low-Income Families**
Priority for project services is to persons from low- income families (Section 1006(c)(1), PHS Act; 42 CFR 59.5(a)(6)).

Evidence that this requirement has been met includes more than 50% of clients are at or below 100% FPL as reported on the FPAR and service site locations are accessible to low-income individuals.

Observations:
The 2014 and 2015 OSDH FPAR percentages for those under 100% FPL was 73%. Both clinics visited were on a bus line and OSDH operates at least one clinic in all but seven very rural counties.

Finding:
This requirement was MET.

**9.2 Dignity of the Individual**
Services must be provided in a manner which protects the dignity of the individual (42 CFR 59.5 (a)(3)).

Evidence that this requirement has been met includes appropriate policies, direct observation of clinic operations that indicate protection of client privacy, and documentation which outlines clients' rights and responsibilities.

Observations:
OSDH policies and procedures includes protecting client privacy, patient rights are posted, and all clients have a documented receipt of the HIPAA notification. In-take and financial interviews in one site visited, however, were open to the waiting room and could be heard by occupants in that area.

Finding:
This requirement was **NOT MET.**

OSDH **must** ensure that client privacy is maintained when collecting personal data.

**9.3 Non-Discrimination**
Services must be provided without regard to religion, race, color, national origin, disability, age, sex, number of pregnancies, or marital status (42 CFR 59.5 (a)(4)).

Evidence that this requirement has been met includes written policies and procedures stating non-discrimination, documentation that staff have been informed of non-discrimination policies, and documentation of monitoring of sub-recipients for non-discrimination.

Observations:
OSDH has policies and procedures regarding non-discrimination and staff sign a reminder at least once a project period regarding this requirement.

9

Finding:
This requirement was MET.

**9.4 Referral for Related Social Services**
Projects must provide for social services related to family planning including counseling, referral to and from other social and medical services agencies, and any ancillary services which may be necessary to facilitate clinic attendance (42 CFR 59.5 (b)(2)).

Evidence that this requirement has been met includes documentation that social service and medical needs of the community has been assessed and relevant services identified, sub-recipients are required to develop and implement plans to address relevant service needs, and current, written agreements with relevant referral agencies exist.

Observations:
OSDH completes a state-wide needs assessment and has developed written agreements with community health centers for cross-referrals between primary care and provision of contraceptives. The county health unit can provide in-house referrals for dietician/nutrition counseling, WIC, and dental. OCCHD has primary care referrals to the primary care clinic co-located with them and have a number of different written MOUs for various services. Additionally, clinics also provide clients with brochures regarding specialized services, such as transportation and social/medical services, but these do not have written agreements.

Finding:
This requirement was MET.

**9.5 Referral Arrangements**
Projects must provide for coordination and use of referral arrangements with other providers of health care services, local health and welfare departments, hospitals, voluntary agencies, and health services projects supported by other federal programs (42 CFR 59.5 (b)(8)).

Evidence that this requirement has been met includes written policies requiring plans to coordinate with other service providers and current, written agreements with relevant referral agencies exist.

Observations:
OSDH has a policy and procedure regarding referrals and written agreements with community health centers for cross-referrals between primary care and provision of contraceptives exist for some clinical issues, including the two sites visited.

Medical files included referrals for some clinical issues to outside service providers without a written agreement between the OSDH and the service provider. Such referrals do not follow OSDH policies and procedures or Title X requirements for written agreements.

Finding:
This requirement was **NOT MET.**

OSDH **must** ensure referrals meet Title X requirements.

### 9.9 Residency Requirements

Services must be provided without the imposition of any durational residency requirement or requirement that the client be referred by a physician (42 CFR 59.5(b)(5)).

Evidence that this requirement has been met includes written policies prohibiting imposition of residency requirement at the grantee and sub-recipient level.

Observations:
OSDH policies and procedures include a prohibition of any residency requirement for services and all staff have signed an annual reminder of this requirement.

Finding:
This requirement was MET.

### 9.12 Legislative Mandates

Title X grantees must comply with applicable legislative mandates set out in the HHS appropriations act. Grantees must have written policies in place that address these legislative mandates:

> "None of the funds appropriated in the Act may be made available to any entity under Title X of the Public Health Service Act unless the applicant for the award certifies to the Secretary of Health and Human Services that it encourages family participation in the decision of minors to seek family planning services and that it provides counseling to minors on how to resist attempts to coerce minors into engaging in sexual activities."

> "Notwithstanding any other provision of law, no provider of services under Title X of the Public Health Service Act shall be exempt from any State law requiring notification or the reporting of child abuse, child molestation, sexual abuse, rape, or incest."

Evidence that this requirement has been met includes written policies and procedures informing staff on a periodic basis of these requirements and documentation that staff have been formally informed of this requirement at least once during the project period, medical records document adolescents are encouraged to seek family participation.

Observations:
OSDH covers these requirements in their adolescent counseling policies and procedures (pages 1 and 2). In addition all staff sign an annual reminder of this requirement and these are on-file with the grantee. Medical records document this counseling for all adolescents.

Finding:
This requirement was MET.

### 10. Confidentiality

11

Aplt.App. 279

Appellate Case: 24-6068   Document: 010111031253   Date Filed: 03/04/2024   Page: 110

Every project must have safeguards to ensure client confidentiality. Information obtained by project staff about an individual receiving services may not be disclosed without the individual's documented consent, except as required by law or as may be necessary to provide services to the individual, with appropriate safeguards for confidentiality. Information may otherwise be disclosed only in summary, statistical, or other form that does not identify the individual (42 CFR 59.11).

Evidence that this requirement has been met includes written policies and procedures requiring safeguarding of client confidentiality, documentation that staff have been formally informed of this requirement at least once during the project period, clinical protocols have statements regarding client confidentiality, record systems adequately ensure privacy and confidentiality, clients are informed of HIPAA privacy forms, consent form or other documentation indicates clients are informed, materials regarding the availability of confidentiality are available to clients, and the physical layout allows for confidentiality and privacy.

Observations:
Systems are in place to ensure bills are not sent to clients requesting confidentiality, and staff note how to contact clients requesting such confidentiality. OSDH policies and procedures include protecting client privacy, patient rights are posted as well as all clients have a documented receipt of the HIPAA notification. In-take and financial interviews in one site visited, however, were open to the waiting room and could be heard by occupants in that area.

Finding:
This requirement was **NOT MET.**

OSDH **must** ensure that client privacy is maintained when collecting personal data.

### 11. Community Participation, Education, and Project Promotion

### 11.1 Community Participation
Title X grantees and sub-recipient agencies must provide an opportunity for participation in the development, implementation, and evaluation of the project by persons broadly representative of all significant elements of the population to be served; and by persons in the community knowledgeable about the community's needs for family planning services (42 CFR 59.5(b)(10)).

Evidence that this requirement has been met includes written policies and procedures to ensure participation of individuals broadly representative of the community in the project plan, a community engagement plan, and documentation of the implementation of the community engagement plan.

Observations:
OSDH has policy and procedures in place to ensure community participation. The program has a youth advisory team, the county health departments work with community groups to share program activities and information, and community representatives consult with potential clients to gain a broader perspective. All service sites must develop a community engagement plan and

12

Aplt.App. 280

submit it for review and approval at the state department level and report activities once a quarter.

Aplt.App. 281

Finding:
This requirement was MET.

**11.2 Community Assessment Programs**
Projects must establish and implement planned activities to facilitate community awareness of and access to family planning services (42 CFR 59.5(b)(3)). Each family planning project must provide for community education programs (42 CFR 59.5(b)(3)).

The community education program(s) should be based on an assessment of the needs of the community and should contain an implementation and evaluation strategy.

Evidence that this requirement has been met includes documentation of a periodic community needs assessment, a written community education and service promotion plan, documentation of an evaluation and modification to plan as needed.

Observations:
Service sites conduct client surveys and OSDH conducts a statewide needs assessment every three years. All service sites must develop a community engagement plan and submit it for review and approval at the state department level and report activities once a quarter.

Finding:
This requirement was MET.

**11.3 Goals of Community Education**
Community education should serve to:
- enhance community understanding of the objectives of the project,
- make known the availability of services to potential clients,
- encourage continued participation by persons to whom family planning may be beneficial
(42 CFR 59.5 (b)(3)

Evidence that this requirement has been met includes a plan that:
(a) states that the purpose is to enhance community understanding of the objectives of the project, make known the availability of services to potential clients, and encourage continued participation by persons to whom family planning may be beneficial
(b) promotes the use of family planning among those with unmet need,
(c) utilizes an appropriate range of methods to reach the community
(d) includes an evaluation strategy.
and that such a plan has been implemented.

Observations:
OSDH includes these elements as part of their policies and procedures, and all service sites must develop a community engagement plan and submit it for review and approval at the state department level and report activities once a quarter. The program has also developed brochures to share with potential clients

14

Finding:
This requirement was MET.

## 12. Information and Education (I&E) Materials Approval

### 12.1 The Approval Process

Title X grantees and sub-recipient agencies are required to have a review and approval process, by an Advisory Committee, of all informational and educational (I&E) materials developed or made available under the project prior to their distribution (Section 1006 (d)(2), PHS Act; 42 CFR 59.6(a)).

Evidence that this requirement has been met includes written policies and procedures regarding the review of all materials prior to use with clients and documentation that the committee has reviewed and approved them.

Observations:
OSDH has an active I&E Committee that reviews and approves brochures, etc. developed and distributed by the state office. Sites are also provided templates that can be used to develop site-specific information. These materials, however, were not reviewed or approved by the I&E committee. At both sites visited such unapproved materials were being distributed to clients.

Finding:
This requirement was **NOT MET.**

OSDH **must** ensure all I&E materials given to Title X clients have been reviewed and approved by the I&E committee.

### 12.2 The I&E Committee

The committee must include individuals broadly representative (in terms of demographic factors such as race, color, national origin, handicapped condition, sex and age) of the population or community for which the materials are intended (42 CFR 59.6 (b)(2).

Evidence that this requirement has been met includes an established board that is broadly representative of the population served, a process in place for sub-recipients, and documentation that the committee meets the representation requirement.

Observations:
The OSDH I&E Committee consists of seven individuals, primarily from the health department, but also some from the community. None are adolescents. One community representative does consult with youth in her project about materials she receives for review and another Youth Advisory Board also has input.

Finding:
This requirement was **NOT MET.**

Aplt.App. 283

Appellate Case: 24-6088   Document: 010111031253   Date Filed: 03/04/2024   Page: 114

OSDH **must** ensure the I&E Committee is broadly representative of the population, including youth.

### 12.3 Composition of the I&E Committee

Each Title X grantee must have an Advisory Committee of five to nine members, except that the size provision may be waived by the Secretary for good cause shown (42 CFR 59.6 (b)(1)). The Advisory Committee must review and approve all informational and educational (I&E) materials developed or made available under the project prior to their distribution to assure that the materials are suitable for the population and community for which they are intended and to assure their consistency with the purposes of Title X (Section 1006(d)(1), PHS Act; 42 CFR 59.6(a)).

Evidence that this requirement has been met includes policies and procedures regarding the committee, a current the roster/list of committee members, and current, written meeting minutes.

Observations:
The OSDH I&E Committee consists of seven individuals and policies and procedures are in place for its operations and meeting minutes exist with their review and decisions.

Finding:
This requirement was MET.

### 12.5 Delegation of I&E Functions

The grantee may delegate I&E functions for the review and approval of materials to sub-recipient agencies; however, the oversight of the I&E review process rests with the grantee.

Evidence that this requirement has been met includes policies and procedures that cover such delegation, monitoring of sub-recipients, and documentation of such monitoring.

Observations:
The OSDH supports the only I&E committee operating for the project.

Finding:
This requirement was **NOT APPLICABLE**

### 12.6 I&E Committee Responsibilities

The I&E Advisory Committee(s) must:
- Consider the educational and cultural backgrounds of the individuals to whom the materials are addressed;
- Consider the standards of the population or community to be served with respect to such materials;
- Review the content of the material to assure that the information is factually correct;
- Determine whether the material is suitable for the population or community to which it is to be made available; and
- Establish a written record of its determinations

(Section 1006(d), PHS Act; 42 CFR 59.6(b))

16

Appellate Case: 24-6063   Document: 010111031353   Date Filed: 04/09/2024   Page: 115

Evidence that this requirement has been met includes policies and procedures addressing these elements and documentation that all components are reviewed.

Observations:
OSDH I&E Committee deliberations include those elements required by federal regulations and records exist concerning their review and approval/disapproval of the materials.

Finding:
This requirement was MET.

## 13. Additional Administrative Requirements

### 13.1.1 Limited English Proficiency
Title X clinics must have written policies that are consistent with the HHS Office for Civil Rights policy document, Guidance to Federal Financial Assistance Recipients Regarding Title VI Prohibition Against National Origin Discrimination Affecting Limited English Proficient Persons (August 4, 2003) (HHS Grants Policy Statement 2007, II-23).

Evidence that this requirement has been met includes policies regarding the provision of language assistance and documentation that staff are aware of such policies.

Observations:
OSDH has policies and procedures regarding language assistance for those with limited English proficiency. Some staff at most sites are bilingual (usually Spanish), and those with other languages can have a translator by phone. One site posted the availability of translation services at the front desk and a large poster with a variety languages on a waiting room wall. The other site visited (recently relocated) posted the availability of translation services only in English.

Finding:
This requirement was **NOT MET.**

OSDH **must** ensure all clients, especially those with minimal to no ability in English, are aware of the availability of translation services.

### 13.1.2 Prohibition of Disability Discrimination
Projects may not discriminate on the basis of disability and, when viewed in their entirety, facilities must be readily accessible to people with disabilities (45 CFR 84).

Evidence that this requirement has been met includes policies and procedures that ensure those with a disability can access services, documentation regarding accommodations to disabled clients, and project sites free of any obvious barriers.

17

Aplt.App. 285

Observations:
OSDH has policies and procedures in place and the facilities were accessible to those with disabilities.

Finding:
This requirement was MET.

## 13.2 Emergencies Management
All grantees, sub-recipients and Title X clinics are required to have a written plan for the management of emergencies (29 CFR 1910, subpart E) and clinical facilities must meet applicable standards established by Federal State and local governments (e.g. local fire, building, and licensing codes).

Evidence that this requirement has been met includes current disaster plans, staff identification of emergency evacuation routes, documentation of staff training, recognizable and barrier-free exits, and documentation that sub-recipients are in compliance.

Observations:
OSDH has policies and procedures in place, staff are trained and a record of drills maintained, emergency exits are marked and maps indicating the exit routes are posted. OSDH monitors site compliance with policies and procedures as part of their regular site visits.

Finding:
This requirement was MET.

## 13.3 Prohibition of Personal Gain
Projects are required to establish policies to prevent employees, consultants, or members of governing/advisory bodies from using their positions for purposes that are, or give the appearance of being motivated by a desire for private financial gain for themselves or others (HHS Grants Policy Statement 2007, II-7).

Evidence that this requirement has been met includes policies that prohibit personal financial gain and documentation that grantees have assured sub-recipients are in compliance.

Observations:
OSDH policies and procedures cover this prohibition in its administrative policies and sub-recipients are monitored for compliance.

Finding:
This requirement was MET.

## 13.4 Human Subjects Research
Research conducted within Title X projects may be subject to Department of Health and Human Services regulations regarding the protection of human subjects (45 CFR Part 46). The grantee/sub-recipient should advise their Regional Office in writing of any research projects that involve Title X clients (HHS Grants Policy Statement 2007, II-9).

18

Aplt.App. 286

Evidence that this requirement has been met includes written policies regarding the use of human subjects and documentation that grantees have assured sub-recipients are in compliance.

Observations:
OSDH has policies and procedures in place regarding human subjects research and includes such requirements in the contract for any sub-recipients. Sub-recipients are also monitored for compliance.

Finding:
This requirement was MET.

Aplt.App. 287

# Title X Program Requirements

*Financial Aspects*

**8.2 Prohibition on Abortion**
Title X grantees and sub-recipients must be in full compliance with Section 1008 of the Title X statute and 42 CFR 59.5(a)(5), which prohibit abortion as a method of family planning.

Systems must be in place to assure adequate separation of any non-Title X activities from the Title X project.

Observations:
Oklahoma State Department of Health Maternal and Child Health policies and procedures, including the sub-recipient contract reviewed contain provisions prohibiting abortion as a method of family planning.

Finding:
This requirement was MET.

**8.3 Structure and Management**

**8.3.3 Purchase Authorization**
The grantee must ensure that all services purchased for project participants will be authorized by the project director or his designee on the project staff (42 CFR 59.5(b)(7)).

Evidence that this requirement has been met includes policies and procedures providing for a purchase approval process and documentation of purchases following appropriate policies and procedures.

Observations:
Oklahoma State Department of Health procurement policies and procedures provide and allow for the Title X Project Director to review and approve Title X-related purchases.

Finding:
This requirement was MET.

**8.3.4 Contracted Services Follow Established Schedule of Fees**
The grantee must ensure that services provided through a contract or other similar arrangement are paid for under agreements that include a schedule of rates and payment procedures maintained by the grantee. The grantee must be prepared to substantiate that these rates are reasonable and necessary (42 CFR 59.5(b)(9)).

Evidence that this requirement has been met includes a schedule of payments as part of the contract and the costs for services have a documented basis for rates.

Observations:
The sub-recipient agreement contains a voucher submission process and procedures and the amount of the sub-award.

Finding:
This requirement was MET.

**8.3.6 Financial Management System**
The grantee and each sub-recipient must maintain a financial management system that meets Federal standards, as applicable, as well as any other requirements imposed by the Notice of Award, and which complies with Federal standards that will support effective control and accountability of funds, as required (45 CFR parts 74.20 and 92.20).

Evidence that this requirement has been met includes financial policies and procedures references to appropriate federal regulations and records and other documentation to indicate practices align with Title X and other federal regulations.

Observations:
A review of recipient and sub-recipient financial policies and procedures reference 45CFR74 remain applicable and have not been updated include 45CFR75 and 2CFR 200 Part D.

Finding:
This requirement was **NOT MET**.

The OSDH NOA dated March 24, 2015 requires compliance with 2 CFR Part 200 and 45 CFR Part 75 which replace 45CFR Part 74 or 92. Accordingly, OSDH **must** update its financial policies and procedures to be consistent with 2 CFR Part 200 and 45 CFR Part 75.

**8.4 Charges, Billings, and Collections**

**8.4.1 Charges to Those Below 100% of Federal Policy Levels and Third-Party Payers**
Clients whose documented income is at or below 100% of the Federal Poverty Level (FPL) must not be charged, although projects must bill all third parties authorized or legally obligated to pay for services (Section 1006(c)(2), PHS Act; 42 CFR 59.5(a)(7)).

Evidence that this requirement has been met includes financial policies and procedures regarding collection of clients' income data, including legally accessing income information from another program or clients self-reported income; documentation that those below 100% FPL are not charged; and the income reporting process does not create a barrier to receipt of services.

Observations:
Recipient and sub-recipient billing and collection policies require clients whose documented income is at or below 100% must not be charged while third parties authorized and/or legally obligated to pay for services must be billed. Policies also prohibit denying services to persons with an inability to pay. Additional policies require providing services to clients unable to document their income.

21

Finding:
This requirement was MET.

**8.4.2 Schedule of Discounts**
A schedule of discounts, based on ability to pay, is required for individuals with family incomes between 101% and 250% of the Federal Poverty Level (FPL) (42 CFR 59.5(a)(8)).

Evidence that this requirement has been met includes financial policies and procedures regarding development of a schedule of discounts and documentation that these discounts are applied appropriately.

Observations:
Both the recipient and sub-recipient had a schedule of discounts based on ability to pay as determined by the sliding fee scale and applicable to clients with family incomes between 101% and 250% of the current FPL. The recipient's practice management system, Public Health Oklahoma Client Information System (PHOCIS) which the sub-recipient is also required to use, calculates the appropriate discount based on inputted client family size and income data.

While the written policy states that clients with family incomes between 101% and 250% of FPL do not pay more in co-payments or additional fees than they would otherwise pay when the schedule of discounts is applied, discussion with front desk staff and review of patient registration information indicate the sliding fee scale is not applied to insurance co-pays and deductibles.

Finding:
This requirement was **NOT MET**.

OSDH **must** ensure staff follow its policy regarding the application of the Title X sliding fee scale to co-payments or additional fees for clients with family incomes between 101% and 250% of FPL.

**8.4.3 Waiving of Fees**
Fees must be waived for individuals with family incomes above 100% of the FPL who, as determined by the service site project director, are unable, for good cause, to pay for family planning services (42 CFR 59.2).

Evidence that this requirement has been met includes policies and procedures for waiving fees and documentation that any determination to waive the fee is made by the service site director, is documented and the client is informed of the determination.

Observations:
OSDH has a written policy for the service site administrator to waive fees for those with "good cause." Staff, however, do not appear to distinguish between waiving fees under such circumstances and extending credit for those unable to pay. In addition, OSDH procedures do not indicate how clients are to be made aware of this option or the steps involved for staff to

22

Appellate Case: 24-6063   Document: 010111031311   Date Filed: 03/04/2024   Page: 121

complete such documentation for the administrator, or MCH for other circumstances, to make that decision. At present, OSDH staff exercises a de facto fee waiver when client account balances are allowed to accrue until they are written off as uncollectible.

Finding:
This requirement was **NOT MET**.

OSDH **must** develop and implement effective procedures to ensure Title X client fees are waived as indicated by policies.

**8.4.4 Determining the Cost of Services**
For persons from families whose income exceeds 250% of the FPL, charges must be made in accordance with a schedule of fees designed to recover the reasonable cost of providing services. (42 CFR 59.5(a)(8)).

Evidence that this requirement has been met includes policies and procedures for determining the cost of services and documentation that charges are applied appropriately.

Observations:
OSDH has policies and procedures in place regarding the development and approval of both the state and contractor fee schedules. The fee schedule currently in use by one sub-recipient, while approved by OSDH, is below both what the sub-recipient needs to recover its reasonable costs as well as that used by OSDH. No justification for the approval of such a fee schedule in deviation to Title X requirements was provided.

Finding:
This requirement was **NOT MET**.

OSDH **must** ensure approval of contractor Title X fee schedules provide a justification when deviating from Title X requirements.

**8.4.5 Charges for Confidential Services**
Eligibility for discounts for un-emancipated minors who receive confidential services must be based on the income of the minor (42 CFR 59.2).

Evidence that this requirement has been met includes policies and procedures for determining if the minor is seeking confidential services and charging the minor based on his/her own income and documentation that charges are applied appropriately.

Observations:
OSDH policies and procedures require a minor seeking confidential services be charged based solely on his or her income, and record reviews and front staff interviews confirmed this practice.

Finding:
This requirement was MET.

23

### 8.4.6 Third Party Payment

Where there is legal obligation or authorization for third party reimbursement, including public or private sources, all reasonable efforts must be made to obtain third party payment without the application of any discounts (42 CFR 59.5(a)(9)).

Family income should be assessed before determining whether copayments or additional fees are charged. With regard to insured clients, clients whose family income is at or below 250% FPL should not pay more (in copayments or additional fees) than what they would otherwise pay when the schedule of discounts is applied.

Evidence that this requirement has been met includes policies and procedures regarding billing third parties and assessing co-pays, contracts with third party payers, and a review of records indicates appropriate assessment and charges.

Observations:
OSDH participates in Medicaid, Medicare and has contracts with three private third-party payers and bills for services. See section 8.4.2 regarding the application of the sliding fee schedule to co-pays and other fees.

Finding:
This requirement was MET.

### 8.4.6 Title XIX and Title XX Reimbursements

Where reimbursement is available from Title XIX or Title XX of the Social Security Act, a written agreement with the Title XIX or the Title XX state agency at either the grantee level or sub-recipient agency is required (42 CFR 59.5(a)(9)].

Evidence that this requirement has been met includes up-to-date written agreements at both the grantee and/or sub-recipient level.

Observations:
Both OSDH and the sub-recipient visited have policies and procedures regarding participation in both the Medicaid and Medicaid waiver program. Accounts receivable records indicate reimbursements are received from these programs.

Finding:
This requirement was MET.

### 8.4.8 Fee Collection

Reasonable efforts to collect charges without jeopardizing client confidentiality must be made.

Evidence that this requirement has been met includes policies and procedures providing safeguards that protect client confidentiality, particularly in cases where sending an explanation of benefits could breach client confidentiality, and documentation at service sites demonstrating the sites maintain confidentiality when billing and collecting payments.

24

Aplt.App. 292

Observations:
OSDH and sub-recipient policies and procedures include adequate safeguards to protect client confidentiality, including cases where sending an explanation of benefits could breach client confidentiality.  In addition clinic front desk staff were observed implementing the policy.

Finding:
This requirement was MET.

**8.4.9 Voluntary Donations**
Voluntary donations from clients are permissible; however, clients must not be pressured to make donations, and donations must not be a prerequisite to the provision of services or supplies.

Evidence that this requirement has been met includes policies and procedures that provide for voluntary donations and documentation and observation of requests for donations indicate no pressure for such payments.

Observations:
OSDH policies and procedures allow for voluntary donations and prohibit clinic staff from pressuring clients for donations. Direct observations of clinic processes demonstrated that the policy was being followed.

Finding:
This requirement was MET.

**8.5 Project Personnel**

**8.5.5 Salary Limits**
Appropriate salary limits will apply as required by law.

Evidence that this requirement has been met includes budgets and payroll records correspond to the most current family planning services Funding Opportunity Announcement (FOA).

Observations:
OSDH and sub-recipient budgets and staff assurances indicate adherence to appropriate salary limits as required by law and stipulated in the NOA.

Finding:
This requirement was MET.

**10. Confidentiality**
Every project must have safeguards to ensure client confidentiality. Information obtained by project staff about an individual receiving services may not be disclosed without the individual's documented consent, except as required by law or as may be necessary to provide services to the individual, with appropriate safeguards for confidentiality. Information may otherwise be

25

Aplt.App. 293

AppellAppee Datete Caste C2st6:01038:6066DocuDecum0101 311025331Date Difiled FUldd 904/029/202Page PageagPage: 124

disclosed only in summary, statistical, or other form that does not identify the individual (42 CFR 59.11).

Evidence that this requirement has been met includes third-party billing does not breach confidentiality.

Observations:
OSDH policies contain safeguards, including procedural requirements to ensure patient confidentiality on all forms.

Finding:
This requirement was MET.

26

Aplt.App. 294

# Title X Requirements

## *Clinical*

### 8.1.2 Prohibition of Prerequisite for Other Services

Clients are aware that receipt of family planning services is not used as a prerequisite for receipt of other services from the service site.

Medical record review demonstrates that each client has signed a general consent form or other documentation indicating they are aware that receipt of family planning services is not a prerequisite for receipt of any other services offered.

Observations:
Medical records reviewed include the family planning risk and benefit form that includes this notification.

Finding:
This requirement was MET.

### 8.5 Project Personnel

### 8.5.4 Medical Director

Projects must provide that family planning medical services will be performed under the direction of a physician with special training or experience in family planning (42 CFR 59.5 (b)(6)).

Evidence that this requirement has been met includes documentation that 1) a physician is involved in medical/clinical services, 2) the Medical Director is involved in program operations, 3) the curriculum vitae indicates training or experience in family planning, and 4) clinical protocols are approved by the Medical Director.

Observations:
The project Medical Director, Dr. Pamela S. Miles, is an OB/GYN practitioner and professor with appropriate credentials who takes an active role in the program.

Finding:
This requirement was MET.

### 9.4 Referral for Related Social Services

Projects must provide for social services related to family planning including counseling, referral to and from other social and medical services agencies, and any ancillary services which may be necessary to facilitate clinic attendance (42 CFR 59.5 (b)(2)).

Evidence that this requirement has been met includes documentation that referrals were made based on specific conditions/issues.

Aplt.App. 295

Appellate Case: 24-6040   Document: 010111031253   Date Filed: 04/09/2024   Page: 126

Observations:
OSDH medical records reviewed indicates a robust referral network available to reproductive health clients with appropriate follow up.

Finding:
This requirement was MET.

**9.6 Clinical Protocols**
All grantees should assure services provided within their project operate within written clinical protocols that are in accordance with nationally recognized standards of care, approved by the grantee, and signed by the physician responsible for the service site.

Evidence that this requirement has been met includes written clinical policies and procedures that are aligned with nationally recognized standards of care and signed by a responsible physician, grantee monitoring of sub-recipients' policies for alignment with nationally recognized standards of care, and client records indicating services follow protocols.

Observations:
The OSDH Medical Director approved and signed all clinical protocols. Review of the protocols indicates they are based on nationally recognized standards promoted by ACOG and the USPTF.

Finding:
This requirement was MET.

**9.7 Provision of Family Planning Related Medical Services**
All projects must provide for medical services related to family planning and the effective usage of contraceptive devices and practices (including physician's consultation, examination, prescription, and continuing supervision, laboratory examination, and contraceptive supplies) as well as necessary referrals to other medical facilities when medically indicated (42 CFR 59.5(b)(1)). This includes, but is not limited to, emergencies that require referral.

Evidence that this requirement has been met includes written policies and procedures requiring family planning-related medical services, provision of breast and cervical cancer screening on-site, and written agreements with relevant referral agencies exist.

Observations:
Review of documents and direct observation of interaction of clinic personnel with clients indicate that grantee is providing comprehensive family planning services including breast and cervical cancer screening as well as appropriate referrals.

Finding:
This requirement was MET.

28

Aplt.App. 296

Appellate Case: 24-6068   Document: 010111032531   Date Filed: 03/04/2024   Page: 127

### 9.8 A Broad Range of Contraceptives

All Title X projects must provide a broad range of acceptable and effective medically approved family planning methods (including natural family planning methods) and services (including infertility services and services for adolescents).

If an organization offers only a single method of family planning, it may participate as part of a project as long as the entire project offers a broad range of family planning services. (42 CFR 59.5(a)(1)).

Evidence that this requirement has been met includes medical records indicating provision of a broad-range of contraceptives; all services, when viewed as a whole, providing a broad range, with current stocks offering a broad range on-site or by referral; clinical protocols covering contraception, pregnancy testing and counseling, services for achieving pregnancy, STD services and preconception health services; and documentation that the grantee ensures sub-recipients comply with these requirements.

<u>Observations:</u>
All OSDH clinical sites visited during this program review offer a broad range of contraceptive options to the patient population.  These include hormonal and non-hormonal options.  Related services such as pregnancy testing, counseling, preconception and infertility services are readily available.

The program director, however, reports demand for long-acting reversible contraception (LARCs) exceeds current supplies, and some clinics keep a waiting list for those who desire such a method, but are unable to receive it because of limited availability. The OCCHD is able for referral, but is not convenient for clients with limited transportation options.

<u>Finding:</u>
This requirement was MET.

<u>Recommendation:</u>
OSDH **should** budget additional funds to ensure an adequate supply of LARCs for all clinics.

### 9.10 Pregnancy Diagnosis and Counseling

Projects must provide pregnancy diagnosis and counseling to all clients in need of these services (42 CFR 59.5(a)(5)).

Evidence that this requirement has been met includes a written policy requiring provision of pregnancy diagnosis and counseling and clinic inventory and client record reviews indicate services were offered to all clients.

<u>Observations:</u>
Pregnancy diagnosis and counseling are available to all OSDH clients requesting this service. Medical records indicate appropriate counseling and follow up are completed for clients.

Aplt.App. 297

Finding:
This requirement was MET.

### 9.11 Pregnancy Options Counseling

Projects must offer pregnant women the opportunity to be provided information and counseling regarding each of the following options:

- Prenatal care and delivery;
- Infant care, foster care, or adoption; and
- Pregnancy termination.

If requested to provide such information and counseling, Title X staff must provide neutral, factual information and nondirective counseling on each of the options, and referral upon request, except with respect to any options(s) about which the pregnant woman indicates she does not wish to receive such information and counseling (42 CFR 59.5(a)(5)).

Evidence that this requirement has been met includes written policies and procedures regarding options counseling that are neutral and factual, referrals provided as requested, and medical records document such counseling and referrals.

Observations:
OSDH policies and procedures guide staff through options counseling. Medical records indicate appropriate counseling and necessary follow up have been documented.

Some of the materials provided clients, however, have **not** been reviewed and approved by the I&E committee (see Administrative finding 12.1)

Finding:
This requirement was MET.

Aplt.App. 298

## Quality Family Planning Implementation Assessment

This portion of the assessment follows the recommendations detailed in *Providing Quality Family Planning Services: Recommendations of CDC and the U.S. Office of Population Affairs (QFP),* which focuses on service provision consistent with the best available scientific evidence.

### 8.1 Voluntary Participation

### 8.1.1 Client-Centered Services
A core premise of Recommendations for Providing Quality Family Planning Services is that quality services are client-centered.
The key principles of providing quality, client-centered counseling include:
1) establish and maintain rapport with the client
2) assess the client's needs and personalize discussions accordingly
3) work with the client interactively to establish a plan
4) provide information that can be understood and retained by the client
5) confirm client understanding (See Appendix C of QFP for additional detail.)

Observations:
OSDH policies and procedures support client-centered services and counseling. Observation of interactions of medical staff with clients demonstrated good interaction between client and providers, and clients are encouraged to actively participate in their health care.

Finding:
This Quality Aspect is FULLY DEVELOPED.

### 8.7 Planning and Evaluation
Grantees should evaluate implementation of quality family planning services following the QFP framework, monitoring performance and improving efforts on an on-going basis.
quality improvement (QI) activities should include:
1) Monitoring the use of most- or moderately-effective contraceptive methods and long-acting reversible contraceptives
2) On-going QI processes related to contraceptive use
3) Monitoring contraceptive use at the service-site level
4) On-going QI processes at the service site level to respond to contraceptive use findings
5) QI efforts at the service site level related to other aspects of quality care
6) Use of HIT data to increase QI efforts

Observations:
The OSDH program has encouraged the use of LARCs, creating such a demand that not all requests can be filled immediately. OSDH clients were above the national average for adolescents and women using highly effective and moderately effective contraceptives. The program uses the percentage of women using LARCs at the service as part of their quality assurance process. The program does not have an electronic health record and as such, is limited in the ability to analyze data from the service sites.

31

Aplt.App. 299

Finding:
This Quality Aspect is **PARTIALLY DEVELOPED.**

Recommendation:
OSDH **should** develop its HIT/EHR capabilities to allow for more efficient and accurate QA/QI monitoring.

**9.2 Client-Centered Services**
Quality services are client-centered, which includes providing services in a respectful and culturally competent manner, and are evidenced by:
1) A needs assessment to determine groups needed culturally competent care
2) Written policies and procedures requiring training in culturally competent care
3) Documentation that staff have received such training
4) Observation of a welcoming clinic environment
5) Client surveys document respectful treatment

Observations:
OSDH completed a needs assessment and identified priority populations to be served. The program has a completed a series of mandatory cultural competence trainings on a variety of different populations and staff completion is documented. Policies and procedures include a waiving of fees for good cause and client surveys indicate the majority of clients view staff as respectful.

Finding:
This Quality Aspect is FULLY DEVELOPED.

**9.6 Clinical Protocols**
Protocols follow QFP and are evidenced by:
1) Covering the full scope of QFP-defined family planning services
2) Sub-recipient protocols reflect latest QFP recommendations
3) Documentation of QFP training
4) Client records indicate services per QFP Tables 2 and 3

Observations:
OSDH clinical protocols include the full scope of family planning services indicated by QFP, medical records document that providers follow these protocols and clinicians have been trained on QFP.

Finding:
This Quality Aspect is FULLY DEVELOPED.

**9.8 Adolescent Services**
The special needs of adolescents are addressed by:
1) Offering all services listed in the QFP
2) No out-stock of routinely offered contraceptives occurred in the past 6 months
3) FPAR data indicate services to adolescents close to or above the national average

Aplt.App. 300

4) FPAR data indicate services to males close to or above the national average
5) Medical records indicate adolescents have been counseled about abstinence, condoms and LARCs

Observations:
OSDH supports a full complement of reproductive health services is available to adolescents including a broad range of contraceptive methods.  Appropriate counseling is provided. FPAR data indicate OSDH serves more than the national average for adolescents and less than the national average for males. At one site visited, the percentage of teen clients is below both the grantee's and national averages, but staff are aware of the issue and are working to increase the number served.

Finding:
This Quality Aspect is PARTIALLY DEVELOPED.

Recommendation:
OSDH **should** strategies to promote services among adolescents and males.

### 9.10 Pregnancy Testing and Counseling
Pregnancy testing and counseling services should include:
1) Written protocols follow QFP recommendations, including reproductive life planning
2) Medical records indicate clients with positive pregnancy tests receive prenatal counseling and social support assessment
3) Medical records indicate clients with a negative pregnancy test who wish not to become pregnant are offered same-day contraception
4) Staff are trained in QFP pregnancy testing and counseling recommendations
5) Medical records and observation indicate pregnancy counseling follows QFP recommendations, including reproductive life planning

Observations:
OSDH policies and procedures comply with QFP recommendations, and medical records indicate that appropriate testing and counseling is taking place at the clinical level. All clients completed a checklist that includes the reproductive life planning elements. Referral systems are in place for pregnant clients

Finding:
This Quality Aspect is FULLY DEVELOPED.

### 13.1 Limited English Proficiency
Providing services or materials to those with Limited English Proficiency include:
1) Materials are clear and easy to understand (e.g. 4th-6th-grade reading level)
2) Observation demonstrates that information is presented in a way that emphasizes essential points
3) Observation demonstrates that information on risks and benefits of different contraceptives or procedures are communicated in a way that is easily understood
4) Information provided during counseling is culturally appropriate

33

5) Educational materials are tailored to literacy

Observations:
Information is available to clients in English and Spanish, and a significant number of staff is bilingual (English/Spanish). A language line is available for instances in which a translator is not present (See Administrative section 13.1.1 regarding client notification of services). Cultural competency training covers a variety of different aspects throughout the year, and observations indicate clients receive counseling at appropriate levels.

Finding:
This Quality Aspect is FULLY DEVELOPED.

34



DEPARTMENT OF HEALTH AND HUMAN SERVICES    Notice of Award    **EXHIBIT 3**

Office of the Secretary

Award#   1 FPHPA006507-01-00
FAIN#   FPHPA006507
Federal Award Date: 03/23/2022

## Recipient Information

**1. Recipient Name**

Health Department, Oklahoma State
123 Robert S Kerr Ave
0308
Oklahoma State Department of Health
Oklahoma City, OK 73102-6406

**2. Congressional District of Recipient**
05

**3. Payment System Identifier (ID)**
1736017987C4

**4. Employer Identification Number (EIN)**
736017987

**5. Data Universal Numbering System (DUNS)**
143673015

**6. Recipient's Unique Entity Identifier**

**7. Project Director or Principal Investigator**

JILL  NOBLES-BOTKIN
jill@health.ok.gov
405-271-4476

**8. Authorized Official**

Ms. Bethany J Ledel
Grants Reporting Officer
bethanyl@health.ok.gov
405-271-4042

### Federal Agency Information

OASH Grants and Acquisitions Management Division

**9. Awarding Agency Contact Information**

Mrs. Jessica Hall-Shields
Grants Specialist
Jessica.Shields@hhs.gov
240-453-8839

**10. Program Official Contact Information**

Cynda  Hall
Public Health Advisor
cynda.hall@hhs.gov
2404532850

## Federal Award Information

**11. Award Number**
1 FPHPA006507-01-00

**12. Unique Federal Award Identification Number (FAIN)**
FPHPA006507

**13. Statutory Authority**
Title X of the Public Health Service Act, Section 1001 (42 U.S.C. § 300)

**14. Federal Award Project Title**
Oklahoma State Department of Health Family Planning Services Project

**15. Assistance Listing Number**
93.217

**16. Assistance Listing Program Title**
Family Planning Services

**17. Award Action Type**
New

**18. Is the Award R&D?**
No

### Summary Federal Award Financial Information

| | |
|---|---|
| **19.  Budget Period Start Date**   04/01/2022   **- End Date**  03/31/2023 | |
| **20.  Total Amount of Federal Funds Obligated by this Action** | $4,500,000.00 |
| 20a. Direct Cost Amount | $8,813,049.00 |
| 20b. Indirect Cost Amount | $264,921.00 |
| **21.** Authorized Carryover | $0.00 |
| **22.** Offset | $0.00 |
| **23.** Total Amount of Federal Funds Obligated this budget period | $0.00 |
| **24.** Total Approved Cost Sharing or Matching, where applicable | $4,577,970.00 |
| **25.** Total Federal and Non-Federal Approved this Budget Period | $9,077,970.00 |
| **26.** Project Period  Start Date   04/01/2022   **- End Date**  03/31/2027 | |
| **27.** Total Amount of the Federal Award including Approved Cost  Sharing or Matching this Project Period | Not Available |

**28. Authorized Treatment of Program Income**

OTHER (See REMARKS)

**29. Grants Management Officer – Signature**

Dr. Scott Moore
OASH Grants Management Officer

## 30. Remarks

See Remarks (continuation)



DEPARTMENT OF HEALTH AND HUMAN SERVICES

Office of the Secretary

Notice of Award

Award#  1 FPHPA006507-01-00
FAIN#   FPHPA006507
Federal Award Date: 03/23/2022

## Recipient Information

**Recipient Name**
Health Department, Oklahoma State
123 Robert S Kerr Ave
0308
Oklahoma State Department of Health
Oklahoma City, OK 73102-6406
**Congressional District of Recipient**
05
**Payment Account Number and Type**
1736017987C4
**Employer Identification Number (EIN)**
736017987
**Data Universal Numbering System (DUNS)**
143673015
**Recipient's Unique Entity Identifier**

**31. Assistance Type**
Project Grant
**32. Type of Award**
Service

### 33. Approved Budget
(Excludes Direct Assistance)

I. Financial Assistance from the Federal Awarding Agency Only
II. Total project costs including grant funds and all other financial participation

| | | |
|---|---|---:|
| a. | Salaries and Wages | $4,041,510.00 |
| b. | Fringe Benefits | $1,970,211.00 |
| c. | Total Personnel Costs | $6,011,721.00 |
| d. | Equipment | $0.00 |
| e. | Supplies | $1,465,816.00 |
| f. | Travel | $30,183.00 |
| g. | Construction | $0.00 |
| h. | Other | $319,914.00 |
| i. | Contractual | $985,415.00 |
| **j.** | **TOTAL DIRECT COSTS** | **$8,813,049.00** |
| **k.** | **INDIRECT COSTS** | **$264,921.00** |
| **l.** | **TOTAL APPROVED BUDGET** | **$9,077,970.00** |
| **m.** | **Federal Share** | **$4,500,000.00** |
| **n.** | **Non-Federal Share** | **$4,577,970.00** |

### 34. Accounting Classification Codes

| FY-ACCOUNT NO. | DOCUMENT NO. | ADMINISTRATIVE CODE | OBJECT CLASS | AMT ACTION FINANCIAL ASSISTANCE | APPROPRIATION |
|---|---|---|---|---|---|
| 2-3984521 | FPHPA6507A | FPH70 | 41.51 | $4,500,000.00 | 75-22-0359 |



**EXHIBIT 4**

**DEPARTMENT OF HEALTH & HUMAN SERVICES**

Office of the Secretary

Office of the Assistant Secretary for Health
Grants & Acquisitions Management
Rockville, MD 20852

May 25, 2023

TO:         Jill Nobles-Botkin (jill@health.ok.gov)
                 Project Director/Principle Investigator

                 Ms. Bethany J Ledel (bethanyl@health.ok.gov)
                 Authorized Official

                 Oklahoma State Health Department
                 123 Robert S Kerr Ave 0308
                 Oklahoma City, OK 73102-6406

RE:         Suspension of Award FPHPA006507 "Oklahoma State Department of Health
                 Family Planning Services Project"

The Office of Population Affairs (OPA) has provided notice in the attached letter that your
award FPHPA006507 "Oklahoma State Department of Health Family Planning Services Project"
is out of compliance with the Title X regulation (42 CFR Part 59, Subpart A) as of May 24,
2023.

As a condition of accepting the award (Notice of Award, Special Terms and Requirements 2),
Oklahoma State Department of Health (OSDH) stipulated "that the award and any activities
thereunder are subject to all provisions of 42 CFR Part 59, Subpart A." OSDH accepted the
award per Standard Term 1 of the Notice of Award, "By drawing or otherwise obtaining funds
for the award from the grant payment system or office, you accept the terms and conditions of
the award and agree to perform in accordance with the requirements of the award."

OSDH accepted the award on May 24, 2022, by drawing down funds from the HHS Payment
Management System (PMS). In doing so, OSDH agreed to comply with the Title X regulation as
a condition of the award.

Therefore, I conclude that because OSDH is out of compliance with the Title X regulation,
OSDH is also out of compliance with the terms and conditions of award FPHPA006507. As of
April 27, 2023 (i.e., the effective date of the non-compliant OSDH policy), all costs are
unallowable.

Consequently, I am suspending award FPHPA006507 and all activities supported by it effective
with the date of this letter. I will review this action in 30 days to reassess OSDH's compliance
with the award terms and conditions. The suspension may be extended for an appropriate time or
the award may be terminated pursuant to 45 CFR § 75.372(a)(1) for material noncompliance or
unsatisfactory performance with the terms and conditions of the award. A termination under this
section must be reported to the Office of Management and Budget-designated integrity and

**Aplt.App. 305**

performance system, currently the Federal Awardee Performance and Integrity Information System (FAPIIS). See 45 CFR § 75.372(b). Inclusion in FAPIIS may affect your ability to obtain future Federal funding.

As an alternative, you have the opportunity to voluntarily relinquish your grant and may do so by contacting the assigned Grants Management Specialist (Jessica Shields, Jessica.shields@hhs.gov), who can provide your additional information on the process. Note that as compared to termination, a decision to relinquish your award is not reported to FAPIIS.

Respectfully,

Scott J.Moore -S
2023.05.25 11:09:13 -04'00'

Scott J. Moore, Ph.D., J.D.
Director / Chief Grants Management Officer
OASH Grants & Acquisitions Management

cc:    Jessica Shields, Grants Management Specialist
       Cynda Hall, OPA Project Officer
       Duane Barlow, OASH Grants Branch chief
       Amy Margolis, OPA Deputy Director
       Jessica Marcella, Deputy Assistant Secretary for Population Affairs

- 2 -

**DEPARTMENT OF HEALTH AND HUMAN SERVICES**        Office of the Secretary

Office of the Assistant Secretary for Health
Office of Population Affairs
Washington, D.C. 20201

May 24, 2023

Jill Nobles-Botkin, APRN-CNM, MSN
Administrative Programs Manager
Perinatal and Reproductive Health Division
Maternal & Child Health Services
Oklahoma State Department of Health
123 Robert S. Kerr Avenue 0308
Oklahoma City, OK 73102-6406

Dear Ms. Nobles-Botkin,

As you know, the Office of Population Affairs (OPA) has been corresponding with the Oklahoma State Department of Health (OSDH) since last summer with respect to its policy and procedure for providing nondirective options counseling and referral within its Title X project (FPHPA006507), in accordance with the 2021 Title X implementing regulations at 42 CFR § 59.5(a)(5). As a brief recap, on August 29, 2022, because of recent changes in Oklahoma state laws, OSDH submitted a proposal to change its policy and procedure for providing nondirective options counseling by providing clients seeking counseling on pregnancy termination with a link to the HHS OPA website.  On November 9, 2022, OPA informed OSDH that this proposal did not comply with the Title X regulatory requirements set out in 42 CFR § 59.5(a)(5)(ii) and, therefore, could not be approved. On November 22, 2022, OSDH submitted to OPA a request for reconsideration of OPA's November 9, 2022 decision. On January 25, 2023, OPA posted a letter to OSDH on GrantSolutions.  That letter reiterated that the proposal to provide clients seeking counseling on pregnancy termination with a link to the HHS OPA website does not comply with the 2021 Title X implementing regulations at 42 CFR § 59.5(a)(5)(ii).  The letter also informed OSDH that it could submit an alternate compliance proposal that included providing clients with a referral to another entity, such as the All-Options Talkline.  OSDH informed OPA that it became aware of this letter on February 7, 2023, when contacted by email.

On February 16, 2023, OSDH responded to OPA's January 25, 2023, letter by submitting an alternative proposal for compliance, which included providing nondirective counseling on all pregnancy options by OSDH staff or through the All-Options Talk Line. On March 14, 2023, OSDH submitted a "Pregnancy Diagnosis and Counseling" policy (revised March 2023), which indicated that the protocol for counseling clients with a positive pregnancy test includes:

> b. Provide neutral, factual information and nondirective counseling on all pregnancy options by OSDH staff or through the All-Options Talk Line (1-888-493-0092) and website, https://www.all-options.org/find-support/talkline/ (except for options the client indicated she does not want more information on).

In addition, as a corollary to the counseling protocol, OSDH's "Pregnancy Diagnosis and Counseling" policy (revised March 2023) indicated that one of the options for referral was to the "All-Options Talk Line (1-888-493-0092)." As part of its March 14 submission, OSDH also sent a Pregnancy Choices brochure (dated March 2023), listing the All-Options Talk Line as one of the Oklahoma Family Planning Resources.

On March 21, 2023, OSDH submitted a written assurance of compliance with the options counseling and referral requirements in the 2021 Title X Final Rule. On March 23, 2023, OPA posted two documents on GrantSolutions (a letter dated March 1, 2023, and a printout of a Technical Review, Exported On: 03/20/2023). Those documents informed OSDH that OSDH's policy complied with the Title X regulations.

Most recently, however, on May 5, 2023, OSDH notified OPA by email that it "had a change required in our family planning program policy effective late afternoon of 4/27/23." As documentation, OSDH submitted the same exact "Pregnancy Diagnosis and Counseling" policy (revised March 2023) as it originally submitted on March 14, 2023, but the new version no longer includes counseling through and referral to the All-Options Talk Line. Specifically, the policy submitted on May 5, 2023, replaced part b, quoted above with the following:

   b. Provide neutral, factual information and nondirective counseling on pregnancy options in Oklahoma by OSDH staff (except for options the client indicated she does not want more information on).

In addition, the updated OSDH "Pregnancy Diagnosis and Counseling" policy (revised March 2023) no longer includes the All-Options Talk Line as an entity to which clients may be referred. And, as part of its May 5, 2023, submission, OSDH also included an updated Pregnancy Choices brochure, which no longer lists the All-Options Talk Line as a resource.

OSDH's reference to counseling on "pregnancy options in Oklahoma" in the "Pregnancy Diagnosis and Counseling" policy, rather than counseling on all pregnancy options, and the deletion of referral to the All-Options Talk Line in this policy without any other provision for abortion referrals, are not acceptable revisions, as Title X recipients must still follow all Federal regulatory requirements. The changes to OSDH's family planning program policy do not suffice or meet Federal requirements because Oklahoma law does not extend to all pregnancy options (See Okla. Stat. tit. 21, § 861), and we understand that, pursuant to OSDH's revised policy, information, counseling and referral will not be available for all alternative courses of action, but only for those options available under Oklahoma state law. This is inconsistent with Title X regulations at 42 CFR § 59.5(a)(5), which require Title X projects to provide information and nondirective counseling on a range of options, including prenatal care and delivery; infant care, foster care, or adoption; and pregnancy termination. Additionally, projects are required to provide referrals upon client request, including referrals for abortion. In some circumstances, those referrals will need to be made out of state.

Thus, based upon the documentation provided, OPA has determined that OSDH's policy for providing nondirective options counseling and referral within your Title X project does not comply with the Title X regulatory requirements and, therefore, the terms and conditions of your grant. Given OSDH's failure to adhere to the Title X regulatory requirements for nondirective options counseling and referral, I have referred this matter to the HHS Office of the Assistant Secretary for Health's Grants and Acquisitions Management (GAM) Division as a violation of the terms and conditions of your grant. I have copied the Director of OASH GAM on this correspondence as notification of the compliance violation and will be in touch with a response.

Thanks,

*Jessica S. Marcella* (signature)

Jessica Swafford Marcella
Deputy Assistant Secretary for Population Affairs
U.S. Department of Health and Human Services
Office of the Assistant Secretary for Health, Office of Population Affairs

cc: Scott Moore
Director/Chief Grants Management Officer
U.S. Department of Health and Human Services
Office of the Assistant Secretary for Health, Grants and Acquisitions Management



**EXHIBIT 5**

**DEPARTMENT OF HEALTH & HUMAN SERVICES**                              Office of the Secretary

Office of the Assistant Secretary for Health
Grants & Acquisitions Management
Rockville, MD 20852

DATE          June 27, 2023

To:           Jill Nobles-Botkin (jill@health.ok.gov)
              Project Director/Principal Investigator

              Ms. Bethany J Ledel (bethanyl@health.ok.gov)
              Authorized Official

              Oklahoma State Health Department
              123 Robert S Kerr Ave 0308
              Oklahoma City, OK 73102-6406

Re:           Termination Notice for award FPHPA006507 "Oklahoma State Department of
              Health Family Planning Services Project"

        This letter provides notice of my decision to terminate the above identified award under
45 C.F.R. § 75.372.  Termination is not final until a Notice of Award has been issued with a
revised project period end date indicating the effective date of the termination. You must submit
complete close out documentation within 120 days of the new project period end date.
Additional guidance is attached (Tab A).  Failure to provide a timely and acceptable closeout
package may result in a unilateral closeout and report to the Federal Awardee Performance and
Integrity Information System (FAPIIS) as a material failure to comply with the terms and
conditions of the award.

        This termination is based on a failure to comply with the terms and conditions of the
award as described below.  The termination decision will be reported to the OMB-designated
integrity and performance system accessible through SAM (currently FAPIIS). The information
will be available in the OMB-designated integrity and performance system for a period of five
years from the date of the termination, then archived. Agencies that consider making a Federal
award to your organization during that five-year period must consider that information in judging
whether organization is qualified to receive the Federal award, when the Federal share of the
Federal award is expected to exceed the simplified acquisition threshold over the period of
performance.

        Your organization may comment on any information the OMB-designated integrity and
performance system contains about the non-Federal entity for future consideration by awarding
agencies. You may submit comments to the awardee integrity and performance portal accessible

**Aplt.App. 309**

through SAM (currently CPARS). Awarding agencies will consider your comments when determining whether your organization is qualified for a future Federal award.

**Appeal Procedure**

You have an opportunity to object and provide information and documentation challenging the termination action, in accordance with 42 CFR part 50, subpart D. To receive a review of your challenge, you must submit a request for such review to the Assistant Secretary for Health (ASH) no later than 30 days after the written notification of the determination is received. An extension of time may be considered upon a demonstration of good cause for the extension. A request for review must identify the issue(s) in dispute. It must also contain a full statement of your position with respect to such issue(s) and the pertinent facts and reasons in support of your position. In addition to the required written statement, you must provide copies of any documents supporting your claim.

Upon receipt of your request, the ASH will follow the process set forth in 42 CFR part 50, subpart D. Any review committee appointed under § 50.405 will be provided with copies of all relevant background materials (including applications(s), award(s), summary statement(s), and correspondence) and any additional pertinent information available. You will be given an opportunity to provide the review committee with additional statements and documentation not provided in the request for review. This additional submission must be tabbed and organized chronologically and accompanied by an indexed list identifying each document. The additional submission should provide only material that is relevant to the review committee's deliberation of the issues raised. You may be asked by the committee, at its discretion, to discuss the pertinent issues with the committee and to submit such additional information as the committee deems appropriate.

Based on its review, the review committee will prepare a written decision to be signed by the chairperson and each of the other committee members. The review committee will then send the written decision with a transmittal letter to you. If the decision is adverse to your position, you will be advised as to your right to appeal to the Departmental Appeals Board under 45 CFR part 16.

**Compliance Findings**

 Our findings with respect to non-compliance with the award terms and conditions.

1. By accepting the award (Tab A—Notice of Award (NOA), Special Terms and Requirements 2), Oklahoma State Department of Health (OSDH) stipulated "that the award and any activities thereunder are subject to all provisions of 42 CFR Part 59, Subpart A." OSDH accepted the award "By drawing or otherwise obtaining funds for the award from the grant payment system or office, you accept the terms and conditions of the award and agree

- 2 -

to perform in accordance with the requirements of the award." (Tab A—NOA Standard
Term 1).

2.  OSDH accepted the award on May 24, 2022, by drawing down funds from the HHS Payment
    Management System (PMS). In doing so, OSDH agreed to comply with the 42 CFR Part 59,
    Subpart A as a condition of the award.

3.  The Notice of Funding Opportunity (NOFO) PA-FPH-22-001 for the competition ultimately
    leading to the issuance of FPHPA006507 to OSDH stated the requirement that recipients
    must comply with the final rule issued on October 4, 2021 (NOFO, Section B.2.a.2).

4.  In the application submitted under PA-FPH-22-001, OSDH certified SF-424B "Assurance-
    Non-Construction Programs" which includes assurance "18. Will comply with all applicable
    requirements of all other Federal laws, executive orders, regulations, and policies governing
    this program." (Tab D)


**OPA Determination of Non-Compliance with 42 CFR Part 59, Subpart A**

5.  On August 29, 2022, because of recent changes in Oklahoma state laws, OSDH submitted a
    proposal to change its policy and procedure for providing nondirective options counseling by
    providing clients seeking counseling on pregnancy termination with a link to the HHS OPA
    website.

6.  On November 9, 2022, OPA informed OSDH that this proposal did not comply with the
    Title X regulatory requirements set out in 42 CFR § 59.5(a)(5)(ii) and, therefore, could not be
    approved.

7.  On November 22, 2022, OSDH submitted to OPA a request for reconsideration of OPA's
    November 9, 2022 decision.

8.  On January 25, 2023, OPA posted a letter to OSDH on GrantSolutions. That letter reiterated
    that the proposal to provide clients seeking counseling on pregnancy termination with a link
    to the HHS OPA website does not comply with the 2021 Title X implementing regulations at
    42 CFR § 59.5(a)(5)(ii). The letter also informed OSDH that it could submit an alternate
    compliance proposal that included providing clients with a referral to another entity, such as
    the All-Options Talkline.

9.  OSDH informed OPA that it became aware of this letter on February 7, 2023, when
    contacted by email.

**Aplt.App. 311**

10. On February 16, 2023, OSDH responded to OPA's January 25, 2023, letter by submitting an alternative proposal for compliance, which included providing nondirective counseling on all pregnancy options by OSDH staff or through the All-Options Talk Line.

11. On March 14, 2023, OSDH submitted a "Pregnancy Diagnosis and Counseling" policy (revised March 2023), which indicated that the protocol for counseling clients with a positive pregnancy test includes:

   b. Provide neutral, factual information and nondirective counseling on all pregnancy options by OSDH staff or through the All-Options Talk Line (1-888-493-0092) and website, https://www.all-options.org/find-support/talkline/ (except for options the client indicated she does not want more information on).

12. In addition, as a corollary to the counseling protocol, OSDH's "Pregnancy Diagnosis and Counseling" policy (revised March 2023) indicated that one of the options for referral was to the "All-Options Talk Line (1-888-493-0092)." As part of its March 14 submission, OSDH also sent a Pregnancy Choices brochure (dated March 2023), listing the All-Options Talk Line as one of the Oklahoma Family Planning Resources.

13. On March 21, 2023, OSDH submitted a written assurance of compliance with the options counseling and referral requirements in the 2021 Title X Final Rule. On March 23, 2023, OPA posted two documents on GrantSolutions (a letter dated March 1, 2023, and a printout of a Technical Review, Exported On: 03/20/2023). Those documents informed OSDH that OPA had determined that OSDH's policy complied with the Title X regulations.

14. On May 5, 2023, OSDH notified OPA by email that it "had a change required in our family planning program policy effective late afternoon of 4/27/23." As documentation, OSDH submitted the same exact "Pregnancy Diagnosis and Counseling" policy (revised March 2023) as it originally submitted on March 14, 2023, but the new version no longer includes counseling through and referral to the All-Options Talk Line. Specifically, the policy submitted on May 5, 2023, replaced part b. with the following:

   b. Provide neutral, factual information and nondirective counseling on pregnancy options in Oklahoma by OSDH staff (except for options the client indicated she does not want more information on).

15. In addition, the updated OSDH "Pregnancy Diagnosis and Counseling" policy (revised March 2023) no longer includes the All-Options Talk Line as an entity to which clients may be referred. And, as part of its May 5, 2023, submission, OSDH also included an updated Pregnancy Choices brochure, which no longer lists the All-Options Talk Line as a resource.

16. OSDH's reference to counseling on "pregnancy options in Oklahoma" in the "Pregnancy Diagnosis and Counseling" policy, rather than counseling on all pregnancy options, and the deletion of referral to the All-Options Talk Line in this policy without any other provision for abortion referrals, are not acceptable revisions, as Title X recipients must still follow all

- 4 -

**Aplt.App. 312**

Federal regulatory requirements. The changes to OSDH's family planning program policy do not suffice or meet Federal requirements because Oklahoma law does not extend to all pregnancy options (See Okla. Stat. tit. 21, § 861), and we understand that, pursuant to OSDH's revised policy, information, counseling and referral will not be available for all alternative courses of action, but only for those options available under Oklahoma state law. This is inconsistent with Title X regulations at 42 CFR § 59.5(a)(5), which require Title X projects to provide information and nondirective counseling on a range of options, including prenatal care and delivery; infant care, foster care, or adoption; and pregnancy termination. Additionally, projects are required to provide referrals upon client request, including referrals for abortion. In some circumstances, those referrals will need to be made out of state.

17. Thus, based upon the documentation provided, OPA determined that OSDH's policy for providing nondirective options counseling and referral the Title X project does not comply with the Title X regulatory requirements.

18. OPA communicated this determination of non-compliance to OSDH and the OASH Chief Grants Management Officer (CGMO) by letter dated May 24, 2023 (Tab C).

**Determination of Non-Compliance with Award Terms and Award Suspension**

19. On May 25, 2023, the CGMO concluded that because OSDH is out of compliance with the Title X regulation, OSDH is also out of compliance with the terms and conditions of award FPHPA006507. The CGMO provided notice of the suspension on that day to OSDH and informed OSDH that as of April 27, 2023 (i.e., the effective date of the non-compliant OSDH policy), all costs are unallowable (Tab B).

20. On June 22, 2023, during a call to assess the status of OSDH's efforts to come into compliance during the first 30 days of the suspension period, OSDH indicated that it would not be able to comply with the Title X regulation citing state law.  OSDH stated it did not intend to relinquish the award.

**Conclusion**

After consideration of the above, I conclude that OSDH remains out of compliance with the Title X regulation. OSDH had ample notification of what is required to maintain compliance with the Title X regulation. OSDH took steps to achieve compliance in order to receive a continuation award and subsequently revised its policy to a non-complaint version.

Furthermore, I conclude that OSDH is unlikely to achieve compliance with the terms and conditions of the award during the current budget period. OSDH's material non-compliance with terms and conditions of the award place the federal interest at risk and it is in the best interest of

Aplt.App. 313

the government to terminate award FPHPA006507 "Oklahoma State Department of Health Family Planning Services Project".

This decision to terminate will be final and effective with the project period end date on the NOA when it is issued.

Respectfully,

Scott J. Moore -S
2023.06.27 13:44:38 -04'00'

Scott J. Moore, Ph.D., J.D., C.F.E.
Director and Chief Grants Management Officer

CC     Jessica Shields, Grants Management Specialist
       Cynda Hall, OPA Project Officer
       Duane Barlow, OASH Grants Branch Chief
       Amy Margolis, OPA Deputy Director
       Jessica Marcella, Deputy Assistant Secretary for Population Affairs

Attachments

    A. Award Closeout Guidance
    B. Notice(s) of Award (initial and all amendments)
    C. OPA Determination of Non-Compliance with Title X Regulation 42 CFR Part 59, Subpart A
    D. Award Suspension Letter
    E. SF-424B Assurances - Non-Construction Programs

**Aplt.App. 314**

**DEPARTMENT OF HEALTH AND HUMAN SERVICES**                                     Office of the Secretary

Office of the Assistant Secretary for Health

Grants and Acquisitions Management Division

Rockville, MD 20852

June 27, 2023

Dear: Ms. Jill Nobles-Botkin

FPHPA006507

Our records indicate that your award is scheduled to end on 06/28/2023.  In order to complete closeout procedures for this project in accordance with the Uniform Administrative Requirements regulations, the following information and reports must be submitted to the Office of Grants Management, as indicated below:  In accordance with the terms and conditions of your award and 45 CFR §75.381, final reports are due ninety (120) days after the Project Period End date.

When your award expires, you may only use remaining grant funds to liquidate expenses incurred during the performance period. You must liquidate all obligations within 90 days of your award expiration date and withdraw the corresponding cash from the HHS Payment Management System (PMS). If you need to liquidate additional funds after the 90-day liquidation period, you must request an extension from the Grants & Acquisitions Management (GAM). Unless an extension has been approved by GAM, you will be unable to withdraw additional funds from PMS.

As part of the closeout of your award, you are responsible for the timely closeout of any subaward(s) and or contract(s) under the award and the financial settlement of any claims with those entities. You should establish a receipt date for your subrecipients/contractors to submit closeout data, final reports, and final claims that allows you to meet the requirement for submission of final reports.

1.  SF-425 – Final Federal Financial Report (FFR) and Federal Cash Transactions Report (FCTR)– You must submit your final FFR via the FFR Reporting Module in  PMS. You may find a paper copy of the form and instructions at https://www.grants.gov/web/grants/forms/post-award-reporting-forms.html. In order for your final FFR to be approved, the final, cumulative FFR must:
    o   Have no un-liquidated obligations,
    o   Indicate the exact balance of unobligated funds as reported to the Payment Management System (PMS),
    o   Reflect the proper amount of indirect costs applicable to the period based on current rates available at the time of preparation, and

    Your disbursements reported in PMS must match your reported obligations on the FFR. You must withdraw all cash needed for disbursements or return unneeded cash.  Failure to reconcile your disbursements and cash drawdowns will delay the closeout of your award

    Also, if your Notice of Award includes a cost-sharing or matching commitment, your final, cumulative FFR must show that you have met that requirement.  If you have not met that commitment, you must notify us immediately with a justification and request for budget revision.

2.  SF-428 and SF-428-B Tangible Personal Property report and/or Disposition report – A report regarding equipment acquired with project funds with an acquisition cost of $5,000 or more per

**Aplt.App. 315**

unit or residual unused supplies with an aggregate fair market value exceeding $5,000. **A negative report is required.** If there are items to report, the inventory must name items, date of purchase, and cost of each item. Indicate your request for disposition of this equipment in accordance with Subpart D - Post Federal Award Requirements, Property Standards, Equipment, 45 CFR part. 75.320. If disposition by transfer or sale is requested include fair market value; you must provide a final Tangible Personal Property Report on the SF 428-B. Access to form SF-428, with instructions for completing the forms, can be found on the Web at https://www.grants.gov/web/grants/forms/post-award-reporting-forms.html.  Submit this report as an attachment in Grant Notes in GrantSolutions.

3. <u>Final Program Progress Report</u> – Your reports must address content required by 45 CFR § 75.342(b)(2). Submit your report as an attachment in Grant Notes in GrantSolutions.

Your annual audit must meet the audit requirements for close out of this project.  An audit is required for all entities which expend $750,000 or more of Federal funds in each fiscal year. The audits are due within 30 days of receipt from the auditor or within 9 months of the end of the fiscal year, whichever occurs first. The audit report when completed must be submitted online to the Federal Audit Clearinghouse at http://harvester.census.gov/fac/collect/ddeindex.html.

If any inventions were conceived or first actually reduced to practice under this award, they must be listed on the HHS-568 - Procedures for Submission of Final Invention Statement http://www.hhs.gov/forms/publicuse.html.  This form should be submitted as an attachment in Grant Notes in GrantSolutions

If your award is subject to reimbursement payment, you must submit an SF 270, Request for Advance or Reimbursement, for any amounts for which you have not previously requested payment. Submit this form as an attachment in Grant Notes in GrantSolutions

The specified reports must be sent as indicated above. Submission in any other manner or to any other office or official will result in your reports being considered delinquent.

Following receipt of your reports, we will review them and advise you of their acceptability or any need for revision.

Financial records, supporting documents, statistical records, and all records pertinent to this grant shall be retained for a period of three years.  The records shall be retained beyond the three-year period if an audit is in process or if any audit findings have not been resolved.

Receipt and acceptance of the requested materials will complete the closeout process, subject to final audit.  If you have any questions or require assistance, please contact your assigned Grants Management Specialist (GMS) Jessica Shields at Jessica.Shields@hhs.gov, 240-453-8839 or your Project Officer (PO) Cynda Hall at Cynda.Hall@hhs.gov, 240-453-2850.  When emailing, it is best to copy both your GMS and PO.

Sincerely,

**Jessica Shields**
Grants Management Specialist

cc: Cynda Hall Project Officer

DEPARTMENT OF HEALTH AND HUMAN SERVICES

**Office of the Secretary**

### Notice of Award

Award#  1 FPHPA006507-01-00
FAIN#  FPHPA006507
Federal Award Date: 03/23/2022

| Recipient Information | Federal Award Information |
|---|---|

## Recipient Information

**1. Recipient Name**

Health Department, Oklahoma State
123 Robert S Kerr Ave
0308
Oklahoma State Department of Health
Oklahoma City, OK 73102-6406

**2. Congressional District of Recipient**
05

**3. Payment System Identifier (ID)**
1736017987C4

**4. Employer Identification Number (EIN)**
736017987

**5. Data Universal Numbering System (DUNS)**
143673015

**6. Recipient's Unique Entity Identifier**

**7. Project Director or Principal Investigator**

JILL  NOBLES-BOTKIN
jill@health.ok.gov
405-271-4476

**8. Authorized Official**

Ms. Bethany J Ledel
Grants Reporting Officer
bethanyl@health.ok.gov
405-271-4042

### Federal Agency Information

OASH Grants and Acquisitions Management Division

**9. Awarding Agency Contact Information**

Mrs. Jessica Hall-Shields
Grants Specialist
Jessica.Shields@hhs.gov
240-453-8839

**10. Program Official Contact Information**

Cynda  Hall
Public Health Advisor
cynda.hall@hhs.gov
2404532850

## Federal Award Information

**11. Award Number**
1 FPHPA006507-01-00

**12. Unique Federal Award Identification Number (FAIN)**
FPHPA006507

**13. Statutory Authority**
Title X of the Public Health Service Act, Section 1001 (42 U.S.C. § 300)

**14. Federal Award Project Title**
Oklahoma State Department of Health Family Planning Services Project

**15. Assistance Listing Number**
93.217

**16. Assistance Listing Program Title**
Family Planning Services

**17. Award Action Type**
New

**18. Is the Award R&D?**
No

### Summary Federal Award Financial Information

| | | |
|---|---|---:|
| **19. Budget Period Start Date** | 04/01/2022 **- End Date** 03/31/2023 | |
| **20. Total Amount of Federal Funds Obligated by this Action** | | $4,500,000.00 |
| 20a. Direct Cost Amount | | $8,813,049.00 |
| 20b. Indirect Cost Amount | | $264,921.00 |
| **21. Authorized Carryover** | | $0.00 |
| **22. Offset** | | $0.00 |
| **23. Total Amount of Federal Funds Obligated this budget period** | | $0.00 |
| **24. Total Approved Cost Sharing or Matching, where applicable** | | $4,577,970.00 |
| **25. Total Federal and Non-Federal Approved this Budget Period** | | $9,077,970.00 |
| **26. Project Period Start Date** | 04/01/2022 **- End Date** 03/31/2027 | |
| **27.** Total Amount of the Federal Award including Approved Cost Sharing or Matching this Project Period | | Not Available |

**28. Authorized Treatment of Program Income**

OTHER (See REMARKS)

**29. Grants Management Officer – Signature**

Dr. Scott Moore
OASH Grants Management Officer

## 30. Remarks

See Remarks (continuation)

DEPARTMENT OF HEALTH AND HUMAN SERVICES   Notice of Award

Office of the Secretary

Award#  1 FPHPA006507-01-00
FAIN#   FPHPA006507
Federal Award Date: 03/23/2022

| **Recipient Information** |
| --- |
| **Recipient Name** |
| Health Department, Oklahoma State |
| 123 Robert S Kerr Ave |
| 0308 |
| Oklahoma State Department of Health |
| Oklahoma City, OK 73102-6406 |
| **Congressional District of Recipient** |
| 05 |
| **Payment Account Number and Type** |
| 1736017987C4 |
| **Employer Identification Number (EIN)** |
| 736017987 |
| **Data Universal Numbering System (DUNS)** |
| 143673015 |
| **Recipient's Unique Entity Identifier** |

| **31. Assistance Type** |
| --- |
| Project Grant |
| **32. Type of Award** |
| Service |

**33. Approved Budget**
(Excludes Direct Assistance)

I.  Financial Assistance from the Federal Awarding Agency Only
II.  Total project costs including grant funds and all other financial participation

| | | |
| --- | --- | --- |
| a. | Salaries and Wages | $4,041,510.00 |
| b. | Fringe Benefits | $1,970,211.00 |
| c. | Total Personnel Costs | $6,011,721.00 |
| d. | Equipment | $0.00 |
| e. | Supplies | $1,465,816.00 |
| f. | Travel | $30,183.00 |
| g. | Construction | $0.00 |
| h. | Other | $319,914.00 |
| i. | Contractual | $985,415.00 |
| **j.** | **TOTAL DIRECT COSTS** | **$8,813,049.00** |
| **k.** | **INDIRECT COSTS** | **$264,921.00** |
| **l.** | **TOTAL APPROVED BUDGET** | **$9,077,970.00** |
| **m.** | **Federal Share** | **$4,500,000.00** |
| **n.** | **Non-Federal Share** | **$4,577,970.00** |

| **34. Accounting Classification Codes** | | | | | |
| --- | --- | --- | --- | --- | --- |
| **FY-ACCOUNT NO.** | **DOCUMENT NO.** | **ADMINISTRATIVE CODE** | **OBJECT CLASS** | **AMT ACTION FINANCIAL ASSISTANCE** | **APPROPRIATION** |
| 2-3984521 | FPHPA6507A | FPH70 | 41.51 | $4,500,000.00 | 75-22-0359 |

**Aplt.App. 318**



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**   Notice of Award

Office of the Secretary

Award#   1 FPHPA006507-01-00
FAIN#   FPHPA006507
Federal Award Date:   03/23/2022

---

**Remarks (Continuation)**

This Notice of Award provides funding below the total amount requested in the application for the budget period. OASH is not obligated to make additional Federal Funds available. All award decisions, including the level of funding, are final and you may not appeal. You should re-submit an SF 424A and Budget Narrative justification which includes the total cumulative cost for each cost for the budget reimbursement period based on Personnel, Fringe, Travel, Supplies, Contractual, Other and Indirect cost by object class categories. The budget should be resubmitted for the total awarded amount within 30 days of the start of the budget period on this Notice of Award.  Prior approval of the revised budget by the Grants Management Officer is required.  Changes in scope proposed as part of the budget revision should be clearly noted and also require Grants Management Officer prior approval.



**DEPARTMENT OF HEALTH AND HUMAN SERVICES** Notice of Award

Office of the Secretary

Award# 1 FPHPA006507-01-00
FAIN# FPHPA006507
Federal Award Date: 03/23/2022

---

| 35. Terms And Conditions |
|---|

## SPECIAL TERMS AND REQUIREMENTS

1. **Program Income Use.** Program income (fees, premiums, third-party reimbursements which the project may reasonably expect to receive), as well as State, local and other operational funding, will be used to finance the non-federal share of the scope of project as defined in the approved grant application and reflected in the approved budget. Program income and the level projected in the approved budget will be used to further program objectives. Box 28 on this Notice of Award (NoA) indicates **Other**, Program Income may be used to meet the cost sharing or matching requirement of the Federal award. The amount of the Federal award stays the same. Program Income in excess of any amounts specified must be added to the Federal funds awarded. They must be used for the purposes and conditions of this award for the duration of the Project period. 45 C.F.R. § 75.307 (e).

2. **Program Specific Regulation.** In accepting this award, the grantee stipulates that the award and any activities thereunder are subject to all provisions of 42 CFR Part 59, Subpart A.

3. **OPA Program Priorities.** All recipients must comply with the requirements regarding the provision of family planning services that can be found in the statute (Title X of the Public Health Service Act, 42 U.S.C. § 300 et seq.) and the implementing regulations (42 C.F.R. Part 59, Subpart A), and any legislative mandates. In addition, sterilization of clients as part of the Title X program must be consistent with 42 C.F.R. Part 50, Subpart B ("Sterilization of Persons in Federally Assisted Family Planning Projects").

   In addition to the statute, regulations, legislative mandates, and additional program guidance that apply to Title X, OPA establishes program priorities that represent overarching goals for the Title X program. OPA expects recipients to develop and implement plans to address program priorities. The current priorities are: 1) advance health equity through the delivery of Title X services; 2) improve and expand access to Title X services; and 3) deliver Title X services of the highest quality.

4. **Notice of Change in Service Sites.** In order to maintain an accurate record of current Title X service sites, grantees must provide notice to the Office of Population Affairs (OPA) of any deletions, additions, or changes to the name, location, street address and email, services provided on-site, and contact information for Title X grantees and service sites. This database will also be used to verify eligibility for 340B program registration and recertification. You must enter your changes to the Title X database within 30 days from the official approval of the change at https://opa-fpclinicdb.hhs.gov. This does not replace the prior approval requirement under HHS grants policy for changes in project scope, including clinic closures.

5. **304B Program Participation.** If you or your sub-recipient(s) enrolls in the 340B Program, you must comply with all 340B Program requirements. You may be subject to audit at any time regarding 340B Program compliance. 340B Program requirements are available at https://www.hrsa.gov/opa/program-requirements/index.html.

6. **FPAR reporting.** For each calendar year covered by the project period, you will be required to submit a Family Planning Annual Report (FPAR). The information collection (reporting requirements) and format for this report have been approved by the Office of Management and Budget (OMB) and assigned OMB No. 0990-0479 (Expires 9/30/2024). The FPAR data elements, instrument, and instructions are found on the OPA Web site at http://opa.hhs.gov. You are expected to use the FPAR data to inform your QI/QA activities.

7. **Evaluation Cooperation.** The grantee is expected to participate in OPA research and evaluation activities, if selected, and must agree to follow all evaluation protocols established by OPA or its designee.

8. **Grantee Meetings.** The grantee is encouraged to actively participate in all OPA-supported Title X grantee meetings and grantee conferences. In addition to training and technical assistance available from the Reproductive Health National Training Center and the National Clinical Training Center for Family Planning, OPA is planning to conduct two Title X grantee trainings in 2022 and a Title X grantee conference in 2023.

**DEPARTMENT OF HEALTH AND HUMAN SERVICES**  Notice of Award
Office of the Secretary

Award#  1 FPHPA006507-01-00
FAIN#  FPHPA006507
Federal Award Date:  03/23/2022

9. **Institutional Review Board (IRB).** Institutional Review Board (IRB) approvals, when required, must be submitted via Grant Solutions Grant Notes within 5 business days of receipt from the IRB.  No activities that require IRB approval may take place prior to your receipt of the IRB approval.

10. **Maximizing Access.** In furtherance of maximizing access and best serving individuals in need in the service areas, recipients should make reasonable efforts to avoid duplication of effort in the provision of services across the Title X network.  For example, Title X recipients' coverage areas may overlap geographically, but duplication of subrecipient sites could be minimized or avoided to create more opportunities for services.

11. **Prior Approval for Vehicle Purchases.**  No mobile health unit(s) or other vehicle(s), even if proposed in the application for this award, may be purchased with award funds without prior written approval from the grant management officer.  Requests for approval of such purchases must include a justification with a cost-benefit analysis comparing both purchase and lease options.  Such requests must be submitted as a Budget Revision Amendment in Grant Solutions.


## STANDARD TERMS

1. **Compliance with Terms and Conditions.** You must comply with all terms and conditions outlined in the grant award, including grant policy terms and conditions contained in applicable Department of Health and Human Services (HHS) Grant Policy Statements (GPS), (note any references in the GPS to 45 C.F.R. Part 74 or 92 are now replaced by 45 C.F.R. Part 75, and the SF-269 is now the SF-425), and requirements imposed by program statutes and regulations, Executive Orders, and HHS grant administration regulations, as applicable; as well as any requirements or limitations in any applicable appropriations acts. By drawing or otherwise obtaining funds for the award from the grant payment system or office, you accept the terms and conditions of the award and agree to perform in accordance with the requirements of the award. The HHS Grants Policy Statement is available at: http://www.hhs.gov/sites/default/files/grants/grants/policies-regulations/hhsgps107.pdf Uniform Administrative Requirements, Cost Principles, and Audit Requirements for HHS awards are at 45 C.F.R. Part 75.

2. **Grants Management Officer Prior Approval Requirements.** Certain changes to your project or personnel require prior approval from the Grants Management Officer (GMO). (See Part II, HHS Grants Policy Statement (GPS), any references in the GPS to 45 C.F.R. Part 74 or 92 are now replaced by 45 C.F.R. Part 75). All amendment requests requiring prior approval must be signed by the grantee authorizing official and or PI PD and submitted through the GrantSolutions Amendment Module. Only responses signed by the GMO are considered valid. If you take action on the basis of responses from other officials or individuals, you do so at your own risk. Such responses will not be considered binding by or upon any OASH Office or HHS component. Any other correspondence not relating to a prior approval item should be uploaded to Grant Notes within the GrantSolutions system. Include the Federal grant number and signature of the authorized business official and the project director on all such correspondence.

3. **Salary Limitation (Further Consolidated Appropriations Act, 2022, Div. H, Title II, sec. 202),** "None of the funds appropriated in this title shall be used to pay the salary of an individual, through a grant or other extramural mechanism, at a rate in excess of Executive Level II."

   The Salary Limitation is based upon the Executive Level II of the Federal Executive Pay Scale.  Effective January  2022, the Executive Level II salary is $203,700. For the purposes of the salary limitation, the direct salary is exclusive of fringe benefits and indirect costs. An individual's direct salary is not constrained by the legislative provision for a limitation of salary. The rate limitation simply limits the amount that may be awarded and charged to the grant or cooperative agreement. A recipient may pay an individual's salary amount in excess of the salary cap with non-federal funds.

4. **Reporting Subawards and Executive Compensation.**



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**    Notice of Award

Office of the Secretary

Award#    1 FPHPA006507-01-00
FAIN#    FPHPA006507
Federal Award Date:    03/23/2022

A. Reporting of first-tier subawards.

   1)    Applicability.

Unless you are exempt as provided in paragraph D. of this award term, you must report each action that obligates $30,000 or more in Federal funds that does not include Recovery Act funds (as defined in section 1512(a)(2) of the American Recovery and Reinvestment Act of 2009, Pub. L. 111–5) for a subaward to an entity (see definitions in paragraph e. of this award term).

   2)    Where and when to report.

You must report each obligating action described in paragraph A.1. of this award term to the Federal Funding Accountability and Transparency Act Subaward Reporting System (FFRS). For subaward information, report no later than the end of the month following the month in which the obligation was made. (For example, if the obligation was made on November 7, 2010, the obligation must be reported by no later than December 31, 2010.)

   3)    What to report.

You must report the information about each obligating action as specified in the submission instructions posted at http://www.fsrs.gov.

B. Reporting Total Compensation of Recipient Executives.

   1)    Applicability and what to report.

You must report total compensation for each of your five most highly compensated executives for the preceding completed fiscal year, if—

      a) The total Federal funding authorized to date under this award is $30,000 or more;

      b) In the preceding fiscal year, you received—

         (1)  80 percent or more of your annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 C.F.R. §170.320 (and subawards); and

         (2)  $25,000,000 or more in annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 C.F.R. §170.320 (and subawards); and

      c)   The public does not have access to information about the compensation of the executives through periodic reports filed under section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. § 78m(a), 78o(d)) or section 6104 of the Internal Revenue Code of 1986. (To determine if the public has access to the compensation information, see the U.S. Security and Exchange Commission total compensation filings at the Executive Compensation page of the SEC website.)

   2)    Where and when to report.

You must report executive total compensation described in paragraph B.1. of this award term:

DEPARTMENT OF HEALTH AND HUMAN SERVICES   Notice of Award

Office of the Secretary

Award#   1 FPHPA006507-01-00
FAIN#   FPHPA006507
Federal Award Date: 03/23/2022

   a)  As part of your registration profile in the System for Award Management (SAM).

   b)  By the end of the month following the month in which this award is made, and annually thereafter.

C.  Reporting of Total Compensation of Subrecipient Executives.

   1)  Applicability and what to report.

Unless you are exempt as provided in paragraph D of this award term, for each first-tier subrecipient under this award, you shall report the names and total compensation of each of the subrecipient's five most highly compensated executives for the subrecipient's preceding completed fiscal year, if—

   a)  In the subrecipient's preceding fiscal year, the subrecipient received—

      (1)  80 percent or more of its annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 C.F.R. § 170.320 (and subawards); and

      (2)  $25,000,000 or more in annual gross revenues from Federal procurement contracts (and subcontracts), and Federal financial assistance subject to the Transparency Act (and subawards); and

   b) The public does not have access to information about the compensation of the executives through periodic reports filed under section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. § 78m(a), 78o(d)) or section 6104 of the Internal Revenue Code of 1986. (To determine if the public has access to the compensation information, see the U.S. Security and Exchange Commission total compensation filings at the Executive Compensation page of the SEC website.)

   2)  Where and when to report.

You must report subrecipient executive total compensation described in paragraph C.1. of this award term:

   a)  To the recipient.

   b)  By the end of the month following the month during which you make the subaward. For example, if a subaward is obligated on any date during the month of October of a given year (i.e., between October 1 and 31), you must report any required compensation information of the subrecipient by November 30 of that year.

D.  Exemptions.

If, in the previous tax year, you had gross income, from all sources, under $300,000, you are exempt from the requirements to report:

   1)  Subawards, and

   2)  The total compensation of the five most highly compensated executives of any subrecipient.

E. Definitions.



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**    Notice of Award

Office of the Secretary

Award#    1 FPHPA006507-01-00
FAIN#    FPHPA006507
Federal Award Date:    03/23/2022

For purposes of this award term:

1)    "Entity"

This term means all of the following, as defined in 2 C.F.R. Part 25:

    a)  A Governmental organization, which is a State, local government, or Indian tribe;

    b)  A foreign public entity;

    c)  A domestic or foreign nonprofit organization;

    d)  A domestic or foreign for-profit organization;

    e)  A Federal agency, but only as a subrecipient under an award or subaward to a non-Federal entity.

2)    "Executive"

This term means officers, managing partners, or any other employees in management positions.

3)    "Subaward":

    a)  This term means a legal instrument to provide support for the performance of any portion of the substantive project or program for which you received this award and that you as the recipient award to an eligible subrecipient.

    b)  The term does not include your procurement of property and services needed to carry out the project or program (for further explanation, see Sec. ll .210 of the attachment to OMB Circular A–133, ''Audits of States, Local Governments, and Non-Profit Organizations'').

    c)  A subaward may be provided through any legal agreement, including an agreement that you or a subrecipient considers a contract.

4)    "Subrecipient"

This term means an entity that:

    a)  Receives a subaward from you (the recipient) under this award; and

    b)  Is accountable to you for the use of the Federal funds provided by the subaward.

5)    "Total compensation"

This term means the cash and noncash dollar value earned by the executive during the recipient's or subrecipient's preceding fiscal year and includes the following (for more information see 17 C.F.R. § 229.402(c)(2)):

    a)  Salary and bonus.

**DEPARTMENT OF HEALTH AND HUMAN SERVICES** Notice of Award

Office of the Secretary

Award# 1 FPHPA006507-01-00
FAIN# FPHPA006507
Federal Award Date: 03/23/2022

b) Awards of stock, stock options, and stock appreciation rights. Use the dollar amount recognized for financial statement reporting purposes with respect to the fiscal year in accordance with the Statement of Financial Accounting Standards No. 123 (Revised 2004) (FAS 123R), Shared Based Payments.

c) Earnings for services under non-equity incentive plans. This does not include group life, health, hospitalization or medical reimbursement plans that do not discriminate in favor of executives, and are available generally to all salaried employees.

d) Change in pension value. This is the change in present value of defined benefit and actuarial pension plans.

e) Above-market earnings on deferred compensation which is not tax-qualified.

f) Other compensation, if the aggregate value of all such other compensation (e.g. severance, termination payments, value of life insurance paid on behalf of the employee, perquisites or property) for the executive exceeds $10,000.

5. **Intellectual Property and Data Rights.**

A. Data. The federal government has the right to: 1) Obtain, reproduce, publish, or otherwise use the data produced under this award; and 2) Authorize others to receive, reproduce, publish, or otherwise use such data for federal purposes.

B. Copyright. The awardee may copyright any work that is subject to copyright and was developed, or for which ownership was acquired, under a federal award. The federal government reserves a royalty-free, nonexclusive and irrevocable right to reproduce, publish, or otherwise use the work for Federal purposes, and to authorize others to do so.

C. Patents and Inventions. The awardee is subject to applicable regulations governing patents and inventions, including government- wide regulations issued by the Department of Commerce at 37 CFR part 401.

6. **Acknowledgement of Federal Grant Support.** When issuing statements, press releases, publications, requests for proposal, bid solicitations and other documents --such as tool-kits, resource guides, websites, and presentations (hereafter "statements")-- describing the projects or programs funded in whole or in part with U.S. Department of Health and Human Services (HHS) federal funds, the recipient must clearly state:

1) the percentage and dollar amount of the total costs of the program or project funded with federal money; and,

2) the percentage and dollar amount of the total costs of the project or program funded by non-governmental sources.

When issuing statements resulting from activities supported by HHS financial assistance, the recipient entity must include an acknowledgement of federal assistance using one of the following or a similar statement.

If the HHS Grant or Cooperative Agreement is NOT funded with other non-governmental sources:

This [project/publication/program/website, etc.] [is/was] supported by the [full name of the PROGRAM OFFICE] of the U.S. Department of Health and Human Services (HHS) as part of a financial assistance award totaling $XX with 100 percent funded by [PROGRAM OFFICE] OASH/HHS. The contents are those of the author(s) and do not necessarily represent the official views of, nor an endorsement, by [PROGRAM OFFICE] OASH/HHS, or the U.S. Government. For more information, please visit [PROGRAM OFFICE website, if available].

The HHS Grant or Cooperative Agreement IS partially funded with other nongovernmental sources:

**DEPARTMENT OF HEALTH AND HUMAN SERVICES**  Notice of Award

Office of the Secretary

Award#   1 FPHPA006507-01-00
FAIN#   FPHPA006507
Federal Award Date:  03/23/2022

This [project/publication/program/website, etc.] [is/was] supported by the [full name of the PROGRAM OFFICE] of the U.S. Department of Health and Human Services (HHS) as part of a financial assistance award totaling SXX with XX percentage funded by [PROGRAM OFFICE]/OASH/HHS and SXX amount and XX percentage funded by non-government source(s). The contents are those of the author (s) and do not necessarily represent the official views of, nor an endorsement, by [PROGRAM OFFICE]/OASH/HHS, or the U.S. Government. For more information, please visit [PROGRAM OFFICE website, if available].

The federal award total must reflect total costs (direct and indirect) for all authorized funds (including supplements and carryover) for the total competitive segment up to the time of the public statement.

**Any amendments by the recipient to the acknowledgement statement must be coordinated with the OASH federal project officer and the OASH grants management officer.**

If the recipient plans to issue a press release concerning the outcome of activities supported by this financial assistance, it should notify the OASH federal project officer and the OASH grants management officer in advance to allow for coordination.

7. **Whistleblower Protections.** You are hereby given notice that the 48 C.F.R. § 3.908 (related to the enhancement of contractor employee whistleblower protections), implementing 41 U.S.C. § 4712, as amended (entitled "Enhancement of contractor protection from reprisal for disclosure of certain information") applies to this award.

8. **Reporting of Matters Related to Recipient Integrity and Performance.**

A.  General Reporting Requirement

If the total value of your currently active grants, cooperative agreements, and procurement contracts from all Federal awarding agencies exceeds $10,000,000 for any period of time during the period of performance of this Federal award, then you as the recipient during that period of time must maintain the currency of information reported to the System for Award Management (SAM) that is made available in the designated integrity and performance system (currently the Federal Awardee Performance and Integrity Information System (FAPIIS)) about civil, criminal, or administrative proceedings described in paragraph 2 of this award term and condition. This is a statutory requirement under section 872 of Public Law 110-417, as amended (41 U.S.C. § 2313). As required by section 3010 of Public Law 111-212, all information posted in the designated integrity and performance system on or after April 15, 2011, except past performance reviews required for Federal procurement contracts, will be publicly available.

B. Proceedings About Which You Must Report

Submit the information required about each proceeding that:

1)   Is in connection with the award or performance of a grant, cooperative agreement, or procurement contract from the Federal Government;

2)   Reached its final disposition during the most recent five-year period; and

3)   If one of the following:

a)   A criminal proceeding that resulted in a conviction, as defined in paragraph 5 of this award term and condition;

b)   A civil proceeding that resulted in a finding of fault and liability and payment of a monetary fine, penalty, reimbursement, restitution, or damages of $5,000 or more;

**DEPARTMENT OF HEALTH AND HUMAN SERVICES** Notice of Award

Office of the Secretary

Award# 1 FPHPA006507-01-00
FAIN# FPHPA006507
Federal Award Date: 03/23/2022

c) An administrative proceeding, as defined in paragraph 5 of this award term and condition, that resulted in a finding of fault and liability and your payment of either a monetary fine or penalty of $5,000 or more or reimbursement, restitution, or damages in excess of $100,000; or

d) Any other criminal, civil, or administrative proceeding if:

(1) It could have led to an outcome described in paragraph 2.c.(1), (2), or (3) of this award term and condition;

(2) It had a different disposition arrived at by consent or compromise with an acknowledgement of fault on your part; and

(3) The requirement in this award term and condition to disclose information about the proceeding does not conflict with applicable laws and regulations.

C. Reporting Procedures

Enter in the SAM Entity Management area the information that SAM requires about each proceeding described in paragraph B of this award term and condition. You do not need to submit the information a second time under assistance awards that you received if you already provided the information through SAM because you were required to do so under Federal procurement contracts that you were awarded.

D. Reporting Frequency

During any period of time when you are subject to this requirement in paragraph A of this award term and condition, you must report proceedings information through SAM for the most recent five year period, either to report new information about any proceeding(s) that you have not reported previously or affirm that there is no new information to report. Recipients that have Federal contract, grant, and cooperative agreement awards with a cumulative total value greater than $10,000,000 must disclose semiannually any information about the criminal, civil, and administrative proceedings.

E. Definitions

For purposes of this award term and condition:

1) Administrative proceeding means a non-judicial process that is adjudicatory in nature in order to make a determination of fault or liability (e.g., Securities and Exchange Commission Administrative proceedings, Civilian Board of Contract Appeals proceedings, and Armed Services Board of Contract Appeals proceedings). This includes proceedings at the Federal and State level but only in connection with performance of a Federal contract or grant. It does not include audits, site visits, corrective plans, or inspection of deliverables.

2) Conviction, for purposes of this award term and condition, means a judgment or conviction of a criminal offense by any court of competent jurisdiction, whether entered upon a verdict or a plea, and includes a conviction entered upon a plea of nolo contendere.

3) Total value of currently active grants, cooperative agreements, and procurement contracts includes—

a) Only the Federal share of the funding under any Federal award with a recipient cost share or match; and



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**   Notice of Award

Office of the Secretary

Award#   1 FPHPA006507-01-00
FAIN#   FPHPA006507
Federal Award Date: 03/23/2022

b) The value of all expected funding increments under a Federal award and options, even if not yet exercised.

F. Disclosure Requirements.

Consistent with 45 C.F.R. § 75.113, applicants and recipients must disclose, in a timely manner, in writing to the HHS Awarding Agency, with a copy to the HHS Office of the Inspector General, all information related to violations of Federal criminal law involving fraud, bribery, or gratuity violations potentially affecting the Federal award. Subrecipients must disclose, in a timely manner, in writing to the prime recipient (pass through entity) and the HHS Office of the Inspector General all information related to violations of Federal criminal law involving fraud, bribery, or gratuity violations potentially affecting the Federal award. Disclosures must be sent in writing to the awarding agency and to the HHS OIG at the following addresses:

*HHS OASH Grants and Acquisitions Management*
*1101 Wootton Parkway, Plaza Level*
*Rockville, MD 20852*

AND

*US Department of Health and Human Services Office of Inspector General*
*ATTN: OIG HOTLINE OPERATIONS—MANDATORY GRANT DISCLOSURES*
*PO Box 23489*
*Washington, DC 20026*

URL: http://oig.hhs.gov/fraud/report-fraud/index.asp

(Include "Mandatory Grant Disclosures" in subject line)

**Fax:** 1-800-223-8164 (Include "Mandatory Grant Disclosures" in subject line)

Failure to make required disclosures can result in any of the remedies described in 45 C.F.R. § 75.371 ("Remedies for noncompliance"), including suspension or debarment (See also 2 C.F.R. Parts 180 & 376 and 31 U.S.C. § 3321).

The recipient must include this mandatory disclosure requirement in all subawards and contracts under this award.

9. **Advancing Racial Equity and Support for Underserved Communities Through the Federal Government.** You must administer your project in compliance with federal civil rights laws that prohibit discrimination on the basis of race, color, national origin, disability, age and, in some circumstances, religion, conscience, and sex (including gender identity, sexual orientation, and pregnancy). This includes taking reasonable steps to provide meaningful access to persons with limited English proficiency and providing programs that are accessible to and usable by persons with disabilities. The HHS Office for Civil Rights provides guidance on complying with civil rights laws enforced by HHS. See https://www.hhs.gov/civil-rights/for-providers/provider-obligations/index.html and https://www.hhs.gov/civil-rights/for-individuals/nondiscrimination/index.html.

--   You must take reasonable steps to ensure that your project provides meaningful access to persons with limited English proficiency. For guidance on meeting your legal obligation to take reasonable steps to ensure meaningful access to your programs or activities by limited English proficient individuals, see https://www.hhs.gov/civil-rights/for-individuals/special-topics/limited-english-proficiency/fact-sheet-guidance/index.html and https://www.lep.gov.

--   For information on your specific legal obligations for serving qualified individuals with disabilities, including providing program access, reasonable modifications, and taking appropriate steps to provide effective communication , *see* http://www.hhs.gov/ocr/civilrights/understanding/disability/index.html.

--   HHS funded health and education programs must be administered in an environment free of sexual harassment, *see*

**DEPARTMENT OF HEALTH AND HUMAN SERVICES**  Notice of Award

Office of the Secretary

Award#  1 FPHPA006507-01-00
FAIN#  FPHPA006507
Federal Award Date: 03/23/2022

https://www.hhs.gov/civil-rights/for-individuals/sex-discrimination/index.html.

-- For guidance on administering your project in compliance with applicable federal religious nondiscrimination laws and applicable federal conscience protection and associated anti-discrimination laws, *see* https://www.hhs.gov/conscience/conscience-protections/index.html and https://www.hhs.gov/conscience/religious-freedom/index.html.

10. **Trafficking in Persons.** This award is subject to the requirements of Section 106 (g) of the Trafficking Victims Protection Act of 2000, as amended (22 U.S.C. § 7104)

A. Provisions applicable to a recipient that is a private entity.

    1) You as the recipient, your employees, subrecipients under this award, and subrecipients' employees may not

        a) Engage in severe forms of trafficking in persons during the period of time that the award is in effect;

        b) Procure a commercial sex act during the period of time that the award is in effect; or

        c) Use forced labor in the performance of the award or subawards under the award.

    2) We as the Federal awarding agency may unilaterally terminate this award, without penalty, if you or a subrecipient that is a private entity –

        a) Is determined to have violated a prohibition in paragraph A.1 of this award term; or

        b) Has an employee who is determined by the agency official authorized to terminate the award to have violated a prohibition in paragraph A.1 of this award term through conduct that is either-

            (1) Associated with performance under this award; or

            (2) Imputed to you or the subrecipient using the standards and due process for imputing the conduct of an individual to an organization that are provided in 2 C.F.R. Part 180, "OMB Guidelines to Agencies on Governmentwide Debarment and Suspension (Nonprocurement)," as implemented by our agency at 2 C.F.R. Part 376.

B. Provision applicable to a recipient other than a private entity.

We as the Federal awarding agency may unilaterally terminate this award, without penalty, if a subrecipient that is a private entity-

    1) Is determined to have violated an applicable prohibition in paragraph a.1 of this award term; or

    2) Has an employee who is determined by the agency official authorized to terminate the award to have violated an applicable prohibition in paragraph a.1 of this award term through conduct that is either

        a) Associated with performance under this award; or

        b) Imputed to the subrecipient using the standards and due process for imputing the conduct of an individual to an

**DEPARTMENT OF HEALTH AND HUMAN SERVICES**  Notice of Award

Office of the Secretary

Award#    1 FPHPA006507-01-00
FAIN#    FPHPA006507
Federal Award Date: 03/23/2022

organization that are provided in 2 C.F.R. Part 180, "OMB Guidelines to Agencies on Governmentwide Debarment and Suspension (Nonprocurement)," as implemented by our agency at 2 C.F.R. Part 376.

C.  Provisions applicable to any recipient.

1)  You must inform us immediately of any information you receive from any source alleging a violation of a prohibition in paragraph A.1 of this award term

2)  Our right to terminate unilaterally that is described in paragraph A.2 or B of this section:

   a)  Implements section 106(g) of the Trafficking Victims Protection Act of 2000 (TVPA), as amended (22 U.S.C. § 7104(g)), and

   b)  Is in addition to all other remedies for noncompliance that are available to us under this award.

3)  You must include the requirements of paragraph A.1 of this award term in any subaward you make to a private entity.

D.  Definitions. For purposes of this award term:

1)  "Employee" means either:

   a)  An individual employed by you or a subrecipient who is engaged in the performance of the project or program under this award; or

   b)  Another person engaged in the performance of the project or program under this award and not compensated by you including, but not limited to, a volunteer or individual whose services are contributed by a third party as an in-kind contribution toward cost sharing or matching requirements.

2)  "Forced labor" means:

Labor obtained by any of the following methods: the recruitment, harboring, transportation, provision, or obtaining of a person for labor or services, through the use of force, fraud, or coercion for the purpose of subjection to involuntary servitude, peonage, debt bondage, or slavery.

3)  "Private entity":

   a)  Means any entity other than a State, local government, Indian tribe, or foreign public entity, as those terms are defined in 2 C.F.R. § 175.25.

   b) Includes:

      (1)  A nonprofit organization, including any nonprofit institution of higher education, hospital, or tribal organization other than one included in the definition of Indian tribe at 2 C.F.R. § 175.25(b).

      (2)  A for-profit organization.

Aplt.App. 330

**DEPARTMENT OF HEALTH AND HUMAN SERVICES**  Notice of Award

Office of the Secretary

Award#  1 FPHPA006507-01-00
FAIN#  FPHPA006507
Federal Award Date: 03/23/2022

4) "Severe forms of trafficking in persons," "commercial sex act," and "coercion"

These terms have the meanings given at section 103 of the TVPA, as amended (22 U.S.C. § 7102)

11. **Prohibition on certain telecommunications and video surveillance services or equipment.**

   **A.** As described in CFR 200.216, recipients and subrecipients are prohibited to obligate or spend grant funds (to include direct and indirect expenditures as well as cost share and program) to:

   1) Procure or obtain;

   2) Extend or renew a contract to procure or obtain; or

   3) Enter into contract (or extend or renew contract) to procure or obtain equipment, services, or systems that use covered telecommunications equipment or services as a substantial or essential component of any system, or as critical technology as part of any system. As described in Pub. L. 115-232, section 889, covered telecommunications equipment is telecommunications equipment produced by Huawei Technologies Company or ZTE Corporation (or any subsidiary or affiliate of such entities).

   a) For the purpose of public safety, security of government facilities, physical security surveillance of critical infrastructure, and other national security purposes, video surveillance and telecommunications equipment produced by Hytera Communications Corporation, Hangzhou Hikvision Digital Technology Company, or Dahua Technology Company (or any subsidiary or affiliate of such entities).

   b) Telecommunications or video surveillance services provided by such entities or using such equipment.

   c) Telecommunications or video surveillance equipment or services produced or provided by an entity that the Secretary of Defense, in consultation with the Director of the National Intelligence or the Director of the Federal Bureau of Investigation, reasonably believes to be an entity owned or controlled by, or otherwise, connected to the government of a covered foreign country.

## REPORTING REQUIREMENTS

1. **Financial Reporting Requirement—Federal Financial Report (FFR) SF 425.** Effective October 1, 2020, you must submit your SF-425 to OASH using the Department of Health and Human Services (HHS) Payment Management System for any OASH awards with a project period ending October 1, 2020 or later. Failure to submit the FFR in the correct system by the due date may delay processing of any pending requests or applications.

   OASH and the Program Support Center are collaborating in the submission of the SF-425 to reduce the burden on grantees and assist with the reconciliation of expenditures and disbursements, and to allow for timely closeout of grants. Your submission must be through the HHS Payment Management System. SF-425 submissions through Grant Solutions will no longer be accepted for OASH awards.

   You must use the SF-425 Federal Financial Report (FFR) for expenditure reporting. To assist in your preparation for submission you may find the SF-425 and instructions for completing the form on the Web at: http://apply07.grants.gov/apply/forms/sample/SF425-V1.0.pdf. You must complete **all** sections of the FFR.



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**   Notice of Award

Office of the Secretary

Award#   1 FPHPA006507-01-00
FAIN#   FPHPA006507
Federal Award Date: 03/23/2022

**A.  Quarterly FFR Due Date.**

Your FFR is due 30 days after the end of each Quarter in the federal fiscal year.  That is for the:

> **Quarter ending September 30, your FFR is due October 30**

> **Quarter ending December 31, your FFR is due January 30**

> **Quarter ending March 30, your FFR is due April 30**

> **Quarter ending June 30, your FFR is due July 30.**

**B. Final FFR Due Date.**

Your final FFR covering the entire project is due 90 days after the end date for your project period.

**C.  Past due reports.**

If you have not submitted by the due date, you will receive a message indicating the report is **Past Due.** Please ensure your Payment Management System account and contact information are up to date so you receive notifications.

**D.  Electronic Submission.**

Electronic Submissions are accepted only via the HHS Payment Management System – No other submission methods will be accepted without prior written approval from the GMO. You must be assigned to the grant with authorized access to the FFR reporting Module when submitting. If you encounter any difficulties, contact the HHS Payment Management System Help Desk or your assigned Grants Management Specialist. Please reference the CONTACTS section of NoA Terms and Conditions to locate the name of your assigned Grants Management Specialist.

2. **Annual Progress Report Requirements.** You must submit annual progress reports 90 days after the end of each performance reporting period unless otherwise required under the Special Terms and Requirements for this award. Your progress reports must address content required by 45 CFR § 75.342(b)(2). Additonal progess reporting may be requirementec under Special Terms and Requirements as required by statute, regulation, or specific circumstances warranting additional monitoring. Additional guidance may be provided by the Program Office. Reports must be submitted electronically via upload to Grant Notes in GrantSolutions.

3. **Audit Requirements.** The Single Audit Act Amendments of 1996 (31 U.S.C. §§ 7501-7507) combined the audit requirements for all entities under one Act. An audit is required for all non-Federal entities expending Federal awards, and must be consistent with the standards set out at 45 CFR Part 75, Subpart F ("Audit Requirements"). The audits are due within 30 days of receipt from the auditor or within 9 months of the end of the fiscal year, whichever occurs first. The audit report when completed should be submitted online to the Federal Audit Clearinghouse at https://harvester.census.gov/facides/Account/Login.aspx.

## CONTACTS

1. **Fraud, Waste, and Abuse.** The HHS Inspector General accepts tips and complaints from all sources about potential fraud, waste, abuse, and mismanagement in Department of Health and Human Services' programs. Your information will be reviewed promptly by a professional staff member. Due to the high volume of information that they receive, they are unable to reply to submissions. You may reach the OIG through various channels.



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**  Notice of Award

Office of the Secretary

Award# 1 FPHPA006507-01-00
FAIN# FPHPA006507
Federal Award Date: 03/23/2022

Internet: https://forms.oig.hhs.gov/hotlineoperations/index.aspx

Phone: 1-800-HHS-TIPS (1-800-447-8477)

*Mail: US Department of Health and Human Services*
*Office of Inspector General*
*ATTN: OIG HOTLINE OPERATIONS*
*PO Box 23489*
*Washington, DC 20026*

For additional information visit https://oig.hhs.gov/fraud/report-fraud/index.asp

2. **Payment Procedures.** Payments for grants awarded by OASH Program Offices are made through Payment Management Services (previously known as the Division of Payment Management) https://pms.psc.gov/home.html  PMS is administered by the Program Support Center (PSC), HHS. NOTE: Please contact the Payment Management Services to establish an account if you do not have one.

   Inquiries regarding payments should be directed to https://pms.psc.gov/home.html; or

   Payment Management Services, P.O. Box 6021, Rockville, MD 20852;

   or 1-877-614-5533.

3. **Use of Grant Solutions.** GrantSolutions is our web-based system that will be used to manage your grant throughout its life cycle. Please contact GrantSolutions User Support to establish an account if you do not have one. Your Grants Management Specialist has the ability to create a GrantSolutions account for the Grantee Authorized Official and Principle Investigator/Program Director roles. Financial Officer accounts may only be established by GrantSolutions staff. All account requests must be signed by the prospective user and their supervisor or other authorized organization official.

   For assistance on GrantSolutions issues please contact: GrantSolutions User Support at 202-401-5282 or 866-577-0771, email help@grantsolutions.gov, Monday – Friday, 8 a.m. – 6 p.m. ET. Frequently Asked Questions and answers are available at https://grantsolutions.secure.force.com/.

4. **Grants Administration Assistance.** For assistance on **grants administration** issues please contact: Jessica Shields, Grants Management Specialist, at (240) 453-8839, or e-mail jessica.shields@hhs.gov or mail:

   *OASH Grants and Acquisitions Management Division*
   *Department of Health and Human Services*
   *Office of the Secretary*
   *Office of the Assistant Secretary for Health*
   *1101 Wootton Parkway, Rockville, MD 20852.*

**DEPARTMENT OF HEALTH AND HUMAN SERVICES**

Office of the Secretary

### Notice of Award

Award# 6 FPHPA006507-01-01
FAIN# FPHPA006507
Federal Award Date: 06/07/2022

## Recipient Information

**1. Recipient Name**
Health Department, Oklahoma State
123 Robert S Kerr Ave
0308
Oklahoma State Department of Health
Oklahoma City, OK 73102-6406

**2. Congressional District of Recipient**
05
**3. Payment System Identifier (ID)**
1736017987C4
**4. Employer Identification Number (EIN)**
736017987
**5. Data Universal Numbering System (DUNS)**
143673015
**6. Recipient's Unique Entity Identifier (UEI)**
LFU8Z8MPLTG3
**7. Project Director or Principal Investigator**
JILL  NOBLES-BOTKIN
jill@health.ok.gov
405-271-4476

**8. Authorized Official**
Ms. Bethany J Ledel
Grants Reporting Officer
bethanyl@health.ok.gov
405-271-4042

### Federal Agency Information
OASH Grants and Acquisitions Management Division

**9. Awarding Agency Contact Information**
Mrs. Jessica Hall-Shields
Grants Specialist
Jessica.Shields@hhs.gov
240-453-8839

**10. Program Official Contact Information**
Cynda  Hall
Public Health Advisor
cynda.hall@hhs.gov
2404532850

## Federal Award Information

**11. Award Number**
6 FPHPA006507-01-01
**12. Unique Federal Award Identification Number (FAIN)**
FPHPA006507
**13. Statutory Authority**
Title X of the Public Health Service Act, Section 1001 (42 U.S.C. § 300)

**14. Federal Award Project Title**
Oklahoma State Department of Health Family Planning Services Project

**15. Assistance Listing Number**
93.217
**16. Assistance Listing Program Title**
Family Planning Services

**17. Award Action Type**
Budget Revision
**18. Is the Award R&D?**
No

### Summary Federal Award Financial Information

| | | |
|---|---|---|
| **19. Budget Period Start Date** 04/01/2022 **- End Date** 03/31/2023 | | |
| **20. Total Amount of Federal Funds Obligated by this Action** | | $0.00 |
| 20a. Direct Cost Amount | | ($2,210.00) |
| 20b. Indirect Cost Amount | | $2,210.00 |
| **21.** Authorized Carryover | | $0.00 |
| **22.** Offset | | $0.00 |
| **23.** Total Amount of Federal Funds Obligated this budget period | | $4,500,000.00 |
| **24. Total Approved Cost Sharing or Matching, where applicable** | | $4,577,970.00 |
| **25. Total Federal and Non-Federal Approved this Budget Period** | | $9,077,970.00 |
| **26.** Period of Perfomance Start Date 04/01/2022 **- End Date** 03/31/2027 | | |
| **27.** Total Amount of the Federal Award including Approved Cost  Sharing or Matching this Period of Performance | | Not Available |

**28. Authorized Treatment of Program Income**
OTHER (See REMARKS)
**29. Grants Management Officer – Signature**
Dr. Scott Moore
OASH Grants Management Officer

## 30. Remarks

This action approves the budget revision, please see revised line items.  All prior terms and conditions remain in effect unless specifically removed.

Page 1

**Aplt.App. 334**

DEPARTMENT OF HEALTH AND HUMAN SERVICES      Notice of Award

Office of the Secretary

Award#  6 FPHPA006507-01-01
FAIN#   FPHPA006507
Federal Award Date:  06/07/2022

## Recipient Information

**Recipient Name**

Health Department, Oklahoma State

123 Robert S Kerr Ave

0308

Oklahoma State Department of Health

Oklahoma City, OK 73102-6406

**Congressional District of Recipient**

05

**Payment Account Number and Type**

1736017987C4

**Employer Identification Number (EIN) Data**

736017987

**Universal Numbering System (DUNS)**

143673015

**Recipient's Unique Entity Identifier (UEI)**

LFU8Z8MPLTG3

### 31. Assistance Type

Project Grant

### 32. Type of Award

Service

## 33. Approved Budget
(Excludes Direct Assistance)

I.  Financial Assistance from the Federal Awarding Agency Only
II. Total project costs including grant funds and all other financial participation

| | | |
|---|---|---|
| a. | Salaries and Wages | $3,761,973.00 |
| b. | Fringe Benefits | $1,970,211.00 |
| c. | **Total Personnel Costs** | $5,732,184.00 |
| d. | Equipment | $0.00 |
| e. | Supplies | $1,301,991.00 |
| f. | Travel | $30,183.00 |
| g. | Construction | $0.00 |
| h. | Other | $301,823.00 |
| i. | Contractual | $1,444,655.00 |
| **j.** | **TOTAL DIRECT COSTS** | **$8,810,839.00** |
| **k.** | **INDIRECT COSTS** | **$267,131.00** |
| **l.** | **TOTAL APPROVED BUDGET** | **$9,077,970.00** |
| **m.** | **Federal Share** | **$4,500,000.00** |
| **n.** | **Non-Federal Share** | **$4,577,970.00** |

## 34. Accounting Classification Codes

| FY-ACCOUNT NO. | DOCUMENT NO. | ADMINISTRATIVE CODE | OBJECT CLASS | CFDA NO. | AMT ACTION FINANCIAL ASSISTANCE | APPROPRIATION |
|---|---|---|---|---|---|---|
| 2-3984521 | FPHPA6507A | FPH70 | 41.51 | 93.217 | $0.00 | 75-22-0359 |

**DEPARTMENT OF HEALTH AND HUMAN SERVICES**
Office of the Secretary

**Notice of Award**

Award#  5 FPHPA006507-02-00
FAIN#   FPHPA006507
Federal Award Date: 03/30/2023

| Recipient Information |
|---|

**1. Recipient Name**
Health Department, Oklahoma State
123 Robert S Kerr Ave
0308
Oklahoma State Department of Health
Oklahoma City, OK 73102-6406
405 426-8099

**2. Congressional District of Recipient**
05

**3. Payment System Identifier (ID)**
1736017987C4

**4. Employer Identification Number (EIN)**
736017987

**5. Data Universal Numbering System (DUNS)**
143673015

**6. Recipient's Unique Entity Identifier (UEI)**
LFU8Z8MPLTG3

**7. Project Director or Principal Investigator**
JILL  NOBLES-BOTKIN
jill@health.ok.gov
405-271-4476

**8. Authorized Official**
Ms. Bethany J Ledel
Grants Reporting Officer
bethanyl@health.ok.gov
405-271-4042

| Federal Agency Information |
|---|

OASH Grants and Acquisitions Management Division

**9. Awarding Agency Contact Information**
Mrs. Jessica Hall-Shields
Grants Specialist
Jessica.Shields@hhs.gov
240-453-8839

**10. Program Official Contact Information**
Cynda  Hall
Public Health Advisor
cynda.hall@hhs.gov
2404532850

| Federal Award Information |
|---|

**11. Award Number**
5 FPHPA006507-02-00

**12. Unique Federal Award Identification Number (FAIN)**
FPHPA006507

**13. Statutory Authority**
Title X of the Public Health Service Act, Section 1001 (42 U.S.C. § 300)

**14. Federal Award Project Title**
Oklahoma State Department of Health Family Planning Services Project

**15. Assistance Listing Number**
93.217

**16. Assistance Listing Program Title**
Family Planning Services

**17. Award Action Type**
Non-Competing Continuation

**18. Is the Award R&D?**
No

| Summary Federal Award Financial Information |
|---|

| | | |
|---|---|---|
| **19. Budget Period Start Date** | 04/01/2023 **- End Date** 03/31/2024 | |
| **20. Total Amount of Federal Funds Obligated by this Action** | | $4,500,000.00 |
| 20a. Direct Cost Amount | | $8,793,850.00 |
| 20b. Indirect Cost Amount | | $284,120.00 |
| **21. Authorized Carryover** | | $0.00 |
| **22. Offset** | | $0.00 |
| **23. Total Amount of Federal Funds Obligated this budget period** | | $0.00 |
| **24. Total Approved Cost Sharing or Matching, where applicable** | | $4,577,970.00 |
| **25. Total Federal and Non-Federal Approved this Budget Period** | | $9,077,970.00 |
| **26. Period of Perfomance Start Date** | 04/01/2022 **- End Date** 03/31/2027 | |
| **27. Total Amount of the Federal Award including Approved Cost Sharing or Matching this Period of Performance** | | $18,155,940.00 |

**28. Authorized Treatment of Program Income**
OTHER (See REMARKS)

**29. Grants Management Officer – Signature**
Dr. Scott Moore
OASH Grants Management Officer

| 30. Remarks |
|---|

This action authorizes a total approved budget of $9,077,970.00 for a continuation award that includes $4,500,000.00 in FY2023 funding, an offset of $0, and a carryover of $0.

Page 1

DEPARTMENT OF HEALTH AND HUMAN SERVICES   Notice of Award

Office of the Secretary

Award#  5 FPHPA006507-02-00
FAIN#   FPHPA006507
Federal Award Date: 03/30/2023

## Recipient Information

**Recipient Name**

Health Department, Oklahoma State

123 Robert S Kerr Ave

0308

Oklahoma State Department of Health

Oklahoma City, OK 73102-6406

405 426-8099

**Congressional District of Recipient**

05

**Payment Account Number and Type**

1736017987C4

**Employer Identification Number (EIN) Data**

736017987

**Universal Numbering System (DUNS)**

143673015

**Recipient's Unique Entity Identifier (UEI)**

LFU8Z8MPLTG3

---

**31. Assistance Type**

Project Grant

**32. Type of Award**

Service

### 33. Approved Budget
(Excludes Direct Assistance)

I.  Financial Assistance from the Federal Awarding Agency Only

II. Total project costs including grant funds and all other financial participation

| | | |
|---|---|---:|
| a. | Salaries and Wages | $3,631,462.00 |
| b. | Fringe Benefits | $1,997,305.00 |
| | c.  Total Personnel Costs | $5,628,767.00 |
| d. | Equipment | $0.00 |
| e. | Supplies | $1,302,726.00 |
| f. | Travel | $66,000.00 |
| g. | Construction | $0.00 |
| h. | Other | $269,683.00 |
| i. | Contractual | $1,526,674.00 |
| **j.** | **TOTAL DIRECT COSTS** | **$8,793,850.00** |
| **k.** | **INDIRECT COSTS** | **$284,120.00** |
| **l.** | **TOTAL APPROVED BUDGET** | **$9,077,970.00** |
| **m.** | **Federal Share** | **$4,500,000.00** |
| **n.** | **Non-Federal Share** | **$4,577,970.00** |

### 34. Accounting Classification Codes

| FY-ACCOUNT NO. | DOCUMENT NO. | ADMINISTRATIVE CODE | OBJECT CLASS | CFDA NO. | AMT ACTION FINANCIAL ASSISTANCE | APPROPRIATION |
|---|---|---|---|---|---|---|
| 3-3980663 | FPHPA6507A | FPH70 | 41.51 | 93.217 | $4,500,000.00 | 75-23-0359 |



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**   Notice of Award

Office of the Secretary

Award# 5 FPHPA006507-02-00
FAIN# FPHPA006507
Federal Award Date: 03/30/2023

---

**35. Terms And Conditions**

## SPECIAL TERMS AND REQUIREMENTS

1. **Prior Terms, Conditions, and Requirements.** Unless specifically removed, all prior terms, conditions, and requirements under this award remain in effect.



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**

Office of the Secretary

**Notice of Award**

Award# 6 FPHPA006507-02-01
FAIN# FPHPA006507
Federal Award Date: 04/20/2023

## Recipient Information

**1. Recipient Name**
Health Department, Oklahoma State
123 Robert S Kerr Ave
0308
Oklahoma State Department of Health
Oklahoma City, OK 73102-6406
405 426-8099

**2. Congressional District of Recipient**
05

**3. Payment System Identifier (ID)**
1736017987C4

**4. Employer Identification Number (EIN)**
736017987

**5. Data Universal Numbering System (DUNS)**
143673015

**6. Recipient's Unique Entity Identifier (UEI)**
LFU8Z8MPLTG3

**7. Project Director or Principal Investigator**
JILL NOBLES-BOTKIN
jill@health.ok.gov
405-271-4476

**8. Authorized Official**
Ms. Bethany J Ledel
Grants Reporting Officer
bethanyl@health.ok.gov
405-271-4042

### Federal Agency Information
OASH Grants and Acquisitions Management Division

**9. Awarding Agency Contact Information**
Mrs. Jessica Hall-Shields
Grants Specialist
Jessica.Shields@hhs.gov
240-453-8839

**10. Program Official Contact Information**
Cynda Hall
Public Health Advisor
cynda.hall@hhs.gov
2404532850

## Federal Award Information

**11. Award Number**
6 FPHPA006507-02-01

**12. Unique Federal Award Identification Number (FAIN)**
FPHPA006507

**13. Statutory Authority**
Title X of the Public Health Service Act, Section 1001 (42 U.S.C. § 300)

**14. Federal Award Project Title**
Oklahoma State Department of Health Family Planning Services Project

**15. Assistance Listing Number**
93.217

**16. Assistance Listing Program Title**
Family Planning Services

**17. Award Action Type**
Change in Scope with or without Budget Revision

**18. Is the Award R&D?**
No

### Summary Federal Award Financial Information

| | | |
|---|---|---|
| **19. Budget Period Start Date** 04/01/2023 **- End Date** 03/31/2024 | | |
| **20. Total Amount of Federal Funds Obligated by this Action** | | $0.00 |
| 20a. Direct Cost Amount | | $0.00 |
| 20b. Indirect Cost Amount | | $0.00 |
| **21. Authorized Carryover** | | $0.00 |
| **22. Offset** | | $0.00 |
| 23. Total Amount of Federal Funds Obligated this budget period | | $4,500,000.00 |
| **24. Total Approved Cost Sharing or Matching, where applicable** | | $4,577,970.00 |
| **25. Total Federal and Non-Federal Approved this Budget Period** | | $9,077,970.00 |
| 26. Period of Performance Start Date 04/01/2022 **- End Date** 03/31/2027 | | |
| 27. Total Amount of the Federal Award including Approved Cost Sharing or Matching this Period of Performance | | $18,155,940.00 |

**28. Authorized Treatment of Program Income**
OTHER (See REMARKS)

**29. Grants Management Officer – Signature**
Dr. Scott Moore
OASH Grants Management Officer

## 30. Remarks

This action approves the change in scope due to the closing of brick and mortar location due to current building being in need of repair. All prior terms and conditions remain in effect unless specifically removed.

Page 1

**Aplt.App. 339**

## DEPARTMENT OF HEALTH AND HUMAN SERVICES    Notice of Award

Office of the Secretary

Award#  6 FPHPA006507-02-01
FAIN#   FPHPA006507
Federal Award Date: 04/20/2023

### Recipient Information

**Recipient Name**

Health Department, Oklahoma State

123 Robert S Kerr Ave

0308

Oklahoma State Department of Health

Oklahoma City, OK 73102-6406

405 426-8099

**Congressional District of Recipient**

05

**Payment Account Number and Type**

1736017987C4

**Employer Identification Number (EIN) Data**

736017987

**Universal Numbering System (DUNS)**

143673015

**Recipient's Unique Entity Identifier (UEI)**

LFU8Z8MPLTG3

---

**31. Assistance Type**

Project Grant

**32. Type of Award**

Service

### 33. Approved Budget
(Excludes Direct Assistance)

I.   Financial Assistance from the Federal Awarding Agency Only

II.  Total project costs including grant funds and all other financial participation

| | | |
|---|---|---:|
| a. | Salaries and Wages | $3,631,462.00 |
| b. | Fringe Benefits | $1,997,305.00 |
| c. | **TotalPersonnelCosts** | $5,628,767.00 |
| d. | Equipment | $0.00 |
| e. | Supplies | $1,302,726.00 |
| f. | Travel | $66,000.00 |
| g. | Construction | $0.00 |
| h. | Other | $269,683.00 |
| i. | Contractual | $1,526,674.00 |
| **j.** | **TOTAL DIRECT COSTS** | **$8,793,850.00** |
| **k.** | **INDIRECT COSTS** | **$284,120.00** |
| **l.** | **TOTAL APPROVED BUDGET** | **$9,077,970.00** |
| **m.** | **Federal Share** | **$4,500,000.00** |
| **n.** | **Non-Federal Share** | **$4,577,970.00** |

### 34. Accounting Classification Codes

| FY-ACCOUNT NO. | DOCUMENT NO. | ADMINISTRATIVE CODE | OBJECT CLASS | CFDA NO. | AMT ACTION FINANCIAL ASSISTANCE | APPROPRIATION |
|---|---|---|---|---|---|---|
| 3-3980663 | FPHPA6507A | FPH70 | 41.51 | 93.217 | $0.00 | 75-23-0359 |

**Aplt.App. 340**



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**               Office of the Secretary
_____

Office of the Assistant Secretary for Health
Office of Population Affairs
Washington, D.C.
20201

May 24, 2023

Jill Nobles-Botkin, APRN-CNM, MSN
Administrative Programs Manager
Perinatal and Reproductive Health Division
Maternal & Child Health Services
Oklahoma State Department of Health
123 Robert S. Kerr Avenue 0308
Oklahoma City, OK 73102-6406

Dear Ms. Nobles-Botkin,

As you know, the Office of Population Affairs (OPA) has been corresponding with the Oklahoma State Department of Health (OSDH) since last summer with respect to its policy and procedure for providing nondirective options counseling and referral within its Title X project (FPHPA006507), in accordance with the 2021 Title X implementing regulations at 42 CFR § 59.5(a)(5). As a brief recap, on August 29, 2022, because of recent changes in Oklahoma state laws, OSDH submitted a proposal to change its policy and procedure for providing nondirective options counseling by providing clients seeking counseling on pregnancy termination with a link to the HHS OPA website. On November 9, 2022, OPA informed OSDH that this proposal did not comply with the Title X regulatory requirements set out in 42 CFR § 59.5(a)(5)(ii) and, therefore, could not be approved. On November 22, 2022, OSDH submitted to OPA a request for reconsideration of OPA's November 9, 2022 decision. On January 25, 2023, OPA posted a letter to OSDH on GrantSolutions. That letter reiterated that the proposal to provide clients seeking counseling on pregnancy termination with a link to the HHS OPA website does not comply with the 2021 Title X implementing regulations at 42 CFR § 59.5(a)(5)(ii). The letter also informed OSDH that it could submit an alternate compliance proposal that included providing clients with a referral to another entity, such as the All-Options Talkline. OSDH informed OPA that it became aware of this letter on February 7, 2023, when contacted by email.

On February 16, 2023, OSDH responded to OPA's January 25, 2023, letter by submitting an alternative proposal for compliance, which included providing nondirective counseling on all pregnancy options by OSDH staff or through the All-Options Talk Line. On March 14, 2023, OSDH submitted a "Pregnancy Diagnosis and Counseling" policy (revised March 2023), which indicated that the protocol for counseling clients with a positive pregnancy test includes:

> b. Provide neutral, factual information and nondirective counseling on all pregnancy options by OSDH staff or through the All-Options Talk Line (1-888-493-0092) and website, https://www.all-options.org/find-support/talkline/ (except for options the client indicated she does not want more information on).

In addition, as a corollary to the counseling protocol, OSDH's "Pregnancy Diagnosis and Counseling" policy (revised March 2023) indicated that one of the options for referral was to the "All-Options Talk Line (1-888-493-0092)." As part of its March 14 submission, OSDH also sent a Pregnancy Choices brochure (dated March 2023), listing the All-Options Talk Line as one of the Oklahoma Family Planning Resources.

**Aplt.App. 341**

On March 21, 2023, OSDH submitted a written assurance of compliance with the options counseling and referral requirements in the 2021 Title X Final Rule. On March 23, 2023, OPA posted two documents on GrantSolutions (a letter dated March 1, 2023, and a printout of a Technical Review, Exported On: 03/20/2023). Those documents informed OSDH that OPA had determined that OSDH's policy complied with the Title X regulations.

Most recently, however, on May 5, 2023, OSDH notified OPA by email that it "had a change required in our family planning program policy effective late afternoon of 4/27/23." As documentation, OSDH submitted the same exact "Pregnancy Diagnosis and Counseling" policy (revised March 2023) as it originally submitted on March 14, 2023, but the new version no longer includes counseling through and referral to the All-Options Talk Line. Specifically, the policy submitted on May 5, 2023, replaced part b. quoted above with the following:

> b. Provide neutral, factual information and nondirective counseling on pregnancy options in Oklahoma by OSDH staff (except for options the client indicated she does not want more information on).

In addition, the updated OSDH "Pregnancy Diagnosis and Counseling" policy (revised March 2023) no longer includes the All-Options Talk Line as an entity to which clients may be referred. And, as part of its May 5, 2023, submission, OSDH also included an updated Pregnancy Choices brochure, which no longer lists the All-Options Talk Line as a resource.

OSDH's reference to counseling on "pregnancy options in Oklahoma" in the "Pregnancy Diagnosis and Counseling" policy, rather than counseling on all pregnancy options, and the deletion of referral to the All-Options Talk Line in this policy without any other provision for abortion referrals, are not acceptable revisions, as Title X recipients must still follow all Federal regulatory requirements. The changes to OSDH's family planning program policy do not suffice or meet Federal requirements because Oklahoma law does not extend to all pregnancy options (*See* Okla. Stat. tit. 21, § 861), and we understand that, pursuant to OSDH's revised policy, information, counseling and referral will not be available for all alternative courses of action, but only for those options available under Oklahoma state law. This is inconsistent with Title X regulations at 42 CFR § 59.5(a)(5), which require Title X projects to provide information and nondirective counseling on a range of options, including prenatal care and delivery; infant care, foster care, or adoption; and pregnancy termination. Additionally, projects are required to provide referrals upon client request, including referrals for abortion. In some circumstances, those referrals will need to be made out of state.

Thus, based upon the documentation provided, OPA has determined that OSDH's policy for providing nondirective options counseling and referral within your Title X project does not comply with the Title X regulatory requirements and, therefore, the terms and conditions of your grant. Given OSDH's failure to adhere to the Title X regulatory requirements for nondirective options counseling and referral, I have referred this matter to the HHS Office of the Assistant Secretary for Health's Grants and Acquisitions Management (GAM) Division as a violation of the terms and conditions of your grant. I have copied the Director of OASH GAM on this correspondence as notification of the compliance violation and will be in touch with a response.

Thanks,

Jessica Swafford Marcella
Deputy Assistant Secretary for Population Affairs
U.S. Department of Health and Human Services
Office of the Assistant Secretary for Health, Office of Population Affairs

cc: Scott Moore
Director/Chief Grants Management Officer
U.S. Department of Health and Human Services
Office of the Assistant Secretary for Health, Grants and Acquisitions Management



**DEPARTMENT OF HEALTH & HUMAN SERVICES**                    Office of the Secretary

Office of the Assistant Secretary for Health
Grants & Acquisitions Management
Rockville, MD 20852

May 25, 2023

TO:        Jill Nobles-Botkin (jill@health.ok.gov)
                Project Director/Principle Investigator

                Ms. Bethany J Ledel (bethanyl@health.ok.gov)
                Authorized Official

                Oklahoma State Health Department
                123 Robert S Kerr Ave 0308
                Oklahoma City, OK 73102-6406

RE:           Suspension of Award FPHPA006507 "Oklahoma State Department of Health
           Family Planning Services Project"

The Office of Population Affairs (OPA) has provided notice in the attached letter that your
award FPHPA006507 "Oklahoma State Department of Health Family Planning Services Project"
is out of compliance with the Title X regulation (42 CFR Part 59, Subpart A) as of May 24,
2023.

As a condition of accepting the award (Notice of Award, Special Terms and Requirements 2),
Oklahoma State Department of Health (OSDH) stipulated "that the award and any activities
thereunder are subject to all provisions of 42 CFR Part 59, Subpart A." OSDH accepted the
award per Standard Term 1 of the Notice of Award, "By drawing or otherwise obtaining funds
for the award from the grant payment system or office, you accept the terms and conditions of
the award and agree to perform in accordance with the requirements of the award."

OSDH accepted the award on May 24, 2022, by drawing down funds from the HHS Payment
Management System (PMS). In doing so, OSDH agreed to comply with the Title X regulation as
a condition of the award.

Therefore, I conclude that because OSDH is out of compliance with the Title X regulation,
OSDH is also out of compliance with the terms and conditions of award FPHPA006507. As of
April 27, 2023 (i.e., the effective date of the non-compliant OSDH policy), all costs are
unallowable.

Consequently, I am suspending award FPHPA006507 and all activities supported by it effective
with the date of this letter. I will review this action in 30 days to reassess OSDH's compliance
with the award terms and conditions. The suspension may be extended for an appropriate time or
the award may be terminated pursuant to 45 CFR § 75.372(a)(1) for material noncompliance or
unsatisfactory performance with the terms and conditions of the award. A termination under this
section must be reported to the Office of Management and Budget-designated integrity and

**Aplt.App. 343**

performance system, currently the Federal Awardee Performance and Integrity Information System (FAPIIS). See 45 CFR § 75.372(b). Inclusion in FAPIIS may affect your ability to obtain future Federal funding.

As an alternative, you have the opportunity to voluntarily relinquish your grant and may do so by contacting the assigned Grants Management Specialist (Jessica Shields, Jessica.shields@hhs.gov), who can provide your additional information on the process. Note that as compared to termination, a decision to relinquish your award is not reported to FAPIIS.

Respectfully,

Scott J. Moore -S
2023.05.25 11:09:13 -04'00'

Scott J. Moore, Ph.D., J.D.
Director / Chief Grants Management Officer
OASH Grants & Acquisitions Management

cc:     Jessica Shields, Grants Management Specialist
        Cynda Hall, OPA Project Officer
        Duane Barlow, OASH Grants Branch chief
        Amy Margolis, OPA Deputy Director
        Jessica Marcella, Deputy Assistant Secretary for Population Affairs

**Aplt.App. 344**

**SAM**.GOV®

# Grants Certifications Report

**Certification for:** OKLAHOMA STATE DEPARTMENT OF HEALTH
**Unique Entity ID:** LFU8Z8MPLTG3
**Certification Validity From:** Tue Jun 13 15:08:04 EDT 2023
**Certification Validity To:** Wed Jun 12 15:08:04 EDT 2024

**Financial Assistance General Certifications and Representations**

As the duly authorized representative of the **OKLAHOMA STATE DEPARTMENT OF HEALTH**, I certify that **OKLAHOMA STATE DEPARTMENT OF HEALTH**:

(1) Has the legal authority to apply for Federal assistance and the institutional, managerial and financial capability to ensure proper planning, management and completion of any financial assistance project covered by this Certifications and Representations document (See 2 C.F.R. § 200.113 Mandatory disclosures, 2 C.F.R. § 200.214 Suspension and debarment, OMB Guidance A- 129, "Policies for Federal Credit Programs and Non-Tax Receivables");

(2) Will give the awarding agency, the Comptroller General of the United States and, if appropriate, the State, through any authorized representative, access to and the right to examine all records, books, papers, or documents related to the award; and will establish a proper accounting system in accordance with generally accepted accounting standards or agency directives (See 2 C.F.R. § 200.302 Financial Management and 2 C.F.R. § 200.303 Internal controls);

(3) Will disclose in writing any potential conflict of interest to the Federal awarding agency or pass through entity in accordance with applicable Federal awarding agency policy (See 2 C.F.R. § 200.112 Conflict of interest);

(4) Will comply with all limitations imposed by annual appropriations acts;

(5) Will comply with the U.S. Constitution, all Federal laws, and relevant Executive guidance in promoting the freedom of speech and religious liberty in the administration of federally-funded programs (See 2 C.F.R. § 200.300 Statutory and national policy requirements and 2 C.F.R. § 200.303 Internal controls);

(6) Will comply with all applicable requirements of all other Federal laws, executive orders, regulations, and public policies governing financial assistance awards and any Federal financial assistance project covered by this certification document, including but not limited to:

(a) Trafficking Victims Protection Act (TVPA) of 2000, as amended, 22 U.S.C. § 7104(g);

(b) Drug Free Workplace, 41 U.S.C. § 8103;

(c) Protection from Reprisal of Disclosure of Certain Information, 41 U.S.C. § 4712;

(d) National Environmental Policy Act of 1969, as amended, 42 U.S.C. § 4321 et seq.;

(e) Universal Identifier and System for Award Management, 2 C.F.R part 25;

(f) Reporting Subaward and Executive Compensation Information, 2 C.F.R. part 170;

(g) OMB Guidelines to Agencies on Governmentwide Debarment and Suspension (Non-procurement), 2 C.F.R. part 180;

(h) Civil Actions for False Claims Act, 31 U.S.C. § 3730;

(i) False Claims Act, 31 U.S.C. § 3729, 18 U.S.C. §§ 287 and 1001;

(j) Program Fraud and Civil Remedies Act, 31 U.S.C. § 3801 et seq.;

(k) Lobbying Disclosure Act of 1995, 2 U.S.C. § 1601 et seq.;

(l) Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq.;

(m) Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3601 et seq.;

(n) Title IX of the Education Amendments of 1972, as amended, 20 U.S.C. § 1681 et seq.;

(o) Section 504 of the Rehabilitation Act of 1973, as amended, 42 U.S.C. § 794; and.

(p) Age Discrimination Act of 1975, as amended, 42 U.S.C. § 6101 et seq.

✓ I have read each of the certifications and representations presented on this page. By submitting this certification, I, **Bethany Ledel**, am attesting to the accuracy of the certifications and representations contained herein. I understand that I may be subject to criminal prosecution under Section 1001, Title 18 of the United States Code or civil liability under the False Claims Act if I misrepresent **OKLAHOMA STATE DEPARTMENT OF HEALTH** by providing false, fictitious, or fraudulent information to the U.S. Government.

Jun 27, 2023 12:43:39 PM GMT

 

OKLAHOMA
State Department
of Health

**EXHIBIT 6**

July 27, 2023

**Via U.S. Mail and Email: ASH@hhs.gov**
Rachel L. Levine, M.D.
Office of the Assistant Secretary for Health
200 Independence Avenue, SW
Room 716G
Washington, D.C. 20201

Re:    Appeal of Termination of Award FPHPA006507 "Oklahoma State Department of
       Health Family Planning Services Project"

<u>**APPEAL OF TERMINATION OF AWARD FPHPA006507**</u>

<u>**Adverse Determination**</u>

On May 25, 2023, HHS sent a letter to the Oklahoma State Department of Health (OSDH)

explaining HHS's position that OSDH was in violation of Title X and out of compliance with the

terms and conditions of award FPHPA006507 "Oklahoma State Department of Health Family

Planning Services Project" ("Award"). HHS explained OSDH was in violation of 42 C.F.R.

§59.5(a)(5)(i)(c)—specifically, by no longer offering pregnant clients the opportunity to be

provided information and counseling about pregnancy termination.

The Award was suspended as of the May 25, 2023, with a provision stating the action

would be reviewed in thirty (30) days to "reassess OSDH's compliance with the award terms and

conditions." Subsequently, on June 27, 2023, OSDH received notice the Award would be

terminated. (See Exhibit A, Notice of Termination).

<u>**Governing Law**</u>

This appeal from HHS's termination of award is governed by 42 C.F.R. §§50.401-50.406.

The appeal provisions apply to the Office of Public Health and Science, which the OPA is a part

Health.Ok.gov



**OKLAHOMA**
**State Department**
**of Health**

of.[1] Termination of a grant for purported failure of grantee to operate in accordance with applicable law is specifically enumerated as a dispute covered by these procedures.[2] A complaint must be initiated within thirty (30) days of receipt of the written notification of the determination.[3] The request for review must: include a copy of the adverse determination; identify the issue in dispute; and contain a full statement of the grantee's position.[4]

**STATEMENT OF THE ISSUES**

Since 1971, the Oklahoma State Department of Health (hereinafter "OSDH") has continuously received federal grant funds to provide family planning services across the State of Oklahoma. Through those funds as well as access to 340B priced pharmaceuticals and medical devices, OSDH has provided family planning services in 68 counties, while also contracting with Oklahoma City-County Health Department and Tulsa County Health Department, both independent of OSDH, to ensure family planning services are available in Oklahoma's two most populous counties. Because of both OSDH's statewide presence and receipt of the at-issue grant funds, OSDH has been able to provide safe and local access to family planning services for tens of thousands of Oklahomans. This is important to note, because the actions and conclusions of late are not exclusively ideological or political in nature, but carry life-altering consequences by limiting that historically successful and available access.

On June 24, 2022, the United States Supreme Court overruled *Roe v. Wade,* 410 U.S. 113, 93, S.Ct. 705 and *Planned Parenthood of Se. Pennsylvania v. Casey,* 505 U.S. 833, 112 S. Ct. 2791, (1992), holding that the Constitution does not confer a right to abortion. *Dobbs v. Jackson*

---

[1] 42 C.F.R. §50.402
[2] 42 C.F.R. §50.404(a)(1)
[3] 42 C.F.R. §50.406(a)
[4] 42 C.F.R. §50.406(b)



*Women's Health Organization Et. Al.*[5]  Up until that decision, 21 O.S. § 861 was unconstitutional

only because of the United States Supreme Court decisions in *Roe* and *Casey*. On April 29, 2022,

S.B. 1555 was signed into law by Oklahoma Governor, Kevin Stitt, allowing the Oklahoma

Attorney General to certify that *Roe* and *Casey* have been overruled so that Oklahoma may enforce

21 O.S. § 861 and other legislation prohibiting abortion. The Oklahoma Attorney general

"appropriately" made this certification the same day as the *Dobbs* opinion- June 24, 2022.

*Oklahoma Call For Reproductive Justice v. Drummond*, 2023 OK 24, P 14, 526 P.3d 1123. Title

21 O.S. 861 is currently good law in Oklahoma and provides:

> Every person who administers to any woman, or who prescribes for any woman, **or advises** or procures any woman to take any medicine, drug or substance, or uses or employs any instrument, or other means whatever, with intent thereby to procure the miscarriage of such woman, unless the same is necessary to preserve her life shall be guilty of a felony punishable by imprisonment in the State Penitentiary for not less than two (2) years nor more than five (5) years.

OSDH was found to be in noncompliance with 42 C.F.R. §59.5(a)(5)(i)(c), which states a project

must:

> (i)  Offer pregnant clients the opportunity to be provided information and counseling regarding each of the following options:
> (A) Prenatal care and delivery;
> (B) Infant care, foster care, or adoption; and
> (C) Pregnancy termination.

The definition of counseling is "to give advice to someone."[6]  As such, this rule is directly in

conflict with the Oklahoma criminal statute 12 O.S. § 861 and prohibits OSDH from being in

---

[5] *Dobbs v. Jackson Women's Health Org.*, 213 L. Ed. 2d 545, 142 S. Ct. 2228 (2022)
[6] *Merriam-Webster*. Available at: https://www.merriam-webster.com/dictionary/counsel (Accessed: 27 July 2023).



compliance with the arbitrary HHS rule without risking criminal conduct. Title 12 O.S. § 861 is not an unconstitutional law under guidance from the U.S. Supreme Court and a recent holding by

the Oklahoma Supreme Court[7]. Therefore, Oklahoma and its citizens are being deprived of Title X funds for family planning service because of the condition HHS has placed into rule requiring counseling and/or advising on abortion.

Simply, this result was not the intent of 42 U.S.C. § 300 *et seq*., and the condition requiring recipients to counsel on abortion services is contrary to law and exceeds statutory authority. Congress has passed specific legislation intended to prevent the denial or termination of awards based on the very type of conduct HHS is requiring Oklahoma to promote and engage in. The rule requiring counseling on termination of pregnancy has changed three (3) times in the last five (5) years in a manner that appears based on the political party in power; providing more evidence this requirement is more politically relevant than aimed at meeting the purpose of the enabling law. Finally, terminating a grantee's Title X funding solely on the failure to counsel on abortion is a condition that is in violation of U.S. Supreme Court case law.

## LEGAL ARGUMENT

It is "axiomatic that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress." *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208 (1988). When it comes to spending, Congress alone is given the "power of the purse," and the executive branch does not have unilateral authority to impose conditions on federal funding or to "decline to follow a statutory mandate or prohibition simply because of policy objections."

---

[7] In *Oklahoma Call For Reproductive Justice v. Drummond, the Oklahoma Supreme Court held that 21 O.S. § 861 does not violate* the Oklahoma Constitution as it allows the termination of a pregnancy in order to preserve the life of the pregnant woman. 2023 OK 24, P 14, 526 P.3d 1123

Health.Ok.gov



*City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1232 (9th Cir. 2018). Further, it is "well settled that an agency may only act within the authority granted to it by statute." *Nat. Res. Def. Council v. Nat'l Highway Traffic Safety Admin.*, 894 F.3d 95, 108 (2d Cir. 2018). *See, Gundy v. United States*, 139 S.Ct. 2116, 2121 (2019) ("The nondelegation doctrine bars Congress from transferring its legislative power to another branch of Government.") Further, under the APA, agencies cannot make rules that are "arbitrary, capricious, an abuse of discretion, **or otherwise not in accordance with law**" and "in excess of statutory jurisdiction, authority, or limitation, or short of statutory right." *Id.*; See also 5 U.S.C. § 706(2).

Not only does the requirement at issue exceed statutory authority and violate the APA, but it also is an unlawful condition in violation of the U.S. Constitution and the limitations espoused by the United State Supreme Court in *South Dakota v. Dole*, 483 U.S. 203, 107 S. Ct. 2793 (1987). In *Dole,* the Court outlined the limitations on what conditions Congress may attach to the receipt of federal funds: (1) "the exercise of spending must be in pursuit of 'the general welfare;" (2) if Congress wishes to condition the States' receipt of federal funds, it must do so unambiguously allowing "States to exercise their choice knowingly, cognizant of the consequence of their participation;" (3) conditions must be related "to the federal interest in particular national projects or programs;" (4) conditions must not violate other provisions of the Constitution, such as the First Amendment or the Due Process or Takings Clauses of the Fifth Amendment. Finally, the *Dole* court expressed a fifth limitation, stating the condition cannot cross the line from enticement to impermissible coercion, such that states have no real choice but to accept the funding and enact or administer a federal regulatory program. *Dole*, 483 U.S. at 207-208, 107 S. Ct. at 2796.



**A. HHS' determination to terminate funding based on rule 42 C.F.R. §59.5(a)(5)(i)(c) exceeds statutory authority and is not related to the federal interest expressed in 42 U.S.C. §§ 300 et seq.**

In 1970, Congress enacted Title X of the Public Health Service Act, codified in 42 U.S.C. §§ 300-300a-6A. Under 42 U.S.C. § 300, the Secretary is authorized to make grants and enter into contracts with public or non-profit private entities to assist in the establishment and operation of voluntary family planning projects which shall offer a broad range of acceptable and effective family planning methods and services (including natural family planning methods, infertility services, and services for adolescents). Further, the statute lists factors the Secretary shall take into account in making grants and contracts: "number of patients to be served, the extent to which family planning services are needed locally, the relative need of the applicant, and its capacity to make rapid and effective use of such assistance." 42 U.S.C. § 300(b). None of the factors require counseling on abortion services. In fact, Title X's governing statute, 42 U.S.C. §§300-300a-6, mentions "abortion" only once. "None of the funds appropriated under this subchapter shall be used in programs where abortion is a method of family planning." The legislative history as to why this language was added is clear. The Conference report stated that section was specifically adopted into the Act "to ensure that Title X funds would 'be used only to support preventive family planning services, population research, infertility services, and other related medical, informational, and educational activities." H.R. Conf. Rep. No. 91-1667, 8 (Dec. 3, 1970), 42 U.S.C. 300a-6 (emphasis added).

Further, the author of Title X, Rep. John Dingell (D-MI) clarified the intent of the abortion prohibition:

> With the "prohibition of abortion" amendment—title X, section 1008—the committee members clearly intend that abortion *is not to be encouraged or*



**OKLAHOMA**
**State Department**
**of Health**

*promoted in any way through this legislation.* Programs which include abortion as a method of family planning are not eligible for funds allocated through this act.
116 Cong. Rec. 37375 (Nov. 16, 1970) (emphasis added).
The governing regulation rightly acknowledges the statutory provision stating "[e]ach project supported under this part must...[n]ot provide abortion as a method of family planning."[8] Yet, in the same subpart, the regulation promulgated by HHS goes on to state "a project must [o]ffer pregnant clients the opportunity to be provided information and counseling regarding...pregnancy termination."[9] This inclusion is contrary to the expressed intent and spirit of the statute, evidenced by congressional disavowal of abortion as a means of family planning within the meaning of Title X, and is without statutory basis. The purpose of Title X is to provide funding for preventive family planning services, not abortion. Conditioning an award of Title X funding on counseling for abortion is outside of the scope and purpose of Title X.

In *Rust v. Sullivan*, the Court analyzed a challenge to HHS regulations prohibiting recipients of Title X funding from "counseling concerning the use of abortion as a method of family planning or provide referral for abortion as a method of family planning." *Rust v. Sullivan*, 500 U.S. 173, 193–96 (1991). The Court upheld the prohibition because "[t]he Title X program is designed not for prenatal care, but to encourage family planning.... This is not a case of the government 'suppressing a dangerous idea,' but of a prohibition on a project grantee or its employees from engaging in activities *outside of the project's scope.*" *Rust v. Sullivan*, 500 U.S. 173, 193-194 (1991) (**emphasis** added). In other words, counseling on abortion is outside the scope of Title X. The Court understood Title X's primary intent was pre-pregnancy preventive services, stating "Indeed, if one thing is clear from the legislative history, it is that **Congress**

---
[8] 42 C.F.R. §59.5(a)(5)
[9] 42 C.F.R. §59.5(a)(5)(i)(c)

Health.Ok.gov



intended that Title X funds be kept separate and distinct from abortion-related activities. It is undisputed that Title X was intended to provide primarily pre-pregnancy preventive services.” *Id.* at 190 (emphasis added).

However, the condition in rule now is a complete reversal to those requirements analyzed and upheld in *Rust,* as well as the requirements put in place in February 2019 by HHS. Nothing in statute has changed relating to the purpose of the project's scope. The current rule no longer defines the limits of the programs, as they relate to the abortion prohibition in 42 U.S.C. § 300a-6, nor seeks to keep abortion and related activities separated from family planning services. Instead, the rule as applied by HHS now seeks to force recipients to counsel on abortion or lose their funding. The current condition is not related to Title X's expressed purpose and clear legislative history. Further, the condition clearly exceeds statutory authority because Title X's purpose is to provide family planning services. Abortion is unambiguously excluded from the scope of family planning services by 42 U.S.C. § 300a-6, stating no funds “shall be used in programs where abortion is a method of family planning.” Such a condition requiring specific counseling as a form of family planning that is specifically excluded by statute, is both arbitrary and unreasonable.

Further, 42 C.F.R. §59.5(a)(5)(i)(c) not only exceeds HHS's statutory authority, but it is also in violation of the Weldon Amendment; further supporting that the requirement to counsel on abortion is wholly unrelated and antitheitcal to the expressed federal interest.   The Weldon Amendment states:

> None of the funds made available in this Act may be made available to a Federal agency or program or to a State or local government, if such agency, program, or government subjects an institutional or individual health care entity to


**OKLAHOMA**
**State Department**
**of Health**

discrimination on the basis that the health care entity does not provide, pay for, or provide coverage of, or *refer* for abortions.[10]

This amendment sets forth clear Congressional intent, in plain language, that states healthcare entities are not penalized for refusing to, *inter alia*, refer for abortions. When Congress's intent is clear, "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Natural Resources Defense council, Inc.*, 467 U.S. 837, 842-843 (1984). Here, the unambiguous intent of Congress is to protect healthcare entities, including State entities such as OSDH, from having their funding denied or terminated for not referring patients for abortions. Referral is defined as "The act or an instance of sending or **directing to another for information, service, consideration, or decision.**" Black's Law Dictionary 9th ed. (**emphasis** added).

HHS's termination of Award was due to OSDH's refusal to refer and/or counsel for abortions. This is clearly contrary to the terms of the Weldon Amendment. OSDH is a healthcare entity. The Weldon Amendment defines "health care entity" as "includ[ing] an individual physician or other health care professional, a hospital, a provider-sponsored organization, a health maintenance organization a health insurance plan, or any other kind of health care facility, organization, or plan." 45 C.F.R. § 88.2 The rule specifically recognizes State agencies, such as OSDH, may be health care entities: "As applicable, components of State or local governments may be health care entities under the Weldon Amendment and Patient Protection and Affordable Care Act section 1553." 45 C.F.R. § 88.2. OSDH operates sixty-eight (68) county health departments that provide direct patient care to Oklahomans, including providing family planning services

---

[10] Consolidated Appropriations Act, 2023, Public Law 117-328, Div. H, sec. 507(d) (emphasis added)

Health.Ok.gov

**OKLAHOMA**
State Department
of Health

specifically intended under Title X. By its own terms the grant given recognizes OSDH is a healthcare entity.

*See*, 42 C.F.R. §59.1 ("The regulations of this subpart are applicable to the award of grants under section 1001 of the Public Health Service Act (42 U.S.C. 300) to assist in the establishment and operation of voluntary family planning projects. These projects shall consist of the educational, comprehensive medical, and social services necessary to aid individuals to determine freely the number and spacing of children.") "Comprehensive medical services" by definition stem from "health care facility, organization, or plan."

In addition to being prohibited by statute, HHS's action is in violation of the APA because the condition is "arbitrary, capricious, an abuse of discretion, **or otherwise not in accordance with law**" and "in excess of statutory jurisdiction, authority, or limitation, or short of statutory right."[11] As previously mentioned, the agency action is "otherwise" contrary to law and expressly prohibited by federal conscience protection statutes. 42 C.F.R. §59.5(a)(5)(i)(c), upon which the HHS based its action, is an unlawful regulation in that it is directly contrary to Title X's expressed purpose and the Weldon Amendment—where the Rule purports to require referral for pregnancy termination (i.e., abortion), the Weldon Amendment seeks to protect entities who do not, *inter alia*, refer for abortions. Additionally, abortion is not a proper form of family planning methods under Title X. This is an irreconcilable conflict between administrative regulation and applicable statutory provisions. A "regulation that contravenes a statute is invalid." *United States v. Kahn*, 5 F4th 167, 175 (2d Cir. 2021). This conflict is obliquely recognized in the regulation itself, a

---

[11] *Id.* (emphasis added)

Health.Ok.gov



**OKLAHOMA
State Department
of Health**

footnote to the prohibition of providing abortion as a method of family planning states "[p]roviders may separately be covered by federal statutes protecting conscience and/or civil rights."[12]

It is clear Congress has not delegated power to supersede statutes to HHS, or any administrative agency for that matter. HHS acted in excess of its statutory jurisdiction by seeking to render a statute void. In fact, such a purported delegation would itself be unconstitutional. *See*, *Gundy v. United States*, 139 S.Ct. 2116, 2121 (2019) ("The nondelegation doctrine bars Congress from transferring its legislative power to another branch of Government.").

When an agency administers a statute, as HHS administers Title X, it is subjected to a two-level inquiry. First, the question is "whether Congress has directly spoken to the precise question at issue." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984). Second, and only if Congress has been "silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843-844. Further, when an "agency's interpretation involves an issue of 'deep 'economic and political significance,' it may not be entitled to deference. *City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1242 (9th Cir. 2018) *(citing King v. Burwell*, 135 S.Ct. 2480, 2489, 192 L.Ed.2d 483 (2015). Under the *Chevron* two-part inquiry, the rule in question fails both parts of the test. First, Congress has spoken directly on the subject clearly and extensively.[13] Abortion is not a valid form of family planning under Title X and, irrespective of that, providers are not to be penalized for not referring patients for abortions. As discussed, the legislative history on this is also clear. Thus, any possible ambiguity on Congress's intent

---

[12] 42 C.F.R. §59.5(a)(5) fn. 2
[13] *See e.g.*, Weldon Amendment and 42 U.S.C. §300a-6



regarding Title X and referring for abortion is belied by the legislative history—Title X was not intended to "encourage or promote" abortion in any way. It cannot seriously be contended that requiring referral for abortion services is not a way of promoting or encouraging abortion.

However, even if the record from Congress were to be found to be ambiguous, HHS's construction is not a reasonable one. Title X provides HHS may "make grants to public or nonprofit private entities and to enter into contracts with public or private entities and individuals **to assist in developing and making available family planning and population growth information** (including educational materials) to all persons desiring such information (or materials)."[14] HHS is only empowered to promulgate regulations under Title X to implement making grants (or contracts) for this express purpose.[15] Thus the only reasonable scope of implementation is rules and regulations aimed at implementing family planning (from which abortion is statutorily prohibited), and population growth (which abortion is, by definition, excluded from). A rule requiring referral for abortion is therefore not a logical outgrowth, or reasonable interpretation, of Title X.

In practice, the arbitrary nature of this requirement becomes even more apparent. OSDH through community health departments provides family planning services, and the funds received under Title X were almost entirely expended in furtherance of those services. These funds have been and were intended, up to HHS's termination, to provide those family planning services to communities. The funds cannot be used for abortion related services even under the Act. None of the funds are intended to go to abortion, but the entire grant reward can be terminated for not counseling on abortion, subsequently depriving communities of the very  funding and access

---

[14] 42 U.S.C. §300a-3(a)
[15] *See*, 42 U.S.C. §300a-4



**OKLAHOMA**
State Department
of Health

needed to family planning services the Act is designed to ensure. Simply, terminating grant funds

for failing to counsel on a service the recipient cannot provide by or be associated with by the Act

is arbitrary and contrary to the purpose of the Act, depriving communities of funding for the very

services the Act seeks to promote.

### A. The condition to counsel for abortion is an unconstitutional condition.

Courts have reasoned that a condition may be unconstitutional when the condition goes

beyond just defining the limits of a program, and instead, forces recipients to adopt "the

Government's view on an issue of public concern…." *Agency for Int'l Dev. v. All. for Open Soc'y*

*Int'l, Inc.*, 570 U.S. 205, 220, 133 S. Ct. 2321, 2332, 186 L. Ed. 2d 398 (2013). This limitation is

based on the following principle:

> For if the government could deny a benefit to a person because of his
> constitutionally protected speech or associations, his exercise of those freedoms
> would in effect be penalized and inhibited. This would allow the government to
> 'produce a result which (it) could not command directly.' Such interference with
> constitutional rights is impermissible.

*Perry v. Sindermann*, 408 U.S. 593, 597, 92 S. Ct. 2694, 2697, 33 L. Ed. 2d 570 (1972) (citing
*Speiser v. Randall*, 357 U.S. 513, 526, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460).
As argued above, the condition requiring counseling on abortion does exceed the limits of the Title

X program. This rule usurps the entire intent of Title X by forcing recipients to counsel on abortion,

which is a method of encouraging and promoting abortion[16]. In light of the *Dobbs* decision, the

condition poses a significant problem, especially for recipients in the State of Oklahoma. Abortion,

and advising on abortion, is now illegal in Oklahoma. The condition seeks to require recipients to

---

[16] With the "prohibition of abortion" amendment—title X, section 1008—the committee members clearly
intend that abortion *is not to be encouraged or promoted in any way through this legislation*. 116 Cong.
Rec. 37375 (Nov. 16, 1970) (emphasis added).

Health.Ok.gov



"pledge allegiance" to HHS's policy of promoting abortion even if it means potential criminal liability for such conduct, which is a condition in violation of the Constitution, including the First Amendment. *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 220, 133 S. Ct. 2321, 2332, 186 L. Ed. 2d 398 (2013).

The current requirement is not defining the limits of the programs or preventing conduct that undermines the program. In *Rust*, the Court upheld the HHS rule prohibiting a recipient from counseling on abortion because, in part, counseling on abortion was "*outside of the project's scope.*" *Rust v. Sullivan*, 500 U.S. 173, 194 (1991). A requirement for recipients to now counsel on abortion is still outside Title X's scope and terminating a recipient's funds for not conducting activities outside the scope of a project is contrary to law.

Requiring recipients to counsel on abortion is an attempt to expand the purpose of the Title X program to include abortion as a family planning method in contradiction to the very terms of Title X. "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 220–21, 133 S. Ct. 2321, 2332, 186 L. Ed. 2d 398 (2013) *(quoting Barnette,* 319 U.S., at 642, 63 S.Ct. 1178). Simply, a recipient should not be required to potentially violate criminal law to receive federal funding, especially for an issue outside the scope and purpose of Title X and within the State's lawful authority.

**B. Congress has not unambiguously imposed the condition that recipients must counsel on abortion to receive Title X funds.**

"If Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously." *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17, 101 S. Ct. 1531,



1540, 67 L. Ed. 2d 694 (1981). In enacting Title X, Congress specifically enumerated factors HHS should look at in awarding Title X funds: "number of patients to be served, the extent to which family planning services are needed locally, the relative need of the applicant, and its capacity to make rapid and effective use of such assistance." 42 U.S.C. § 300(b). There is no condition requiring recipients to counsel on abortion services provided in statute. In fact, the only condition related to abortion in statute is that a recipient must not use funds in a program where abortion is used as a family planning method.  See 42 U.S.C. § 300a-6.

As argued above, the statutory language specifically prohibits the use of Title X funds for abortion service, and the legislative history reveals the Title X grant funds are intend to go towards pre-pregnancy services, not anything related to abortion. Such a requirement runs afoul of constitutional case law and is not unambiguously expressed by the statute.  HHS has acted unilaterally outside the enabling law in promulgating this condition into rule, as well as implementing this condition to terminate Title X funding. The rule requiring counseling on termination of pregnancy has changed three (3) times in the last five years based on the political party in office. Further, as in discussed in *Rust*, there use to be a prohibition against counseling on abortion services. Therefore, it cannot be stated that Congress has unambiguously imposed such a condition on Title X funds because the condition is solely imposed by HHS in excess of its authority and direct opposition of the expressed intent of Congress.

**C. The condition to counsel on termination of pregnancy does not promote the general welfare**

Title 42 U.S.C. §§ 300-300a-6 as codified does promote the general welfare by providing family planning services to citizens; however, the specific condition promulgated into rule by HHS, resulting in OSDH's grant to be terminated, does not promote the general welfare.  In



evaluating this limitation, the U.S. Supreme Court has stated "[t]he discretion belongs to Congress, unless the choice is clearly wrong, a display of arbitrary power, not an exercise of judgment. Nor is the concept of the general welfare static. Needs that were narrow or parochial a century ago may be interwoven in our day with the well-being of the nation. What is critical or urgent changes with the times." *Helvering v. Davis*, 301 U.S. 619, 641, 57 S. Ct. 904, 908–09, 81 L. Ed. 1307 (1937). Congress in its discretion chose to specifically prohibit Title X funds being used in any program that utilizes abortion as a family planning service. Requiring a recipient to counsel on abortion is not in the general welfare and exceeds the statutory authority and intent under which it is derived.

### <u>Conclusion</u>

The action taken by HHS in terminating the Award to OSDH is contrary to law and in violation of federal conscience protection statutes. Conditioning Title X funds on abortion counseling is outside the scope and expressed intent of Title X. Abortion is excluded as a family planning method under Title X, and Congress was clear the funds were never intended to be used to encourage or support abortion. The rule requires exactly what was prohibited by Title X- the promotion, encouragement and support of abortion. After *Dobbs*, abortion is now illegal in Oklahoma, and recipients should not be required to counsel on something not within the scope of the Title X program, especially if there is a potential for criminal conduct. Simply, the action taken exceeds the authority provided under Title X and violates constitutional protections put into place that prohibit the very type of condition required under 42 C.F.R. §59.5(a)(5)(i)(c). The determination must be set aside, and the grant Award be reinstated.

Health.Ok.gov



OKLAHOMA STATE DEPARTMENT OF HEALTH:


## Lisa Martinez-Leeper

Lisa Martinez-Leeper
CHIEF ADMINSTRATIVE OFFICER


Prepared By:
Cameron Capps, OBA No. 32742
Deputy Chief General Counsel
Office of the General Counsel
Oklahoma State Department of Health


**Signature:** *Lisa Martinez-Leeper*
Lisa Martinez-Leeper (Jul 27, 2023 15:06 CDT)

**Email:** lisa.martinez-leeper@health.ok.gov


Health.Ok.gov



**DEPARTMENT OF HEALTH & HUMAN SERVICES**

Office of the Secretary

Office of the Assistant Secretary for Health
Grants & Acquisitions Management
Rockville, MD 20852

DATE          June 27, 2023

To:           Jill Nobles-Botkin (jill@health.ok.gov)
              Project Director/Principal Investigator

              Ms. Bethany J Ledel (bethanyl@health.ok.gov)
              Authorized Official

              Oklahoma State Health Department
              123 Robert S Kerr Ave 0308
              Oklahoma City, OK 73102-6406

Re:           Termination Notice for award FPHPA006507 "Oklahoma State Department of
              Health Family Planning Services Project"

    This letter provides notice of my decision to terminate the above identified award under
45 C.F.R. § 75.372.  Termination is not final until a Notice of Award has been issued with a
revised project period end date indicating the effective date of the termination. You must submit
complete close out documentation within 120 days of the new project period end date.
Additional guidance is attached (Tab A).  Failure to provide a timely and acceptable closeout
package may result in a unilateral closeout and report to the Federal Awardee Performance and
Integrity Information System (FAPIIS) as a material failure to comply with the terms and
conditions of the award.

    This termination is based on a failure to comply with the terms and conditions of the
award as described below.  The termination decision will be reported to the OMB-designated
integrity and performance system accessible through SAM (currently FAPIIS). The information
will be available in the OMB-designated integrity and performance system for a period of five
years from the date of the termination, then archived. Agencies that consider making a Federal
award to your organization during that five-year period must consider that information in judging
whether organization is qualified to receive the Federal award, when the Federal share of the
Federal award is expected to exceed the simplified acquisition threshold over the period of
performance.

    Your organization may comment on any information the OMB-designated integrity and
performance system contains about the non-Federal entity for future consideration by awarding
agencies. You may submit comments to the awardee integrity and performance portal accessible



EXHIBIT
A

through SAM (currently CPARS). Awarding agencies will consider your comments when determining whether your organization is qualified for a future Federal award.

**Appeal Procedure**

You have an opportunity to object and provide information and documentation challenging the termination action, in accordance with 42 CFR part 50, subpart D. To receive a review of your challenge, you must submit a request for such review to the Assistant Secretary for Health (ASH) no later than 30 days after the written notification of the determination is received. An extension of time may be considered upon a demonstration of good cause for the extension. A request for review must identify the issue(s) in dispute. It must also contain a full statement of your position with respect to such issue(s) and the pertinent facts and reasons in support of your position. In addition to the required written statement, you must provide copies of any documents supporting your claim.

Upon receipt of your request, the ASH will follow the process set forth in 42 CFR part 50, subpart D. Any review committee appointed under § 50.405 will be provided with copies of all relevant background materials (including applications(s), award(s), summary statement(s), and correspondence) and any additional pertinent information available. You will be given an opportunity to provide the review committee with additional statements and documentation not provided in the request for review. This additional submission must be tabbed and organized chronologically and accompanied by an indexed list identifying each document. The additional submission should provide only material that is relevant to the review committee's deliberation of the issues raised. You may be asked by the committee, at its discretion, to discuss the pertinent issues with the committee and to submit such additional information as the committee deems appropriate.

Based on its review, the review committee will prepare a written decision to be signed by the chairperson and each of the other committee members. The review committee will then send the written decision with a transmittal letter to you. If the decision is adverse to your position, you will be advised as to your right to appeal to the Departmental Appeals Board under 45 CFR part 16.

**Compliance Findings**

Our findings with respect to non-compliance with the award terms and conditions.

1. By accepting the award (Tab A—Notice of Award (NOA), Special Terms and Requirements 2), Oklahoma State Department of Health (OSDH) stipulated "that the award and any activities thereunder are subject to all provisions of 42 CFR Part 59, Subpart A." OSDH accepted the award "By drawing or otherwise obtaining funds for the award from the grant payment system or office, you accept the terms and conditions of the award and agree

- 2 -

to perform in accordance with the requirements of the award." (Tab A—NOA Standard Term 1).

2. OSDH accepted the award on May 24, 2022, by drawing down funds from the HHS Payment Management System (PMS). In doing so, OSDH agreed to comply with the 42 CFR Part 59, Subpart A as a condition of the award.

3. The Notice of Funding Opportunity (NOFO) PA-FPH-22-001 for the competition ultimately leading to the issuance of FPHPA006507 to OSDH stated the requirement that recipients must comply with the final rule issued on October 4, 2021 (NOFO, Section B.2.a.2).

4. In the application submitted under PA-FPH-22-001, OSDH certified SF-424B "Assurance-Non-Construction Programs" which includes assurance "18. Will comply with all applicable requirements of all other Federal laws, executive orders, regulations, and policies governing this program." (Tab D)

**OPA Determination of Non-Compliance with 42 CFR Part 59, Subpart A**

5. On August 29, 2022, because of recent changes in Oklahoma state laws, OSDH submitted a proposal to change its policy and procedure for providing nondirective options counseling by providing clients seeking counseling on pregnancy termination with a link to the HHS OPA website.

6. On November 9, 2022, OPA informed OSDH that this proposal did not comply with the Title X regulatory requirements set out in 42 CFR § 59.5(a)(5)(ii) and, therefore, could not be approved.

7. On November 22, 2022, OSDH submitted to OPA a request for reconsideration of OPA's November 9, 2022 decision.

8. On January 25, 2023, OPA posted a letter to OSDH on GrantSolutions. That letter reiterated that the proposal to provide clients seeking counseling on pregnancy termination with a link to the HHS OPA website does not comply with the 2021 Title X implementing regulations at 42 CFR § 59.5(a)(5)(ii). The letter also informed OSDH that it could submit an alternate compliance proposal that included providing clients with a referral to another entity, such as the All-Options Talkline.

9. OSDH informed OPA that it became aware of this letter on February 7, 2023, when contacted by email.

- 3 -

10. On February 16, 2023, OSDH responded to OPA's January 25, 2023, letter by submitting an alternative proposal for compliance, which included providing nondirective counseling on all pregnancy options by OSDH staff or through the All-Options Talk Line.

11. On March 14, 2023, OSDH submitted a "Pregnancy Diagnosis and Counseling" policy (revised March 2023), which indicated that the protocol for counseling clients with a positive pregnancy test includes:

> b. Provide neutral, factual information and nondirective counseling on all pregnancy options by OSDH staff or through the All-Options Talk Line (1-888-493-0092) and website, https://www.all-options.org/find-support/talkline/ (except for options the client indicated she does not want more information on).

12. In addition, as a corollary to the counseling protocol, OSDH's "Pregnancy Diagnosis and Counseling" policy (revised March 2023) indicated that one of the options for referral was to the "All-Options Talk Line (1-888-493-0092)." As part of its March 14 submission, OSDH also sent a Pregnancy Choices brochure (dated March 2023), listing the All-Options Talk Line as one of the Oklahoma Family Planning Resources.

13. On March 21, 2023, OSDH submitted a written assurance of compliance with the options counseling and referral requirements in the 2021 Title X Final Rule. On March 23, 2023, OPA posted two documents on GrantSolutions (a letter dated March 1, 2023, and a printout of a Technical Review, Exported On: 03/20/2023). Those documents informed OSDH that OPA had determined that OSDH's policy complied with the Title X regulations.

14. On May 5, 2023, OSDH notified OPA by email that it "had a change required in our family planning program policy effective late afternoon of 4/27/23." As documentation, OSDH submitted the same exact "Pregnancy Diagnosis and Counseling" policy (revised March 2023) as it originally submitted on March 14, 2023, but the new version no longer includes counseling through and referral to the All-Options Talk Line. Specifically, the policy submitted on May 5, 2023, replaced part b. with the following:

> b. Provide neutral, factual information and nondirective counseling on pregnancy options in Oklahoma by OSDH staff (except for options the client indicated she does not want more information on).

15. In addition, the updated OSDH "Pregnancy Diagnosis and Counseling" policy (revised March 2023) no longer includes the All-Options Talk Line as an entity to which clients may be referred. And, as part of its May 5, 2023, submission, OSDH also included an updated Pregnancy Choices brochure, which no longer lists the All-Options Talk Line as a resource.

16. OSDH's reference to counseling on "pregnancy options in Oklahoma" in the "Pregnancy Diagnosis and Counseling" policy, rather than counseling on all pregnancy options, and the deletion of referral to the All-Options Talk Line in this policy without any other provision for abortion referrals, are not acceptable revisions, as Title X recipients must still follow all

Aplt.App. 366

Federal regulatory requirements. The changes to OSDH's family planning program policy do not suffice or meet Federal requirements because Oklahoma law does not extend to all pregnancy options (See Okla. Stat. tit. 21, § 861), and we understand that, pursuant to OSDH's revised policy, information, counseling and referral will not be available for all alternative courses of action, but only for those options available under Oklahoma state law. This is inconsistent with Title X regulations at 42 CFR § 59.5(a)(5), which require Title X projects to provide information and nondirective counseling on a range of options, including prenatal care and delivery; infant care, foster care, or adoption; and pregnancy termination. Additionally, projects are required to provide referrals upon client request, including referrals for abortion. In some circumstances, those referrals will need to be made out of state.

17. Thus, based upon the documentation provided, OPA determined that OSDH's policy for providing nondirective options counseling and referral the Title X project does not comply with the Title X regulatory requirements.

18. OPA communicated this determination of non-compliance to OSDH and the OASH Chief Grants Management Officer (CGMO) by letter dated May 24, 2023 (Tab C).

**Determination of Non-Compliance with Award Terms and Award Suspension**

19. On May 25, 2023, the CGMO concluded that because OSDH is out of compliance with the Title X regulation, OSDH is also out of compliance with the terms and conditions of award FPHPA006507. The CGMO provided notice of the suspension on that day to OSDH and informed OSDH that as of April 27, 2023 (i.e., the effective date of the non-compliant OSDH policy), all costs are unallowable (Tab B).

20. On June 22, 2023, during a call to assess the status of OSDH's efforts to come into compliance during the first 30 days of the suspension period, OSDH indicated that it would not be able to comply with the Title X regulation citing state law. OSDH stated it did not intend to relinquish the award.

**Conclusion**

After consideration of the above, I conclude that OSDH remains out of compliance with the Title X regulation. OSDH had ample notification of what is required to maintain compliance with the Title X regulation. OSDH took steps to achieve compliance in order to receive a continuation award and subsequently revised its policy to a non-complaint version.

Furthermore, I conclude that OSDH is unlikely to achieve compliance with the terms and conditions of the award during the current budget period. OSDH's material non-compliance with terms and conditions of the award place the federal interest at risk and it is in the best interest of

- 5 -

the government to terminate award FPHPA006507 "Oklahoma State Department of Health Family Planning Services Project".

This decision to terminate will be final and effective with the project period end date on the NOA when it is issued.

Respectfully,

*Scott J. Moore -S*
*2023.06.27 13:44:38 -04'00'*

Scott J. Moore, Ph.D., J.D., C.F.E.
Director and Chief Grants Management Officer

CC    Jessica Shields, Grants Management Specialist
Cynda Hall, OPA Project Officer
Duane Barlow, OASH Grants Branch Chief
Amy Margolis, OPA Deputy Director
Jessica Marcella, Deputy Assistant Secretary for Population Affairs

Attachments

    A. Award Closeout Guidance
    B. Notice(s) of Award (initial and all amendments)
    C. OPA Determination of Non-Compliance with Title X Regulation 42 CFR Part 59, Subpart A
    D. Award Suspension Letter
    E. SF-424B Assurances - Non-Construction Programs

Aplt.App. 368



DEPARTMENT OF HEALTH AND HUMAN SERVICES                                    Office of the Secretary

Office of the Assistant Secretary for Health
Grants and Acquisitions Management Division
Rockville, MD 20852

June 27, 2023


Dear: Ms. Jill Nobles-Botkin

FPHPA006507

Our records indicate that your award is scheduled to end on 06/28/2023.  In order to complete closeout procedures for this project in accordance with the Uniform Administrative Requirements regulations, the following information and reports must be submitted to the Office of Grants Management, as indicated below:  In accordance with the terms and conditions of your award and 45 CFR §75.381, final reports are due ninety (120) days after the Project Period End date.

When your award expires, you may only use remaining grant funds to liquidate expenses incurred during the performance period. You must liquidate all obligations within 90 days of your award expiration date and withdraw the corresponding cash from the HHS Payment Management System (PMS). If you need to liquidate additional funds after the 90-day liquidation period, you must request an extension from the Grants & Acquisitions Management (GAM). Unless an extension has been approved by GAM, you will be unable to withdraw additional funds from PMS.

As part of the closeout of your award, you are responsible for the timely closeout of any subaward(s) and or contract(s) under the award and the financial settlement of any claims with those entities. You should establish a receipt date for your subrecipients/contractors to submit closeout data, final reports, and final claims that allows you to meet the requirement for submission of final reports.

1.  SF-425 – Final Federal Financial Report (FFR) and Federal Cash Transactions Report (FCTR)– You must submit your final FFR via the FFR Reporting Module in  PMS. You may find a paper copy of the form and instructions at https://www.grants.gov/web/grants/forms/post-award-reporting-forms.html. In order for your final FFR to be approved, the final, cumulative FFR must:
    o  Have no un-liquidated obligations,
    o  Indicate the exact balance of unobligated funds as reported to the Payment Management System (PMS),
    o  Reflect the proper amount of indirect costs applicable to the period based on current rates available at the time of preparation, and

    Your disbursements reported in PMS must match your reported obligations on the FFR. You must withdraw all cash needed for disbursements or return unneeded cash.  Failure to reconcile your disbursements and cash drawdowns will delay the closeout of your award

    Also, if your Notice of Award includes a cost-sharing or matching commitment, your final, cumulative FFR must show that you have met that requirement.  If you have not met that commitment, you must notify us immediately with a justification and request for budget revision.

2.  SF-428 and SF-428-B Tangible Personal Property report and/or Disposition report – A report regarding equipment acquired with project funds with an acquisition cost of $5,000 or more per

unit or residual unused supplies with an aggregate fair market value exceeding $5,000. **A negative report is required.** If there are items to report, the inventory must name items, date of purchase, and cost of each item. Indicate your request for disposition of this equipment in accordance with Subpart D - Post Federal Award Requirements, Property Standards, Equipment, 45 CFR part. 75.320. If disposition by transfer or sale is requested include fair market value; you must provide a final Tangible Personal Property Report on the SF 428-B. Access to form SF-428, with instructions for completing the forms, can be found on the Web at https://www.grants.gov/web/grants/forms/post-award-reporting-forms.html. Submit this report as an attachment in Grant Notes in GrantSolutions.

3. Final Program Progress Report – Your reports must address content required by 45 CFR § 75.342(b)(2). Submit your report as an attachment in Grant Notes in GrantSolutions.

Your annual audit must meet the audit requirements for close out of this project. An audit is required for all entities which expend $750,000 or more of Federal funds in each fiscal year. The audits are due within 30 days of receipt from the auditor or within 9 months of the end of the fiscal year, whichever occurs first. The audit report when completed must be submitted online to the Federal Audit Clearinghouse at http://harvester.census.gov/fac/collect/ddeindex.html.

If any inventions were conceived or first actually reduced to practice under this award, they must be listed on the HHS-568 - Procedures for Submission of Final Invention Statement http://www.hhs.gov/forms/publicuse.html. This form should be submitted as an attachment in Grant Notes in GrantSolutions

If your award is subject to reimbursement payment, you must submit an SF 270, Request for Advance or Reimbursement, for any amounts for which you have not previously requested payment. Submit this form as an attachment in Grant Notes in GrantSolutions

The specified reports must be sent as indicated above. Submission in any other manner or to any other office or official will result in your reports being considered delinquent.

Following receipt of your reports, we will review them and advise you of their acceptability or any need for revision.

Financial records, supporting documents, statistical records, and all records pertinent to this grant shall be retained for a period of three years. The records shall be retained beyond the three-year period if an audit is in process or if any audit findings have not been resolved.

Receipt and acceptance of the requested materials will complete the closeout process, subject to final audit. If you have any questions or require assistance, please contact your assigned Grants Management Specialist (GMS) Jessica Shields at Jessica.Shields@hhs.gov, 240-453-8839 or your Project Officer (PO) Cynda Hall at Cynda.Hall@hhs.gov, 240-453-2850. When emailing, it is best to copy both your GMS and PO.

Sincerely,

**Jessica Shields**
Grants Management Specialist

cc: Cynda Hall Project Officer



DEPARTMENT OF HEALTH AND HUMAN SERVICES

Office of the Secretary

Notice of Award

Award#  1 FPHPA006507-01-00
FAIN#  FPHPA006507
Federal Award Date: 03/23/2022

## Recipient Information

**1. Recipient Name**

Health Department, Oklahoma State
123 Robert S Kerr Ave
0308
Oklahoma State Department of Health
Oklahoma City, OK 73102-6406

**2. Congressional District of Recipient**
05

**3. Payment System Identifier (ID)**
1736017987C4

**4. Employer Identification Number (EIN)**
736017987

**5. Data Universal Numbering System (DUNS)**
143673015

**6. Recipient's Unique Entity Identifier**

**7. Project Director or Principal Investigator**

JILL  NOBLES-BOTKIN
jill@health.ok.gov
405-271-4476

**8. Authorized Official**

Ms. Bethany J Ledel
Grants Reporting Officer
bethanyl@health.ok.gov
405-271-4042

**Federal Agency Information**
OASH Grants and Acquisitions Management Division

**9. Awarding Agency Contact Information**
Mrs. Jessica Hall-Shields
Grants Specialist
Jessica.Shields@hhs.gov
240-453-8839

**10. Program Official Contact Information**
Cynda  Hall
Public Health Advisor
cynda.hall@hhs.gov
2404532850

## Federal Award Information

**11. Award Number**
I FPHPA006507-01-00

**12. Unique Federal Award Identification Number (FAIN)**
FPHPA006507

**13. Statutory Authority**
Title X of the Public Health Service Act, Section 1001 (42 U.S.C. § 300)

**14. Federal Award Project Title**
Oklahoma State Department of Health Family Planning Services Project

**15. Assistance Listing Number**
93.217

**16. Assistance Listing Program Title**
Family Planning Services

**17. Award Action Type**
New

**18. Is the Award R&D?**
No

### Summary Federal Award Financial Information

| | |
|---|---|
| **19. Budget Period Start Date**  04/01/2022  - End Date  03/31/2023 | |
| **20. Total Amount of Federal Funds Obligated by this Action** | $4,500,000.00 |
| 20a. Direct Cost Amount | $8,813,049.00 |
| 20b. Indirect Cost Amount | $264,921.00 |
| **21.** Authorized Carryover | $0.00 |
| **22.** Offset | $0.00 |
| **23.** Total Amount of Federal Funds Obligated this budget period | $0.00 |
| **24.** Total Approved Cost Sharing or Matching, where applicable | $4,577,970.00 |
| **25.** Total Federal and Non-Federal Approved this Budget Period | $9,077,970.00 |
| **26.** Project Period  Start Date  04/01/2022  - End Date  03/31/2027 | |
| **27.** Total Amount of the Federal Award including Approved Cost Sharing or Matching this Project Period | Not Available |

**28. Authorized Treatment of Program Income**

OTHER (See REMARKS)

**29. Grants Management Officer – Signature**

Dr. Scott Moore
OASH Grants Management Officer

## 30. Remarks

See Remarks (continuation)

Page 1



DEPARTMENT OF HEALTH AND HUMAN SERVICES

Office of the Secretary

Notice of Award

Award#  1 FPHPA006507-01-00
FAIN#   FPHPA006507
Federal Award Date: 03/23/2022

## Recipient Information

**Recipient Name**

Health Department, Oklahoma State
123 Robert S Kerr Ave
0308
Oklahoma State Department of Health
Oklahoma City, OK 73102-6406

**Congressional District of Recipient**
05

**Payment Account Number and Type**
1736017987C4

**Employer Identification Number (EIN)**
736017987

**Data Universal Numbering System (DUNS)**
143673015

**Recipient's Unique Entity Identifier**

**31. Assistance Type**
Project Grant

**32. Type of Award**
Service

### 33. Approved Budget
(Excludes Direct Assistance)

I. Financial Assistance from the Federal Awarding Agency Only

II. Total project costs including grant funds and all other financial participation

| | |
|---|---:|
| a.  Salaries and Wages | $4,041,510.00 |
| b.  Fringe Benefits | $1,970,211.00 |
|     c.  Total Personnel Costs | $6,011,721.00 |
| d.  Equipment | $0.00 |
| e.  Supplies | $1,465,816.00 |
| f.  Travel | $30,183.00 |
| g.  Construction | $0.00 |
| h.  Other | $319,914.00 |
| i.  Contractual | $985,415.00 |
| j.  TOTAL DIRECT COSTS | $8,813,049.00 |
| k.  INDIRECT COSTS | $264,921.00 |
| l.  TOTAL APPROVED BUDGET | $9,077,970.00 |
| m.  Federal Share | $4,500,000.00 |
| n.  Non-Federal Share | $4,577,970.00 |

### 34. Accounting Classification Codes

| FY-ACCOUNT NO. | DOCUMENT NO. | ADMINISTRATIVE CODE | OBJECT CLASS | AMT ACTION FINANCIAL ASSISTANCE | APPROPRIATION |
|---|---|---|---|---|---|
| 2-3984521 | FPHPA6507A | FPH70 | 41.51 | $4,500,000.00 | 75-22-0359 |

Page 2

**Aplt.App. 372**



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**     Notice of Award

Office of the Secretary

Award#  1 FPHPA006507-01-00
FAIN#   FPHPA006507
Federal Award Date:  03/23/2022

---

**Remarks (Continuation)**

This Notice of Award provides funding below the total amount requested in the application for the budget period. OASH is not obligated to make additional Federal Funds available. All award decisions, including the level of funding, are final and you may not appeal. You should re-submit an SF 424A and Budget Narrative justification which includes the total cumulative cost for each cost for the budget reimbursement period based on Personnel, Fringe, Travel, Supplies, Contractual, Other and Indirect cost by object class categories. The budget should be resubmitted for the total awarded amount within 30 days of the start of the budget period on this Notice of Award. Prior approval of the revised budget by the Grants Management Officer is required.  Changes in scope proposed as part of the budget revision should be clearly noted and also require Grants Management Officer prior approval.

**Aplt.App. 373**



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**   Notice of Award

Office of the Secretary

Award#  1 FPHPA006507-01-00
FAIN#   FPHPA006507
Federal Award Date:  03/23/2022

---

| 35. Terms And Conditions |
|---|

## SPECIAL TERMS AND REQUIREMENTS

1. **Program Income Use.** Program income (fees, premiums, third-party reimbursements which the project may reasonably expect to receive), as well as State, local and other operational funding, will be used to finance the non-federal share of the scope of project as defined in the approved grant application and reflected in the approved budget. Program income and the level projected in the approved budget will be used to further program objectives. Box 28 on this Notice of Award (NoA) indicates **Other.** Program Income may be used to meet the cost sharing or matching requirement of the Federal award. The amount of the Federal award stays the same. Program Income in excess of any amounts specified must be added to the Federal funds awarded. They must be used for the purposes and conditions of this award for the duration of the Project period.  45 C.F.R. § 75.307 (e).

2. **Program Specific Regulation.**  In accepting this award, the grantee stipulates that the award and any activities thereunder are subject to all provisions of 42 CFR Part 59, Subpart A.

3. **OPA Program Priorities.**  All recipients must comply with the requirements regarding the provision of family planning services that can be found in the statute (Title X of the Public Health Service Act, 42 U.S.C. § 300 et seq.) and the implementing regulations (42 C.F.R. Part 59, Subpart A), and any legislative mandates. In addition, sterilization of clients as part of the Title X program must be consistent with 42 C.F.R. Part 50, Subpart B ("Sterilization of Persons in Federally Assisted Family Planning Projects").

   In addition to the statute, regulations, legislative mandates, and additional program guidance that apply to Title X, OPA establishes program priorities that represent overarching goals for the Title X program. OPA expects recipients to develop and implement plans to address program priorities.  The current priorities are: 1) advance health equity through the delivery of Title X services; 2) improve and expand access to Title X services; and 3) deliver Title X services of the highest quality.

4. **Notice of Change in Service Sites.** In order to maintain an accurate record of current Title X service sites, grantees must provide notice to the Office of Population Affairs (OPA) of any deletions, additions, or changes to the name, location, street address and email, services provided on-site, and contact information for Title X grantees and service sites. This database will also be used to verify eligibility for 340B program registration and recertification. You must enter your changes to the Title X database within 30 days from the official approval of the change at https://opa-fpclinicdb.hhs.gov/ This does not replace the prior approval requirement under HHS grants policy for changes in project scope, including clinic closures.

5. **304B Program Participation**. If you or your sub-recipient(s) enrolls in the 340B Program, you must comply with all 340B Program requirements. You may be subject to audit at any time regarding 340B Program compliance. 340B Program requirements are available at https://www.hrsa.gov/opa/program-requirements/index.html.

6. **FPAR reporting.** For each calendar year covered by the project period, you will be required to submit a Family Planning Annual Report (FPAR).  The information collection (reporting requirements) and format for this report have been approved by the Office of Management and Budget (OMB) and assigned OMB No. 0990-0479 (Expires 9/30/2024). The FPAR data elements, instrument, and instructions are found on the OPA Web site at http://opa.hhs.gov. You are expected to use the FPAR data to inform your QI/QA activities.

7. **Evaluation Cooperation.** The grantee is expected to participate in OPA research and evaluation activities, if selected, and must agree to follow all evaluation protocols established by OPA or its designee.

8. **Grantee Meetings.**  The grantee is encouraged to actively participate in all OPA-supported Title X grantee meetings and grantee conferences.  In addition to training and technical assistance available from the Reproductive Health National Training Center and the National Clinical Training Center for Family Planning, OPA is planning to conduct two Title X grantee trainings in 2022 and a Title X grantee conference in 2023.



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**    Notice of Award

Office of the Secretary

Award#  1 FPHPA006507-01-00
FAIN#   FPHPA006507
Federal Award Date: 03/23/2022

---

9.  **Institutional Review Board (IRB).** Institutional Review Board (IRB) approvals, when required, must be submitted via Grant Solutions Grant Notes within 5 business days of receipt from the IRB.  No activities that require IRB approval may take place prior to your receipt of the IRB approval.

10. **Maximizing Access.** In furtherance of maximizing access and best serving individuals in need in the service areas, recipients should make reasonable efforts to avoid duplication of effort in the provision of services across the Title X network.  For example, Title X recipients' coverage areas may overlap geographically, but duplication of subrecipient sites could be minimized or avoided to create more opportunities for services.

11. **Prior Approval for Vehicle Purchases.**  No mobile health unit(s) or other vehicle(s), even if proposed in the application for this award, may be purchased with award funds without prior written approval from the grant management officer.  Requests for approval of such purchases must include a justification with a cost-benefit analysis comparing both purchase and lease options.  Such requests must be submitted as a Budget Revision Amendment in Grant Solutions.

## STANDARD TERMS

1.  **Compliance with Terms and Conditions.** You must comply with all terms and conditions outlined in the grant award, including grant policy terms and conditions contained in applicable Department of Health and Human Services (HHS) Grant Policy Statements (GPS), (note any references in the GPS to 45 C.F.R. Part 74 or 92 are now replaced by 45 C.F.R. Part 75, and the SF-269 is now the SF-425), and requirements imposed by program statutes and regulations, Executive Orders, and HHS grant administration regulations, as applicable; as well as any requirements or limitations in any applicable appropriations acts. By drawing or otherwise obtaining funds for the award from the grant payment system or office, you accept the terms and conditions of the award and agree to perform in accordance with the requirements of the award. The HHS Grants Policy Statement is available at: http://www.hhs.gov/sites/default/files/grants/grants/policies-regulations/hhsgps107.pdf Uniform Administrative Requirements, Cost Principles, and Audit Requirements for HHS awards are at 45 C.F.R. Part 75.

2.  **Grants Management Officer Prior Approval Requirements.** Certain changes to your project or personnel require prior approval from the Grants Management Officer (GMO). (See Part II, HHS Grants Policy Statement (GPS), any references in the GPS to 45 C.F.R. Part 74 or 92 are now replaced by 45 C.F.R. Part 75). All amendment requests requiring prior approval must be signed by the grantee authorizing official and or PI/PD and submitted through the GrantSolutions Amendment Module. Only responses signed by the GMO are considered valid. If you take action on the basis of responses from other officials or individuals, you do so at your own risk. Such responses will not be considered binding by or upon any OASH Office or HHS component. Any other correspondence not relating to a prior approval item should be uploaded to Grant Notes within the GrantSolutions system. Include the Federal grant number and signature of the authorized business official and the project director on all such correspondence.

3.  **Salary Limitation (Further Consolidated Appropriations Act, 2022, Div. H, Title II, sec. 202).** "None of the funds appropriated in this title shall be used to pay the salary of an individual, through a grant or other extramural mechanism, at a rate in excess of Executive Level II."

    The Salary Limitation is based upon the Executive Level II of the Federal Executive Pay Scale.  Effective January  2022, the Executive Level II salary is $203,700. For the purposes of the salary limitation, the direct salary is exclusive of fringe benefits and indirect costs. An individual's direct salary is not constrained by the legislative provision for a limitation of salary. The rate limitation simply limits the amount that may be awarded and charged to the grant or cooperative agreement. A recipient may pay an individual's salary amount in excess of the salary cap with non-federal funds.

4.  **Reporting Subawards and Executive Compensation.**



**DEPARTMENT OF HEALTH AND HUMAN SERVICES** Notice of Award

Office of the Secretary

Award#  1 FPHPA006507-01-00
FAIN#   FPHPA006507
Federal Award Date: 03/23/2022

A. Reporting of first-tier subawards.

   1)   Applicability.

Unless you are exempt as provided in paragraph D. of this award term, you must report each action that obligates $30,000 or more in Federal funds that does not include Recovery Act funds (as defined in section 1512(a)(2) of the American Recovery and Reinvestment Act of 2009, Pub. L. 111–5) for a subaward to an entity (see definitions in paragraph e. of this award term).

   2)   Where and when to report.

You must report each obligating action described in paragraph A.1. of this award term to the Federal Funding Accountability and Transparency Act Subaward Reporting System (FFRS). For subaward information, report no later than the end of the month following the month in which the obligation was made. (For example, if the obligation was made on November 7, 2010, the obligation must be reported by no later than December 31, 2010.)

   3)   What to report.

You must report the information about each obligating action as specified in the submission instructions posted at http://www.fsrs.gov.

B. Reporting Total Compensation of Recipient Executives.

   1)   Applicability and what to report.

You must report total compensation for each of your five most highly compensated executives for the preceding completed fiscal year, if—

      a) The total Federal funding authorized to date under this award is $30,000 or more;

      b) In the preceding fiscal year, you received—

         (1)  80 percent or more of your annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 C.F.R. §170.320 (and subawards); and

         (2)  $25,000,000 or more in annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 C.F.R. §170.320 (and subawards); and

      c)  The public does not have access to information about the compensation of the executives through periodic reports filed under section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. § 78m(a), 78o(d)) or section 6104 of the Internal Revenue Code of 1986. (To determine if the public has access to the compensation information, see the U.S. Security and Exchange Commission total compensation filings at the Executive Compensation page of the SEC website.)

   2)  Where and when to report.

You must report executive total compensation described in paragraph B.1. of this award term:

Aplt.App. 376



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**   Notice of Award

Office of the Secretary

Award#  1 FPHPA006507-01-00
FAIN#   FPHPA006507
Federal Award Date: 03/23/2022

           a) As part of your registration profile in the System for Award Management (SAM).

           b) By the end of the month following the month in which this award is made, and annually thereafter.

C.   Reporting of Total Compensation of Subrecipient Executives.

    1)    Applicability and what to report.

Unless you are exempt as provided in paragraph D of this award term, for each first-tier subrecipient under this award, you shall report the names and total compensation of each of the subrecipient's five most highly compensated executives for the subrecipient's preceding completed fiscal year, if—

           a) In the subrecipient's preceding fiscal year, the subrecipient received—

              (1) 80 percent or more of its annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 C.F.R. § 170.320 (and subawards); and

              (2) $25,000,000 or more in annual gross revenues from Federal procurement contracts (and subcontracts), and Federal financial assistance subject to the Transparency Act (and subawards); and

           b) The public does not have access to information about the compensation of the executives through periodic reports filed under section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. § 78m(a), 78o(d)) or section 6104 of the Internal Revenue Code of 1986. (To determine if the public has access to the compensation information, see the U.S. Security and Exchange Commission total compensation filings at the Executive Compensation page of the SEC website.)

    2)   Where and when to report.

You must report subrecipient executive total compensation described in paragraph C.1. of this award term:

           a) To the recipient.

           b) By the end of the month following the month during which you make the subaward. For example, if a subaward is obligated on any date during the month of October of a given year (i.e., between October 1 and 31), you must report any required compensation information of the subrecipient by November 30 of that year.

D.   Exemptions.

If, in the previous tax year, you had gross income, from all sources, under $300,000, you are exempt from the requirements to report:

    1) Subawards, and

    2) The total compensation of the five most highly compensated executives of any subrecipient.

E.   Definitions.

Aplt.App. 377



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**   Notice of Award

Office of the Secretary

Award#   1 FPHPA006507-01-00
FAIN#   FPHPA006507
Federal Award Date:  03/23/2022

For purposes of this award term:

1)   "Entity"

This term means all of the following, as defined in 2 C.F.R. Part 25:

a)  A Governmental organization, which is a State, local government, or Indian tribe;

b)  A foreign public entity;

c)  A domestic or foreign nonprofit organization;

d)  A domestic or foreign for-profit organization;

e)  A Federal agency, but only as a subrecipient under an award or subaward to a non-Federal entity.

2)   "Executive"

This term means officers, managing partners, or any other employees in management positions.

3)   "Subaward":

a)  This term means a legal instrument to provide support for the performance of any portion of the substantive project or program for which you received this award and that you as the recipient award to an eligible subrecipient.

b)  The term does not include your procurement of property and services needed to carry out the project or program (for further explanation, see Sec. II .210 of the attachment to OMB Circular A–133, "Audits of States, Local Governments, and Non-Profit Organizations").

c)  A subaward may be provided through any legal agreement, including an agreement that you or a subrecipient considers a contract.

4)   "Subrecipient"

This term means an entity that:

a)  Receives a subaward from you (the recipient) under this award; and

b)  Is accountable to you for the use of the Federal funds provided by the subaward.

5)   "Total compensation"

This term means the cash and noncash dollar value earned by the executive during the recipient's or subrecipient's preceding fiscal year and includes the following (for more information see 17 C.F.R. § 229.402(c)(2)):

a)  Salary and bonus.

**Aplt.App. 378**



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**   Notice of Award

Office of the Secretary

Award#  1 FPHPA006507-01-00
FAIN#   FPHPA006507
Federal Award Date:  03/23/2022

b)  Awards of stock, stock options, and stock appreciation rights. Use the dollar amount recognized for financial statement reporting purposes with respect to the fiscal year in accordance with the Statement of Financial Accounting Standards No. 123 (Revised 2004) (FAS 123R), Shared Based Payments.

c)  Earnings for services under non-equity incentive plans. This does not include group life, health, hospitalization or medical reimbursement plans that do not discriminate in favor of executives, and are available generally to all salaried employees.

d)  Change in pension value. This is the change in present value of defined benefit and actuarial pension plans.

e)  Above-market earnings on deferred compensation which is not tax-qualified.

f)  Other compensation, if the aggregate value of all such other compensation (e.g. severance, termination payments, value of life insurance paid on behalf of the employee, perquisites or property) for the executive exceeds $10,000.

5.  **Intellectual Property and Data Rights.**

A.    Data. The federal government has the right to: 1) Obtain, reproduce, publish, or otherwise use the data produced under this award; and  2)  Authorize others to receive, reproduce, publish, or otherwise use such data for federal purposes.

B.    Copyright.  The awardee may copyright any work that is subject to copyright and was developed, or for which ownership was acquired, under a federal award. The federal government reserves a royalty-free, nonexclusive and irrevocable right to reproduce, publish, or otherwise use the work for Federal purposes, and to authorize others to do so.

C.    Patents and Inventions.  The awardee is subject to applicable regulations governing patents and inventions, including government- wide regulations issued by the Department of Commerce at 37 CFR part 401.

6.  **Acknowledgement of Federal Grant Support**. When issuing statements, press releases, publications, requests for proposal, bid solicitations and other documents --such as tool-kits, resource guides, websites, and presentations (hereafter "statements")-- describing the projects or programs funded in whole or in part with U.S. Department of Health and Human Services (HHS) federal funds, the recipient must clearly state:

1)    the percentage and dollar amount of the total costs of the program or project funded with federal money; and,

2)    the percentage and dollar amount of the total costs of the project or program funded by non-governmental sources.

When issuing statements resulting from activities supported by HHS financial assistance, the recipient entity must include an acknowledgement of federal assistance using one of the following or a similar statement.

If the HHS Grant or Cooperative Agreement is NOT funded with other non-governmental sources:

This [project/publication/program/website, etc.] [is/was] supported by the [full name of the PROGRAM OFFICE] of the U.S. Department of Health and Human Services (HHS) as part of a financial assistance award totaling $XX with 100 percent funded by [PROGRAM OFFICE]/OASH/HHS. The contents are those of the author(s) and do not necessarily represent the official views of, nor an endorsement, by [PROGRAM OFFICE]/OASH/HHS, or the U.S. Government. For more information, please visit [PROGRAM OFFICE website, if available].

The HHS Grant or Cooperative Agreement IS partially funded with other nongovernmental sources:

Aplt.App. 379



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**   Notice of Award

Office of the Secretary

Award#   1 FPHPA006507-01-00
FAIN#   FPHPA006507
Federal Award Date: 03/23/2022

This [project/publication/program/website, etc.] [is/was] supported by the [full name of the PROGRAM OFFICE] of the U.S. Department of Health and Human Services (HHS) as part of a financial assistance award totaling $XX with XX percentage funded by [PROGRAM OFFICE]/OASH/HHS and $XX amount and XX percentage funded by non-government source(s). The contents are those of the author (s) and do not necessarily represent the official views of, nor an endorsement, by [PROGRAM OFFICE]/OASH/HHS, or the U.S. Government. For more information, please visit [PROGRAM OFFICE website, if available].

The federal award total must reflect total costs (direct and indirect) for all authorized funds (including supplements and carryover) for the total competitive segment up to the time of the public statement.

**Any amendments by the recipient to the acknowledgement statement must be coordinated with the OASH federal project officer and the OASH grants management officer.**

If the recipient plans to issue a press release concerning the outcome of activities supported by this financial assistance, it should notify the OASH federal project officer and the OASH grants management officer in advance to allow for coordination.

7.  **Whistleblower Protections.** You are hereby given notice that the 48 C.F.R. § 3.908 (related to the enhancement of contractor employee whistleblower protections), implementing 41 U.S.C. § 4712, as amended (entitled "Enhancement of contractor protection from reprisal for disclosure of certain information") applies to this award.

8.  **Reporting of Matters Related to Recipient Integrity and Performance.**

    A.  General Reporting Requirement

    If the total value of your currently active grants, cooperative agreements, and procurement contracts from all Federal awarding agencies exceeds $10,000,000 for any period of time during the period of performance of this Federal award, then you as the recipient during that period of time must maintain the currency of information reported to the System for Award Management (SAM) that is made available in the designated integrity and performance system (currently the Federal Awardee Performance and Integrity Information System (FAPIIS)) about civil, criminal, or administrative proceedings described in paragraph 2 of this award term and condition. This is a statutory requirement under section 872 of Public Law 110-417, as amended (41 U.S.C. § 2313). As required by section 3010 of Public Law 111-212, all information posted in the designated integrity and performance system on or after April 15, 2011, except past performance reviews required for Federal procurement contracts, will be publicly available.

    B. Proceedings About Which You Must Report

    Submit the information required about each proceeding that:

    1)   Is in connection with the award or performance of a grant, cooperative agreement, or procurement contract from the Federal Government;

    2)   Reached its final disposition during the most recent five-year period; and

    3)   If one of the following:

        a)   A criminal proceeding that resulted in a conviction, as defined in paragraph 5 of this award term and condition;

        b)   A civil proceeding that resulted in a finding of fault and liability and payment of a monetary fine, penalty, reimbursement, restitution, or damages of $5,000 or more;

Aplt.App. 380



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**   Notice of Award

Office of the Secretary

Award#  1 FPHPA006507-01-00
FAIN#  FPHPA006507
Federal Award Date: 03/23/2022

   c)  An administrative proceeding, as defined in paragraph 5 of this award term and condition, that resulted in a finding of fault and liability and your payment of either a monetary fine or penalty of $5,000 or more or reimbursement, restitution, or damages in excess of $100,000; or

   d)  Any other criminal, civil, or administrative proceeding if:

      (1)  It could have led to an outcome described in paragraph 2.c.(1), (2), or (3) of this award term and condition;

      (2)  It had a different disposition arrived at by consent or compromise with an acknowledgement of fault on your part; and

      (3)  The requirement in this award term and condition to disclose information about the proceeding does not conflict with applicable laws and regulations.

C.  Reporting Procedures

Enter in the SAM Entity Management area the information that SAM requires about each proceeding described in paragraph B of this award term and condition. You do not need to submit the information a second time under assistance awards that you received if you already provided the information through SAM because you were required to do so under Federal procurement contracts that you were awarded.

D.  Reporting Frequency

During any period of time when you are subject to this requirement in paragraph A of this award term and condition, you must report proceedings information through SAM for the most recent five year period, either to report new information about any proceeding(s) that you have not reported previously or affirm that there is no new information to report. Recipients that have Federal contract, grant, and cooperative agreement awards with a cumulative total value greater than $10,000,000 must disclose semiannually any information about the criminal, civil, and administrative proceedings.

E.  Definitions

For purposes of this award term and condition:

   1)  Administrative proceeding means a non-judicial process that is adjudicatory in nature in order to make a determination of fault or liability (e.g., Securities and Exchange Commission Administrative proceedings, Civilian Board of Contract Appeals proceedings, and Armed Services Board of Contract Appeals proceedings). This includes proceedings at the Federal and State level but only in connection with performance of a Federal contract or grant. It does not include audits, site visits, corrective plans, or inspection of deliverables.

   2)  Conviction, for purposes of this award term and condition, means a judgment or conviction of a criminal offense by any court of competent jurisdiction, whether entered upon a verdict or a plea, and includes a conviction entered upon a plea of nolo contendere.

   3)  Total value of currently active grants, cooperative agreements, and procurement contracts includes—

      a)  Only the Federal share of the funding under any Federal award with a recipient cost share or match; and

**Aplt.App. 381**



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**   Notice of Award

Office of the Secretary

Award#  1 FPHPA006507-01-00
FAIN#   FPHPA006507
Federal Award Date:  03/23/2022

b)  The value of all expected funding increments under a Federal award and options, even if not yet exercised.

F.  Disclosure Requirements.

Consistent with 45 C.F.R. § 75.113, applicants and recipients must disclose, in a timely manner, in writing to the HHS Awarding
Agency, with a copy to the HHS Office of the Inspector General, all information related to violations of Federal criminal law
involving fraud, bribery, or gratuity violations potentially affecting the Federal award. Subrecipients must disclose, in a timely
manner, in writing to the prime recipient (pass through entity) and the HHS Office of the Inspector General all information related
to violations of Federal criminal law involving fraud, bribery, or gratuity violations potentially affecting the Federal award.
Disclosures must be sent in writing to the awarding agency and to the HHS OIG at the following addresses:

*HHS OASH Grants and Acquisitions Management*
*1101 Wootton Parkway, Plaza Level*
*Rockville, MD 20852*

AND

*US Department of Health and Human Services Office of Inspector General*
*ATTN: OIG HOTLINE OPERATIONS—MANDATORY GRANT DISCLOSURES*
*PO Box 23489*
*Washington, DC 20026*

URL: http://oig.hhs.gov/fraud/report-fraud/index.asp

(Include "Mandatory Grant Disclosures" in subject line)

**Fax:** 1-800-223-8164 (Include "Mandatory Grant Disclosures" in subject line)

Failure to make required disclosures can result in any of the remedies described in 45 C.F.R. § 75.371 ("Remedies for
noncompliance"), including suspension or debarment (See also 2 C.F.R. Parts 180 & 376 and 31 U.S.C. § 3321).

The recipient must include this mandatory disclosure requirement in all subawards and contracts under this award.

9.  **Advancing Racial Equity and Support for Underserved Communities Through the Federal Government.**  You must
administer your project in compliance with federal civil rights laws that prohibit discrimination on the basis of race, color,
national origin, disability, age and, in some circumstances, religion, conscience, and sex (including gender identity, sexual
orientation, and pregnancy). This includes taking reasonable steps to provide meaningful access to persons with limited English
proficiency and providing programs that are accessible to and usable by persons with disabilities. The HHS Office for Civil Rights
provides guidance on complying with civil rights laws enforced by HHS. See https://www.hhs.gov/civil-rights/for-
providers/provider-obligations/index.html and https://www.hhs.gov/civil-rights/for-individuals/nondiscrimination/index.html.

--   You must take reasonable steps to ensure that your project provides meaningful access to persons with limited English
proficiency. For guidance on meeting your legal obligation to take reasonable steps to ensure meaningful access to your programs
or activities by limited English proficient individuals, see https://www.hhs.gov/civil-rights/for-individuals/special-topics/limited-
english-proficiency/fact-sheet-guidance/index.html and https://www.lep.gov.

--   For information on your specific legal obligations for serving qualified individuals with disabilities, including providing
program access, reasonable modifications, and taking appropriate steps to provide effective communication , *see*
http://www.hhs.gov/ocr/civilrights/understanding/disability/index.html.

--   HHS funded health and education programs must be administered in an environment free of sexual harassment, *see*

Page 12



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**   Notice of Award

Office of the Secretary

Award#  1 FPHPA006507-01-00
FAIN#   FPHPA006507
Federal Award Date:  03/23/2022

https://www.hhs.gov/civil-rights/for-individuals/sex-discrimination/index.html.

-- For guidance on administering your project in compliance with applicable federal religious nondiscrimination laws and applicable federal conscience protection and associated anti-discrimination laws, *see* https://www.hhs.gov/conscience/conscience-protections/index.html and https://www.hhs.gov/conscience/religious-freedom/index.html.

10. **Trafficking in Persons.** This award is subject to the requirements of Section 106 (g) of the Trafficking Victims Protection Act of 2000, as amended (22 U.S.C. § 7104)

    A. Provisions applicable to a recipient that is a private entity.

        1) You as the recipient, your employees, subrecipients under this award, and subrecipients' employees may not

           a) Engage in severe forms of trafficking in persons during the period of time that the award is in effect;

           b) Procure a commercial sex act during the period of time that the award is in effect; or

           c) Use forced labor in the performance of the award or subawards under the award.

        2) We as the Federal awarding agency may unilaterally terminate this award, without penalty, if you or a subrecipient that is a private entity –

           a) Is determined to have violated a prohibition in paragraph A.1 of this award term; or

           b) Has an employee who is determined by the agency official authorized to terminate the award to have violated a prohibition in paragraph A.1 of this award term through conduct that is either-

               (1) Associated with performance under this award; or

               (2) Imputed to you or the subrecipient using the standards and due process for imputing the conduct of an individual to an organization that are provided in 2 C.F.R. Part 180, "OMB Guidelines to Agencies on Governmentwide Debarment and Suspension (Nonprocurement)," as implemented by our agency at 2 C.F.R. Part 376.

B. Provision applicable to a recipient other than a private entity.

We as the Federal awarding agency may unilaterally terminate this award, without penalty, if a subrecipient that is a private entity-

    1) Is determined to have violated an applicable prohibition in paragraph a.1 of this award term; or

    2) Has an employee who is determined by the agency official authorized to terminate the award to have violated an applicable prohibition in paragraph a.1 of this award term through conduct that is either

        a) Associated with performance under this award; or

        b) Imputed to the subrecipient using the standards and due process for imputing the conduct of an individual to an

Aplt.App. 383



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**   Notice of Award

Office of the Secretary

Award#  1 FPHPA006507-01-00
FAIN#  FPHPA006507
Federal Award Date:  03/23/2022

organization that are provided in 2 C.F.R. Part 180, "OMB Guidelines to Agencies on Governmentwide Debarment and Suspension (Nonprocurement)," as implemented by our agency at 2 C.F.R. Part 376.

C.  Provisions applicable to any recipient.

1)  You must inform us immediately of any information you receive from any source alleging a violation of a prohibition in paragraph A.1 of this award term

2)  Our right to terminate unilaterally that is described in paragraph A.2 or B of this section:

a)  Implements section 106(g) of the Trafficking Victims Protection Act of 2000 (TVPA), as amended (22 U.S.C. § 7104(g)), and

b)  Is in addition to all other remedies for noncompliance that are available to us under this award.

3)  You must include the requirements of paragraph A.1 of this award term in any subaward you make to a private entity.

D.  Definitions. For purposes of this award term:

1)  "Employee" means either:

a)  An individual employed by you or a subrecipient who is engaged in the performance of the project or program under this award; or

b)  Another person engaged in the performance of the project or program under this award and not compensated by you including, but not limited to, a volunteer or individual whose services are contributed by a third party as an in-kind contribution toward cost sharing or matching requirements.

2)  "Forced labor" means:

Labor obtained by any of the following methods: the recruitment, harboring, transportation, provision, or obtaining of a person for labor or services, through the use of force, fraud, or coercion for the purpose of subjection to involuntary servitude, peonage, debt bondage, or slavery.

3)  "Private entity":

a)  Means any entity other than a State, local government, Indian tribe, or foreign public entity, as those terms are defined in 2 C.F.R. § 175.25.

b) Includes:

(1)  A nonprofit organization, including any nonprofit institution of higher education, hospital, or tribal organization other than one included in the definition of Indian tribe at 2 C.F.R. § 175.25(b).

(2)  A for-profit organization.

**Aplt.App. 384**



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**   Notice of Award

Office of the Secretary

Award#  1 FPHPA006507-01-00
FAIN#  FPHPA006507
Federal Award Date:  03/23/2022

4) "Severe forms of trafficking in persons," "commercial sex act," and "coercion"

These terms have the meanings given at section 103 of the TVPA, as amended (22 U.S.C. § 7102)

11. **Prohibition on certain telecommunications and video surveillance services or equipment.**

A. As described in CFR 200.216, recipients and subrecipients are prohibited to obligate or spend grant funds (to include direct and indirect expenditures as well as cost share and program) to:

1) Procure or obtain,

2) Extend or renew a contract to procure or obtain; or

3) Enter into contract (or extend or renew contract) to procure or obtain equipment, services, or systems that use covered telecommunications equipment or services as a substantial or essential component of any system, or as critical technology as part of any system. As described in Pub. L. 115-232, section 889, covered telecommunications equipment is telecommunications equipment produced by Huawei Technologies Company or ZTE Corporation (or any subsidiary or affiliate of such entities).

a) For the purpose of public safety, security of government facilities, physical security surveillance of critical infrastructure, and other national security purposes, video surveillance and telecommunications equipment produced by Hytera Communications Corporation, Hangzhou Hikvision Digital Technology Company, or Dahua Technology Company (or any subsidiary or affiliate of such entities).

b) Telecommunications or video surveillance services provided by such entities or using such equipment.

c) Telecommunications or video surveillance equipment or services produced or provided by an entity that the Secretary of Defense, in consultation with the Director of the National Intelligence or the Director of the Federal Bureau of Investigation, reasonably believes to be an entity owned or controlled by, or otherwise, connected to the government of a covered foreign country.

## REPORTING REQUIREMENTS

1. **Financial Reporting Requirement—Federal Financial Report (FFR) SF 425.** Effective October 1, 2020, you must submit your SF-425 to OASH using the Department of Health and Human Services (HHS) Payment Management System for any OASH awards with a project period ending October 1, 2020 or later. Failure to submit the FFR in the correct system by the due date may delay processing of any pending requests or applications.

OASH and the Program Support Center are collaborating in the submission of the SF-425 to reduce the burden on grantees and assist with the reconciliation of expenditures and disbursements, and to allow for timely closeout of grants. Your submission must be through the HHS Payment Management System. SF-425 submissions through Grant Solutions will no longer be accepted for OASH awards.

You must use the SF-425 Federal Financial Report (FFR) for expenditure reporting. To assist in your preparation for submission you may find the SF-425 and instructions for completing the form on the Web at: http://apply07.grants.gov/apply/forms/sample/SF425-V1.0.pdf. You must complete **all** sections of the FFR.

**Aplt.App. 385**



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**   Notice of Award

Office of the Secretary

Award#  1 FPHPA006507-01-00
FAIN#   FPHPA006507
Federal Award Date:  03/23/2022

**A.  Quarterly FFR Due Date.**

Your FFR is due 30 days after the end of each Quarter in the federal fiscal year.  That is for the:

      **Quarter ending September 30, your FFR is due October 30**

      **Quarter ending December 31, your FFR is due January 30**

      **Quarter ending March 30, your FFR is due April 30**

      **Quarter ending June 30, your FFR is due July 30.**

**B. Final FFR Due Date.**

Your final FFR covering the entire project is due 90 days after the end date for your project period.

**C.  Past due reports.**

If you have not submitted by the due date, you will receive a message indicating the report is **Past Due**. Please ensure your Payment Management System account and contact information are up to date so you receive notifications.

**D.  Electronic Submission.**

Electronic Submissions are accepted only via the HHS Payment Management System – No other submission methods will be accepted without prior written approval from the GMO. You must be assigned to the grant with authorized access to the FFR reporting Module when submitting. If you encounter any difficulties, contact the HHS Payment Management System Help Desk or your assigned Grants Management Specialist. Please reference the CONTACTS section of NoA Terms and Conditions to locate the name of your assigned Grants Management Specialist.

2. **Annual Progress Report Requirements.** You must submit <u>annual progress reports</u> 90 days after the end of each performance reporting period unless otherwise required under the Special Terms and Requirements for this award. Your progress reports must address content required by 45 CFR § 75.342(b)(2). Additonal progess reporting may be requiremented under Special Terms and Requirements as required by statute, regulation, or specific circumstances warranting additional monitoring. Additional guidance may be provided by the Program Office. Reports must be submitted electronically via upload to Grant Notes in GrantSolutions.

3. **Audit Requirements.** The Single Audit Act Amendments of 1996 (31 U.S.C. §§ 7501-7507) combined the audit requirements for all entities under one Act. An audit is required for all non-Federal entities expending Federal awards, and must be consistent with the standards set out at 45 CFR Part 75, Subpart F ("Audit Requirements"). The audits are due within 30 days of receipt from the auditor or within 9 months of the end of the fiscal year, whichever occurs first. The audit report when completed should be submitted online to the Federal Audit Clearinghouse at <u>https://harvester.census.gov/facides/Account/Login.aspx</u>.

## CONTACTS

1. **Fraud, Waste, and Abuse.** The HHS Inspector General accepts tips and complaints from all sources about potential fraud, waste, abuse, and mismanagement in Department of Health and Human Services' programs. Your information will be reviewed promptly by a professional staff member. Due to the high volume of information that they receive, they are unable to reply to submissions. You may reach the OIG through various channels.

**Aplt.App. 386**



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**   Notice of Award

Office of the Secretary

Award#  1 FPHPA006507-01-00
FAIN#   FPHPA006507
Federal Award Date: 03/23/2022

Internet: https://forms.oig.hhs.gov/hotlineoperations/index.aspx

Phone: 1-800-HHS-TIPS (1-800-447-8477)

*Mail: US Department of Health and Human Services*
*Office of Inspector General*
*ATTN: OIG HOTLINE OPERATIONS*
*PO Box 23489*
*Washington, DC 20026*

For additional information visit https://oig.hhs.gov/fraud/report-fraud/index.asp

2. **Payment Procedures.** Payments for grants awarded by OASH Program Offices are made through Payment Management Services (previously known as the Division of Payment Management) https://pms.psc.gov/home.html  PMS is administered by the Program Support Center (PSC), HHS. NOTE: Please contact the Payment Management Services to establish an account if you do not have one.

Inquiries regarding payments should be directed to https://pms.psc.gov/home.html; or

Payment Management Services, P.O. Box 6021, Rockville, MD 20852;

or 1-877-614-5533.

3. **Use of Grant Solutions.** GrantSolutions is our web-based system that will be used to manage your grant throughout its life cycle. Please contact GrantSolutions User Support to establish an account if you do not have one. Your Grants Management Specialist has the ability to create a GrantSolutions account for the Grantee Authorized Official and Principle Investigator/Program Director roles. Financial Officer accounts may only be established by GrantSolutions staff. All account requests must be signed by the prospective user and their supervisor or other authorized organization official.

For assistance on GrantSolutions issues please contact: GrantSolutions User Support at 202-401-5282 or 866-577-0771, email help@grantsolutions.gov, Monday – Friday, 8 a.m. – 6 p.m. ET. Frequently Asked Questions and answers are available at https://grantsolutions.secure.force.com/.

4. **Grants Administration Assistance.** For assistance on **grants administration** issues please contact: Jessica Shields, Grants Management Specialist, at (240) 453-8839, or e-mail jessica.shields@hhs.gov or mail:

*OASH Grants and Acquisitions Management Division*
*Department of Health and Human Services*
*Office of the Secretary*
*Office of the Assistant Secretary for Health*
*1101 Wootton Parkway, Rockville, MD 20852.*

**Aplt.App. 387**

 **DEPARTMENT OF HEALTH AND HUMAN SERVICES**
Office of the Secretary

**Notice of Award**

Award#  6 FPHPA006507-01-01
FAIN#  FPHPA006507
Federal Award Date:  06/07/2022

---

## Recipient Information

**1. Recipient Name**
Health Department, Oklahoma State
123 Robert S Kerr Ave
0308
Oklahoma State Department of Health
Oklahoma City, OK 73102-6406

**2. Congressional District of Recipient**
05

**3. Payment System Identifier (ID)**
1736017987C4

**4. Employer Identification Number (EIN)**
736017987

**5. Data Universal Numbering System (DUNS)**
143673015

**6. Recipient's Unique Entity Identifier (UEI)**
LFU8Z8MPLTG3

**7. Project Director or Principal Investigator**
JILL  NOBLES-BOTKIN
jill@health.ok.gov
405-271-4476

**8. Authorized Official**
Ms. Bethany J Ledel
Grants Reporting Officer
bethanyl@health.ok.gov
405-271-4042

### Federal Agency Information
OASH Grants and Acquisitions Management Division

**9. Awarding Agency Contact Information**
Mrs. Jessica Hall-Shields
Grants Specialist
Jessica.Shields@hhs.gov
240-453-8839

**10. Program Official Contact Information**
Cynda  Hall
Public Health Advisor
cynda.hall@hhs.gov
2404532850

---

## Federal Award Information

**11. Award Number**
6 FPHPA006507-01-01

**12. Unique Federal Award Identification Number (FAIN)**
FPHPA006507

**13. Statutory Authority**
Title X of the Public Health Service Act, Section 1001 (42 U.S.C. § 300)

**14. Federal Award Project Title**
Oklahoma State Department of Health Family Planning Services Project

**15. Assistance Listing Number**
93.217

**16. Assistance Listing Program Title**
Family Planning Services

**17. Award Action Type**
Budget Revision

**18. Is the Award R&D?**
No

### Summary Federal Award Financial Information

| | | |
|---|---|---|
| **19.** Budget Period Start Date   04/01/2022   - End Date  03/31/2023 | | |
| **20.** Total Amount of Federal Funds Obligated by this Action | | $0.00 |
| 20a. Direct Cost Amount | | ($2,210.00) |
| 20b. Indirect Cost Amount | | $2,210.00 |
| **21.** Authorized Carryover | | $0.00 |
| **22.** Offset | | $0.00 |
| **23.** Total Amount of Federal Funds Obligated this budget period | | $4,500,000.00 |
| **24.** Total Approved Cost Sharing or Matching, where applicable | | $4,577,970.00 |
| **25.** Total Federal and Non-Federal Approved this Budget Period | | $9,077,970.00 |
| **26.** Period of Perfomance Start Date  04/01/2022   - End Date  03/31/2027 | | |
| **27.** Total Amount of the Federal Award including Approved Cost Sharing or Matching this Period of Performance | | Not Available |

**28. Authorized Treatment of Program Income**
OTHER (See REMARKS)

**29. Grants Management Officer – Signature**
Dr. Scott Moore
OASH Grants Management Officer

---

## 30. Remarks

This action approves the budget revision, please see revised line items.  All prior terms and conditions remain in effect unless specifically removed.



DEPARTMENT OF HEALTH AND HUMAN SERVICES

Office of the Secretary

Notice of Award

Award# 6 FPHPA006507-01-01
FAIN# FPHPA006507
Federal Award Date: 06/07/2022

## Recipient Information

**Recipient Name**
Health Department, Oklahoma State
123 Robert S Kerr Ave
0308
Oklahoma State Department of Health
Oklahoma City, OK 73102-6406

**Congressional District of Recipient**
05
**Payment Account Number and Type**
1736017987C4
**Employer Identification Number (EIN) Data**
736017987
**Universal Numbering System (DUNS)**
143673015
**Recipient's Unique Entity Identifier (UEI)**
LFU8Z8MPLTG3

**31. Assistance Type**
Project Grant
**32. Type of Award**
Service

### 33. Approved Budget
(Excludes Direct Assistance)

I. Financial Assistance from the Federal Awarding Agency Only
II. Total project costs including grant funds and all other financial participation

| | |
|---|---|
| a. **Salaries and Wages** | $3,761,973.00 |
| b. **Fringe Benefits** | $1,970,211.00 |
| c. **Total Personnel Costs** | $5,732,184.00 |
| d. **Equipment** | $0.00 |
| e. **Supplies** | $1,301,994.00 |
| f. **Travel** | $30,183.00 |
| g. **Construction** | $0.00 |
| h. **Other** | $301,823.00 |
| i. **Contractual** | $1,444,655.00 |
| j. **TOTAL DIRECT COSTS** | $8,810,839.00 |
| k. **INDIRECT COSTS** | $267,131.00 |
| l. **TOTAL APPROVED BUDGET** | $9,077,970.00 |
| m. **Federal Share** | $4,500,000.00 |
| n. **Non-Federal Share** | $4,577,970.00 |

### 34. Accounting Classification Codes

| FY-ACCOUNT NO. | DOCUMENT NO. | ADMINISTRATIVE CODE | OBJECT CLASS | CFDA NO. | AMT ACTION FINANCIAL ASSISTANCE | APPROPRIATION |
|---|---|---|---|---|---|---|
| 2-3984521 | FPHPA6507A | FPH70 | 41.51 | 93.217 | $0.00 | 75-22-0359 |

**Aplt.App. 389**



DEPARTMENT OF HEALTH AND HUMAN SERVICES

Office of the Secretary

**Notice of Award**

Award# 5 FPHPA006507-02-00
FAIN# FPHPA006507
Federal Award Date: 03/30/2023

| Recipient Information | Federal Award Information |
|---|---|

### Recipient Information

**1. Recipient Name**
Health Department, Oklahoma State
123 Robert S Kerr Ave
0308
Oklahoma State Department of Health
Oklahoma City, OK 73102-6406
405 426-8099

**2. Congressional District of Recipient**
05

**3. Payment System Identifier (ID)**
1736017987C4

**4. Employer Identification Number (EIN)**
736017987

**5. Data Universal Numbering System (DUNS)**
143673015

**6. Recipient's Unique Entity Identifier (UEI)**
LFU8Z8MPLTG3

**7. Project Director or Principal Investigator**
JILL NOBLES-BOTKIN
jill@health.ok.gov
405-271-4476

**8. Authorized Official**
Ms. Bethany J Ledel
Grants Reporting Officer
bethanyl@health.ok.gov
405-271-4042

### Federal Agency Information
OASH Grants and Acquisitions Management Division

**9. Awarding Agency Contact Information**
Mrs. Jessica Hall-Shields
Grants Specialist
Jessica.Shields@hhs.gov
240-453-8839

**10. Program Official Contact Information**
Cynda Hall
Public Health Advisor
cynda.hall@hhs.gov
2404532850

### Federal Award Information

**11. Award Number**
5 FPHPA006507-02-00

**12. Unique Federal Award Identification Number (FAIN)**
FPHPA006507

**13. Statutory Authority**
Title X of the Public Health Service Act, Section 1001 (42 U.S.C. § 300)

**14. Federal Award Project Title**
Oklahoma State Department of Health Family Planning Services Project

**15. Assistance Listing Number**
93.217

**16. Assistance Listing Program Title**
Family Planning Services

**17. Award Action Type**
Non-Competing Continuation

**18. Is the Award R&D?**
No

### Summary Federal Award Financial Information

| | | |
|---|---|--:|
| **19.** Budget Period Start Date   04/01/2023   - End Date  03/31/2024 | | |
| **20.** Total Amount of Federal Funds Obligated by this Action | | $4,500,000.00 |
| 20a. Direct Cost Amount | | $8,793,850.00 |
| 20b. Indirect Cost Amount | | $284,120.00 |
| **21.** Authorized Carryover | | $0.00 |
| **22.** Offset | | $0.00 |
| **23.** Total Amount of Federal Funds Obligated this budget period | | $0.00 |
| **24.** Total Approved Cost Sharing or Matching, where applicable | | $4,577,970.00 |
| **25.** Total Federal and Non-Federal Approved this Budget Period | | $9,077,970.00 |
| **26.** Period of Perfomance Start Date  04/01/2022   - End Date  03/31/2027 | | |
| **27.** Total Amount of the Federal Award including Approved Cost Sharing or Matching this Period of Performance | | $18,155,940.00 |

**28. Authorized Treatment of Program Income**
OTHER (See REMARKS)

**29. Grants Management Officer – Signature**
Dr. Scott Moore
OASH Grants Management Officer

### 30. Remarks

This action authorizes a total approved budget of $9,077,970.00 for a continuation award that includes $4,500,000.00 in FY2023 funding, an offset of $0, and a carryover of $0.

Page 1

**Aplt.App. 390**

 DEPARTMENT OF HEALTH AND HUMAN SERVICES

Office of the Secretary

Notice of Award

Award#  5 FPHPA006507-02-00
FAIN#   FPHPA006507
Federal Award Date: 03/30/2023

## Recipient Information

**Recipient Name**
Health Department, Oklahoma State
123 Robert S Kerr Ave
0308
Oklahoma State Department of Health
Oklahoma City, OK 73102-6406
405 426-8099
**Congressional District of Recipient**
05
**Payment Account Number and Type**
1736017987C4
**Employer Identification Number (EIN) Data**
736017987
**Universal Numbering System (DUNS)**
143673015
**Recipient's Unique Entity Identifier (UEI)**
LFU8Z8MPLTG3

### 31. Assistance Type
Project Grant
### 32. Type of Award
Service

### 33. Approved Budget
(Excludes Direct Assistance)

I.  Financial Assistance from the Federal Awarding Agency Only
II. Total project costs including grant funds and all other financial participation

| | |
|---|---|
| **a.  Salaries and Wages** | $3,631,462.00 |
| **b.  Fringe Benefits** | $1,997,305.00 |
|    **c.  Total Personnel Costs** | $5,628,767.00 |
| **d.  Equipment** | $0.00 |
| **e.  Supplies** | $1,302,726.00 |
| **f.  Travel** | $66,000.00 |
| **g.  Construction** | $0.00 |
| **h.  Other** | $269,683.00 |
| **i.  Contractual** | $1,526,674.00 |
| **j.  TOTAL DIRECT COSTS** | $8,793,850.00 |
| **k.  INDIRECT COSTS** | $284,120.00 |
| **l.  TOTAL APPROVED BUDGET** | $9,077,970.00 |
| **m.  Federal Share** | $4,500,000.00 |
| **n.  Non-Federal Share** | $4,577,970.00 |

### 34. Accounting Classification Codes

| FY-ACCOUNT NO. | DOCUMENT NO. | ADMINISTRATIVE CODE | OBJECT CLASS | CFDA NO. | AMT ACTION FINANCIAL ASSISTANCE | APPROPRIATION |
|---|---|---|---|---|---|---|
| 3-3980663 | FPHPA6507A | FPH70 | 41.51 | 93.217 | $4,500,000.00 | 75-23-0359 |

Page 2



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**   Notice of Award

Office of the Secretary

Award#  5 FPHPA006507-02-00
FAIN#   FPHPA006507
Federal Award Date: 03/30/2023

| 35. Terms And Conditions |
|---|

### SPECIAL TERMS AND REQUIREMENTS

1. **Prior Terms, Conditions, and Requirements.** Unless specifically removed, all prior terms, conditions, and requirements under this award remain in effect.

Page 3



DEPARTMENT OF HEALTH AND HUMAN SERVICES

Office of the Secretary

**Notice of Award**

Award#  6 FPHPA006507-02-01
FAIN#   FPHPA006507
Federal Award Date: 04/20/2023

| Recipient Information | Federal Award Information |
|---|---|

## Recipient Information

**1. Recipient Name**
Health Department, Oklahoma State
123 Robert S Kerr Ave
0308
Oklahoma State Department of Health
Oklahoma City, OK 73102-6406
405 426-8099

**2. Congressional District of Recipient**
05

**3. Payment System Identifier (ID)**
1736017987C4

**4. Employer Identification Number (EIN)**
736017987

**5. Data Universal Numbering System (DUNS)**
143673015

**6. Recipient's Unique Entity Identifier (UEI)**
LFU8Z8MPLTG3

**7. Project Director or Principal Investigator**
JILL  NOBLES-BOTKIN
jill@health.ok.gov
405-271-4476

**8. Authorized Official**
Ms. Bethany J Ledel
Grants Reporting Officer
bethanyl@health.ok.gov
405-271-4042

### Federal Agency Information
OASH Grants and Acquisitions Management Division

**9. Awarding Agency Contact Information**
Mrs. Jessica Hall-Shields
Grants Specialist
Jessica.Shields@hhs.gov
240-453-8839

**10.Program Official Contact Information**
Cynda  Hall
Public Health Advisor
cynda.hall@hhs.gov
2404532850

## Federal Award Information

**11. Award Number**
6 FPHPA006507-02-01

**12. Unique Federal Award Identification Number (FAIN)**
FPHPA006507

**13. Statutory Authority**
Title X of the Public Health Service Act, Section 1001 (42 U.S.C. § 300)

**14. Federal Award Project Title**
Oklahoma State Department of Health Family Planning Services Project

**15. Assistance Listing Number**
93.217

**16. Assistance Listing Program Title**
Family Planning Services

**17. Award Action Type**
Change in Scope with or without Budget Revision

**18. Is the Award R&D?**
No

### Summary Federal Award Financial Information

| | | |
|---|---|---|
| **19.** Budget Period Start Date  04/01/2023  - End Date  03/31/2024 | | |
| **20.** Total Amount of Federal Funds Obligated by this Action | | $0.00 |
| 20a. Direct Cost Amount | | $0.00 |
| 20b. Indirect Cost Amount | | $0.00 |
| **21.** Authorized Carryover | | $0.00 |
| **22.** Offset | | $0.00 |
| **23.** Total Amount of Federal Funds Obligated this budget period | | $4,500,000.00 |
| **24.** Total Approved Cost Sharing or Matching, where applicable | | $4,577,970.00 |
| **25.** Total Federal and Non-Federal Approved this Budget Period | | $9,077,970.00 |
| **26.** Period of Perfomance Start Date  04/01/2022  - End Date  03/31/2027 | | |
| **27.** Total Amount of the Federal Award including Approved Cost Sharing or Matching this Period of Performance | | $18,155,940.00 |

**28. Authorized Treatment of Program Income**
OTHER (See REMARKS)

**29. Grants Management Officer – Signature**
Dr. Scott Moore
OASH Grants Management Officer

## 30. Remarks

This action approves the change in scope due to the closing of brick and mortar location due to current building being in need of repair. All prior terms and conditons remain in effect unless specifically removed.

Page 1

**Aplt.App. 393**



DEPARTMENT OF HEALTH AND HUMAN SERVICES

Office of the Secretary

Notice of Award

Award#  6 FPHPA006507-02-01
FAIN#  FPHPA006507
Federal Award Date: 04/20/2023

## Recipient Information

**Recipient Name**
Health Department, Oklahoma State
123 Robert S Kerr Ave
0308
Oklahoma State Department of Health
Oklahoma City, OK 73102-6406
405 426-8099
**Congressional District of Recipient**
05
**Payment Account Number and Type**
1736017987C4
**Employer Identification Number (EIN) Data**
736017987
**Universal Numbering System (DUNS)**
143673015
**Recipient's Unique Entity Identifier (UEI)**
LFU8Z8MPLTG3

**31. Assistance Type**
Project Grant
**32. Type of Award**
Service

### 33. Approved Budget
(Excludes Direct Assistance)

I.  Financial Assistance from the Federal Awarding Agency Only
II. Total project costs including grant funds and all other financial participation

| | |
|---|---|
| a.  **Salaries and Wages** | $3,631,462.00 |
| b.  **Fringe Benefits** | $1,997,305.00 |
| c.  **Total Personnel Costs** | $5,628,767.00 |
| d.  **Equipment** | $0.00 |
| e.  **Supplies** | $1,302,726.00 |
| f.  **Travel** | $66,000.00 |
| g.  **Construction** | $0.00 |
| h.  **Other** | $269,683.00 |
| I.  **Contractual** | $1,526,674.00 |
| j.  **TOTAL DIRECT COSTS** | $8,793,850.00 |
| k.  **INDIRECT COSTS** | $284,120.00 |
| l.  **TOTAL APPROVED BUDGET** | $9,077,970.00 |
| m.  **Federal Share** | $4,500,000.00 |
| n.  **Non-Federal Share** | $4,577,970.00 |

### 34. Accounting Classification Codes

| FY-ACCOUNT NO. | DOCUMENT NO. | ADMINISTRATIVE CODE | OBJECT CLASS | CFDA NO. | AMT ACTION FINANCIAL ASSISTANCE | APPROPRIATION |
|---|---|---|---|---|---|---|
| 3-3980663 | FPHPA6507A | FPH70 | 41.51 | 93.217 | $0.00 | 75-23-0359 |

Page 2



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**                    Office of the Secretary

Office of the Assistant Secretary for Health
Office of Population Affairs
Washington, D.C.
20201

May 24, 2023

Jill Nobles-Botkin, APRN-CNM, MSN
Administrative Programs Manager
Perinatal and Reproductive Health Division
Maternal & Child Health Services
Oklahoma State Department of Health
123 Robert S. Kerr Avenue 0308
Oklahoma City, OK 73102-6406

Dear Ms. Nobles-Botkin,

As you know, the Office of Population Affairs (OPA) has been corresponding with the Oklahoma State Department of Health (OSDH) since last summer with respect to its policy and procedure for providing nondirective options counseling and referral within its Title X project (FPHPA006507), in accordance with the 2021 Title X implementing regulations at 42 CFR § 59.5(a)(5). As a brief recap, on August 29, 2022, because of recent changes in Oklahoma state laws, OSDH submitted a proposal to change its policy and procedure for providing nondirective options counseling by providing clients seeking counseling on pregnancy termination with a link to the HHS OPA website. On November 9, 2022, OPA informed OSDH that this proposal did not comply with the Title X regulatory requirements set out in 42 CFR § 59.5(a)(5)(ii) and, therefore, could not be approved. On November 22, 2022, OSDH submitted to OPA a request for reconsideration of OPA's November 9, 2022 decision. On January 25, 2023, OPA posted a letter to OSDH on GrantSolutions. That letter reiterated that the proposal to provide clients seeking counseling on pregnancy termination with a link to the HHS OPA website does not comply with the 2021 Title X implementing regulations at 42 CFR § 59.5(a)(5)(ii). The letter also informed OSDH that it could submit an alternate compliance proposal that included providing clients with a referral to another entity, such as the All-Options Talkline. OSDH informed OPA that it became aware of this letter on February 7, 2023, when contacted by email.

On February 16, 2023, OSDH responded to OPA's January 25, 2023, letter by submitting an alternative proposal for compliance, which included providing nondirective counseling on all pregnancy options by OSDH staff or through the All-Options Talk Line. On March 14, 2023, OSDH submitted a "Pregnancy Diagnosis and Counseling" policy (revised March 2023), which indicated that the protocol for counseling clients with a positive pregnancy test includes:

> b. Provide neutral, factual information and nondirective counseling on all pregnancy options by OSDH staff or through the All-Options Talk Line (1-888-493-0092) and website, https://www.all-options.org/find-support/talkline/ (except for options the client indicated she does not want more information on).

In addition, as a corollary to the counseling protocol, OSDH's "Pregnancy Diagnosis and Counseling" policy (revised March 2023) indicated that one of the options for referral was to the "All-Options Talk Line (1-888-493-0092)." As part of its March 14 submission, OSDH also sent a Pregnancy Choices brochure (dated March 2023), listing the All-Options Talk Line as one of the Oklahoma Family Planning Resources.

On March 21, 2023, OSDH submitted a written assurance of compliance with the options counseling and referral requirements in the 2021 Title X Final Rule. On March 23, 2023, OPA posted two documents on GrantSolutions (a letter dated March 1, 2023, and a printout of a Technical Review, Exported On: 03/20/2023). Those documents informed OSDH that OPA had determined that OSDH's policy complied with the Title X regulations.

Most recently, however, on May 5, 2023, OSDH notified OPA by email that it "had a change required in our family planning program policy effective late afternoon of 4/27/23." As documentation, OSDH submitted the same exact "Pregnancy Diagnosis and Counseling" policy (revised March 2023) as it originally submitted on March 14, 2023, but the new version no longer includes counseling through and referral to the All-Options Talk Line. Specifically, the policy submitted on May 5, 2023, replaced part b. quoted above with the following:

> b. Provide neutral, factual information and nondirective counseling on pregnancy options in Oklahoma by OSDH staff (except for options the client indicated she does not want more information on).

In addition, the updated OSDH "Pregnancy Diagnosis and Counseling" policy (revised March 2023) no longer includes the All-Options Talk Line as an entity to which clients may be referred. And, as part of its May 5, 2023, submission, OSDH also included an updated Pregnancy Choices brochure, which no longer lists the All-Options Talk Line as a resource.

OSDH's reference to counseling on "pregnancy options in Oklahoma" in the "Pregnancy Diagnosis and Counseling" policy, rather than counseling on all pregnancy options, and the deletion of referral to the All-Options Talk Line in this policy without any other provision for abortion referrals, are not acceptable revisions, as Title X recipients must still follow all Federal regulatory requirements. The changes to OSDH's family planning program policy do not suffice or meet Federal requirements because Oklahoma law does not extend to all pregnancy options (*See* Okla. Stat. tit. 21, § 861), and we understand that, pursuant to OSDH's revised policy, information, counseling and referral will not be available for all alternative courses of action, but only for those options available under Oklahoma state law. This is inconsistent with Title X regulations at 42 CFR § 59.5(a)(5), which require Title X projects to provide information and nondirective counseling on a range of options, including prenatal care and delivery; infant care, foster care, or adoption; and pregnancy termination. Additionally, projects are required to provide referrals upon client request, including referrals for abortion. In some circumstances, those referrals will need to be made out of state.

Thus, based upon the documentation provided, OPA has determined that OSDH's policy for providing nondirective options counseling and referral within your Title X project does not comply with the Title X regulatory requirements and, therefore, the terms and conditions of your grant. Given OSDH's failure to adhere to the Title X regulatory requirements for nondirective options counseling and referral, I have referred this matter to the HHS Office of the Assistant Secretary for Health's Grants and Acquisitions Management (GAM) Division as a violation of the terms and conditions of your grant. I have copied the Director of OASH GAM on this correspondence as notification of the compliance violation and will be in touch with a response.

Thanks,

Jessica S. Marcella

Jessica Swafford Marcella
Deputy Assistant Secretary for Population Affairs
U.S. Department of Health and Human Services
Office of the Assistant Secretary for Health, Office of Population Affairs

cc: Scott Moore
Director/Chief Grants Management Officer
U.S. Department of Health and Human Services
Office of the Assistant Secretary for Health, Grants and Acquisitions Management



**DEPARTMENT OF HEALTH & HUMAN SERVICES**

Office of the Secretary

Office of the Assistant Secretary for Health
Grants & Acquisitions Management
Rockville, MD 20852

May 25, 2023

TO:     Jill Nobles-Botkin (jill@health.ok.gov)
        Project Director/Principle Investigator

        Ms. Bethany J Ledel (bethanyl@health.ok.gov)
        Authorized Official

        Oklahoma State Health Department
        123 Robert S Kerr Ave 0308
        Oklahoma City, OK 73102-6406

RE:     Suspension of Award FPHPA006507 "Oklahoma State Department of Health
        Family Planning Services Project"

The Office of Population Affairs (OPA) has provided notice in the attached letter that your
award FPHPA006507 "Oklahoma State Department of Health Family Planning Services Project"
is out of compliance with the Title X regulation (42 CFR Part 59, Subpart A) as of May 24,
2023.

As a condition of accepting the award (Notice of Award, Special Terms and Requirements 2),
Oklahoma State Department of Health (OSDH) stipulated "that the award and any activities
thereunder are subject to all provisions of 42 CFR Part 59, Subpart A." OSDH accepted the
award per Standard Term 1 of the Notice of Award, "By drawing or otherwise obtaining funds
for the award from the grant payment system or office, you accept the terms and conditions of
the award and agree to perform in accordance with the requirements of the award."

OSDH accepted the award on May 24, 2022, by drawing down funds from the HHS Payment
Management System (PMS). In doing so, OSDH agreed to comply with the Title X regulation as
a condition of the award.

Therefore, I conclude that because OSDH is out of compliance with the Title X regulation,
OSDH is also out of compliance with the terms and conditions of award FPHPA006507. As of
April 27, 2023 (i.e., the effective date of the non-compliant OSDH policy), all costs are
unallowable.

Consequently, I am suspending award FPHPA006507 and all activities supported by it effective
with the date of this letter. I will review this action in 30 days to reassess OSDH's compliance
with the award terms and conditions. The suspension may be extended for an appropriate time or
the award may be terminated pursuant to 45 CFR § 75.372(a)(1) for material noncompliance or
unsatisfactory performance with the terms and conditions of the award. A termination under this
section must be reported to the Office of Management and Budget-designated integrity and

**Aplt.App. 397**

performance system, currently the Federal Awardee Performance and Integrity Information System (FAPIIS). See 45 CFR § 75.372(b). Inclusion in FAPIIS may affect your ability to obtain future Federal funding.

As an alternative, you have the opportunity to voluntarily relinquish your grant and may do so by contacting the assigned Grants Management Specialist (Jessica Shields, Jessica.shields@hhs.gov), who can provide your additional information on the process. Note that as compared to termination, a decision to relinquish your award is not reported to FAPIIS.

Respectfully,

Scott J. Moore -S
2023.05.25 11:09:13 -04'00'

Scott J. Moore, Ph.D., J.D.
Director / Chief Grants Management Officer
OASH Grants & Acquisitions Management

cc:    Jessica Shields, Grants Management Specialist
       Cynda Hall, OPA Project Officer
       Duane Barlow, OASH Grants Branch chief
       Amy Margolis, OPA Deputy Director
       Jessica Marcella, Deputy Assistant Secretary for Population Affairs

 **SAM**★GOV®

# Grants Certifications Report

**Certification for:** OKLAHOMA STATE DEPARTMENT OF HEALTH
**Unique Entity ID:** LFU8Z8MPLTG3
**Certification Validity From:** Tue Jun 13 15:08:04 EDT 2023
**Certification Validity To:** Wed Jun 12 15:08:04 EDT 2024

**Financial Assistance General Certifications and Representations**

As the duly authorized representative of the **OKLAHOMA STATE DEPARTMENT OF HEALTH**, I certify that **OKLAHOMA STATE DEPARTMENT OF HEALTH**:

(1) Has the legal authority to apply for Federal assistance and the institutional, managerial and financial capability to ensure proper planning, management and completion of any financial assistance project covered by this Certifications and Representations document (See 2 C.F.R. § 200.113 Mandatory disclosures, 2 C.F.R. § 200.214 Suspension and debarment, OMB Guidance A- 129, "Policies for Federal Credit Programs and Non-Tax Receivables");

(2) Will give the awarding agency, the Comptroller General of the United States and, if appropriate, the State, through any authorized representative, access to and the right to examine all records, books, papers, or documents related to the award; and will establish a proper accounting system in accordance with generally accepted accounting standards or agency directives (See 2 C.F.R. § 200.302 Financial Management and 2 C.F.R. § 200.303 Internal controls);

(3) Will disclose in writing any potential conflict of interest to the Federal awarding agency or pass through entity in accordance with applicable Federal awarding agency policy (See 2 C.F.R. § 200.112 Conflict of interest);

(4) Will comply with all limitations imposed by annual appropriations acts;

(5) Will comply with the U.S. Constitution, all Federal laws, and relevant Executive guidance in promoting the freedom of speech and religious liberty in the administration of federally-funded programs (See 2 C.F.R. § 200.300 Statutory and national policy requirements and 2 C.F.R. § 200.303 Internal controls);

(6) Will comply with all applicable requirements of all other Federal laws, executive orders, regulations, and public policies governing financial assistance awards and any Federal financial assistance project covered by this certification document, including but not limited to:

(a) Trafficking Victims Protection Act (TVPA) of 2000, as amended, 22 U.S.C. § 7104(g);

(b) Drug Free Workplace, 41 U.S.C. § 8103;

(c) Protection from Reprisal of Disclosure of Certain Information, 41 U.S.C. § 4712;

(d) National Environmental Policy Act of 1969, as amended, 42 U.S.C. § 4321 et seq.;

(e) Universal Identifier and System for Award Management, 2 C.F.R part 25;

(f) Reporting Subaward and Executive Compensation Information, 2 C.F.R. part 170;

(g) OMB Guidelines to Agencies on Governmentwide Debarment and Suspension (Non-procurement), 2 C.F.R. part 180;

(h) Civil Actions for False Claims Act, 31 U.S.C. § 3730;

(i) False Claims Act, 31 U.S.C. § 3729, 18 U.S.C. §§ 287 and 1001;

(j) Program Fraud and Civil Remedies Act, 31 U.S.C. § 3801 et seq.;

(k) Lobbying Disclosure Act of 1995, 2 U.S.C. § 1601 et seq.;

(l) Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq.;

(m) Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3601 et seq.;

(n) Title IX of the Education Amendments of 1972, as amended, 20 U.S.C. § 1681 et seq.;

(o) Section 504 of the Rehabilitation Act of 1973, as amended, 42 U.S.C. § 794; and.

(p) Age Discrimination Act of 1975, as amended, 42 U.S.C. § 6101 et seq.

✓ I have read each of the certifications and representations presented on this page. By submitting this certification, I, **Bethany Ledel**, am attesting to the accuracy of the certifications and representations contained herein. I understand that I may be subject to criminal prosecution under Section 1001, Title 18 of the United States Code or civil liability under the False Claims Act if I misrepresent **OKLAHOMA STATE DEPARTMENT OF HEALTH** by providing false, fictitious, or fraudulent information to the U.S. Government.

Jun 27, 2023 12:43:39 PM GMT